# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

CHRISTA GAIL PIKE )
)
    Petitioner, )
)
v. )    **No. 1:12-CV-35**
)    **DEATH PENALTY CASE**
DEBRA JOHNSON, WARDEN )
)
    Respondent. )

---

## ADDENDUM 1

## DOCUMENT 3

---

03801-9712-CR-00(4) TO THE
III 03801-9611-CR-00408

TO THE SUPREME COURT

VOLUME III

# TECHNICAL RECORD

## NO. 58183A

**DEFENDANT:** CHRISTA PIKE
(Defendant Indigent)

# APPEALED FROM
# KNOX COUNTY CRIMINAL COURT
# AT KNOXVILLE, TENNESSEE

HON. MARY BETH LEIBOWITZ, **JUDGE — DIVISION** III

MARTHA PHILLIPS, **CLERK**

### IN THE CASE OF

STATE OF TENNESSEE

**VS.**

CHRISTA PIKE

DEFENDANT CONVICTED OF FIRST DEGREE MURDER & SENTENCED TO DEATH

**CHARGE:** FIRST DEGREE MURDER & CONSPIRACY TO COMMIT
FIRST DEGREE MURDER

# TO THE
# COURT OF CRIMINAL APPEALS
# KNOXVILLE, TENNESSEE

HONORABLE WILIAM C. TALMAN, Attorney-at-Law
P.O. Box 506
Knoxville, TN   37901-0506
HONORABLE JULIE A. MARTIN, Attorney-at-Law
P.O. Box 426
Knoxville, TN   37901-0426      **Attorneys for Appellant**

HONORABLE RANDALL E. NICHOLS, District Attorney General
HONORABLE WILLIAM CRABTREE, Assistant Attorney General
HONORABLE S. JO HELM, Assistant Attorney General
CityCounty Building
Knoxville, Tn 37902
**Attorneys for Appellee**

**FILED** 3rd **DAY OF** February 19 97

CRIMINAL **COURT**      MARTHA PHILLIPS, **CLERK**

**NO.** 58183A      SHEILA MELTABARGER **DEP. CLERK**

Knox **APPELLANT** TDOC

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 2 of 145
PageID #: 335

000312

T:/SLEMMER MURDER LATEST/  :55/01-18-95
TAPE 242

2 SHOT
CENTERBOARD

((RICK))
KNOXVILLE POLICE FIND WHAT THEY BELIEVE TO BE THE *SECOND* MURDER WEAPON IN THE JOE CORPS HOMICIDE LAST WEEK...
AND INVESTIGATORS ALSO SAY THE TEENS ALLEGEDLY INVOLVED MAY HAVE BEEN DABBLING IN THE OCCULT....
GOOD TA HAVE YA WITH US, I'M RICK BENJAMIN.

((LORI))
I'M LORI TUCKER.
KNOXVILLE POLICE ALSO SAY THEY'VE RECOVERED A PIECE OF THE DEAD WOMAN'S SKULL...SOMEWHERE OTHER THAN THE CRIME SCENE.

TAKE VO NATS:---------

((RICK))
COLLEEN SLEMMER'S BODY WAS FOUND LAST WEEK ON THE U-T AG CAMPUS.
POLICE SAY THE 19 YEAR OLD WAS APPARENTLY INVOLVED IN SOME SORT OF A LOVE TRIANGLE... THEY FEEL THAT RELATIONSHIP IS BEHIND THE KILLING.
17 YEAR OLD TADARRYL SHIPP, 18 YEAR OLD CHRISTA PIKE, AND 18 YEAR OLD SHADOLLA PETERSON, ARE ALL CHARGED IN SLEMMER'S MURDER.
POLICE NOW FEEL THE TEENS MAY HAVE BEEN INVOLVED IN THE OCCULT, BUT THEY WON'T ELABORATE ON WHY THEY'VE REACHED THAT CONCLUSION...
SLEMMER'S BODY WAS SEVERLY BEATEN, AND SLASHED WITH SMALL, SHARP INSTRUMENTS.
POLICE HAD ALREADY RECOVERED A MINIATURE MEAT CLEAVER...AND NOW THEY'VE FOUND A CARDBOARD BOX OPENER THEY THINK WAS ALSO USED, TO KILL SLEMMER.
INVESTIGATORS FOUND THE KNIFE-LIKE UTENSIL ON THE

VO OUT:-----

JOB CORPS CAMPUS.
###

000313

T:/SLEMMER MURDER UPDATE/ :40/01-18-95
TAPE 242

NATALIE TIGHT

ENG VO NATS -------------

VO OUT -----------

NATALIE TIGHT

((NATILIE))
PROSECUTORS WANT THE 17-YEAR-OLD ACCUSED OF KILLING COLLEEN SLEMMER TO STAND TRIAL AS AN ADULT.
TADARYL SHIPP APPEARED AT A DETENTION HEARING YESTERDAY IN JUVENILE COURT.
THE MEMPHIS TEEN WAS ORDERED HELD WITHOUT BOND.
ALSO, SHIPP WAS FOUND *NOT INDIGENT*, THIS MEANS HE'LL HAVE TO PROVIDE HIS OWN LAWYER.
SOURCES TELL US HIS PARENTS ARE HERE FROM MEMPHIS, AND WILL HIRE A LOCAL ATTORNEY TO REPRESENT THEIR SON IN THE MURDER CASE.
THE MEMPHIS TEEN, ALONG WITH SHADOLLA PETERSON, AND CHRISTA FIKE... ARE ACCUSSED OF MURDERING COLLEEN SLEMMER LAST WEEK.
THE SUSPECTS AND VICTIM WERE ALL STUDENTS OF THE JOB CORPS PROGRAM HERE IN KNOXVILLE.
COURT OFFICIALS TELL US THEY'RE CONFIDENT SHIPP WILL STAND TRIAL AS AN ADULT.

000314

T:242/SLEMMER MURDER UPDATE/ :45/01-18-95
TAPE 242                                    ((NATALIE))
                                        PROSECUTORS ARE ASKING
        NATALIE INSERT                  THAT THE 17-YEAR-OLD ACCUSED
                                        OF KILLING 19-YEAR-OLD
                                        COLLEEN SLEMMER STAND TRIAL
                                        AS AN ADULT.
                                          TADARYL SHIPP APPEARING AT
                                        A DETENTION HEARING
                                        YESTERDAY IN JUVENILE
                                        COURT.
        TAKE VO NATS:-------            THE MEMPHIS TEENAGER WAS
                                        ORDERED HELD WITHOUT BOND,
                                        AND THE STATE OFFICIALLY
                                        ASKED THAT SHIPP BE TRIED AS
                                        AN ADULT.
                                          THE COURT WILL DECIDE
                                        THAT LATER.
                                          SHIPP WAS ALSO FOUND *NOT
                                        INDIGENT*, SO HE'LL HAVE TO
                                        PROVIDE HIS OWN ATTORNEY.
                                          SOURCES TELL US HIS
                                        PARENTS ARE HERE FROM
                                        MEMPHIS, AND WILL HIRE A
                                        LOCAL ATTORNEY TO REPRESENT
                                        THEIR SON IN THE MURDER
                                        CASE.
                                          SHIPP, ALONG WITH
                                        SHADOLLA PETERSON, AND
                                        CHRISTA PIKE...ARE ACCUSED
                                        OF MURDERING COLLEEN SLEMMER
                                        LAST WEEK.
                                          ALL FOUR OF THOSE
                                        INVOLVED WERE MEMBERS OF THE
                                        JOB CORPS PROGRAM HERE IN
        VO OUT:---------------------    KNOXVILLE.
                                          JUVENILE COURT OFFICIALS
        NATALIE TIGHT                   TELL US THEY THINK THE STATE
                                        WILL BE SUCCESSFUL IN
                                        BRINGING SHIPP TO TRIAL AS
                                        AN ADULT.
                                                ###

Case 1:12-cv-00035-HSM-SKL     Document 7-3     Filed 08/01/12     Page 5 of 145
PageID #: 338

T:242/SLEMMER MURDER UPDATE/ :45/01-18-95
TAPE 2#2

RUSS INSERT

TAKE VO NATS:--------

VO OUT:---------------------

RUSS TIGHT

((RUSS))

PROSECUTOR. ARE ASKING THAT THE 17 YEAR OLD ACCUSED OF KILLING 19 YEAR OLD COLLEEN SLEMMER STAND TRIAL AS AN ADULT.

TODREEL SHIPP APPEARING AT A DETENTION HEARING YESTERDAY IN JUVENILE COURT.

THE MEMPHIS TEENAGER WAS ORDERED HELD WITHOUT BOND, WITH THE STATE OFFICIALLY ASKED THAT SHIPP BE TRIED AS AN ADULT.

THE COURT WILL DECIDE THAT LATER.

SHIPP WAS ALSO FOUND *NOT INDIGENT*, SO HE'LL HAVE TO PROVIDE HIS OWN LAWYER-- HIS PARENTS ARE HERE FROM MEMPHIS, AND WILL HIRE A LOCAL LAWYER TO REPRESENT THEIR SON IN THE MURDER CASE.

SHIPP, ALONG WITH SHADOLLA PETERSON, AND CHRISTA PIKE...ARE ACCUSED OF MURDERING COLLEEN SLEMMER LAST WEEK.

ALL FOUR OF THOSE INVOLVED WERE MEMBERS OF THE JOB CORPS PROGRAM HERE IN KNOXVILLE.

JUVENILE COURT OFFICIALS TELL US THEY THINK THE STATE WILL BE SUCCESSFUL IN BRINGING SHIPP TO TRIAL AS AN ADULT.

###

T: 'SLEMMER MURDER UPDATE/ :45/01-17-95
TAPE 242

                    TWO SHOT
                 CENTER BOARD

((LORI ))
     MEANWHILE...PROSECUTERS
WANT THE 17 YEAR OLD ACCUSED
OF KILLING 19 YEAR OLD
COLLEEN SLEMMER TO STAND
TRIAL AS AN ADULT.
 ((FICK))
     TADARYL SHIPP APPEARING
AT A DETENTION HEARING THIS
MORNING IN JUVENILE COURT.

          TAKE VO NATS:-------

     THE MEMPHIS TEENAGER WAS
ORDERED HELD WITHOUT BOND,
AND THE STATE OFFICIALLY
ASKED THAT SHIPP BE TRIED AS
AN ADULT.
     THE COURT WILL DECIDE
THAT LATER.
     SHIPP WAS ALSO FOUND *NOT
INDIGENT*, SO HE'LL HAVE TO
PROVIDE HIS ON ATTORNEY.
     SOURCES TELL US HIS
PARENTS ARE HERE FROM
MEMPHIS, AND WILL HIRE A
LOCAL ATTORNEY TO REPRESENT
THEIR SON IN THE MURDER
CASE.
     SHIPP, ALONG WITH
SHADOLLA PETERSON, AND
CHRISTA PIKE...ARE ACCUSED
OF MURDERING COLLEEN SLEMMER
LAST WEEK.
     ALL FOUR OF THOSE
INVOLVED WERE MEMBERS OF THE
JOB CORPS PROGRAM HERE IN

          VO OUT:--------------------

KNOXVILLE.
     JUVENILE COURT OFFICIALS
TELL US THEY THINK THE STATE
WILL BE SUCCESSFUL IN
BRINGING SHIPP TO TRIAL AS
AN ADULT.
                    ###

000316

⬤ 000317

T:/SLEMMER MURDER IN CT/ 1:25/01-17-95
TAPE 1

    TWO SHOT
    CENTERBOARD

    ((RICK))
    THE 3 TEEN ACCUSED OF MURDERING 19-YEAR-OLD COLLEEN SLEMMER ON THE U-T AG CAMPUS LAST WEEK... BEGAN THEIR TRIP THROUGH THE LEGAL SYSTEM TODAY.

    OPEN CENTERBOARD

    ((LORI))
    CHARLEY BELCHER IS FOLLOWING THE STORY, AND JOINS US FROM THE NEWSROOM....
    CHARLEY, THE STATE IS GOING AFTER THE 17 YEAR OLD MALE ALLEGEDLY INVOLVED IN THIS...TADARYL SHIPP...THEY WANT HIM TO STAND TRIAL AS AN ADULT.

    CHARLEY NEWSROOM FULL

#CHARLEY BELCHER\21

    ((CHARLEY))
    RIGHT, AND THOSE IN THE D-A'S OFFICE DON'T WANT TO SECOND GUESS THE JUDGES, BUT THEY FEEL THEY HAVE A GOOD CASE FOR GETTING SHIPP TRIED AS AN ADULT.

    TAKE PKG:----------
    TRT:
    OUT: HERE IN KNOXVILLE

    --------------------------------
    THE 17 YEAR OLD FROM MEMPHIS HAD A DETENTION HEARING THIS MORNING IN JUVENILE COURT.
    HE WAS ORDERED HELD WITHOUT BOND, AND THE STATE OFFICIALLY ASKED FOR HIM TO BE TRIED AS AN ADULT.
    THE COURT WILL DECIDE THAT LATER.
    SHIPP WAS ALSO FOUND NOT INDIGENT, WHICH MEANS HE'LL HAVE TO PROVIDE HIS ON ATTORNEY.
    SOURCES TELL ME HIS PARENTS ARE HERE FROM MEMPHIS AND THEY WILL HIRE A LOCAL ATTORNEY TO REPRESENT THEIR SON.
    SHIPP, ALONG WITH SHADOLLA PETERSON, AND CHRISTA PIKE...ARE ACCUSED OF MURDERING COLLEEN SLEMMER LAST WEEK.
    ALL FOUR OF THOSE INVOLVED WERE MEMBERS OF THE JOB CORPS PROGRAM HERE IN KNOXVILLE.

    PKG OUT-----------
    --------------------------------

    ((CHARLEY))
    WORKERS IN JUVENILE

    CHARLEY FULL

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 8 of 145
PageID #: 341

    SHOCKED IF SHIPP WASN'T TRIED AS AN ADULT...DUE TO THE SEVERITY OF THE CRIME

305

000318

AND THE FACT SHIPP IS
ALMOST 18 YEARS OLD ANYWAY.
     NOW, PETERS.N AND PIKE
WERE SUPPOSED TO BE
ARRAIGNED TODAY, BUT THAT
HAS BEEN POSTPONED....THE
PROSECUTING ATTORNEY WAS
BUSY IN ANOTHER TRIAL.

CENTERBOARD

((LORI))
     THANKS FOR KEEPING US
POSTED ON THESE
PROCEEDINGS...CHARLEY
BELCHER IN OUR NEWSROOM.

000319

```
T:/SLEMMER FOLD/  :50/01-16-95        ((RICK))
TATE 246                                    TWO  YOUNG WOMEN...
                                      CHARGED IN THE BEATING DEATH
                                      OF A 19-YEAR-OLD WOMAN LAST
        RICK INSERT                   WEEK, WILL APPEAR IN KNOX
                                      COUNTY COURT TOMORROW.
                  :00 TAKE VO NATS ...       THE TWO ARE BEING
                                      CHARGED AS ADULTS, IN THE
                                      MURDER...
                                            18-YEAR-OLD CHRISTA
                                      PIKE OF DURHAM, NORTH
                                      CAROLINA, AND 18-YEAR-OLD
  :05 CHANGE MUGS                     SHADOLLA PETERSON OF
                                      CLEVELAND, TENNESSEE WILL BE
                                      IN COURT FOR ARRAINGMENT.
  :10 CHANGE MUG AGAIN                      AUTHORITIES ALSO PLAN
                                      TO ASK A JUDGE THIS WEEK TO
                                      DECIDE IF 17-YEAR-OLD
                                      TADARYL SHIPP WILL BE TRIED
                                      AS AN ADULT...
                                            THE THREE SUSPECTS ARE
  :15 VICTIM                          CHARGED WITH FIRST-DEGREE
                                      MURDER, IN THE DEATH OF
  :18                                 19-YEAR-OLD COLLEEN
 #U.T. CAMPUS\1                       SLEMMER.... HER BODY FOUND
                                      FRIDAY, BEHIND THE OLD STEAM
                                      PLANT ON U-T'S AG CAMPUS.
                                            INVESTIGATORS SAY
                                      SHE'D BEEN TORTURED AND
                                      BEATEN WITH A MEAT CLEAVER,
                                      A SMALL-BLADED INSTRUMENT,
                                      AND A CHUNK OF ASPHALT.
                                            THE VICTIM AND THE
                                      SUSPECTS ALL KNEW EACH
                                      OTHER... THEY WERE ALL
                                      STUDENTS AT KNOXVILLE'S JOB
                                      CORPS CENTER.
                                            INVESTIGATORS THINK
                                      THEY WERE INVOLVED IN SOME
         VO OUT........................ SORT OF RELATIONSHIP.
                                               ###
```

000320

~:246/SLEMMER SUSPECTS UPDATE/   :50/01-16-95
TAPE 246                                 ((RICK))
                                          THE THREE TEENS,
                                    CHARGED IN THE BRUTAL
RICK INSERT                         BEATING DEATH OF A
                                    19-YEAR-OLD WOMAN, ALONG THE
                                    U-T BIKE TRAIL A FEW DAYS
                                    AGO... WILL ALL APPEAR IN
                                    KNOX COUNTY COURT THIS
                                    WEEK.
                 :00 TAKE VO NATS ...     TWO ARE BEING CHARGED
                                    AS ADULTS, IN THE MURDER...
                                          18-YEAR-OLD CHRISTA
                                    PIKE OF DURHAM, NORTH
                                    CAROLINA, AND 18-YEAR-OLD
:05 CHANGE MUGS                     SHADOLLA PETERSON OF
                                    CLEVELAND, TENNESSEE WILL BE
                                    IN COURT TUESDAY FOR
                                    ARRAINGMENT.
:10 CHANGE MUG AGAIN                      AND AUTHORITIES WILL
                                    ASK A JUDGE THIS WEEK TO
                                    DECIDE IF 17-YEAR-OLD
                                    TADGRYL SHIPP WILL ALSO BE
                                    TRIED AS AN ADULT...
                                          THE THREE SUSPECTS ARE
:15 VICTIM                          CHARGED WITH FIRST DEGREE
                                    MURDER, IN THE DEATH OF
:18                                 19-YEAR-OLD COLLEEN
#U.T. CAMPUS\1                      SLEMMER.
                                          HER BODY WAS FOUND
                                    BEHIND THE OLD STEAM PLANT
                                    ON U-T'S AG CAMPUS, FRIDAY.
                                    SHE'D BEEN TORTURED AND
                                    BEATEN WITH A MEAT CLEAVER,
                                    A SMALL-BLADED INSTRUMENT OF
                                    SOME KIND, AND A CHUNK OF
                                    ASPHALT.
                                          THE VICTIM AND THE
                                    SUSPECTS ALL KNEW EACH
                                    OTHER... THEY WERE ALL
                                    STUDENTS AT KNOXVILLE'S JOB
                                    CORPS CENTER.
                                          INVESTIGATORS THINK
                                    THEY WERE INVOLVED IN A LOVE
                 VO OUT.......................... TRIANGLE OF SORTS.
                                               ###

000321

fr/CHIP/ HEARING/  :50/01-16-95
TAPE 246
          NATALIE INSERT


          :00 TAKE VO NATS ...


:05 CHANGE MUGS


:10 CHANGE MUG AGAIN


:15 VICTIM

:18
#U.T. CAMPUS\1




          VO OUT ----------------

          NATALIE INSERT

(NATALIE)
     THREE TEE.  CHARGED FOR
THE BRUTAL BEATING DEATH OF
A 19-YEAR-OLD WOMAN ... WILL
ALL BE IN KNOX COUNTY COURTS
THIS WEEK.
     TWO ARE BEING CHARGED AS
ADULTS.
     18-YEAR-OLD CHRISTA PIKE
OF DURHAM, NORTH CAROLINA
AND 18-YEAR-OLD SHADOLLA
PETERSON OF CLEVELAND,
TENNESSEE WILL BE IN COURT
TUESDAY FOR AN ARRAINGMENT.
     ALSO THIS WEEK,
AUTHORITIES WILL ASK A JUDGE
TO DECIDE IF 17-YEAR-OLD
TADARYL SHIPP WILL BE TRIED
AS AN ADULT AS WELL.
     ALL THREE OF THE SUSPECTS
ARE CHARGED WITH THE FIRST
DEGREE MURDER OF COLLEEN
SLEMMER.
     THE TEENAGER'S BODY WAS
FOUND BEHIND THE OLD STEAM
PLANT ON U-T'S AG. CAMPUS
FRIDAY.
     OFFICERS SAY SHE WAS
TORTURED AND BEATEN WITH A
MEAT CLEAVER, A SMALL-BLADED
INSTRUMENT OF SOME KIND AND
A CHUNK OF ASPHALT.
     POLICE SAY THE VICTIM AND
SUSPECTS KNEW EACH OTHER.
     THEY WERE ALL LIVING AT
KNOXVILLE'S JOB CORPS
CENTER.
     OFFICERS BELIEVE THEY
WERE INVOLVED IN A LOVE
TRIANGLE OF SORTS.
          ###

000322

T:240/SLEMMER MURDER FOLO/  :45/01-16-95
TAPE: 240                                     (NATALIE)
                                                   THREE TEEN. CHARGED FOR
                NATALIE INSERT               THE MURDER OF A 19-YEAR-OLD
                                             WOMAN FOUND ON THE U-T AG
                                             CAMPUS... WILL BE IN KNOX
                                             COUNTY COURTS THIS WEEK.
                   :00 TAKE VO NATS ...         TWO ARE CHARGED AS
                                             ADULTS.
                                                18-YEAR-OLD CHRISTA PIKE
                                             OF DURHAM, NORTH CAROLINA
                                             AND 18-YEAR-OLD SHADOLLA
:05 CHANGE MUGS                              PETERSON OF CLEVELAND,
                                             TENNESSEE.
                                                THEY'LL BE IN COURT
                                             TUESDAY FOR AN ARRAINGMENT.
:10 CHANGE MUG AGAIN                            ALSO THIS WEEK,
                                             AUTHORITIES WILL ASK A JUDGE
                                             TO DECIDE IF 17-YEAR-OLD
                                             TADARYL SHIPP WILL BE TRIED
                                             AS AN ADULT.
:15 VICTIM                                      ALL THREE ARE CHARGED
                                             WITH THE FIRST DEGREE MURDER
:18                                          OF 19-YEAR-OLD COLLEEN
#U.T. CAMPUS\1                               SLEMMER.
                                                SLEMMER'S BODY WAS FOUND
                                             ON CAMPUS EARLY FRIDAY
                                             MORNING.
                                                OFFICERS SAY SHE WAS
                                             TORTURED AND BEATEN WITH A
                                             MEAT CLEAVER, A SMALL-BLADED
                                             INSTRUMENT OF SOME KIND AND
                                             A CHUNK OF ASPHALT.
                                                THE VICTIM AND SUSPECTS
                                             KNEW EACH OTHER -- ALL
                                             LIVING AT THE JOB CORPS
                                             CENTER ... AND OFFICERS
                                             BELIEVE THEY WERE INVOLVED
                                             IN SOME SORT OF LOVE
                                             TRIANGLE.
                                                       ###

000323

1:246/SLEMMER MURDER FOLO/  :45/01-16-95
TAPE: 245                                    (RUSS)
                                        THREE TEEN  CHARGED FOR
                    INSERT RUSS        THE MURDER OF A 19-YEAR-OLD
                                       WOMAN FOUND ON THE U-T AG
                                       CAMPUS... WILL BE IN KNOX
                                       COUNTY COURTS THIS WEEK.
                    :00 TAKE VO NATS ...    TWO ARE CHARGED AS
                                       ADULTS... 18-YEAR-OLD
                                       CHRISTA PIKE OF DURHAM,
                                       NORTH CAROLINA AND
:05 CHANGE MUGS                        18-YEAR-OLD SHADOLLA
                                       PETERSON OF CLEVELAND,
                                       TENNESSEE.
                                        THEY'LL BE IN COURT
                                       TUESDAY FOR AN ARRAIGNMENT.
:10 CHANGE MUG AGAIN                     ALSO THIS WEEK,
                                       AUTHORITIES WILL ASK A JUDGE
                                       TO DECIDE IF 17-YEAR-OLD
                                       TADARYL SHIPP WILL BE TRIED
                                       AS AN ADULT.
:15 VICTIM                              ALL THREE ARE CHARGED
                                       WITH THE FIRST DEGREE MURDER
                                       OF 19-YEAR-OLD COLLEEN
:18                                    SLEMMER.
#U.T. CAMPUS\1                           HER BODY WAS FOUND ON
                                       CAMPUS ON FRIDAY.
                                        OFFICERS SAY SHE WAS
                                       TORTURED AND BEATEN WITH A
                                       MEAT CLEAVER, A SMALL-BLADED
                                       INSTRUMENT OF SOME KIND AND
                                       A CHUNK OF ASPHALT.
                                        THE VICTIM AND SUSPECTS
                                       KNEW EACH OTHER.
                                        ALL LIVING AT THE JOB
                                       CORPS CENTER ... AND
                                       OFFICERS BELIEVE THEY WERE
                                       INVOLVED IN SOME SORT OF
                                       LOVE TRIANGLE.
                                            ###

000324

T:/SLEMMER KILLING FOLO/ :45/01-15-95
TAPE: 246                                    (RUSS)
                                                  THREE TEEN. CHARGED FOR
                        INSERT RUSS           THE BRUTAL BEATING DEATH OF
                                              A 19-YEAR-OLD WOMAN ... WILL
                                              ALL BE IN KNOX COUNTY COURTS
                                              THIS WEEK.
                        :00 TAKE VO NATS ...      TWO ARE BEING CHARGED AS
                                              ADULTS... 18-YEAR-OLD
                                              CHRISTA PIKE OF DURHAM NORTH
                                              CAROLINA AND 18-YEAR-OLD
:05 CHANGE MUGS                               SHADOLLA PETERSON OF
                                              CLEVELAND TENNESSEE...
                                              THEY'LL BE IN COURT TUESDAY
                                              FOR AN ARRAINGMENT...
:10 CHANGE MUG AGAIN                              ALSO THIS WEEK
                                              AUTHORITIES WILL ASK A JUDGE
                                              TO DECIDE IF 17-YEAR-OLD
                                              TADARYL SHIPP WILL BE TRIED
                                              AS AN ADULT...
:15 VICTIM                                        ALL THREE OF THEM ARE
                                              CHARGED WITH THE FIRST
:18                                           DEGREE MURDER OF
#U.T. CAMPUS\1                                19-YEAR-OLD COLLEEN SLEMMER
                                              ... HER BODY WAS FOUND
                                              BEHIND THE OLD STEAM PLANT
                                              ON U-T'S AG. CAMPUS FRIDAY.
                                                  OFFICERS SAY SHE WAS
                                              TORTURED AND BEATEN WITH A
                                              MEAT CLEAVER, A SMALL-BLADED
                                              INSTRUMENT OF SOME KIND AND
                                              A CHUNK OF ASPHALT.
                                                  THE VICTIM AND SUSPECTS
                                              KNEW EACH OTHER -- ALL
                                              LIVING AT THE JOB CORPS
                                              CENTER ... AND OFFICERS
                                              BELIEVE THEY WERE INVOLVED
                                              IN A LOVE TRIANGLE OF
                        WIPE TO NEXT VO ...    SORTS.
                                                          ###

000325

Tr/11P LEAD-MURDER ARRESTS/ 2:05/01-14-95
TAPE 1

CENTER BOARD

((RUSS))
GOOD MORNI  I'M RUSS NUNLEY AND THIS IS SIX EYEWITNESS NEWS.
A BREAK IN THE CASE, AFTER A BODY WAS FOUND BEATEN TO DEATH ON THE U-T AG. CAMPUS...
POLICE ARRESTING THREE TEENAGERS SATURDAY ... CHARGED WITH FIRST DEGREE MURDER IN THE DEATH OF A WOMAN FOUND BRUTALLY BEATEN FRIDAY.
CHARLEY BELCHER HAS OUR STORY.
--------------------------------

TAKE PKG:------
TRT 1:49
OUT: STD

AT :00
#U.T. AG CAMPUS\0
#Friday Morning

AT :
#CHIEF PHIL KEITH\0
#Knoxville Police Dept.

AT :          (NO STANDUP)
#CHARLEY BELCHER\21

((Charley Belcher))
Police say the woman who was beaten to death on the UT ag campus was not a UT student.
She was 19 year old Colleen A. Slemmer, from Orange Park, Florida.
Charged with her death are 18 year old Christa Pike from Durham, NC, 17 year old Tadaryl Shipp from Memphis, and 18 year old Shadolla Peterson from Cleveland Ohio.
Investigators say this was not a random crime, they all knew each other.

30:50
((Chief Phil Keith))
The motive of the crime appears to be a love triangle.

31:04
((Phil Keith))
It appears that both of the females involved had been involved with the 17 year old male.

29:28
((Phil Keith))
All three individuals involved in this gruesome murder are members of the
((Charley))
Keith says the teens were

center on 17th street.

Investigators believe they walked f  a the Jobcorps center to the secluded area behind the steam plant on the Ag campus, to smoke marijuana.

Once there, police say Pike, Shipp, and Peterson brutally attacked and tortured Slemmer.

30:09 ((Phil Keith))

The victim died as a result of massive trauma to the head, however before that occurred, she was repeatedly slashed from two weapons.

((Charley))

Keith says she was struck with a miniature meat cleaver which police have recovered...they think the second weapon was another small-bladed instrument.

So far, they haven't found that weapon.

Investigators say the attackers used a chunk of asphalt to beat the 19 year old.

Chief keith says his major crimes unit has been working on this case non-stop, and a major break came overnight when Detectives received some additional information.

Keith won't say what that information was, but he says it enabled them to move quickly, and arrest the two of the suspects overnight without incident.

The third accused murderer was picked up late this afternoon.

Charley Belcher, 6, Eyewitness News.

PKG OUT:------------   ----------------------------

((RUSS))

TIGHT RUSS    OFFICERS SAY THE VICTIM WAS TORTURED FOR QUITE A WHILE BEFORE HER DEATH ... K-P-D SAYS THEY'LL RELEASE MORE ON THE MOTIVES BEHIND THE CRIME SOON.

ALL OF THE SUSPECTS ARE CHARGED WITH FIRST DEGREE MURDER --- AND ALL ARE HELD IN THE KNOX COUNTY JAIL.

###

000327

T:/U.T. MURDER SOLVED/ 2:15/01-14-95
TAPE 1

CENTER BOARD

TAKE PKG:------
TRT:
OUT: STD

AT :00
#U.T. AG CAMPUS\0
#Friday Morning

AT :
#CHIEF PHIL KEITH\0
#Knoxville Police Dept.

AT :          (NO STANDUP)
#CHARLEY BELCHER\21

((RUSS))
    KNOXVILLE    LICE SAY
THEY'VE ALREADY SOLVED THE
SECOND MURDER OF THE
YEAR.....THREE PEOPLE ARE
BEHIND BARS...CHARGED WITH
MURDER.
    THANKS FOR JOINING US,
I'M RUSS NUNLEY.
    EARLY FRIDAY MORNING, U-T
WORKERS FOUND A DEAD WOMAN
ON A SERVICE ROAD BEHIND THE
OLD STEAM PLANT ON THE U-T
AG CAMPUS.
    POLICE SAY THE WOMAN WAS
SEVERELY BEATEN.
    NOW, INVESTIGATORS SAY
THEY'VE CRACKED THE CASE.
    CHARLEY BELCHER HAS OUR
STORY.
------------------------------

((Charley Belcher))
    Police say the woman who
was beaten to death on the
UT ag campus was not a UT
student.
    She was 19 year old
Colleen A. Slemmer, from
Orange Park, Florida.
    Charged with her death
are 19 year old Christa
Pike from Durham, NC, 17
year old Tadaryl Shipp from
Memphis, and 18 year old
Shadolla Peterson from
Cleveland Ohio.
    Investigators say this
was not a random crime, they
all knew each other.

30:50    ((Chief Phil Keith))
    The motive of the crime
appears to be a love
triangle.

31:04    ((Phil Keith))
    It appears that both of
the females involved had
been involved with the sa

((Phil Keith))
    All three individuals

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 18 of 145    PageID #: 351

murder are members of the
Jobcorps.
((Charley))
   Keith says the teens were
living at the JobCorps
center on 17th street.
   Investigators believe
they walked from the
Jobcorps center to the
secluded area behind the
steam plant on the Ag
carpus, to smoke marijuana.
   Once there, police say
Pike, Shipp, and Peterson
brutally attacked and
tortured Slemmer.
((Phil Keith))
   The victim died as a
result of massive trauma to
the head, however before
that occurred, she was
repeatedly slashed from two
weapons.
((Charley))
   Keith says she was struck
with a miniature meat
cleaver which police have
recovered...they think the
second weapon was another
small-bladed instrument.
   So far, they haven't
found that weapon.
   Investigators say the
attackers used a chunk of
asphalt to beat the 19 year
old.
   Chief Keith says his
major crimes unit has been
working on this case
non-stop, and a major break
came overnight when
Detectives received some
additional information.
   Keith won't say what
that information was, but
he says it enabled them to
move quickly, and arrest
the two of the suspects
overnight without incident.
   The third accused
murderer was picked up late
this afternoon.
, Charley Belcher, 6,
Eyewitness News.

PKG OUT:-------------

(( RUSS))
   ALL OF THOSE SUSPECTS
ARE BEING HELD IN THE KNOX
COUNTY JAIL.

30:09

000329

WEDDINGS-1
2891/02/6PWED/02-14-96

((LORI))
IT'S ST. VALENTINE'S DAY-A DAY MANY COUPLE'S CHOOSE TO MARRY OR START PLANNING A JUNE WEDDING.
((MIKE))
BUT THE BILLS FROM AN EXPENSIVE WEDDING ARE WHAT A NEW MARRIAGE DOESN'T NEED.
SIX ON YOUR SIDE REPORTER JEAN ZILIANI IS HERE TO TELL US HOW TO CONTROL THE COST AND AVOID GETTING RIPPED OFF.
((JEAN AD LIBS))
((JEAN))
THE AVERAGE WEDDING IN THE U.S. COSTS A LITTLE OVER 15-THOUSAND DOLLARS. BUT THERE ARE WAYS TO CUT THE COST OF YOUR WEDDING WITHOUT ROBBING IT OF ITS MAGICAL QUALITIES.
------------------------------

------take steve martin----
wedding coordinator, what's a wedding coordinator? a person who coordinates weddings. what's there to coordinate?
------take vo jean--------
in the movie father of the bride, steve martin hired an expensive wedding coordinator.
but did you know you can get a wedding consultant at no cost.
-----take sot pamela-------
it is free, anytime you go into any bridal store, they should be very willing and very, very helpful to the bride to make her feel more comfortable to help her plan her wedding.
--------take vo jean-------

WEDDINGS-I
2331/02/CFWED/02-14-96

they'll assist in
answering any questions you
have, and help keep costs
down.
-----take nats pamela-----
is there a certain
price point you'd like to
stay around?
--------take vo jean-------
when you start planning
the first rule is to plan
early usually at least six
months in advance, the
second...
-----take sot pamela------
if they haven't done
any pre-planning or they
don't have an idea to which
direction they want to go
in, we always recommend that
they sit down and decide on
a budget to see how much
money they want to spend.
----take vo jean----------
so set a limit and
stick to it.
-------take sot mary------
when you go out and
start checking prices on
things, you just get to the
point where you have to cut
back on certain areas and
decide what's most important
for you and your wedding.
-----take vo jean---------
for some brides, that
means the dress. but some
silk dresses made in the
u.s. like this one with
elaborate lace cost about
two thousand dollars. that's
why many brides turn to
consignment and outlet shops
where you save hundreds.
----take sot leslie--------
this dress was 760
dollars and it's on sale
for 375.
we have better prices
where they're able to buy
off the rack. if they do
not have time to order,
they can buy straight off
the rack here at 50-75
percent off.

 000331

WEDDINGS-T
2891/J2/6FWED/02-14-96

--------take vo jean--------
and once you get the
dress and the event is over
remember to preserve it
properly. first rule, view
it before it's officially
sealed and make sure you
have the right box.
------take sot tina-------
it has a large window
and you can view your dress
any time you want.

((JEAN))
SO NOW THAT YOU'VE GOT
THE DRESS, YOU NEED TO SET
THE DATE AND THE PLACE AND
PLAN THE RECEPTION.
TOMORROW, WE'LL TELL YOU
HOW EARLY DECISIONS WILL
MAKE ALL THE DIFFERENCE.
####

000332

 

## IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
## DIVISION III

STATE OF TENNESSEE

FILED
BY MARTHA PHILLIPS, CLERK

VS.                               MAR 1 5 1996   NO. 58183A

KNOX COUNTY CRIMINAL COURT
KNOXVILLE, TN

CHRISTA GAIL PIKE

### RESPONSE TO DEFENDANT'S REQUEST FOR NOTICE OF INTENTION TO OFFER EVIDENCE

Comes the State of Tennessee pursuant to Rule 12(d)(2) of the Rules of Criminal Procedure and gives notice of its intention to use evidence which the defendant may be entitled to discover under Rule 16, subject to any relevant limitations prescribed in Rule 16, which the State intends to use in its evidence in chief at trial and which may be the subject to a motion to suppress pursuant to Rule 12 (b)(3). In an abundance of caution the State has listed some items it does not believe are subject to inclusion as Rule 12 (d)(2) information. However, this is not to say that all physical evidence has been included in this list. Said evidence is listed below.

1. Defendants Confession
2. Defendants waiver of rights
3. Defendants personal history sheet
4. Crime Scene Photographs
5. Clothing of victim
6. Cloth found on victims neck
7. Post mortem photos of victim
8. Meat cleaver
9. Defendants necklace
10. Tadaryl Shipp's necklace
11. Post arrest photos of Defendants
12. Crime scene video with Defendant
13. Victims ID cards
14. Black gloves
15. Defendants clothing
16. Metal Statuette
17. Box Cutter
18. Defendants black coat
19. Victims Skull
20. Skull fragment
21. Signout sheet
22. Oral statements of Defendants given to KCSD officers Tarbell, Wolf, Bowman, Fisher and McCroskey
23. Oral statement to Marissa Boatright
24. Asphalt
25. Personal effects of Defendant seized from Job Corps consisting of numerous letters, papers, photographs, cards, jewelry and other effects all of which counsel for the Defendant has had access
26. Consent to search
27. Autopsy report
28. Report of Dr. Marks
29. TBI Serology report
30. Report of county medical examiner
31. TBI forensic chemistry report

 

32. TBI official DNA report.
33. Jail records re Defendant's theft arrest.
34. Identification cards of Defendants Pike and Shipp from Job Corps
35. Letters from Defendant Pike to Defendant Shipp taken from Defendant Shipp's effects at Job Corps Center
36. Consent to search for Defendant Shipp
37. Satanic Bible from Defendant Shipp's room

Respectfully submitted,

Randall E. Nichols
District Attorney General

by: _Jo Helm_
Assistant District Attorney General

## CERTIFICATE

I do hereby certify that I have sent a true and exact copy of this document to William C. Tallman, Attorney for the defendant this /5 day of Mar 1996

District Attorney General
Randall E. Nichols

by: _Jo Helm_
Assistant District Attorney General

COURT ADJOURNED UNTIL MONDAY, MARCH 18, 1996 AT 9:00 A.M.

(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 163, PAGE 332

MONDAY, MARCH 18, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

## IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
## DIVISION III

STATE OF TENNESSEE, ]
    Plaintiff, ]
        FILED ]
    BY MARTHA PHILLIPS CLERK ]
vs. ]    No.: 58183-A
    MAR 1 8 1996 ]
CHRISTA GAIL PIKE, ]
    KNOX COUNTY CRIMINAL COURT ]
    KNOXVILLE, TN ]
    Defendant. ]

DIVISION III

### MOTION TO ADJOURN COURT AT A REASONABLE HOUR

Comes the Defendant, Christa Gail Pike, by and through Counsel, who respectfully moves the Court to adjourn Court at a reasonable hour to allow Counsel an opportunity to prepare for the next day's court session and to get an adequate amount of rest in order to be able to afford the Defendant with the effective assistance of Counsel in this capital case.

This the __18th__ day of March, 1996.

CHRISTA GAIL PIKE

BY: _____
William C. Talman
Supreme Court BPR# 012262
Attorney for Defendant
P.O. Box 506
Knoxville, Tennessee 37901

Telephone: (423) 579-9060
Facsimile: (423) 573-2032

000335

## CERTIFICATE OF SERVICE

I, William C. Talman, Attorney for the Defendant, hereby certify that I have served a true and correct copy of the foregoing Motion, by personally delivering same, or by depositing same in the U.S. Mail, with sufficient postage to reach its destination, upon Hon. Randall Nichols, District Attorney General for Knox County, Tennessee, City-County Building, 400 Main Avenue, Knoxville, Tennessee 37902.

This the ___18th___ day of March, 1996.

_____
William C. Talman, Attorney


## IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE

### DIVISION III

STATE OF TENNESSEE

VS.

CHRISTA G. PIKE, ALIAS

No. 58183-A

FILED
BY MARTHA PHILLIPS, CLERK

MAR 1 8 1996

KNOX COUNTY CRIMINAL COURT
KNOXVILLE. TN

### ORDER

In this cause, it appearing that an additional witness has been found in behalf of the State of Tennessee by the name of:

Dan Crenshaw
Knoxville Police Department
Criminalistics
800 E. Church Avenue
Knoxville, TN  37915
(423)  521-1200

and that a motion has been made to place the name on the Indictment in the above-captioned case.

IT IS THEREFORE ORDERED that the above name of

Dan Crenshaw
Knoxville Police Department
Criminalistics
800 E. Church Avenue
Knoxville, TN  37915
(423)  521-1200

be placed upon the face of the Indictment in the above-captioned

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 26 of 145    PageID #: 359

323

case in the space provided for witnesses.

ENTER this the 18 day of March, 1996.

MARY BETH LEIBOWITZ
CRIMINAL COURT JUDGE, DIVISION III

APPROVED FOR ENTRY:

RANDALL E. NICHOLS
DISTRICT ATTORNEY GENERAL

BY: JO HELM
JO HELM
ASSISTANT DISTRICT ATTORNEY

CERTIFICATE

I hereby certify that I have hand delivered a true and exact copy of the captioned ORDER to Bill Talman, P.O. Box 506, Knoxville, TN 37901 and Julie Martin, 706 Walnut Street, Knoxville, TN 37902, attorneys for the defendant, this the 18 day of March, 1996.

JO HELM
ASSISTANT DISTRICT ATTORNEY

000336

324

 000337

# IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
## DIVISION III

STATE OF TENNESSEE,          ]
       Plaintiff,          ]
vs.          ]          No.:     58183-A
CHRISTA GAIL PIKE,          ]
       Defendant.          ]

FILED
BY MART?...
MAR 1 8 1996
K... COURT

DIVISION III

## SECOND ADDENDUM TO MOTION FOR CHANGE OF VENUE

Comes the Defendant, Christa Gail Pike, by and through Counsel, who respectfully supplements her motion for change of venue by adding the following:

Copies of articles which appeared in the *Knoxville News Sentinel*, which are self authenticated under Rule 902(6) of the Tennessee Rules of Evidence, and which pertain to pretrial publicity in this case or about this Defendant.

This the __18th__ day of March, 1996.

CHRISTA GAIL PIKE

BY: _____
William C. Talman
Supreme Court BPR# 012262
Attorney for Defendant
P.O. Box 506
Knoxville, Tennessee  37901

Telephone:  (423) 579-9060
Facsimile:  (423) 573-2032

## CERTIFICATE OF SERVICE

I, William C. Talman, Attorney for the Defendant, hereby certify that I have served a true and correct copy of the foregoing Motion, by personally delivering same, or by depositing same in the U.S. Mail, with sufficient postage to reach its destination, upon Hon. Randall Nichols, District Attorney General for Knox County, Tennessee, City-County Building, 400 Main Avenue, Knoxville, Tennessee  37902.

This the __18th__ day of March, 1996.

_____
William C. Talman, Attorney

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 28 of 145   PageID #: 361   325



# The Whittle book

Whittle biography
sells in Knoxville.

**BUSINESS, D1**

---

**Inside**

## WEATHER

Sun, then some after-noon clouds; cold. High 44.
Tonight: Becoming cloudy with a few showers. Low 35.

**DETAILS, B8**

Weatherline☎ **521-6300**
Time, temperature and forecast

## COMMENT

Yitzhak Rabin left a lasting imprint on efforts for peace in the troubled Middle East, **F1**

## INDEX

| | | | |
|---|---|---|---|
| A...tive | I-1 | Nation/World | A6 |
| ... | F6 | Obituaries | B2 |
| Business | D1 | People | A2 |
| East Tennessee | B1 | Real Estate | G1 |
| Editorials | F2 | Sam Venable | A2 |
| Fifty Plus | E12 | Sports | C1 |
| Living | E1 | Travel | E4 |
| Movies | Showtime | Want Ads | H1 |

The News-Sentinel is printed on recycled paper

7 49377 10035 6

---

The Taylors had this $1.5 million house under construction at 10824 Westland Drive at the time of his death.

J. Miles Cary/News-Sentinel staff

# School 'exit tests' under fire

## Value of $1.5 million program questioned

**By Jesse Fox Mayshark**
News-Sentinel staff writer

Tennessee's Department of Education will spend nearly $1.5 million this year on an "exit test" program that many educators call a waste of time and money.

"To be quite honest, in my opinion it's a fiasco," said Chuck White, a professional counselor at Morristown West High School and president of the Tennessee Counseling Association.

White and school counselors across the state are perplexed by a new requirement that all high school seniors take one of three tests: the ACT, SAT or Work Keys exam.

They complain that the mandate — expected to cost $88,466 in Knox County alone — will waste valuable class time, drive statewide college entrance test scores down and give one company a taxpayer-funded monopoly on Tennessee testing.

Defenders of the exit test requirement say it's the first step toward better preparing high school graduates for either college or the workplace. But even they acknowledge there have been problems, especially with the Work Keys vocational test.

"We did a very bad job of implementation, and I think there are a lot of ways we can be creative and improve the test," said Dave Goetz, executive

*Please see TEST, page A11*

# Job Corps, crimes link cited

**By Don Jacobs**
News-Sentinel staff writer

Prompted by a study that reveals the Knoxville Job Corps led to a nearly 400 percent increase in police calls, Knoxville Police Chief Phil Keith is calling for the federal government to reevaluate its policy of placing the work centers in metropolitan areas.

"I'm going to send copies to both senators and all nine congressmen, as well as the secretary of Housing and

> **❝ The impact was very significant, not only in crime, but in general disorder. ❞**
>
> **Police Chief Phil Keith**
> On the Job Corps center

Urban Development," Keith said.
"It would not surprise me to be cal-

led before a Senate committee to review the findings of this report."

The report was compiled by Knoxville Police Department after seven weeks of interviewing residents and business leaders in the Fort Sanders and Cumberland Avenue area, compiling crime statistics and interviewing officials with the Job Corps.

"As far as we know, no such other studies have been done in the nation,"

*Please see CORPS, page A4*

# High winds bring outages, flurries

High winds caused scattered power outages in the area Saturday, including about 2,500 customers in the Sequoyah Hills area who lost electrical service briefly.

A smaller number of customers there had no electricity for more than four hours.

The high winds were followed by plummeting temperatures and snow flurries.

Harold Henderson, operations supervisor for the Knoxville Utilities Board, said a large tree fell across one of the utility's three-phase lines near 1401 South-

gate Drive, causing a short circuit and locking out a circuit breaker at a KUB substation.

In addition to Sequoyah Hills, Henderson said high winds in Knoxville Saturday led to several smaller, brief power outages in other

neighborhoods, but service in those instances was restored almost immediately.

Sunny and cold weather is forecast for today, with highs in the 40s, but clouds are expected to move in tonight, followed by a chance of rain on Monday.

---



Headstone and diamonds... Whitehead and his wife, Sallie... demand in the Tiger Whitehead community...

*She would run away a mile to the hunter's face but to all mankind as she gave nurse to one fawn and two cubs. She is now resting from her labor...*

*EPITAPH FOR SALLIE GARLAND*

# Epitaphs tell of skilled hunter and compassion

**By Morgan Simmons**
News-Sentinel staff writer

ELIZABETHTON, Tenn. — There are no signs pointing to the Tiger Whitehead Cemetery, only landmarks at the foot of the mountain.

The trail begins at a moss-covered footbridge that crosses Tiger Creek. There's a hemlock grove on the other side, and, beyond that, the trail starts up the mountain.

The cemetery sits in a small clearing in the hardwood forest. There are 14 grave markers, some of them simple, unmarked rocks that look like shark's teeth sticking out of the ground.

Buried side by side are the headstones of James T. Whitehead and his wife, Sallie Garland.

Theirs are the oldest gravestones to have epitaphs. James T. Whitehead — everyone called him

*Please see TIGER, page A4*

000338

## wonder if :luding self

They were very protective of me. People said, 'Get your head up and go on with your life.'.... It's encouraging to know that people believe in the system."

Simpson didn't mention the hand-lettered sign declaring his neighborhood "Home of the Brentwood Butcher." He also ignored the fact that he's been thrown out of his country club, was dumped by his talent agent and rejected on national television by girlfriend Paula Barbieri, who said he wanted to pose with her in a picture and sell it for $100,000.

Simpson put his own spin on the public rejection by Barbieri.

"Paula needed to do what she needed to do. I'm totally behind her. Paula's a good woman and she's been through a lot. I'm 1,000 percent behind her," he said.

Of Simpson's professed admiration and understanding of Barbieri in the wake of their split, Loyola University law professor Laurie Levenson suggested that the man depicted as maintaining obsessive control of his ex-wife was trying to show how wrong that picture was. "He needs to show he's able to let go of women," Levenson said. "He's trying to say, 'I'm not the obsessed lover who can't let my woman go.' "

## Corps

### Continued from page A1

Keith said. "We had to start from scratch on the research and a format."

The Knoxville Job Corps ended its 15-year residency in the city on April 30 when it closed the doors at 621 Dale Street.

The 378 students enrolled at the center were assigned to other sites in the nation.

The closure came after a public outcry about the Jan. 13 ritual-like slaying of Job Corps student Colleen Slemmer, 19, allegedly at the hands of three other Job Corps students. Slemmer's stabbed, beaten and mutilated body was found on the University of Tennessee Agriculture Campus.

Job Corps centers nationwide are under the auspices of the U.S. Department of Labor. The program is designed to provide job skills to disadvantaged juveniles and young adults.

Crime statistics in the report confirm public perceptions that the Job Corps raised incidences of criminal behavior and that the crime rate decreased when the center moved.

From 1979 to 1988 the Job Corps center, with an enrollment of 500 students, was located at Knoxville College. The KPD report examined crime statistics for, at and around the college six

months before the center moved and six months after it relocated to Dale Avenue.

According to the report, crimes against persons declined 19.6 percent (from 184 to 148) after the center moved from Knoxville College. Crimes against property decreased 33.6 percent (from 110 to 73).

When crime statistics at the Job Corps' address of 901 College Street were analyzed, the percentages were even more striking.

Crimes against persons decreased 66 percent at the college when the center moved.

The overall crime rate at and around Knoxville College decreased by 24.4 percent when the Job Corps moved, according to the report.

The report notes that at the same time, enrollment at Knoxville College increased by 171 students after the Job Corps moved.

From 1989 to 1995, the Job Corps was on Dale Avenue, and the study applied the same six-month analysis to that location.

Again, the study shows crime clearly accompanied the center.

Crimes against persons at and around the Dale Avenue location declined by 22.8 percent six months after the center closed, the report states.

On Cumberland Avenue, which is eight blocks from the Job Corps location on Dale Avenue, crimes against persons decreased by 17.7 percent after the center closed. Crimes against

property dropped 15.3 percent while other offenses (intoxication, drugs, etc.) fell by 24.7 percent.

Police calls to the Dale Avenue location increased from being 17.1 percent of all calls in that enforcement zone in 1988 to generating 51.6 percent of all police calls in 1994 — an increase of 389.5 percent.

The study noted that from 1991 to 1995, 136 Job Corps students were arrested, an average of 2.7 arrests per month.

"The impact was very significant, not only in crime, but in general disorder," Keith said of the Job Corps center.

On several occasions Keith said he wrote letters to Job Corps managers outlining problems with its students and security measures.

"Nothing was done," he said. "I think the management was remiss in their responsibilities."

More than once officers armed with arrest warrants for Job Corps students were told by cen-

ter managers the student was not available, even when the suspects were on campus, Keith said.

"That to me is an irresponsible attitude," he said.

"Good corporate citizens don't hide people who have committed crimes against the community."

Interviews of 173 of the occupants of the 530 residences in the Fort Sanders area revealed 80 percent of them felt the Job Corps was either a negative influence or non-beneficial in the community.

Of 43 business representatives interviewed from the Cumberland Avenue and Fort Sanders area, 88.4 percent felt the Job Corps had a negative impact on or was of no benefit to the community.

The study also noted managers at East Towne Mall, where Job Corps students regularly went on group outings, complained of increased problems during the visits.



LIBERTY
FALLS
VILLAGE

Get a Different
Miniature
Each Week

ADD THE WILSON RANCH
HOUSE TO YOUR
COLLECTION NOV. 12-18
$5

Available now weekly through Dec. 24, each hand-cast and painted building is charmingly detailed and comes with a tale of America's growing years. Accessories are available. The Liberty Falls collection is a limited edition series and is not offered by phone or mail. Limited 4 per customer. Supplies are limited.

Not available at Eastgate, Bristol, Greeneville, Commons and Chesterfield Towne Center.

Proffitt's

Heights Middle School in Morristown, said his father always believed Sallie Garland's epitaph to be true, plain and simple.

"It actually took place," said Cates. "She actually nursed a fawn and two cubs.

"In dealing with my dad, and remembering conversations with relatives, there was never any question about that."

"When Uncle Tiger was old and on his dying bed," said Cates, "a bunch of his friends went over the mountain and brought back a bear cub someone kept as a pet. They wanted Tiger to make it 100 before he died.

"But Tiger refused. He had a good heart. You see, if he was out hunting and found a fawn or bear cub, he brought it back."

Sallie Garland lived to be 97 years old and had children of her own.

Cates said the supposition commonly held among family members is this: If Tiger brought in an orphaned animal while Sallie happened to be breast feeding a baby, she simply nurtured it by the simplest means.

Though most family members affirm the truthfulness of Sallie Garland's epitaph, there is one important exception: Rhoda Hyder, Paul Cate's sister.

At 88, Hyder is the oldest sur-

viving relative of Tiger Whitehead. She grew up in Tiger Valley, two miles from the cemetery. Her mother was a Whitehead and her grandfather was John W. Whitehead, one of the first Whiteheads to settle along Tiger Creek.

A retired school teacher with 24 great-grandchildren, Hyder lives two miles outside Elizabethton.

"I've heard about it all my life," said Hyder. "Some people think she breast fed those animals, but I doubt she did."

Hyder believes certain key words on Sallie Garland's epitaph leave room for interpretation. Specifically, she thinks "gave nurse to" is simply an antiquated way of saying "cared for," referring to the kind of around-the-clock care needed to bottle feed a fawn and two bear cubs.

"By my definition, she took care of those animals like a nurse would take care of a sick person," said Hyder.

"I grew up on a farm, and if something happened to the mother of a little lamb, my mother would bring that lamb into the house and fix it a bottle as it needed.

"I think Sallie Garland did the same thing."

Hyder grew up two miles from

the Tiger Whitehead Cemetery but didn't visit the graves until 40 years ago when she went with her sister Pearl.

"It was a good feeling to finally read what I'd been hearing about all my life," said Hyder.

"You know, there were people in my family who liked to leave the impression that she nursed from her breast, but I think it was out of merriment or to create some discussion.

"Back then, they wrote things on tombstones that were more than just names and dates."



SEE OUR SPECIAL
COLLECTION & RECEIVE
A GIFT WITH PURCHASE

OSCAR
DE LA RENTA
LINGERIE



St. Mary's Health System

presents...

at Hearty
Holidays!

to invite you to this two week series where we're bringing Eat

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 31 of 145   PageID #: 364

## Inside

### WEATHER

Today: Mostly sunny, breezy and cold. High 40.
Tonight: Clear and cold. Low 26.

**DETAILS, B8**

Weatherline®: **521-6300**
Time, temperature and forecast

### COMMENT

Has the Public Service Commission outlived its usefulness? See David Hunter's column, **A9**

### STOCKS

2,917 issues traded. Dow Jones average closes down 2.02. Details, **C3**

### INDEX

| | | | |
|---|---|---|---|
| Business | C1-6 | Obituaries | A7 |
| Comics | B6-7 | People | A2 |
| East Tennessee | A4 | Sam Venable | A2 |
| Editorials | A8 | Sports | D1-4 |
| Movies | B4 | Television | B5 |
| Nation/World | A6 | Want Ads | D5-10 |

The News-Sentinel is printed on recycled paper




7 49377 10030 1

ployer can be held liable for illegally firing an employee even if a lawful reason for dismissal is discovered later, a unanimous Supreme Court held Monday in a ruling involving a Tennessee woman.

The justices said that shielding employers entirely against decisions that spring from illegal discrimination would undermine the purpose of the job bias laws.

The ruling reinstates the Tennessee woman's lawsuit alleging that she was the victim of unlawful age discrimination when she was fired at age 62 by the Nashville Banner newspaper, her employer for 39 years.

The decision, however, is not limited to the Age Discrimination in Employment Act and is expected to apply to other job bias claims, including those based on race, sex and religion.

**RELATED STORIES, BACK PAGE** Justice Anthony Kennedy, writing for the court, said the age bias law, like other federal anti-bias statutes, allows compensation for employees who suffer discrimination in order to deter employers from discriminating in the workplace.

He concluded, "That does not mean, however, the employee's own misconduct is irrelevant to all the remedies otherwise available under the statute."

The court said employees who win job-bias lawsuits cannot win reinstatement in cases where their employer later found evidence of employee wrongdoing that would have been a firing offense.

"It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated.

**Please see FIRING, back page**

Center's facility apart from already existing cancer centers in Knoxville is that it would be the only NCI-designated institute locally and regionally, officials said.

There are 54 cancer centers with NCI status in the United States. The closest to Knoxville are at the University of Alabama in Birmingham, Duke University in North Carolina

standard treatment and ... ... ...  availability to the total population.

While UT Medical Center has conducted ongoing cancer research and provided treatment, "what we have not done is to try for ourselves to find the level we're looking at here and say we're going to try to reach that," said Dr. Charles W. Mercer, executive vice

grams for the new center, was asked by UT Medical Center to prepare a position paper on what he thought the hospital did well and where he thought there was room for improvement.

**Please see CANCER, page A3**

# Commission calls for Job Corps probe

## U.S. Labor team arriving today

**By David Keim**
News-Sentinel staff writer

Knox County commissioners took aim Monday at the Knoxville Job Corps, calling for scrutiny of how the program is managed, how it chooses students and whether it's located in the proper area of town.

"I can assure you we are in the process of looking into all of those things," U.S. Department of Labor Deputy Director Harold W. Gosdin II told commissioners.

He said the department is sending a team to town today to examine the Knoxville center on Dale Avenue, near Fort Sanders and the University of Tennessee.

He also said experts on the occult are teaching staffers how to recognize students involved in satanic activity.

"To this point, we've not identified any other students that may have been involved in any of those activities," Gosdin said.

Three Knoxville Job Corps students are charged in the torture and slaying of a 19-year-old classmate whose half-naked body was found Jan. 13 in a remote portion of the University of Tennessee Agricultural campus.

Authorities attribute the murder to a love triangle but said a satanic pentagram was carved in the victim's chest.

A piece of the victim's skull was taken. Satanists believe doing so traps the victim's soul in her body, authorities said.

"I think basically the concept of the Job Corps program — to provide job skills for disadvantaged youth — is a worthy mission," Commissioner Wanda Moody said as commissioners began questioning Gosdin.

"On the other hand, it's not a worthy mission to accept students in the program who are involved in a correctional facility or who should probably be there."

Commissioners unanimously supported a resolution that:
■ Requests a "full investigation" by the Department of Labor's regional and national offices into the center's management and

**Please see JOBS, page A3**

U.S. Department of Labor Deputy Director Harold W. Gosdin II, right, announces a team will be examining the Knoxville Job Corps center. At left is Gerald Oettle, director of the Knoxville center, and Charles W. Grundman of Career Systems Development Corp., which operates it.

Paul Efird/News-Sentinel

JAN 24, 1995

Case 1:19-cv-XXXX Document [ ] Filed [ ] Page # of [ ]

A workshop for commissioners, school board members and administrators is planned next month. The commission will vote on the two schools again by the end of February.

Superintendent Allen Morgan said school officials would try to provide any needed information but added, "When you start delaying one, it backs everything behind it up."

Other projects include inner-city and suburban schools in the five-year capital plan commissioners approved last February.

Commissioners were to consider approving a more than $5 million contract for renovation

into the 1998 year at best, Morgan said.

Commissioners are raising concerns because they've learned in recent months that initial schools in their five-year plan will cost far more than expected to improve.

They threatened last week to delay any funding until they get an explanation.

Outside Monday's meeting, Morgan said, "We're attempting to put everything in these projects to bring the facility up to teacher-pupil ratio standards, that will bring them up to (handicapped-accessibility) standards, that will put the kinds of technol-

unexpectedly expensive improvements required by the Americans with Disabilities Act, rising construction costs and estimates based on old figures.

County Executive Tommy Schumpert is preparing a revised capital plan, and commissioners want to know how overruns now will affect projects later on.

There's been open opposition to higher taxes, but Commissioner Pat Medley said, "Many, many people that I have spoken with are willing to increase their taxes in order for us to have quality schools ... despite the fact that I know many of us don't want to do that."

UT Medical Center is underwriting the startup cost of the new center and has to date invested some $250,000 to seek national-level advice, prepare studies, advertise for additional staff and renovate 10,000 square feet of existing space to house the center, targeted for completion within six months.

The new center has applied for a more than $500,000 three-year renewable grant, or $170,000 a year, to organize and structure itself.

Initially, the facility will seek recognition as an NCI-designated clinical center, focusing first on the "big fours of cancer — breast, lung, colo rectal and prostate," and expand later, Bell said.

"In addition to delivering clinical patient care — standard and new therapies — organizing into such a center would give us the opportunity to have an influence and impact on managed-care strategies and where they apply to cancer care," Bell said.

UT Medical Center's facility also plans to network on clinical research and development of technologies with other NCI-designated centers, Bell added.

"What that means is the new technologies will be available to patients in their own backyard," Bell said.

breaks for single custodial fathers is going to be tough on fathers who do care for their children.

Single heads of households, both male and female with incomes below $23,755 if they have one child, or $25,296 with two or more children, can qualify for the Earned Income Tax Credit. The credit can add up to as much as $2,528 for a parent with two or more children.

The Internal Revenue Service says fraudulent returns cost billions of dollars a year. So the agency plans to verify the status of single fathers before sending tax refund checks.

That means single fathers who really do have custody of their children will have to wait up to two months longer than the normal four to six weeks before getting a tax return.

"It's unfortunate, but when you're fishing for tuna, you catch other fish, too," said Dan Boone, an IRS information officer. "Returns that are accurate, complete and legitimate will get stopped. We hate that it happens, but there's no other way to do it."

John E. Cross, the single fa-

female parent," Cross said.

Because of the new policy, Cross must get letters from a doctor, a religious official and a day-care provider verifying that he cares for his sons full time.

The IRS used to send refunds to single fathers even if the claim was suspicious, Boone said. If subsequent checks showed the claim to be fraudulent, the agency tried to get the money back. But it usually wasn't successful.

Boone said the IRS this year will automatically withhold a certain percentage of tax returns from men claiming single head of household status.

Last year, 377,000 Tennessee filers claimed the tax credit. This year, more are expected to do so, since it has been extended to taxpayers with no children who earned less than $9,000. They can qualify for a credit of up to $306.

The IRS won't say just how many returns will be pulled for verification, or what raises a red flag to begin with. He warns the process will be time consuming.

"Once the screening starts, it can't be stopped."

# Jobs

Continued from page A1

operation.

Gosdin said a routine September review showed no problems, but Job Corps officials want to improve student control, discipline and standards of acceptable behavior.

■ Requests the state Department of Employment Security review the process used in selecting participants.

Gosdin said it's tough to get background checks in other states. Moody called that a "bureaucratic cop-out."

■ Requests local management to track Job Corps students after they leave the program.

In fiscal 1994, only 12 percent of Knoxville students found a job in their chosen field.

"If we're training these students, I think we need to know what's happening to them," Commissioner Mary Lou Horner said.

■ Requests the Department of Labor to determine whether the Job Corps should be moved, perhaps to a rural area.

Commissioner Mark Cawood proposed asking federal officials

to abolish the Job Corps nationwide.

"While this program was probably a noble program when it started, I feel ... the time has come and gone that it has served any usefulness in recent years," Cawood said.

Commissioner Rudy Dirl said he was "shocked" at Cawood's statement.

Dirl, who represents an inner-city district and worked for the Job Corps when it was located at Knoxville College, said former Job Corps students now lead productive lives.

"I'm kind of wondering where all you do-gooders were when this Job Corps center was right there on Knoxville College in the midst of a neighborhood that was 100 percent African-American," Dirl said.

He said violent crime at the center is one Job Corps member against another, not against the community at large.

Cawood lost his motion, 14-5.

A report on the Department of Labor team's findings will be available to commissioners by late next week.

# Bar sued

# Our Rates Are Better

*JAN 24, 1995*

Case 1:12-cv-00035-HSM-SKL Document 173 Filed 08/01/12 Page 33 of 145 PageID #: 366

# The Knoxville News-Sentinel

## SUNDAY

JANUARY 22, 1995

Final Edition

$1.75

## COLUMN ONE





# Seeds of knowledge

Noted English gardener Rosemary Verey is coming to town to benefit Ijams Nature Center.

**LIVING, E1**



# Offenses high at Knox Job Corps

## Assaults here are 3.5 times center average

**By Skip Lackey**
News-Sentinel staff writer

At least 15 assaults and five rapes involving students at the Knoxville Job Corps facility have been reported to authorities since April 2, 1994, according to records obtained from the Knoxville-Knox County E-911 Center.

There is no indication, however, as to how many of those incidents occurred on or off the Dale Avenue campus, where some 350 Job Corps students are enrolled.

The number of assaults is 3.5 times higher than the national average of assaults at Job Corps centers nationwide as reported to the U.S. Department of Labor from July 1993 to June 1994.

Moreover, Knoxville Job Corps officials last year seized at least five weapons at the Dale Avenue facility in a six-week period, including a sawed-off shotgun taken from a 17-year-old.

As Congress and local officials debate the future of the Job Corps, the Knoxville Police Department is reviewing all complaints that have involved or implicated Knoxville Job Corps students.

The effort follows the brutal murder eight days ago of a Job Corps student who was tortured and then bludgeoned to death, allegedly by three fellow students.

Knoxville Police Chief Phil Keith said he is preparing a report that will go the U.S. Department of Labor, where officials "can make the best decision" about the Knoxville center. The Labor Department oversees the Job Corps program, which costs $1.1 billion

*Please see CORPS, page A3*

The Job Corps enrolls about 60,000 economically disadvantaged young people a year between the ages of 16 and 24. Most are minorities. Average stay in the program is 7.5 months. Cost per student is about $22,000. Each receives a biweekly stipend of $80 per month. Those at residential dormitories get meals, medical care and counseling.

## Few graduates of program obtain jobs in their fields

**By Skip Lackey**
News-Sentinel staff writer

Only 12 percent of 670 students who graduated from the Knoxville Job Corps from July 1, 1993, to June 30, 1994, found jobs in the fields for which they were trained, according to a U.S. Department of Labor official.

Lori McConnell, Employment and Training Administration assistant in Washington, also said that of the 670 students, 457 or 69.6 percent, did find jobs of some kind after completing the program.

Officials at the Knoxville Job Corps Center contend their performance record is better than that, but they admit they do not

track students after they graduate from the center.

If the student finds a job, they're considered a success at a cost to taxpayers of more than $22,000 a year.

On average, a student stays in the Job Corps 7.5 months. Some stay two years.

Scott Davis, a Knox County commissioner, said last week that on Monday he will seek a resolution to ask the U.S. Department of Labor to either move or shut down the Knoxville Job Corps Center.

"I am not happy at all with how the facility is being managed and being operated," he said.

*Please see JOBS, page A3*

# Sundquist sworn in, vows unity

## THE JOB CORPS — A TROUBLED PROGRAM

# Chronology of crime

Here is a list of reported incidents involving the two Job Corps centers in East Tennessee, one in Knoxville and one near Bristol:

**March 3, 1991:** Anthony Henry Short, 19, a Knoxville Job Corps student, is charged with burglary after he and a 13-year-old boy are arrested in South Middle School after hours.

**May 6, 1991:** A 17-year-old Knoxville Job Corps coed tells authorities she was raped by a fellow student.

**Sept. 25, 1991:** NAACP complains to the U.S. Department of Labor about the Knoxville Job Corps Center, alleging racial discrimination, sexual harassment and other abuses suffered by staff. A federal investigation begins in June 1992 and ends February 1994. Federal officials conclude the allegations are unfounded.

**Oct. 5, 1991:** A Knoxville Job Corps coed allegedly sets a jogging suit on fire. Flames spread to the carpeting. About 150 people are evacuated from the building. Sharon Denise Key, of Birmingham, Ala., is charged with aggravated arson.

**Oct. 27, 1991:** Fire guts an apartment at the Knoxville Job Corps Center after a bed is deliberately set ablaze with matches. Estimated damage is $7,500. No one is arrested.

**April 11, 1992:** Daryll Shane Stanley, 21, a Job Corps student, is charged with raping a 17-year-old girl in a Knoxville Job Corps dormitory room.

**Oct. 4, 1992:** Kiesha Nicole Small, 18, of Memphis is charged with attempted murder. Armed with a box cutter, she allegedly attacks a female at the Knoxville Job Corps Center.

**Oct. 19, 1992:** About 20 to 30 students protest living conditions at the Knoxville Job Corps Center but retreat when administrators threaten disciplinary action.

**April 14, 1993:** Reggie Richardson is indicted by a Knox County grand jury on allegations that he raped a coed in march at the Knoxville Job Corps Center.

**Oct. 7, 1993:** Authorities charge two Knoxville Job Corps students with kidnapping and raping a University of Tennessee coed and beating her boyfriend at 3 a.m. on Sept. 22 as the couple sat in a parked car in the 1800 block of White Avenue.

Leonard Dewayne Brantley, 24, is charged with aggravated rape, aggravated kidnapping, aggravated assault and aggravated robbery. He is later sentenced to 25 years in prison.

Kenyatta Isom, 17, is charged with aggravated rape, aggravated kidnapping and aggravated robbery. Isom, now 18, is scheduled to appear for trial next month.

**May 2, 1994:** Harvey Moore, 17, in Knoxville four months after

# Corps

Continued from page A1

annually.

Said Keith: "We have to be careful in generalizing. It's a transient population group. They're hard to track."

Keith said University of Tennessee students, merchants on the Cumberand Avenue Strip and Fort Sanders residents have long perceived Knoxville Job Corps students as a source of local crime, particularly violent crime.

"I think what has evolved is that perception has become a reality. It's alarming," Keith said.

The Job Corps was born in 1964 when President Lyndon Johnson vowed an all-out war on poverty with his Great Society agenda. The Job Corps was intended to aid disadvantaged youths by providing them with education and job training.

The Labor Department describes the Job Corps as "a time-tested program touching the lives of 60,000 young people every year."

Boxer George Foreman is a strong Job Corps advocate. He claims the program saved him from a life of poverty and crime by giving him an education after first teaching him to read and write.

According to Job Corps officials in Washington, in the period from Nov. 1, 1992 to Oct. 31, 1994, 3,865 new students were enrolled in 111 Job Corps Centers in 44 states, the District of Columbia and Puerto Rico.

Three percent of those, or 115, had been convicted of criminal acts, including juvenile offenses. But Job Corps officials concede that not all students undergo a background check before they enter the program.

Lori McConnell, an Employment and Training Administration spokeswoman at the Labor Department, said a background investigation is done on applicants who say they have criminal or juvenile records.

Investigations also are done if a Job Corps recruiter suspects an applicant is lying, she said. Otherwise, there is no check.

Students with felony records are not admitted unless a psychologist reviews their file.

When asked how many Job Corps students have felony records, Richard Trigg, chief of Job Corps Program review in Washington, said, "I don't know."

Eight students were enrolled in the Knoxville Job Corps Center with prior convictions, including juvenile offenses.

A list of those convictions was not available from the Knoxville center or Job Corps officials in Washington.

> ## 66 We have to be careful in generalizing. It's a transient population group. They're hard to track. 99
>
> **Police Chief Phil Keith**

In addition to students who enter the Job Corps with criminal records, some commit criminal offenses while in the program.

According to data from Job Corps officials in Washington, from July 1, 1993 to June 30, 1994, at least 17 acts of "criminal or unacceptable behavior" occurred involving Knoxville Job Corps students. Of those, six incidents were on campus.

Some of those acts resulted in charges against six Knoxville Job Corps students, including one burglary, one auto theft, one DUI, one drug possession and two assaults.

According to McConnell, Job Corps centers nationwide can recruit from their immediate areas, from states within their regions or from across the country.

In most instances, students pick the facilities they want to attend depending on vocational interest and space availability.

At the Knoxville center, students can receive training in culinary arts, commercial painting, typing, data entry, computer skills, nursing assistance and home health care.

Of the 350 students enrolled in the Knoxville Job Corps program, some 300 live at the Dale Avenue facility. The remaining 50 are Knoxville or Knox County residents who live off campus.

According to Labor Department statistics, 40 percent of Job Corps students are 16 to 18 years old; 40 percent are female; 50 percent are black and 14 percent Hispanic; nearly 80 percent are high-school dropouts; and 77 percent have never held full-time jobs.

All are economically disadvantaged, and more than 40 percent read below the seventh-grade level.

Keith said centers that fail to hold students accountable for illegal acts put the community at risk, particularly when students roam the streets in violation of the city's midnight curfew.

Is the Knoxville Job Corps Center one of those institutions?

Said Keith: "As an institution, either by policy or practice, they are permissive in allowing juveniles to be out after the curfew."

Police say Colleen Slemmer, the murdered Knoxville Job Corps student, was slain after the midnight curfew.

ESTĒE LAUDER

Case 1:12-cv-00035-HSM-SKL Document 31-3 Filed 08/12/13 Page 1 of 1 PageID #: 360

17-year-old boy is pistol-whipped.

The next day, Yolanda Riley's boyfriend, Willie Hicks Jr., 24, surrenders in Mississippi. He is charged with two counts of first-degree murder and one count of aggravated assault.

Yolanda Riley had been a student at the center since September. Her sister and Hicks were there to try to talk her into returning home to Mississippi, authorities said.

**Jan. 4, 1995:** James Willie Murray, 19, a student at the Knoxville Job Corps Center, is charged with possession of marijuana and carrying a weapon to go armed after an incident in the Austin Homes development.

A background check reveals he is wanted by federal authorities in connection with a violent Chattanooga carjacking on April 28, 1994, where the victim was shot seven times.

Authorities said three juveniles also were involved in the attack.

**Jan. 14, 1995:** Three Knoxville Job Corps students are charged in the brutal slaying of a fellow coed. Authorities said Colleen A. Slemmer, 19, a Knoxville Job Corps student from Orange Park, Fla., was stabbed and tortured on the University of Tennessee campus during a crime of passion that turned satanic.

Authorities charge fellow students Christa Gail Pike, 18, of Durham, N.C., Shadolla Renee Peterson, 18, of Cleveland, Tenn., and Tadaryl Dewayne Shipp, 17, of Memphis with murder.

# Jobs

Continued from page A1

According to Job Corps statistics, of the 111 Job Corps centers nationwide, the Knoxville center ranks 56th in operational effectiveness.

Since 1986, Career Systems Development Corp. of Rochester, N.Y., has run the Knoxville center for the U.S. Department of Labor.

Joe Brown, deputy director of administration at the Knoxville center, said that from July 1 to Nov. 30 of last year, 41.2 percent of students who completed the program were placed in jobs for which they were trained.

Brown was surprised to hear of a Labor Department report which said that from July 1, 1989, to June 30, 1990, only 4 percent of students who completed the Knoxville program got jobs for which they were trained.

"I realize that statistics don't lie, but statisticians do," he said.

It appears that many statistics regarding the Knoxville Job Corps don't agree with those being cited in Washington.

In a press release last week, for example, U.S. Sen. Nancy Landon Kassebaum, R-Kans., said only 12 percent of Job Corps students nationwide find jobs for which they were trained.

"We also found that 50 percent of Job Corps students drop out of the program within the first six months," she said.

McConnell was astounded to hear that figure reported.

"I still can't figure out where they got that from," she said.

Job Corps statistics cite a "success rate" of 70 percent.

Mary Silva, deputy director of the Job Corps in Washington, said the Labor Department has embarked on a plan to track graduates over a four-year period. She said abolishing the Job Corps would be a step in the wrong direction.

"We absolutely must continue," Silva said, "to give these young people opportunities to change their lives and help them become full participating members of the society we want for all of us."

# Jacobs Creek Job Corps is far cry from Knoxville's

**By Leslie Lloyd**
Associated Press

BRISTOL, Tenn. — Vergil Hendrix was 17 years old when he dropped out of high school. He worked some. He also sold drugs but didn't get caught.

"My sister basically told me it was time for a change," said Hendrix, who is from Tallahassee, Fla.

Now, at the age of 24, Hendrix finds himself living in the Cherokee National Forest in the mountains of northeast Tennessee.

He's been here four months, has passed the high school equivalency exam and is studying cement masonry.

Hendrix lives and studies at Jacobs Creek Job Corps Center, one of 111 federal-funded centers nationwide and one of two such sites in Tennessee.

About 200 students and 66 employees are at Jacobs Creek, which occupies 130 acres of U.S. Forest Service property. It's idyllic, but tough.

"A lot of rules, but it's a good place," Hendrix said. "They shut these now, and they'll have to build more prisons."

Some critics of the $1.1 billion federal program believe the money would be better spent on prisons.

In November, the boyfriend of a Jacobs Creek student was charged with murdering the student and her sister when he went to visit the site. He wanted the student to return to her home in Mississippi.

Fred Rowe, director of Jacobs Creek, said the murders could have happened anywhere and that proper procedure for visitation was followed.

Sullivan County Sheriff Keith Carr said his department occasionally gets calls for runaways or fistfights at Jacobs Creek, but there have been no major problems.

"In this case, you have to give credit to the staff," he said.

Students rise at 6 a.m. and must be in bed by 11 p.m. Drugs and alcohol are forbidden.

## THE FIRST DUAL-ACTIC

### EYE CREM

The first thing you'll see is shadows and lines disa;
eyes. Puffiness easing, as botanicals calm irritation

Natural extracts and enzyme technology wor

Soon, you'll notice a visible improven

Resilience Eye Creme, .5 oz., 42.50; For Face an
Resilience Elastin Refir

Make an appointment at our Estee Lauder Ski
pampering and individual consultation with th
for your appointment. Tl

A (

When you purchase Resilience Eye Creme, you'll al
choice of either Resilience Elastin Refirming

WEST TOWN (693-4000)
& EAST TOWNE (523-4000):
SHOP MON-SAT 10-9, SUN 12:30-6
We accept Proffitt's Charge, Visa, Mastercard,
American Express & Discover. Use your Proffitt's
Charge in any of our 25 stores in 5 states.

333

THE JOB CORPS — A TR(

# Chronology of crime

Here is a list of reported incidents involving the two Job Corps centers in East Tennessee, one in Knoxville and one near Bristol:

**March 3, 1991:** Anthony Henry Short, 19, a Knoxville Job Corps student, is charged with burglary after he and a 13-year-old boy are arrested in South Middle School after hours.

**May 6, 1991:** A 17-year-old Knoxville Job Corps coed tells authorities she was raped by a fellow student.

**Sept. 25, 1991:** NAACP complains to the U.S. Department of Labor about the Knoxville Job Corps Center, alleging racial discrimination, sexual harassment and other abuses suffered by staff. A federal investigation begins in June 1992 and ends February 1994. Federal officials conclude the allegations are unfounded.

**Oct. 5, 1991:** A Knoxville Job Corps coed allegedly sets a jogging suit on fire. Flames spread to the carpeting. About 150 people are evacuated from the buildling. Sharon Denise Key, of Birmingham, Ala., is charged with aggravated arson.

**Oct. 27, 1991:** Fire guts an apartment at the Knoxville Job Corps Center after a bed is deliberately set ablaze with matches. Estimated damage is $7,500. No one is arrested.

**April 11, 1992:** Daryll Shane Stanley, 21, a Job Corps student, is charged with raping a 17-year-old girl in a Knoxville Job Corps dormitory room.

**Oct. 4, 1992:** Kiesha Nicole Small, 18, of Memphis is charged with attempted murder. Armed with a box cutter, she allegedly attacks a female at the Knoxville Job Corps Center.

**Oct. 19, 1992:** About 20 to 30 students protest living conditions at the Knoxville Job Corps Center but retreat when administrators threaten disciplinary action.

**April 14, 1993:** Reggie Richardson is indicted by a Knox County grand jury on allegations that he raped a coed in march at the Knoxville Job Corps Center.

**Oct. 7, 1993:** Authorities charge two Knoxville Job Corps students with kidnapping and raping a University of Tennessee coed and beating her boyfriend at 3 a.m. on Sept. 22 as the couple sat in a parked car in the 1800 block of White Avenue.

Leonard Dewayne Brantley, 24, is charged with aggravated rape, aggravated kidnapping, aggravated assault and aggravated robbery. He is later sentenced to 25 years in prison.

Kenyatta Isom, 17, is charged with aggravated rape, aggravated kidnapping and aggravated robbery. Isom, now 18, is scheduled to appear for trial next month.

**May 2, 1994:** Harvey Moore, 17, in Knoxville four months after he moved from Nashville under the Job Corps program, is held without bond for the murder of his girlfriend's 4-month-old daughter, Kadijah Marsha Hopewell, during an attack on the child in her mother's Austin Homes apartment April 28.

A preliminary autopsy reveals the girl died from violent shaking and had multiple bites and burns. Moore, now 18, called for an ambulance but told authorities the girl had fallen, police said.

**Nov. 13, 1994:** At the Jacobs Creek Job Corps Center near Bristol, Yolanda Riley, 18, a Job Corps student, and her sister, Jennifer Riley, 19, are shot to death by gunfire from a .380-caliber semi-automatic pistol as they stand in the office of the center. A 17-year-old boy is pistol-whipped.

The next day, Yolanda Riley's boyfriend, Willie Hicks Jr., 24, surrenders in Mississippi. He is charged with two counts of first-degree murder and one count of aggravated assault.

Yolanda Riley had been a student at the center since September. Her sister and Hicks were there to try to talk her into returning home to Mississippi, authorities said.

**Jan. 4, 1995:** James Willie Murray, 19, a student at the Knoxville Job Corps Center, is charged with possession of marijuana and carrying a weapon to go armed after an incident in the Austin Homes development.

A background check reveals he is wanted by federal authorities in connection with a violent Chattanooga carjacking on April 28, 1994, where the victim was shot seven times.

Authorities said three juveniles also were involved in the attack.

**Jan. 14, 1995:** Three Knoxville Job Corps students are charged in the brutal slaying of a fellow coed. Authorities said Colleen A. Slemmer, 19, a Knoxville Job Corps student from Orange Park, Fla., was stabbed and tortured on the University of Tennessee campus during a crime of passion that turned satanic.

Authorities charge fellow students Christa Gail Pike, 18, of Durham, N.C., Shadolla Renee Peterson, 18, of Cleveland, Tenn., and Tadaryl Dewayne Shipp, 17, of Memphis with murder.

# Corps

Continued from page A1

annually.

Said Keith: "We have to be careful in generalizing. It's a transient population group. They're hard to track."

Keith said University of Tennessee students, merchants on the Cumberand Avenue Strip and Fort Sanders residents have long perceived Knoxville Job Corps students as a source of local crime, particularly violent crime.

"I think what has evolved is that perception has become a reality. It's alarming," Keith said.

The Job Corps was born in 1964 when President Lyndon Johnson vowed an all-out war on poverty with his Great Society agenda. The Job Corps was intended to aid disadvantaged youths by providing them with education and job training.

The Labor Department describes the Job Corps as "a time-tested program touching the lives of 60,000 young people every year."

Boxer George Foreman is a strong Job Corps advocate. He claims the program saved him from a life of poverty and crime by giving him an education after first teaching him to read and write.

A
cials
from
3,865
in 11
state
and I
 T
had
acts,
But
that
back
enter
 L
ment
spok
parti
vesti
who
venil
 Ir
a Jol
appli
wise
 St
are
chol
 W
Corp
cord
Corp
ingto
 E
in th
with
juver
 A
not
cent
Wasl



RESIL

# Jobs

Continued from page A1

Corps don't agree with those being cited in Washington.

In a press release issued for example, U.S. Sen. Nancy

*Periodicals Room*

# The Knoxville News-Sentinel

## FRIDAY

JANUARY 20, 1995

First Edition

50 Cents

## COLUMN ONE



## 35 degrees of separation

What a difference a decade makes. The Thompson-Boling Arena sign Thursday hit 61 degrees. On Jan. 21, 1985, it was a record 24 below in Knoxville.

**SAM VENABLE, A2**

# Alleged killers held 'soul captive'

## Piece of skull tied to occult events at Job Corps

**By Don Jacobs**
News-Sentinel staff writer

A piece of the skull of a woman allegedly killed by three Knoxville Job Corps students who dabble in the occult was taken to trap the victim's soul in her body, police sources said.

"Satanists believe the body has to be whole for the soul to escape," said one source. "By keeping this, they had the soul captive."

In addition, police videotaped a re-enactment of the slaying by one of the suspects, Christa Gail Pike, 18, of Durham, N.C.

Pike is scheduled to appear today in Knox County General Sessions Court on a charge of first-degree murder. She has been held in jail since Saturday in lieu of $100,000 bond.

"She's a very sweet person,

### INSIDE

■ Job Corps officials vow to crack down on violence at training centers/A7

and we still can't believe she did this," said Pike's mother from her North Carolina home.

Pike and fellow Job Corps stu-

dents Shadolla Renee Peterson, 18, of Cleveland, Tenn., and Tadaryl Shipp, 17, of Memphis are accused of the brutal slaying of Colleen Slemmer, 19. The three were arrested Saturday.

Slemmer's body, nude from the waist up, was found about 8 a.m. Jan. 13 in a remote section of the University of Tennessee Agricultural campus. Her body was marked with cuts and slashes in-

flicted during a 30-minute attack that ended with chunks of asphalt smashed against her head.

During the attack, police said, Slemmer was held down while a pentagram inside a circle was carved into her chest. A circled pentagram, a five-pointed star, is associated with devil worship.

Despite the ritualistic over-

**Please see DEATH, page A7**

## Refurbished planetarium ready to go

## Bail for pedophile is denied in ruling

Case 1:12-cv-00035-HSM-SKL  Document 7-3  Filed 08/01/12  Page 37 of 145  PageID #: 370

# Death

Continued from page A1

tones involved in the slaying of Slemmer, who had been taking courses in computer programming at the Job Corps for three months, Knoxville Police Chief Phil Keith said the murder resulted from a love triangle. Keith said Slemmer and Pike were romantically involved with Shipp and Peterson was Shipp's friend.

The murder investigation has spawned a separate probe into suspected satanic activities at the Job Corps Center.

Keith on Thursday said a preliminary investigation has revealed eight to 12 students at the center "have some level of involvement" in the occult, including satanic symbols in their rooms.

Others involved in the probe estimate the number of people involved in the occult at the Job Corps is as high as 25 to 50.

Sources said the murder investigation yielded letters written with a "satanic alphabet," which enables those involved in the occult to write secret messages to one another.

"We suspect some blood may be missing from the murder because they use it to write with," one police source said.

Police don't know if there have been other slayings in the area associated with satanic worship.

"We didn't ask if there were any others because we didn't know how big it was at the time," a source said.

Job Corps officials have been aware of satanic groups among the 350 students at the center, the old Holiday Inn on Dale Avenue at 17th Street, sources said.

Knoxville Officer Terry Moyers, who teaches police classes about the occult, said he has heard of devil worship at the Job Corps and at UT.

Moyers explained there are three groups of witches involved with the occult.

The first are the Wiccans, or white witches, who believe in a god and goddess and worship nature. The second group is composed of usually older people who practice black magic to raise demons and cast spells to hurt others, but they don't break the law and they gather in the privacy of homes.

The third group is the nontraditional youth subculture; that's the type of worship allegedly seen at the Jobs Corps.

"This group is the most dangerous because they really believe they can cast spells to hurt people and raise demons and anything they do is all right as long as it's in the name of Satan," Moyers said.

They do not kill in order to gain power but try to draw out the energy force of their victims, which sometimes leads to death, he said.

"That's why satanic crime scenes are usually so bloody, to get the flow going of the energy force," Moyers said.

Satanists don't fear death because they believe their souls will simply become a tool for another practitioner of the occult, he said.

**Corieck suspect**

WE'VE JUST TAKEN INVENTORY SO COME IN AND TAKE ADVANTAGE OF THE SAVINGS!

Misses' • Petites'
Parisian Woman
Accessories
Intimate Apparel
Juniors • Women's shoes
Men's • Young Men's
Children's

Take
25% to
Already-reduced items • Selected regular-pr

merchandis
marked witl
red balloon

# Job Corps pledges crackdown

By Richard Powelson
News-Sentinel Washington bureau

WASHINGTON — Federal Job Corps officials promised Thursday to crack down on violence at the centers after two days of Washington hearings that exposed troubles in the system.

However, federal officials also testified that despite many reports of violence at Job Corps centers nationwide, including the murder of a Knoxville student on Jan. 13, their students have a much lower crime rate than the general population.

Job Corps officials promised to review the management at all 111 centers and close down the ones that cannot control the violence. They pledged to screen every applicant for drug use and reject those testing positive, and they said they would reject all 16-year-old and most 17-year-old applicants because they likely are too young to be committed to job training.

Assistant Secretary of Labor Doug Ross asked the Senate Labor Committee to give him until July 1 to improve management of the $1.1 billion annual program offering job training to disadvantaged, unskilled youths, most of whom are high-school dropouts.

Ross' comments followed urging by Sen. Nancy Kassebaum, R-Kan., the committee's chair, to have the centers adopt "strong discipline that provides the environment to turn lives around."

"What troubled me a great deal was ... the violence," Kassebaum told federal Job Corps officials. "The zero-tolerance (policy) is not working very well."

In the first part of oversight hearings Wednesday, Kassebaum noted the murder of student Colleen Slemmer and the charges against three other student at the Knoxville Job Corps Center, as well as numerous reports of assaults, rapes and intimidation at other centers.

In response, the Department of Labor on Thursday released statistics showing Job Corps students generally were involved in less crime than the general population.

"They are substantially safer in their centers than in their own neighborhoods," Ross said.

Regarding murders, Job Corps students in 1993 were involved in 27 deaths per 100,000 students, compared to the general population rate of 61 per 100,000, the Labor Department said.

For violent crimes in general, more than 7 percent of all teenagers report being victims, while only 1 percent of Job Corps students reported being crime victims in the year ending June 1994, the department said.

Sen. Edward Kennedy, D-Mass., while a strong supporter of the program, urged Ross to conduct "a tough review" of problems at the centers so they could be resolved as soon as possible.

# Bail

Continued from page A1

Littleton's release until Jarvis could hear an appeal by Folmar.

The case stems from Littleton's arrest last fall after a 2-year-long investigation by FBI Agent Jamie K. Sigler. She worked closely with the girls who received the letters and used caller ID to determine which pay phones were being used to make the obscene calls. Sigler later saw Littleton at a pay phone allegedly making one of the calls.

After being arrested, Littleton told agents he couldn't control his urges, and it was like a black wave came over him. He later told a psychiatrist that it was like turning into a werewolf.

Murrian initially ordered Littleton held without bond, ruling he had committed a "crime of violence" and no release conditions would reasonably ensure the community's safety.

But Murrian's decision changed after Dr. Richard Jackson, a Knoxville psychiatrist, testified last week that there was a reasonable degree of medical certainty that Littleton would not be a danger to the community if released.

Jackson said Littleton had more control of his actions then he indicated.

Federal prosecutors did not counter with an expert of their own, and Murrian ruled that Littleton should be released on bond under federal law.

Isaacs' told Jarvis he recognized the sensitive nature of this case, but he argued that under the law, Littleton should be released because the only testimony has been that he is not a danger. He said there are no allegations of violence or stalking in the case.

"This is a very unique case ... but under the law, this man should be released on bond," Isaacs said.

Folmar countered that Littleton's activities had escalated since 1992 from allegedly sending obscene pictures cut from magazines to sending pictures of his own body parts along with letters and phone calls to the victims.

Folmar questioned the adequacy of Jackson's 70- to 75-minute interview of Littleton and his review of the case record, particularly since Littleton said he can't control his urges.

"Your honor, basically what he (Jackson) is saying is he knows the defendant better than the defendant knows himself," Folmar argued. "I don't think it's required that he actually lay his hands on these girls to keep him in jail."

Jarvis agreed with Folmar.

After the hearing, Folmar said the decision was one of common sense taking precedence over "experts that come in here and issue these far-fetched opinions."

Isaacs' was disappointed but said he knew going in that it was a tough issue and he respected Jarvis' ruling.

"I think when you're faced with testimony involving black waves, werewolves and compulsions ... that's really a lot to overcome," he said.

# Death

Continued from page A1

tones involved in the slaying of Slemmer, who had been taking courses in computer programming at the Job Corps for three months, Knoxville Police Chief Phil Keith said the murder resulted from a love triangle. Keith said Slemmer and Pike were romantically involved with Shipp and Peterson was Shipp's friend.

WE'VE JUST TAKEN INVENTORY SO COME IN AND



## COLUMN ONE

# Tigers top Vols

UT falls short in bid for 3rd straight SEC win.

**SPORTS, C1**

000349

# Satanic links revealed in slaying

## Pentagram carved on victim's chest

**By Don Jacobs**
News-Sentinel staff writer

Three Job Corps students accused of killing a fellow student allegedly carved a pentagram on her chest while she was still alive and later took a piece of her skull, prompting an investigation of occult activity at the center.

"We know the three people we have (arrested) had some association with the occult, possibly as dabblers," Knoxville Police Chief Phil Keith said Wednesday. "We don't know the size of it, yet."

Police on Saturday charged two women and a 17-year-old male in the slaying of Colleen Slemmer, 19, whose body was repeatedly slashed with two cutting instruments. Slemmer's body was found about 8 a.m. Friday in a remote portion of the University of Tennessee Agricultural campus.

Keith said police have recovered a miniature meat cleaver and a box cutter that were used in the slaying.

In addition, police recovered a thumb-sized piece of skull that apparently was taken from Slemmer after her head was smashed with chunks of asphalt. An autopsy had revealed a piece of Slemmer's skull was missing, police said.

Keith declined to say where the piece of skull, which had been cleaned, was found.

Keith said he was unsure why the piece of skull was taken, but he stressed that Slemmer's slaying was not a ritualistic killing.

"There's no evidence to suggest it is a satanic killing," he said. "It appears to be a love triangle."

Police charged Tadaryl Shipp,

*Please see SLAYING, page A11*

### INSIDE

■ Chronic problems nationally place Job Corps' future in doubt/A11



Clay Owen/News-Sentinel staff

The Knoxville Job Corps building, 621 Dale Ave.

# Quake survivors encounter food and medical shortages

# Freeze on spending

Case 1:12-cv-00035-HSM-SKL  Document 7-3  Filed 08/01/12  Page 40 of 145  PageID #: 373

# Slaying

Continued from page A1

17, of Memphis; Christa Gail Pike, 18, of Durham, N.C.; and Shadolla Renee Peterson, 18, of Cleveland, Tenn., with first-degree murder. Pike and Peterson are being held in lieu of $100,000 bond each.

Shipp is being held in the Knox County Juvenile Detention Facility pending a hearing on the charge against him, said Larry Gibney, chief probation officer with the juvenile court.

John Gill, special counsel to the Knox County district attorney general, said his office "will be petitioning the juvenile court to have Shipp tried as an adult."

Keith described Shipp as someone "who showed absolutely no remorse whatsoever."

Shipp apparently was the love interest of Pike and Slemmer, while Peterson was a friend of Shipp's, police said.

Police said Pike, Shipp and Peterson lured Slemmer to UT with the promise of smoking drugs. Once in the secluded area, Slemmer's jacket, sweater and bra were removed and tossed into nearby trees.

"They did that to keep her from running away," Keith said.

Then the box cutter and miniature cleaver were used to repeatedly slash Slemmer. Numerous cuts on her hands and forearms show she tried to fend off her attackers.

While holding down Slemmer, her assailants gouged a pentagram symbol about three inches in diameter in her chest. Slemmer's head then was repeatedly

smashed with chunks of asphalt that litter the area, police said.

The blows to her head eventually killed Slemmer, police said, ending the 30-minute attack.

After the slaying, the trio, on foot, stopped at a service station to clean blood off themselves before returning to the Job Corps Center. Bloody clothing has been recovered by police.

The investigation into satanic worship is focused on students at the Knoxville Job Corps Center, 621 Dale Ave. The center is a federal job training site for disadvantaged people ages 16 to 24.

Joseph Brown, deputy director of administration for the center, said Wednesday he could not address the allegations of satanic worship among the 350 students.

"We have been asked by the police not to address anything about the case," Brown said.

Slemmer's mother, May Martinez, of Orange Park, Fla., said Wednesday the federal government "should kick every student out and close it down."

"I didn't want her to go to the Job Corps because I heard it wasn't very good for kids, and obviously I was right," she said.

Martinez said her daughter had dropped out of high school but later decided she wanted to learn computer programming. Slemmer came to the Knoxville center three months ago.

Martinez said she spoke with her daughter the night before the killing but that conversation didn't reveal anything ominous. But in earlier talks, Slemmer had expressed concerns about her relationships with other students, Martinez said.

"She mentioned she had had problems with

students and a couple girls wouldn't leave her alone," Martinez said. "I guess it was the ones who killed her."



SEARS INSTALLED ROOFING

25% OFF SELECTED SHINGLES
Selected styles.
When purchased installed.

NO MONEY DOWN AND NO PAYMENT UNTIL MAY 1995!



EXCLUSIVE FULL WARRANTY LABOR & MATERIAL

1 800 224-2241
exL 1001
Call for a Free In Home Estimate

Proudly Sold, Furnished and Installed by Diamond Exteriors Inc., a Sears Authorized Contractor.

*Ask Sales Representative for details. †No monthly payments until May 1995 on SEARS Deferred Credit Option. You must request this option. Finance charges accrue from the date of purchase. Ask Sales Representative for details. License No.s: AZ: 99845; CA: 673780; CT: 645802; FL: CCC 051571; CRC 008112; KS: Wichita. 951; MA: 115485; MD: MHIC45858; NY: H18C1780000; 21,439-H; 802975; WC-5462-H93; OR: 92838; RI: 11177; TN: H101514; VA: 2705-021271A; WA: DIAJMOEI077NS; WV: 008529

Ends Sunday

DON'T MISS THE BIG SHOW

STARRING THE SHOPSMITH MARK V
Come watch our factory experts put it through its paces!

EXPERIENCE IT
See why over 500,000 by love their Shopsmith MAR.


SHOPSMITH

Woodworkers Do-It-Yourselfers:
Save hundreds of $'s during our gigantic-
FACTORY-DIRECT DEMONSTRATION SALE!!

Just four days! THEN WE'RE GONE!

Thursday – Sunday
January 19 thru 22
FOOTHILLS MALL
Junction Of 321 & 129
Maryville
Demonstrations Every Hour on the Hour

Home
Address
City
State
Phone



embry's Ja

000350

LIBRARY COPY - RETURN TO DESK

# The Knoxville News-Sentinel

## SUNDAY

JANUARY 15, 1995

Final Edition

$1.75

## COLUMN ONE



## She's still flying high

Come June, Rogersville native Jo Humbert marks 50 years as a stewardess.

**LIVING, E1**

# 3 teens charged in slaying

## Job Corps romantic triangle cited in torture killing

**By Jamie Satterfield and Jesse Fox Mayshark**
News-Sentinel staff writers

A 19-year-old Job Corps woman whose battered body was found in a remote part of the University of Tennessee Agricultural campus was tortured for 30 minutes before her death in what authorities are calling a calculated crime of passion, police said Saturday.

Three teenagers face first-degree murder charges in the slaying of Colleen A. Slemmer of Orange Park, Fla.

Police Chief Phil Keith said Saturday afternoon that the trio brutalized Slemmer, including repeatedly stabbing her, before fatally bludgeoning her in the head with a piece of asphalt.

"It was an extensively brutal-type murder," Keith said. "There was almost a tendency of torture in the way they went about killing her."

Charged in the case were three other residents of the Knoxville Job Corps Center on Dale Avenue: Christa Gail Pike, 18, of Dur-

**Please see SLAYING, page A3**


Colleen Slemmer


Christa Pike


Shadolla Peterson


Tadaryl Shipp

# New river plan moves businesses



# 58% of city homicides committed with guns

# Homicide

Continued from page A1

are being reported, when and how often.

"We're looking to (create) a system, method, some type of process to see if we can curb (the rising number of shooting calls)," he said. "I'm not sure if we can."

Of the 24 homicides that occurred inside the city in 1994, 14 victims died from gunshot wounds. In those 14 cases, half are believed to have been drug-related slayings, investigators said.

"Drugs are still the number one problem, and then it has all these off-shoot problems...." Day said. "Your burglaries, your larcenies, your auto thefts, your homicides, your armed robberies. People rob to feed a habit. People steal to feed a habit. People in a drugged state will kill each other.

"Our society, unfortunately, is still very much accepting of drug use. A lot of times people will say, 'Well, I'm not hurting anybody but me.' It's ludicrous. There's always a victim there. When people get involved with substances to the point it takes over their mental faculties, a problem is going to occur, either with that person or with someone else."

The 1994 homicide tally is "somewhat midline" compared to prior years, Day said. But the unsolved rate for the year — about 42 percent — is the department's highest in nearly a decade, figures show.

Day contended the rate is

Feb. 9 at the East Side Deli and Market, where he was a clerk.

"We've got a suspect in that," Day said. "We're 99 percent sure. We just don't have enough evidence to take it to a grand jury."

■ The body of Richard Allen Sweat, 46 and homeless, was found under the Woodland Avenue viaduct Feb. 24. Sweat was beaten to death.

"We've got a suspect in that," Day said. "We've got a motive. It was domestic in nature."

■ Alberta Coker, 84, was brutally stabbed May 30 in the kitchen of her 2565 E. Fifth Ave. home.

"Oh lord, we're just up against the wall on that one," Day said. "There is someone out there who is privy to a piece of information that would crack that case, and they're not coming forward.

"Our investigators have beaten the bushes on that until it's almost flat. Her type of homicide really wears you out.... (She was) elderly for one, frail for another, brutally murdered in her home."

■ George Anthony Barrett, 32, was found dead July 11 inside his house at 2418 Western Ave. and was believed to have been beaten. Day said that case appears to be drug-related.

"We've got suspects in that one," he said.

■ The body of Jerry Lee Hutchings, 55, was found July 13 along a section of railroad tracks on Cline Street. He had been beaten.

"We're up against it on that one," Day said.

■ Bendal Lewis Gaines, 25, of

death Oct. 26 in his 3833 Ivy St. home.

"We're not even close," Day said. "We think that one was drug-related."

■ Carrie Elizabeth Romine, 30, of Bakersfield, Calif., was shot twice in the head. Her body was found in an alley Nov. 20 behind a Fifth Avenue auto parts store.

"Don't have a clue," Day said.

■ Clarence C. Carter, 2, of Holston Drive died Dec. 17 at East Tennessee Children's Hospital after suffering numerous injuries while in the care of his mother's boyfriend.

"We're getting ready to take it to the grand jury now," Day said.

■ Kojack M. Lewis, 19, a suspected gang member with a violent history, was shot outside his East Fifth Avenue house Dec. 29.

"That one, we're getting information on," Day said.

While Day said Knoxville's homicide rate is low — and the quality of life high — compared to other Tennessee cities, he added there often is little the department can do to prevent murders.

"Homicides, you can't stop them," he said. "I don't mean to make it sound dismal.... (In most cases) the victim and perpetrator know each other. Something happens between them to the point one will take the other one's life. Those are things you can't really stop."

# Slaying

Continued from page A1

ham, N.C., Shadolla Renee Peterson, 18, of Cleveland, Tenn., and Tadaryl Dewayne Shipp, 17, of Memphis.

A detention hearing for Shipp will be held Monday. Keith said authorities will ask a judge to allow Shipp to be tried as an adult.

According to Keith, Slemmer and Pike both were romantically involved with Shipp. Peterson was a friend of Pike's. All four knew each other, Keith said.

Pike, Peterson and Shipp lured Slemmer down 17th Street and then to a service road behind the old steam plant on the campus under the "ruse of smoking marijuana or some type of narcotic," Keith said.

At some point, the three suspects attacked Slemmer, repeatedly cutting her with a miniature meat cleaver and an unidentified short cutting utensil, he said. She also was repeatedly battered.

Keith said Slemmer died from blows to the head with the piece of asphalt, which was found at the scene.

Pike and Shipp were arrested shortly after 2 a.m. Saturday. Authorities charged Peterson Saturday afternoon as a result of information gleaned during suspect



J. Miles Cary/News-Sentinel

Police Chief Phil Keith announces Saturday the arrests of suspects in the slaying of a 19-year-old Jobs Corps member on the University of Tennessee Agricultural campus.

interviews, Keith said.

Although the victim's body was only partially clothed when it was discovered around 8 a.m. Friday by two UT employees, Keith said there was no apparent sexual molestation.

About 15 Knoxville police officers worked on the investigation, Keith said. Their break came when they received information around 2 a.m. Saturday that led

them to the suspects.

Keith said the arrests should quash speculation that the murder was the result of a kidnapping, involved a UT student or was related to the city's bike path, which runs near where the body was found.

To further allay fears, Keith said he would step up patrols on the bike path by assigning motorcycle and bicycle officers to it.

## ENDS MONDAY !



## Getting there

Continental Connection to start commuter air service between here and Greensboro, N.C., on March 1.

**BUSINESS, C6**

## Vols' hoop prospects

UT has eye on some top basketballers for spring signing period.

**SPORTS, C1**

## Inside

## WEATHER

Today: Breezy; periods of rain, some heavy. High 62.
Tonight: Cloudy with rain, heavy at times. Low 52.

DETAILS B10

University of Tennessee Police Chief Ed Yovella, left, and Phillip Scheurer, a UT vice chancellor, watch as Knoxville police investigate the slaying of a woman, whose body was found Friday on the Agricultural campus.

*Jack Kirkland/News-Sentinel staff*

# Woman 'severely beaten'; ID is sought

**By Don Jacobs**
News-Sentinel staff writer

The partially clad body of a slain young woman was found Friday in a remote portion of the University of Tennessee Agricultural campus, prompting officials to issue a "safety alert" to its 26,000 students.

Police said Friday night they have not identified the victim, whom they described as being "severely beaten." An autopsy was being performed Friday evening to determine the cause of death.

Investigators were scouring missing person reports. The victim had no form of identification on her.

The victim is described as being 18 to 22 years old, 5 feet 2 inches tall and weighing 110 pounds. The woman had pierced ears and a mole on the left side of her stomach. She had light brown hair. She was wearing a size eight pair of Nike Air white sneakers.

Her other clothing, which was not found on the body, was described as a size nine pair of blue jeans with knots at the bottom of the pants legs and a pink sweater with a blue design on the front. Details of where the clothing was found were not released.

The body was found about 8 a.m. by two employees of the UT physical plant. The body was found in bushes about 10 feet from a large puddle of blood on a paved road that runs behind the old steam plant. Police said the killer made no attempt to conceal the body, although dis-carded plastic and building materials litter the area.

Evidence at the scene has led investigators to conclude the woman was killed behind the old steam plant. She apparently was beaten sometime during the night.

"We have not found anything that could be the murder weapon," said Foster Arnett Jr., spokesman for Knoxville Police Department.

Although the area where the body was found is considered remote, there were no signs it is used as a lovers' lane.

"Most of our employees and our students avoid that area. There's just no reason to be down there," said Michael L.

*Please see SLAY, page A3*



A white woman was found brutally murdered next to the power plant on the UT Agricultural campus about 8 a.m. Friday.

University of Tennessee Agricultural campus

*R. Daniel Proctor/News-Sentinel staff*

# THEC taps Millsaps after political tiff

**By Tom Humphrey**
News-Sentinel Nashville bureau

NASHVILLE — Former Secretary of State Bryant Millsaps, who bolted Democratic ranks to back Republican Gov.-elect Don Sundquist who was actively backed by Sundquist, can deal effectively with the Democrat-dominated Legislature.

"We're about to hire somebody to lead higher education in this that recommended Millsaps, replied by citing Adams' selection as treasurer — a position decided by secret ballot in the Legislature's House-Senate Democratic Caucus. "That sure wasn't an Major University of Tennessee items on the list include $3 million for College of Law equipment, $13.7 million for the Institute of Agriculture Biotechnology Re-

# Citizens lose appeal; Oak Ridge wins

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 44 of 145   PageID #: 377

341

transfers between community colleges and public four-year colleges.

The flow of community college students transferring to the Uni-

# Slay

Continued from page A1

Keel, director of the Institute of Agriculture administration.

"We have seen some vagrants from Tyson Park in that area and with the bike trail, people can get in there easily."

The city's 7-mile bike trail, which runs from Neyland Drive through the Agricultural campus and Tyson Park, ends at the Married Students Apartments on Sutherland Avenue. The trail follows Third Creek.

"The bike trail is not lighted, so I would guess people use discretion and stay out of that area at night," Keel said.

The area where the body was found rises above the bike trail about 30 feet. Police said they have no way of knowing yet if the victim, who was wearing street clothes and apparently had a full-length wool coat, had been on the trail.

"The bike trail may have nothing to do with it," Arnett said. "We don't want people to be unnecessarily scared."

The body was not visible from the trail, police said.

"We're very startled," said Phillip Scheurer, vice chancellor for student affairs at UT. "It's an understatement to say we're concerned about it.

"The university is as safe as the city of Knoxville is, and generally that's pretty safe."

By Friday afternoon, Scheurer said, 2,000 fliers warning students of the slaying were being posted around campus and at the Married Students Apartments.

"We're putting them anywhere we can think of where the public will see them," he said.

The flier advises students to avoid walking alone at night, to not take shortcuts that might be unsafe, to report any suspicious people to police and to use the UT escort service. Anyone with information about the slaying is asked to contact the Knoxville Police Department or UT Police.

# Golf

Continued from page A1

opinion.

The attorney for the citizens, David Stuart of Clinton, said Friday he is recommending that the case be taken to the state Supreme Court.

"I don't think it has to be a partnership," said Stuart. "If the city is borrowing money and aiding a corporation, the (state) Constitution says they can't do it except by referendum."

Parcel A is off Edgemoor in southeast Oak Ridge and features views of the Great Smoky



# CIRCUIT CITY ®

## Where Service is State of the Art ®

25" Stereo

- Tri-lingual menus
- Channel labeling
- Audio/video inputs

$289.97

CCM2553S



## HOTPOINT

### 18 Cu. Ft. Refrigerator
- 2 full-width shelves
- Vegetable/fruit pan
- 2 door shelves

$379.97

CTX18LYXRWH



IBM
486SX2/50MHz

## APTIVA™ 330 Multimedia Computer
- 4MB RAM
- 363MB hard drive
- 3.5" floppy drive
- CD-ROM drive
- 1MB video RAM
- Mfr. 3-year warranty
- Mfr. toll-free help

## Bonus Features
- Send/receive fax/modem
- Rapid Resume®
- 16-bit sound card
- 4-watt stereo speakers

## Pre-Installed Software* $1200 Value!
- PFS:Works 2.5
- Quicken™ SE
- Compton's Encyclopedia: CD-ROM
- Reuters Money Network
- PLUS 18 MORE TITLES

from Mettetal's preliminary hearing.

Mettetal, 44, is charged with attempting to murder Dr. George Allen, a neurosurgeon at Vanderbilt University Medical Center. Mettetal was arrested Aug. 22 at the Vanderbilt hospital wearing a wig, fake beard, padded suit and shoes with lifts. He was taken into custody in a parking space formerly assigned to Allen. Police said they confiscated a large syringe from Mettetal.

Police have said Mettetal wanted revenge on Allen, who chaired the neurosurgery department at Vanderbilt during 1983-84, one of the years Mettetal was a neurology resident there.

Authorities contend Mettetal was angry at Allen for not giving him recommendations so he could continue pursuing a neurosurgery career there. Mettetal ended up becoming a licensed neurologist and eventually moved to Virginia, where he joined the practice of a neurosurgeon in Harrisonburg.

## Defense lawyer wants body parts banned from trial

**By Skip Lackey**
News-Sentinel staff writer

An attorney for a former Job Corps coed charged with the murder of a fellow student filed court documents Friday to prevent the skull and various body parts of the victim from being used in his client's trial.

Christa Gail Pike is charged with first-degree murder in the death of Colleen Slemmer, a Job Corps student from Orange Park, Fla., who was slain last year in a remote area of the University of Tennessee campus.

Two other former Job Corps students — Tadaryl D. Shipp and Shadolla Peterson — also are charged with first-degree murder for their alleged role in the slaying.

Prosecutors are seeking the death penalty for Pike, citing the viciousness of the attack, but are not seeking death for Shipp or Peterson.

In a motion filed in Knox County Criminal Court to suppress the skull, body parts and soft-tissue samples of the victim, Pike's attorney, William C. Talman, said the introduction of such evidence "would be extremely gruesome and inflammatory for the jury."

Authorities have said that after Slemmer was slashed and beaten, the trio carved a pentagram into her chest as she choked and pleaded for mercy.

Investigators said Slemmer died when the trio dropped a chunk of asphalt on her head and crushed her skull.

Authorities contend that after the murder, Pike returned to the former Job Corps Center on Dale Avenue and bragged to fellow students about the murder — with a piece of Slemmer's skull in hand.

Talman's motions follow a Criminal Court case in which Knox County Attorney General Randy Nichols introduced the skull of a woman who was bludgeoned to death by her estranged husband.

On Sept. 7, a jury found Thomas J. McKee guilty of first-degree murder for killing Marilyn McKee, 35, whose body was found alongside a remote North Knox County road.

## Rain-soaked protest of Watts Bar Nuclear Plant draws sparse crowd

**By Jerry Dean**
News-Sentinel staff writer

Antinuclear protesters told a sparse and soggy crowd at a Market Square rally Friday that TVA's plan to fuel and start Unit 1 its Watts Bar Nuclear Plant is unsafe and uneconomical.

The rally, planned by Friends of the Zapatistas, drew 50 protesters to what was largely a repeat of a July 26 rally at the same site.

As vendors sold bananas, onions and sweet potatoes under the shelter nearby, speakers stood before a large "Stop Watts Bar" banner to complain that the plant that has been under construction near Spring City for 23 years should not be fueled.

TVA has deferred Unit 2 at Watts Bar but intends to fuel Unit 1 by November and put it into operation in 1996.

Ruth Cohen, a member of Students Promoting Environmental Action at UT, said Watts Bar — begun before she was born — is "unsafe, uneconomical" and "unfair to its employees."

She said it is important not to let Watts Bar begin operating.

"We must send a clear message we want neither this nor any other nuclear plant," she said.

Mansour Guity, a former TVA nuclear safety investigator, said the $7.2 billion plant had been delayed by "unresolved safety problems."

Noting Friday's showers, Guity said TVA once called them "million-dollar rains" because hydropower, unlike nuclear power, brings "produced revenues at no further cost to them."

Guity said in the 1980s TVA coerced independent nuclear inspectors to approve plant components critical to shutting down the reactor in emergencies.

"Whether problems are old or new," Guity said, "if they're not resolved, they remain a concern."

Other speakers Friday were Steve Smith, executive director of the Tennessee Valley Energy Reform Coalition; Ann Harris, a former TVA employee who told of intimidation of TVA whistleblowers; Jeannine Honicker, an anti-nuclear activist arrested Aug. 30 while trying to speak to the TVA board about Watts Bar; Jack Kieffer of Appalachia—Science in the Public Interest; Beth Zilbert of Greenpeace; John Nolt, a UT philosophy professor; and John Johnson of Katuah Earth First.



J. Miles Cary/News-Sentinel staff

TVA Police Commander Dewane Broome turns away a group of anti-nuclear protestors who showed up in the lobby of TVA's West Tower Friday afternoon demanding to see TVA Chairman Craven Crowell.

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 46 of 145   PageID #: 379

# EAST TENNESSEE

# Body parts are evidence in Job Corps case

## Defense attorneys are objecting to introduction

By John North
News-Sentinel staff writer

murder victim's genitals and from her chest have been surgically removed from the body and are being held as evidence in the case against three Knoxville Job Corps students.

The skin from Colleen A. Slemmer, 19, contains what prosecutors say is a pentagram, a five-lined figure allegedly carved into the Florida girl's chest by her killers before her death early Jan. 13. Authorities also are keeping Slemmer's skull, from which one of the killers is alleged to have taken a piece.

The body parts, held by the Knox County medical examiner, are the target of objections from the lawyers of Christa Gail Pike, 19, one of Slemmer's alleged killers. Defense attorneys William C. Talman and William L. Brown argue the parts are so grotesque, they have no place in a trial against their client, whom the state would like to put to death.

Macabre as it is, the evidence signals the arrival of a potentially controversial approach to the collection of forensic evidence, which is supervised by new Knox County Medical Examiner Dr. Sandra Elkins.

Slemmer's family became upset when they learned they would have to bury the young woman without her head. At least four homicide victims have had their heads removed for evidence purposes.

District Attorney General Randy Nichols, however, thinks the new approach, while startling, is a positive step.

The more thorough the evidence collection, the better a case can be prosecuted, he said. Last month, Nichols surprised the legal community by successfully introducing a murder victim's skull in a trial.

Nichols credits Elkins, a respected scientist and forensic pathologist hired in May, with raising the standard of services.

Elkins said she could not comment about the Slemmer case. In general, she said she conducts autopsies with the goal of learning everything she can about a victim. Elkins said she also tries to anticipate the day when a case goes to trial.

"In the back of your mind you're always thinking, 'How can I best explain this to a jury so they'll understand how these injuries occurred?'" she said.

Pike, Shadolla R. Peterson and Tadaryl D. Shipp are charged in Criminal Court with the first-degree murder of Slemmer, a fellow Job Corps student. Prosecutors allege the trio lured Slemmer to a remote area of the University of Tennessee Agricultural campus, where she was knifed and hit her over the head with asphalt chunks until she died.

Pike and Shipp carved the pentagram in her chest, according to prior court testimony. Pike is alleged to have taken a piece of Slemmer's skull.

Pike, scheduled to stand trial in March, is the only defendant facing the death penalty.

Nichols said he thinks the skull and skin can be used to help illustrate the viciousness of the attack. He acknowledged, however, that prosecutors did not know Elkins had retained the private parts. Police investigators never have suggested Slemmer was sexually assaulted.

Talman and Brown argue the body parts will inflame the jury, and Slemmer's injuries would be better illustrated through diagrams or models.

Talman declined Friday to discuss the case "out of respect for the victim's family."

## Lanes of Interstate 75 closed for bridge work

Two lanes of Interstate 75, one in each direction between Callahan and Emory roads, have been closed for bridge maintenance work.

The southbound lane was closed at 6 p.m. Friday and is scheduled to remain closed until 6 a.m. Monday. The northbound lane was closed at 6 p.m. Friday and is scheduled to remain closed until 6 p.m. Tuesday.

The closures are for general maintenace work on the small bridges in that section of the roadway. Plans call for the work to be done on a weekend when there is no University of Tennessee home football game, so traffic disruption will be minimal, said Phillip M. Campbell, Region One Safety Coordinator for the State Department of Transportation.

The work will continue next weekend with the

# Charter panel to examine coalition benefits

By David Kelm
News-Sentinel staff writer

Michael Patrick/News-Sentinel staff

Knox County prosecutors Bill Crabtree, left, and Jo Helm, talk Thursday to attorneys William C. Talman and Julie Martin, foreground, about photographs from the Job Corps murder site.

# Defendant seeks change of venue in Job Corps trial

By John North
News-Sentinel staff writer

A lawyer for Job Corps murder defendant Christa Gail Pike wants to move her March 18 trial from Knox County.

Defense attorney William C. Talman contends so much publicity has been generated in the January 1995 killing of Collen A. Slemmer, 19, that his client cannot be assured of a fair trial here. Talman has suggested Knox County Criminal Court Judge Mary Beth Leibowitz move the trial to Shelby, Davidson or Hamilton counties.

Pike is the second defendant in the case to ask for a change of venue. Tadaryl D. Shipp also wants to move his first-degree murder trial.

Knox County prosecutors oppose the idea, arguing the court first should meet with prosective jurors to see if a panel of 12 can be seated.

On Thursday, Leibowitz set a Feb. 29 hearing date for Talman to present evidence on his request.

Pike, 19, Shipp, 18, and Shadolla R. Peterson, 19, are charged with bludgeoning and cutting Slemmer, 19. The defendants and the victim were students at the Knoxville Job Corps Center, which since has closed.

Slemmer's body was found Jan. 13, 1995, in a remote area of the University of Tennessee Agricultural campus.

Authorities allege Pike sought revenge against Slemmer because she wanted to have sex with Shipp, who was her boyfriend. In a murder with ritualistic overtones, the killers carved a five-pointed figure in Slemmer's chest while she was still alive.

The state is seeking to execute Pike. Trial dates have not been set for Shipp and Peterson.

Talman also has filed a motion to block the prosecution from introducing Slemmer's skull, her genitals and a section of skin showing the five-pointed figure from her chest in Pike's trial. Leibowitz said Thursday she will review the request when the lawyers are closer to trial.

Prosecutor Jo Helm said the state did not request the Knox County medical examiner's office to retain the genitals. As for the skin, Helm said "we think we can resolve that issue."

"There is no other reason but sensationalism to even preserve those things," Talman said.

# S. Knoxville man says bank robberies supported habit

By Randy Kenner
News-Sentinel staff writer

A Knoxville man who robbed three area banks last fall wrote that he did it to support a cocaine habit that had become outrageously expensive.

"Based on a drug dependency on cocaine that developed over the past three years, I have increased that dependency to what has been costing me $1,500 a day," Franklin Delano Hicks Jr. wrote in a statement he gave to FBI agents on Nov. 21. "In view of that dependency, in order to obtain money, I decided to rob banks."

Hicks, 38, pleaded guilty Wednesday in federal court to three counts of bank robbery. Each count carries a maximum sentence of up to 20 years in prison.

Hicks, a burly South Knoxville man, entered his guilty pleas in a quiet voice during a hearing before U.S. District Judge Leon Jordan.

... put the money on the counter, and I never spoke to her.

"I was scared, and after the robbery, I went home."

The note advised the teller, "You have 5 seconds to put all $100 on counter or I'll shoot you. Hurry."

The robbery netted $7,075.

A month later, on Nov. 15, he robbed the First Tennessee Bank branch on Alcoa Highway. Hicks said he was out riding with a friend and told him to pull into the bank because he had to cash a check.

"I entered the bank and again handed the teller a note, which I had carried three or four days, commanding her to give me money," Hicks wrote.

He left the bank with $2,480 dollars, according to court documents.

"Two days later on Friday, Nov. 17, 1995, I was again needing money for my drug habit," Hicks wrote.

That day he pulled his ...

# NRC... inst TVA for discrimination

By Jerry D...
News-Sentinel ...

...noting Harrison ...mployee, and ...utside work.

The fe... dllegedly oc... Regulatory C... rison raised, ...posed Thur... rs, his con... $80,000 civil p... to plant ... for discrimina... otection) re... against Doug... n, a Browns ... mer ironwo... oyee, filed a ... Browns Ferry ... 1993. ... plant near Ath... TVA responsi...

The NRC, ... ractions ... tion" sent to ... that Harrison, ... was based on ... ty concerns, ... Labor rulin... otected activi... Webster Engin... contractor, h... e violation at severity level 2 — its second most serious citation — because it entails discrimination by a contract manager whose position was substantially above that of a first-line supervisor.

Licensees, the NRC said, must maintain an environment in which licensee and contractor employees feel free to raise safety concerns with no fear of reprisal.

A TVA spokesman said the agency took "prompt actions" to respond to reprisal allegations. Those included having TVA's inspector general, George Prosser, investigate.

Allegations, TVA said, were not substantiated in reviews by TVA's inspector general, by the NRC Office of Investigations, the DOL Wage and Hour Division or an administrative law judge. But the secretary of labor overturned the administrative law judge's decision and found Stone & Webster had acted against Harrison for raising safety concerns.

The NRC said the contractor will appeal the labor secretary's decision. If the finding is reversed, the NRC would reconsider imposing its penalty.

TVA has 30 days from its receipt of the violation notice to pay the fine or protest its imposition.

# TVA ...e on future-marketplace plan

By Jerry De...
News-Sentinel ...

...c., for up to ... of galvanized ...les, used for TVA's board ...rojects. ... week whether ... Vision 2020, ... proval to Energ... ntegrated Re... power producer... mends conver... compete with ... ired Bellefonte 21st Century ... al or natural ... ketplace. ... search for sites

The board, ... rbines or other Feb. 21, meeti... h technologies sider a contra... energy storage; tween its Tra... nodification of Power Supply ... plants to add 100 megawatts power capacity.

Energy Vision 2020 also would let TVA immediately implement new power supply strategies, including buying power from power-marketing firms under purchase option agreements. Such purchases could avert the cost of building power plants.

TVA Chairman Craven Crowell said the IRP gives TVA the "flexibility to react to market conditions and remain competitive, while being at the forefront of utility industry technology."

Provisions of the IRP, two years in the making, were altered to add 750 megawatts of flexible demand-side management programs for a total of 2,200 megawatts, to urge wind power feasibility studies and to study biomass generation that would use wood wastes or crops.

The board, which meets at 10 a.m. in TVA's West Tower Plaza auditorium, also will consider proposed sale of easements on Chickamauga, Douglas, Tellico and Watts Bar lakes.

90 DA... EE WITH PROFFITT'S CHARGE CARD*

...GRESS

...ry home

99.9...

REVERE 1... BONUS

Reg. $140. Set in... red saucepans, 8-quart covered ... bowl set and 1-quart dou... aluminum-clad or copper bottom ...

BONUS: Receive cranberry ($15 value) with ... okware set.

25%-35% OFF

20-PIECE CASUAL DINNERWARE SETS

The more you buy, the more you save! Buy one 20-pc. set, save 25%. Buy two 20-pc. sets, save 30%. Buy three or more sets, save 35%. Choose from popular patterns by Sango, Signature, Studio Nova, Pfaltzgraff and more. Shown is "Hopscotch" by Pfaltzgraff. Reg. $115. • One set, 86.25 • Two sets, 80.50 ea. • Three or more sets, 74.75 ea. Coordinating accessories are also available at comparable savings.

Case 1:12-cv-00035-HSM-SKL Document 7-3 Filed 08/01/12 Page 48 of 145 PageID #: 381

000358

IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
DIVISION III

FILED
BY MARTHA PHILLIPS, SR.

MAR 1 8 1996

STATE OF TENNESSEE )
                   )
                   )
v.                 :    NOURT 58183A
                   )
                   :
CHRISTA GAIL PIKE  )

**DIVISION III**

### MEMORANDUM IN SUPPORT OF MOTION TO PRECLUDE REMOVING FOR CAUSE JURORS WHO ARE NOT "DEATH QUALIFIED" UNDER WITHERSPOON ON BEHALF OF CHRISTA GAIL PIKE

Christa Gail Pike, by and through counsel, has moved this Court for an Order disallowing the removal for cause of potential jurors who express scruples, religious or otherwise, against the imposition of the death penalty, or any other negative views on capital punishment. The present constitutional basis for excluding jurors due to their opposition to capital punishment stems from Witherspoon v. Illinois, 391 U.S. 510 (1968), as modified by Wainwright v. Witt, 469 U.S. 412 (1985). Witherspoon was divided into two issues. The first issue involved the following circumstance under which a juror may not be excluded for his/her views on capital punishment:

> [W]hen it swept from the jury all who expressed conscientious or religious scruples against capital punishment and all who crossed it in principle, the State crossed the line of neutrality.

Id., at 520. See also, Davis v. Georgia, 429 U.S. 127 (1976).

A jury from which persons opposed to capital punishment are excluded is biased in favor of a conviction. This was the second issue dealt with in Witherspoon. The Court addressed the issue but did not draw any conclusion because it found that "the data adduced by the petitioner . . . are too tentative and fragmentary." Id. at 517. The Court observed that the data was insufficient due to the attorney's failure to introduce such evidence at the time the motion was considered. Thus, the United States Supreme Court left open the question of whether a death-qualified jury is prosecution prone.

The courts of the United States recognize that death as punishment is unique and that the criminally accused must be safeguarded to assure every opportunity to assert his or her federally protected rights. <u>Furman v. Georgia</u>, 408 U.S. 238, 287 (1972).

This uniqueness mandates that where a defendant's life is at stake, the procedures employed in the imposition and affirmation of that sentence comport with the strictest requirements of due process.

> Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.

<u>Woodson v. North Carolina</u>, <u>supra</u>, at 305 (quoted in <u>Gardner v. Florida</u>, 430 U.S. 349 (1977) (White, J. concurring)).

In <u>Williams v. New York</u>, 337 U.S. 241, 247-248 (1949), Mr. Justice Black, speaking for that majority, recognized that the passage of time necessitates a re-examination of the sentencing procedures used in a capital case. This judicial duty is even more imperative since the Court has now upheld the constitutionality of capital punishment in proper circumstances; it is necessary that many procedures formerly unquestioned in ordinary criminal cases be re-evaluated.

The vital importance of this strict scrutiny of procedures employed in capital cases was most recently enunciated in <u>Gardner v. Florida</u>, 430 U.S. 349, 97 S. Ct. 1197, 51 L.Ed.2d 393 (1977), where the Supreme Court reversed a death sentence in which the judges' decision to impose the death penalty was based in part on a probation report which was kept secret from the defendant's counsel and which may have assisted the defense in the presentation of its case. In its argument the State had relied on <u>Williams v. New York</u>, <u>supra</u>, but Mr. Justice Stephens, in <u>Gardner</u>, <u>supra</u>, stated that:

> In 1949, when the <u>Williams</u> case was decided, no significant constitutional difference between the death penalty and lesser punishments for crime had been expressly recognized by this Court . . . death is a different kind of punishment than any other which may be imposed in this country . . . From the point of view of society, the action of the sovereign in taking the life of one of its citizens also differs dramatically from any other legitimate state

> action. It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion.

Gardner v. Florida, 430 U.S. at 357-358.

As the Court concluded, we have transcended Williams, supra, and the procedures employed in capital cases must comport with evolved standards of due process. As noted in Gardner, supra, the time necessary for a thorough examination of the evidence at the trial level "would surely be well spent if it makes the difference between life and death." Gardner, supra, at 360.

There can be no justification for the exclusion for cause of jurors unambiguously opposed to capital punishment and who would never impose a sentence of death from the guilt phase of the trial. There is no proof that a juror who is opposed to the death penalty cannot participate in the determination of guilt or innocence in an unbiased fashion.

Moreover, the law does not state that a jury must automatically impose the death penalty in any case of first-degree murder. The jury is only charged with returning a finding of death **if and only if** the State proves at least one aggravating circumstance beyond a reasonable doubt **and** such circumstance outweighs any mitigating circumstances beyond a reasonable doubt. Tenn. Code Ann. § 39-13-204(g). There is no proof that consideration of both of these elements cannot be made in an unbiased manner by a juror who does not believe in capital punishment.

The automatic exclusion of these jurors from the guilt phase violates the defendant's rights to an impartial, representative jury in the determination of guilt. It results in a jury that, according to the evidence, is unquestionably biased toward a verdict of guilty. The partiality of such a jury negates the presumption of innocence that is to be imputed to the defendant in any criminal case, but most particularly in a case where the defendant's very existence is at stake.

000361

The essential issue is the defendant's right to a jury that is representative of the community from which it is drawn, a jury that is a cross-section of the larger community:

> It is a part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community.

Smith v. Texas, 311 U.S. 128, 130 (1940); and see, Ballard v. United States, 329 U.S. 187, 191 (1946); and Glasser v. United States, 315 U.S. 60, 85-86 (1942).

In order for a jury to be representative, it must not automatically exclude a cognizable class in the community, and individuals opposed to capital punishment comprise an identifiable significant segment of American Society. Witherspoon, Id., at 519-520. While the Supreme Court has clearly upheld legislative power under the Constitution to enact capital punishment statutes, the selection of those individuals upon whom the sentences will be imposed must find its bias in the conscience of the community. The "voice of the community" discussed in Gregg, supra, can only be fairly and completely expressed through a jury that is open to participation by all cognizable segments of the community.

And in any community where an identifiable segment of the populace is firmly opposed to capital punishment, the total, automatic exclusion of venire members opposed to capital punishment denies the accused a representative jury guaranteed by the United States Constitution. Even though this class might not be in the majority of a particular community and might not support the legislative decision, their views may not be denied expression and representation in the criminal process and in the determination of criminal sanctions in the individual cases.

The vital role of the jury in the selection of criminal sanctions is central to this issue. Witherspoon, supra, at 520, n. 15.

Gregg, supra, noted that the jury "is a significant and reliable objective index of contemporary values because it is so directly involved." Id. at 181. This can only be true,

however, where the jury is a fair, balanced and complete representation of significant segments of the community.

The automatic exclusion for cause of potential jurors who are unambiguously opposed to capital punishment and who would, under no circumstances, impose a sentence of death violates due process in that it deprives the defendant of an impartial jury. The jury is intended to be an expression of the sense of the community as to the appropriate punishment for a particular crime; this function cannot be served by a jury that is partial from the beginning as to punishment by the excluding of a particular class of people on the basis of their views towards punishment. Witherspoon, supra, at 520-521. Such a system works a denial of due process on the defendant in a capital case.

The voir dire procedures addressed in this memorandum arbitrarily single out capital cases in which the State is permitted to exclude potential jurors on the basis of their views on punishment. In no other criminal case are jurors examined regarding whether their attitudes toward punishment or their ability to impose sanctions. In all such cases, it is assumed the juror will fulfill his or her legal duty as a juror.

The Constitution prohibits discrimination against classes of people similarly situated on the basis of their beliefs, as well as, their race, sex, or national origin, and serious constitutional issues are raised by the total exclusion of a class of people from participation in democratic and governmental processes because they hold a particular set of beliefs.

Tennessee law also requires that jurors may not be summarily challenged for cause due to their belief regarding the imposition of the death penalty. See, State v. Alley, 776 S.W.2d 506 (Tenn. 1989). In State v. Harrington, 627 S.W.2d 345 (Tenn. 1981), a juror stated on voir dire that she "did not believe in" the penalty of death by electrocution. The trial court dismissed her for cause. The Tennessee Supreme Court

reversed the conviction and remanded for a sentencing hearing holding:

> Witherspoon requires that no juror be excluded for cause from a capital case because of the juror's opposition to the death penalty unless the juror unambiguously admits that he would automatically vote against imposition of the death penalty, no matter what the circumstances of the case were. If even one venireman is excluded from the jury on grounds at variance with the Witherspoon standard, then a death sentence imposed by the jury cannot stand.

Id. at 350. (Citing Davis v. Georgia, 429 U.S. 122 (1976)).

Prior to the mandate of Harrington, supra, the Tennessee Court of Criminal Appeals, in a non-capital case, held that a juror could not be excused for cause because of disagreement with the law. As the Court stated, "[I]t should be determined that a juror cannot or will not follow the law . . . before he or she is disqualified." Brazelton v. State, 550 S.W.2d 7, 10 (Tenn. Crim. App. 1974). See also, State v. Alley, 776 S.W.2d 506 (Tenn. 1989)(Court expressed "grave concern" over excusing a juror for cause when a potential for rehabilitation as to his or her abilities to follow the law existed).

Defendant, therefore, respectfully requests that this Court preclude challenges for cause to jurors who express scruples or other negative views on capital punishment.

Respectfully submitted,

CHRISTA GAIL PIKE

BY: _____
JULIE A. MARTIN
Attorney for Defendant
P.O. Box 426
Knoxville, TN 37901
423-523-7733

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been forwarded to the office of the District Attorney General for Knox County, Tennessee, City/County Building, Suite 168, 400 Main Avenue, Knoxville, Tennessee, 37902.

This the 18th day of March, 1996.

_____

preclude.mem

000364

IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
DIVISION III

STATE OF TENNESSEE

v.                                    No. 58183A

CHRISTA GAIL PIKE

FILED
BY MARTHA PH~LIPS
MAR 1 8 1996
COURT
DIVISION III

MOTION TO CHALLENGE THE CONSTITUTIONALITY
OF EXCLUDING JURORS WHOSE VIEWS ON THE
DEATH PENALTY WOULD EXCLUDE THEM
PURSUANT TO WAINWRIGHT V. WITT

Comes Christa Gail Pike, by and through counsel, and respectfully moves this Honorable Court for an Order directing the State at voir dire to refrain from inquiring into whether the juror's views on capital punishment would "prevent or substantially impair" the performance of their duties as a juror.

The Tennessee Constitution guarantees:

That the right of trial by jury shall remain inviolate.

Article I, Section 6.

The right to trial by jury implies the right to a jury which is representative of the community as a whole. Under Witherspoon v. Illinois, 391 U.S. 510 (1968) and State v. Harrington, 627 S.W.2d 345, 350 (1981), juries could not be "organized to return a verdict of death".

Jurors opposing capital punishment could be challenged for cause if and only if they made unmistakably clear that either they would automatically vote against imposition of capital punishment or their attitude toward the death penalty would prevent them from making an impartial decision as to guilt. Witherspoon at 522, n.21.

Since Witherspoon, the United States Supreme Court has held that a juror may be excused for cause if his view on capital punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath." Wainwright v. Witt, 469 U.S. 412 (1985); Adams v. Texas, 448 U.S. 38, 50 (1980). While this may

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 55 of 145
PageID #: 388          352

be the appropriate federal standard, it is by no means clear that the Tennessee Supreme Court has embraced it as the proper standard under Article I, Section 6 of the Tennessee Constitution. The few cases on point fail to address the issue, deciding merely that the trial court's decision to excuse a particular juror was proper under the stricter standards set out in Witherspoon. See e.g., State v. Alley, 776 S.W.2d 507, 517-18 (Tenn. 1989)(affirming trial court's factual decision to exclude juror even though ignoring the potential for rehabilitation of that juror was of "grave concern" to the court). Until the Tennessee Supreme Court specifically embraces the standard set forth in Wainwright v. Witt as being applicable to Article I, Section 6 of the Tennessee Constitution, it would be reversible error to permit the State to voir dire and to excuse jurors pursuant to that standard.

Respectfully submitted,

CHRISTA GAIL PIKE

BY: _____

JULIE A. MARTIN
Attorney for Defendant
P.O. Box 426
Knoxville, TN 37901
423-523-7733

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been forwarded to the office of the District Attorney General for Knox County, Tennessee, City/County Building, Suite 168, 400 Main Avenue, Knoxville, Tennessee, 37902.

This the 18th day of March, 1996.

_____

challenge.mot

000366

IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
DIVISION III

STATE OF TENNESSEE          )
                            :
                            :
v.                          :          No. 58183A
                            :
CHRISTA GAIL PIKE           )

FILED
BY MARTHA P. . . .
MAR 1 8 1996
COURT

## MOTION TO PRECLUDE REMOVING FOR CAUSE JURORS WHO ARE NOT "DEATH QUALIFIED" UNDER WITHERSPOON ON BEHALF OF CHRISTA GAIL PIKE

Comes Christa Gail Pike, by and through counsel, and respectfully moves this Honorable Court for an Order disallowing the removal for cause of potential jurors who express scruples, religious or otherwise, against the imposition of the death penalty, or any other negative views on capital punishment and in support thereof would show:

(1)  The Defendant is charged with first degree murder, and the State has announced on the record its intention to seek the death penalty.

(2)  During voir dire, the District Attorney General, his staff, and/or this Court are expected to ask prospective jurors whether they are conscientiously opposed to the death penalty. Further, the District Attorney General is expected to challenge for cause any potential juror who responds in the affirmative. Jurors may not be excluded for cause because of the opposition to the death penalty. State v. Harrington, 627 S.W.2d 345 (Tenn. 1981).  Nor should such jurors be automatically excluded if there is potential for rehabilitation of those jurors. State v. Alley, 776 S.W.2d 506 (Tenn. 1989).

(3)  The exclusion of those jurors who are not "death qualified" under Witherspoon v. Illinois, 391 U.S. 510 (1968), violates the Defendant's right to an impartial jury drawn from a cross-section of the community.  This procedure excludes from the jury an identifiable segment of the community who are opposed to the death penalty.  This violates the Defendant's Sixth and Fourteenth Amendment rights to due process of law and a jury of his peers under the United States Constitution.  This

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 57 of 145    PageID #: 390

354

procedure also violates the same rights under the Tennessee Constitution.

(4) The use of a "death qualified" jury results in a jury which is biased in favor of the prosecution and therefore violates Defendant's rights to an impartial jury and to a fair trial under the Tennessee and United States Constitutions.

(5) Also, the use of a "death qualified" jury violates the Defendant's right to equal protection of the law, because it arbitrarily singles out capital cases and permits the State to exclude potential jurors because of their views on punishment. This violates the Defendant's rights under the Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Tennessee Constitution.

WHEREFORE, Miss Pike respectfully requests this Court preclude challenges for cause to jurors who express scruples or other negative views on capital punishment.

Respectfully submitted,

CHRISTA GAIL PIKE

BY: _____
JULIE A. MARTIN
Attorney for Defendant
P.O. Box 426
Knoxville, TN 37901
423-523-7733

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been forwarded to the office of the District Attorney General for Knox County, Tennessee, City/County Building, Suite 168, 400 Main Avenue, Knoxville, Tennessee, 37902.

This the 18th day of March, 1996.

_____

preclude.mot

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 58 of 145
PageID #: 391

000368

IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
DIVISION III

STATE OF TENNESSEE

FILED
BY MARTHA PHILLIPS CLERK

MAR 06 1996

v.                              :   No. 58183A
                            K   )   COURT
                                :
CHRISTA GAIL PIKE             )

**DIVISION III**

### MOTION CHALLENGING "DEATH QUALIFICATION" VOIR DIRE QUESTIONS AND PROPOUNDING ALTERNATIVE TO SAME

Comes Christa Gail Pike, by and through counsel, and challenges as unconstitutional any voir dire by the District Attorney General or the Court concerning prospective jurors' views on the issue of capital punishment. In support of her challenge, defendant states:

(1) She is charged with a capital offense and will be tried by a jury.

(2) In the course of voir dire, the District Attorney or the Court is expected to ask prospective jurors: "Are you conscientiously opposed to capital punishment?"

(3) The District Attorney or the Court is further expected to question and the challenge for cause any potential juror who responds in the affirmative to said question and, in addition, would not vote for death regardless of the evidence.

(4) The use of "death qualification" voir dire questions violates the defendant's right to an impartial jury drawn from a cross section of the community under the Sixth and Fourteenth Amendments to the United States Constitution and under the due process provisions of the Tennessee Constitution, and it excludes from the jury an identifiable segment of the community opposed to the death penalty.

(5) The use of "death qualification" voir dire questions results in a jury which is biased in favor of the prosecution and therefore violates defendant's right to an impartial trial under the Sixth and Fourteenth Amendments to the United States Constitution.

(6) Use of "death qualification" voir dire questions violates defendant's rights to equal protection under the law,

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 59 of 145
PageID #: 392

356

000369

since it arbitrarily singes out capital cases as cases in which the State is permitted to exclude potential jurors because of their views on punishment.

(7) If the Court restricts voir dire by the defense on the issues of punishment or questions of law but allows use by the State of "death qualification" voir dire, thereby affording the State an advantage in jury selection, defendant will be deprived of her right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitutions.

(8) Because a bifurcated trial is required in capital cases under Tenn. Code Ann. § 39-13-204, application of "death qualification" voir dire questions to potential jurors before the guilt or innocence phase of the trial allows a grave possibility of prejudice which cannot be justified by any State interest, and for which there is an easily accessible alternative.

Such an alternative would be the "don't ask; don't tell" procedure wherein after having been told the three options for punishment, the potential jurors are asked whether or not there is anything which would prevent or substantially impair their abilities to determine the facts, apply the law to the facts and follow the law without any specific reference to their abilities to impose the death penalty. It is logical to assume that any juror who is so strongly and diametrically opposed to the death penalty without regard to the facts of the case so as to be unable to impose a sentence of death would announce that particular belief if asked whether they could do their job as a juror. As this court is aware, people who hold an opinion on capital punishment, pro or con, are rarely silent on their views.

Such an approach finds support in Lockhart v. McCree, 476 U.S. 162 (1986) which dealt with jurors whose bias was so strong as to prevent or substantially impair their abilities to apply the law to the facts. In Lockart, the Court stated that

> "Prospective jurors come from many different backgrounds, and have many different attitudes and predispositions. The Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly

000370

carry out their sworn duty to apply the law to the facts of the particular case."

Lockhart v. McCree, 476 U.S. 162, 183-84 (1986). By focusing on the abilities of the potential jurors to follow the law and not necessarily what viewpoints such jurors hold, the Supreme Court has implied that it is not the viewpoint which is to be challenged, but rather the ability to follow the law in the face of a juror's particular views on capital punishment. Thus, an alternative method employing a "don't ask; don't tell" procedure is appropriate.

WHEREFORE, defendant prays that the use of "death qualification" voir dire be declared unconstitutional, and that it not be permitted in the course of this State's voir dire of potential jurors for her trial. In the alternative, defendant prays that the Court permit inquiry solely into the prospective jurors abilities to follow the law without specific reference to the death penalty as punishment (the "don't ask; don't tell" method).

<div style="margin-left:50%;">

Respectfully submitted,

CHRISTA GAIL PIKE

BY: _____
JULIE A. MARTIN
Attorney for Defendant
P.O. Box 426
Knoxville, TN 37901
423-523-7733

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been forwarded to the office of the District Attorney General for Knox County, Tennessee, City/County Building, Suite 168, 400 Main Avenue, Knoxville, Tennessee, 37902.

This the 18th day of March, 1996.

qualchal.mot

000371

IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
DIVISION III

STATE OF TENNESSEE )

FILED
BY MART_____
MAR 1 8 1996
COURT

v.                                :  No. 58183A
                                  )
                                  :
CHRISTA GAIL PIKE                 )        DIVISION III

### MOTION IN LIMINE TO PREVENT STATE FROM USING THEATRICS

Comes Christa Gail Pike, by and through counsel, and moves this Court for an Order admonishing the prosecutors in this case not to employ theatrics during the trial of this cause. Specifically, Defendant moves this Court to prevent the State's attorneys from announcing in open court, in front of the empaneled jury, that gory or gruesome evidence and/or testimony is about to be presented and that the family of the victim, or any other person, may desire to leave the courtroom at that time. Defendant would submit to this Court that such displays of concern and similar announcements would unfairly prejudice Defendant's case and would be offered for no other purpose than to inflame the jury against Defendant. Defendant would submit that the State's attorneys are in the best position to determine the order of their presentation of the State's evidence-in-chief, and they could thus privately tell the victim's family to exit the courtroom during a short break in the proceedings. Therefore, Defendant moves for an Order preventing such inflammatory and prejudicial behavior on the part of the State's attorneys and restricting such solicitous comments to those times when the jury is not present.

Respectfully submitted,

CHRISTA GAIL PIKE

BY: _____
JULIE A. MARTIN
Attorney for Defendant
P.O. Box 426
Knoxville, TN 37901
423-523-7733

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 62 of 145
PageID #: 395
359

000372

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been forwarded to the office of the District Attorney General for Knox County, Tennessee, City/County Building, Suite 168, 400 Main Avenue, Knoxville, Tennessee, 37902.

This the 18th day of March, 1996

solicitous.mil

# IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE DIVISION III

| | |
|---|---|
| STATE OF TENNESSEE, | ] |
| Plaintiff, | ] FILED<br>BY MART? ] |
| | ] |
| vs. | ] MAR 1 8 1996    No.: 58183-A |
| | ] |
| CHRISTA GAIL PIKE, | K. . . . . COURT ] |
| | ] **DIVISION III** |
| Defendant. | ] |

### MOTION IN LIMINE TO RESTRICT STATE'S COMMENTS TO JURY WHICH DEMEAN THE PUNISHMENT FOR LESSER INCLUDED OFFENSES

Comes the Defendant, Christa Gail Pike, by and through Counsel, who respectfully moves the Court for an Order prohibiting the State from arguing or commenting to the jury regarding the punishment for any lesser included offense which would tend to demean or criticize the punishment for any such lesser included offense. Furthermore, the Defendant would move the Court to prohibit the State from arguing or suggesting to the jury that any failure to convict the Defendant of the charged offense, i.e., first degree murder, in some way diminishes the crime or shows a lack of feeling or concern for the victim or her family. Specifically, the

000373

Defendant moves the Court to prohibit the State from making argument or comments to the jury such as "anything less than a conviction for first degree murder is a slap on the wrist or just lets the Defendant just go unpunished" and similar comments, especially during opening and closing argument.

This the ___18th___ day of March, 1996.

CHRISTA GAIL PIKE

BY: _____
William C. Talman
Supreme Court BPR# 012262
Attorney for Defendant
P.O. Box 506
Knoxville, Tennessee 37901

Telephone: (423) 579-9060
Facsimile: (423) 573-2032

## CERTIFICATE OF SERVICE

I, William C. Talman, Attorney for the Defendant, hereby certify that I have served a true and correct copy of the foregoing Motion, by personally delivering same, or by depositing same in the U.S. Mail, with sufficient postage to reach its destination, upon Hon. Randall Nichols, District Attorney General for Knox County, Tennessee, City-County Building, 400 Main Avenue, Knoxville, Tennessee 37902.

This the ___18th___ day of March, 1996.

_____
William C. Talman, Attorney

000374

# IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
## DIVISION III

STATE OF TENNESSEE,　　　　　　　　]
　　　　　　　　　　　　　　　　　　　　]
　　　Plaintiff,　　　　　　　　　　　　]
　　　　　　　　　　　　　　　　　　　　]
vs.　　　　　　　　　　　　　　　　　　]　　No.:　　58183-A
　　　　　　　　　　　　　　　　　　　　]
CHRISTA GAIL PIKE,　　　　　　　　　]
　　　　　　　　　　　　　　　　　　　　]
　　　Defendant.　　　　　　　　　　　]

FILED
BY MARTHA PHILLIPS, CLERK

MAR 1 8 1996

KNOX COUNTY CRIMINAL COURT
KNOXVILLE, TN

DIVISION III

### MOTION TO ALLOW JURY CONSULTANT TO SIT AT COUNSEL TABLE DURING VOIR DIRE OF JURY TO ASSIST COUNSEL

Comes the Defendant, Christa Gail Pike, by and through Counsel, who respectfully moves the Court for an Order allowing the Defendant's jury consultant to sit at Counsel table during voir dire to assist Counsel during the jury selection process.

This the __18th__ day of March, 1996.

CHRISTA GAIL PIKE

BY: _____
William C. Talman
Supreme Court BPR# 012262
Attorney for Defendant
P.O. Box 506
Knoxville, Tennessee　37901

Telephone:　(423) 579-9060
Facsimile:　(423) 573-2032

BY: _____
Julie A. Martin
Attorney for Defendant
P.O. Box 426
Knoxville, Tennessee　37901-0426

Telephone:　(423) 523-7733

000375

## CERTIFICATE OF SERVICE

I, William C. Talman, Attorney for the Defendant, hereby certify that I have served a true and correct copy of the foregoing Motion, by personally delivering same, or by depositing same in the U.S. Mail, with sufficient postage to reach its destination, upon Hon. Randall Nichols, District Attorney General for Knox County, Tennessee, City-County Building, 400 Main Avenue, Knoxville, Tennessee 37902.

This the ___18th___ day of March, 1996.

William C. Talman, Attorney

---

**IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE**
**DIVISION III**

STATE OF TENNESSEE

v.                                    No. 58183A

CHRISTA GAIL PIKE

FILED MAR 1 3 1996

### MOTION TO PRECLUDE THE EXCUSAL OF JURORS BY THE STATE OF TENNESSEE FOR CAUSE WHO CANNOT CONSIDER THE DEATH PENALTY BECAUSE THE FREE EXERCISE OF THEIR RELIGION PROHIBITS IT

Comes Christa Gail Pike, by and through counsel, to object to the excusal for cause any prospective jurors who cannot consider the death penalty by virtue of the free exercise of their religion. The defendant would submit that she is deprived of a fair cross section of her community by the excusal of said jurors who constitute definable segments of this community.

Such excusal of said jurors also deprives the jurors of their constitutional rights under the First Amendment to the United States Constitution and Article 1, Section 3 of the Tennessee Constitution. Said prospective jurors have an absolute right to the freedom of religion of their choice. The State cannot interfere with the free worship of their choice nor of

their right to sit on a jury by excusing jurors who cannot consider the death penalty because of their religious beliefs. Further, the defendant and the prospective juror are deprived of their rights under the First, Fifth, and Fourteenth Amendments to the United States Constitutions and to Article 1, Section 3, Section 4, Section 6, Section 8, Section 9 of the Tennessee Constitution. Such a religious and disqualification in capital cases violates Article 1, Section 4 of the Tennessee Constitution which states:

> That no political or religious test, other than an oath to support the Constitution of the United States and of this State, shall ever be required as a qualification to any office of public trust under this State.

Such a qualification also violates Article 1, Section 6 which states:

> That the right of trial by jury shall remain
>
> inviolative, and no religious or political test shall ever be required as a qualification for jurors.

Wherefore, the defendant requests that the State not be allowed to excuse jurors who cannot consider the death penalty due to their religious beliefs.

Respectfully submitted,

CHRISTA GAIL PIKE

BY: _____
JULIE A. MARTIN
Attorney for Defendant
P.O. Box 426
Knoxville, TN 37901
423-523-7733

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been forwarded to the office of the District Attorney General for Knox County, Tennessee, City/County Building, Suite 168, 400 Main Avenue, Knoxville, Tennessee, 37902.

This the 18th day of March, 1996

preclude.mo2

## IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
## DIVISION III

STATE OF TENNESSEE,          ]
                             ]
    Plaintiff,          ]  FILED
                             ]  BY MART... F ... ... ...
                             ]
vs.                          ]  MAR 1 8 1996          No.:   58183-A
                             ]
                             ]
CHRISTA GAIL PIKE,           ]  ... ... ... ...  ]COURT
                             ]       ... ...
                             ]
    Defendant.              ]

**DIVISION III**

## MOTION TO CONDUCT JURY OUT HEARING PRIOR TO STATE BEING ALLOWED TO INTRODUCE ANY STATEMENT PURPORTED TO HAVE BEEN MADE BY DEFENDANT OR ANY CO-DEFENDANT

Comes the Defendant, Christa Gail Pike, by and through Counsel, who respectfully moves the Court to conduct a jury out hearing prior to allowing the State to introduce any statement alleged to have been made or overheard by Defendant Pike or any Co-Defendant.

This the __18th__ day of March, 1996.

CHRISTA GAIL PIKE

BY: _____

William C. Talman
Supreme Court BPR# 012262
Attorney for Defendant
P.O. Box 506
Knoxville, Tennessee 37901

000378

Telephone: (423) 579-9060
Facsimile: (423) 573-2032

BY: _____
Julie A. Martin
Attorney for Defendant
P/O. Box 426
Knoxville, Tennessee 37901-0426

Telephone: (423) 523-7733

## CERTIFICATE OF SERVICE

I, William C. Talman, Attorney for the Defendant, hereby certify that I have served a true and correct copy of the foregoing Motion, by personally delivering same, or by depositing same in the U.S. Mail, with sufficient postage to reach its destination, upon Hon. Randall Nichols, District Attorney General for Knox County, Tennessee, City-County Building, 400 Main Avenue, Knoxville, Tennessee 37902.

This the ___18th___ day of March, 1996.

_____
William C. Talman, Attorney

THE STATE                           NO. 58183A

   VS

CHRISTA PIKE                        1ST DEGREE MURDER &
                                    CONSPIRACY TO COMMIT 1ST
                                    DEGREE MURDER

Defendant's Motion to Conduct Individual Voir Dire came on to be heard and said Motion is hereby GRANTED. Defendant's Motion in Limine to Prevent the State from Using Theatrics came on to be heard and said Motion is hereby GRANTED. Defendant's Motion to Preclude Removing for Cause Jurors who are not "Death Qualified" Under Witherspoon on Behalf of Christa Gail Pike came on to be heard and said Motion is hereby DENIED. Defendant's Motion to challenge the Constitutionality of Excluding Jurors Whose Views on the Death Penalty would Exclude them Pursuant to Wainwright v. Witt came on to be heard and said Motion is hereby DENIED. Defendant's Motion Challenging "Death Qualification" Voir Dire Questions and Propounding Alternative to Same came on to be heard and said Motion is hereby DENIED. Defedant's Motion to Preclude the Excusal of Jurors by the State of Tennessee for Cause Who Cannot Consider the Death Penalty Because the Free Exercise of Their Religion Prohibits It came on to be heard and said Motion is hereby DENIED. Motion to Conduct Jury Out Hearing Prior to the State Being Allowed to Introduce any Statement Purported to Have Been Made by Defendant or any Co-Defendant came on to be heard and said Motion is hereby DENIED. Defendant's Motion in Limine to Restrict State's Comments to Jury Which Demean the Punishment For Lesser Included Offenses came on to be heard and said Motion is hereby GRANTED. Defendant's Motion to Adjourn Court at a Reasonable Hour came on to be heard and said Motion is hereby GRANTED insofar as a reasonable hour being at the Judge's discretion. Defendant's Second Addendum to Motion for Change of Venue came on to be heard and said Motion is hereby DENIED at this time. Defednatn's Motion to Allow Jury Consultant

to Sit at Counsel Table During Voir Dire of Jury to Assist Counsel came on to be heard and said Motion is hereby DENIED, however, Dr. Charles Bebber, the jury consultant shall be allowed to sit behind the defense counsel.

Came the Attorney General for the State, also defendant in proper person, having counsel present and came on for jury selection in this cause. Having commenced voir dire of prospective jurors in this case and the hour for adjournment having arrived prior to the completion of jury selection, and there being eighteen prospective jurors in the jury box under consideration, to-wit: Thomas Davies, James H. Hammett, Yvonne R. Hanaway, Betty J. Nichols, Eva Rhodes, Joel Rutherford, Genevieve K. Cobble, Sammy G. Carpenter, Rebecca R. Cook, Ronald W. Long, Bennie George, Deborah Lloyd, Sharon D. Weaver, Dennis B. Bailey, Charles T. Dragg, Eugene Hubbard, Betty J. Hayner and Donna Plumlee, the said prospective members of the jury are respited to the meeting of the court Tuesday morning, March 19, 1996 at 9:00 A.M. in the charge of Betty Beiber, Matron and Lynn Beeler, Deputy Sheriff, who are sworn as the law directs.

COURT ADJOURNED UNTIL TUESDAY, MARCH 19, 1996 AT 9:00 A.M.

(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 163, PAGE 386

TUESDAY, MARCH 19, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

## IN THE CRIMINAL COURT FOR KNOX COUNTY, TENESSEE
## DIVISION III

STATE OF TENNESSEE

FILED
BY MARTHA PHILLIPS, CLERK

VS.

MAR 1 9 1996

NO. 58183A

KNOX COUNTY CRIMINAL COURT
KNOXVILLE, TN

CHRISTA GAIL PIKE

DIVISION III

### MOTION TO QUASH

Comes the State of Tennessee, and moves the Court to quash the supoenas issued by the defense in the abovestyled case and would show the Court has already ruled the testimony sought to be irrelevant.

Respectfully submitted, this /9 day of March, 1996.

by: _____
John H. Baker III
AssistantAttorney General

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 72 of 145
PageID #: 405

IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE

## DIVISION III

STATE OF TENNESSEE

VS.

CHRISTA GAIL PIKE, ALIAS

FILED
BY MARTHA PHILLIPS, CLERK

MAR 1 3 1996

KNOX COUNTY CRIMINAL COURT
KNOXVILLE, TN

NO. 58183-A

DIVISION III

### PETITION FOR ADVANCE TRAVEL EXPENSE

Comes the District Attorney General and shows the Court that the above-styled case is set for trial on March 18, 1996 and that Jeanette Marquez of Kinston, North Carolina is a vital and necessary witness for the State of Tennessee. That the said witness will make one trip, a distance of 892 miles and is, therefore entitled to the sum of $214.08 as travel. That the witness will be in attendance at court two days and is, therefore, entitled to per diem of $160.00. Total expenses will be $374.08. PREMISES CONSIDERED, PETITIONER PRAYS: That this Court issue an order authorizing an allowance for the above expenses as provided by law in such cases to be paid in advance by Knox County and reimbursed by the State of Tennessee.

_____
DISTRICT ATTORNEY GENERAL

### ORDER

Proper petition having been made by the District Attorney General and after due consideration, it is the Court's opinion that Jeanette Marquez is a necessary witness in the above-styled case; it is, therefore, the order of this Court that said witness expenses be allowed as provided by law and the rules of this Court. This 18th day of March, 1996.

_____
JUDGE

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 73 of 145   PageID #: 406

000383

IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE

DIVISION III

STATE OF TENNESSEE

FILED
BY MARTHA PHILLIPS, CLERK

MAR 1 9 1996

KNOX COUNTY CRIMINAL COURT
KNOXVILLE, TN

VS.                                                    NO.   58183-A

CHRISTA GAIL PIKE, ALIAS

**DIVISION III**

## PETITION FOR ADVANCE TRAVEL EXPENSE

Comes the District Attorney General and shows the Court that the above-styled case is set for trial on March 18, 1996 and that Brandy Leigh Rogers of Chattanooga, Tennessee is a vital and necessary witness for the State of Tennessee. That the witness will be in attendance at court two days and in a travel status two additional days and is, therefore, entitled to per diem of $160.00. Total expenses will be $160.00. PREMISES CONSIDERED, PETITIONER PRAYS: That this Court issue an order authorizing an allowance for the above expenses as provided by law in such cases to be paid in advance by Knox County and reimbursed by the State of Tennessee.

_____
DISTRICT ATTORNEY GENERAL

## ORDER

Proper petition having been made by the District Attorney General and after due consideration, it is the Court's opinion that Brandy Leigh Rogers is a necessary witness in the above-styled case; it is, therefore, the order of this Court that said witness expenses be allowed as provided by law and the rules of this Court. This 18th day of March, 1996.

_____
JUDGE

000384

## IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE

### DIVISION III

FILED
BY MARTHA P. PHILLIPS, CLERK

STATE OF TENNESSEE

MAR 1 9 1996

VS.                                    NO.   58183-A

KNOX CRIMINAL COURT
KNOXVILLE TN

CHRISTA GAIL PIKE, ALIAS

DIVISION III

### PETITION FOR ADVANCE TRAVEL EXPENSE

Comes the District Attorney General and shows the Court that the above-styled case is set for trial on March 18, 1996 and that Sharenda Channel Harris of Atlanta, Georgia is a vital and necessary witness for the State of Tennessee. That the said witness will make one trip, a distance of 428 miles and is, therefore entitled to the sum of $102.72 as travel. That the witness will be in attendance at court two days and in a travel status two additional days and is, therefore, entitled to per diem of $160.00. Total expenses will be $262.72. PREMISES CONSIDERED, PETITIONER PRAYS: That this Court issue an order authorizing an allowance for the above expenses as provided by law in such cases to be paid in advance by Knox County and reimbursed by the State of Tennessee.

_____
DISTRICT ATTORNEY GENERAL


### ORDER


Proper petition having been made by the District Attorney General and after due consideration, it is the Court's opinion that Sharenda Channel Harris is a necessary witness in the above-styled case; it is, therefore, the order of this Court that said witness expenses be allowed as provided by law and the rules of this Court. This 18th day of March, 1996.

_____
JUDGE

000385

IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE

DIVISION III

STATE OF TENNESSEE

VS.                                                      NO.  58183-A

CHRISTA GAIL PIKE, ALIAS

FILED
BY MARTHA PHILLIPS CLERK

MAR 1 8 1996

KNOX CRIMINAL COURT

PETITION FOR ADVANCE TRAVEL EXPENSE

Comes the District Attorney General and shows the Court that the above-styled case is set for trial on March 18, 1996 and that Jennifer Louise McCrary of Hendersonville, North Carolina is a vital and necessary witness for the State of Tennessee. That the said witness will make one, a distance of 288 miles miles and is, therefore entitled to the sum of $69.12 as travel. That the witness will be in attendance at court two days and in a travel status two additional days and is, therefore, entitled to per diem of $160.00. Total expenses will be $229.12. PREMISES CONSIDERED, PETITIONER PRAYS: That this Court issue an order authorizing an allowance for the above expenses as provided by law in such cases to be paid in advance by Knox County and reimbursed by the State of Tennessee.

_____
DISTRICT ATTORNEY GENERAL

ORDER

Proper petition having been made by the District Attorney General and after due consideration, it is the Court's opinion that Jennifer Louise McCrary is a necessary witness in the above-styled case; it is, therefore, the order of this Court that said witness expenses be allowed as provided by law and the rules of this Court. This 18th day of March, 1996.

_____
JUDGE

00386

IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE

DIVISION III

FILED
BY MARTHA PHILLIPS CLERK

MAR 1 2 1996

CRIMINAL COURT

DIVISION III

STATE OF TENNESSEE

VS.                                          NO.   58183-A

CHRISTA GAIL PIKE, ALIAS

### PETITION FOR ADVANCE TRAVEL EXPENSE

Comes the District Attorney General and shows the Court that the above-styled case is set for trial on March 18, 1996 and that Teresa Williams of Wilson, North Carolina is a vital and necessary witness for the State of Tennessee. That the said witness will make one trip, a distance of 414 miles and is, therefore entitled to the sum of $99.36 as travel. That the witness will be in attendance at court two days and in a travel status two additional days and is, therefore, entitled to per diem of $160.00. Total expenses will be $259.36. PREMISES CONSIDERED, PETITIONER PRAYS: That this Court issue an order authorizing an allowance for the above expenses as provided by law in such cases to be paid in advance by Knox County and reimbursed by the State of Tennessee.

_____
DISTRICT ATTORNEY GENERAL

### ORDER

Proper petition having been made by the District Attorney General and after due consideration, it is the Court's opinion that Teresa Williams is a necessary witness in the above-styled case; it is, therefore, the order of this Court that said witness expenses be allowed as provided by law and the rules of this Court. This 18th day of March, 1996.

_____
JUDGE

000387

IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE

DIVISION III

STATE OF TENNESSEE

VS.                                    MAR 1 1996        NO. 58183-A

CHRISTA GAIL PIKE, ALIAS        COURT    DIVISION III

### PETITION FOR ADVANCE TRAVEL EXPENSE

Comes the District Attorney General and shows the Court that the above-styled case is set for trial on March 18, 1996 and that Stephanie Leigh Wilson of Gastonia, North Carolina is a vital and necessary witness for the State of Tennessee. That the said witness will make one trip, a distance of 420 miles and is, therefore entitled to the sum of $100.80 as travel. That the witness will be in attendance at court two days and in a travel status two additional days and is, therefore, entitled to per diem of $160.00. Total expenses will be $260.80. PREMISES CONSIDERED, PETITIONER PRAYS: That this Court issue an order authorizing an allowance for the above expenses as provided by law in such cases to be paid in advance by Knox County and reimbursed by the State of Tennessee.

_____
DISTRICT ATTORNEY GENERAL

### ORDER

Proper petition having been made by the District Attorney General and after due consideration, it is the Court's opinion that Stephanie Leigh Wilson is a necessary witness in the above-styled case; it is, therefore, the order of this Court that said witness expenses be allowed as provided by law and the rules of this Court. This 18th day of March, 1996.

_____
JUDGE

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 78 of 145
PageID #: 411          375

000388

IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE

## DIVISION III

FILED
BY MARTHA PHILLIPS, CLERK

STATE OF TENNESSEE

MAR 1 0 1996

VS.                                    COURT          NO.   58183-A

CHRISTA GAIL PIKE, ALIAS

# DIVISION III

## PETITION FOR ADVANCE TRAVEL EXPENSE

Comes the District Attorney General and shows the Court that the above-styled case is set for trial on March 18, 1996 and that Kimberly Anne Ilo Ilo of Shelby, North Carolina is a vital and necessary witness for the State of Tennessee. That the said witness will make one trip, a distance of 422 miles and is, therefore entitled to the sum of $101.28 as travel. That the witness will be in attendance at court two days and is, therefore, entitled to per diem of $160.00. Total expenses will be $261.28. PREMISES CONSIDERED, PETITIONER PRAYS: That this Court issue an order authorizing an allowance for the above expenses as provided by law in such cases to be paid in advance by Knox County and reimbursed by the State of Tennessee.

_____
DISTRICT ATTORNEY GENERAL

## ORDER

Proper petition having been made by the District Attorney General and after due consideration, it is the Court's opinion that Kimberly Ilo Ilo is a necessary witness in the above-styled case; it is, therefore, the order of this Court that said witness expenses be allowed as provided by law and the rules of this Court. This 18th day of March, 1996.

_____
JUDGE

THE STATE                          NO. 58183A

   VS

CHRISTA PIKE                       1ST DEGREE MURDER &
                                   CONSPIRACY TO COMMIT 1ST
                                   DEGREE MURDER

Defendant's oral motion for closed court hearing came on to be heard and said motion is hereby DENIED. Defendant's Motion to Suppress Defendant's Conversation with Counsel at Preliminary Hearing Allegedly Overheard by Knox County Officers Providing Court Security came on to be heard and said Motion is hereby DENIED. Defendant's oral motion to call Assistant District Attorney Jo Helm as a witness came on to be heard and said motion is hereby DENIED. Defendant's oral motion to withdraw subpoena's issued to the District Attorney General and Assistant Attorney Generals came on to be heard and said motion is hereby DENIED. State Attorney General John H. Baker, IIIs', Motion to Quash Subpoenas Pertaining to Attorney General and Assistant Attorney General's came on to be heard and said Motion is hereby GRANTED. State's Motion for Defense Attorneys Honorable Bill Talman and the Honorable Julie Martin to bear the costs of subpoenas issued to the District Attorney and Assistant District Attorney came on to be heard and said Motion is hereby GRANTED.

Came the Attorney General for the State, also defendant in proper person, having counsel present and also eighteen prospective jurors namely, Thomas Davies, James H. Hammett, Yvonne R. Hanaway, Betty J. Nichols, Eva Rhodes, Joel Rutherford, Genevieve K. Cobble, Sammy G. Carpenter, Rebecca R. Cook, Ronald W. Long, Bennie George, Deborah Lloyd, Sharon D. Weaver, Dennis B. Bailey, Charles T. Dragg, Eugene Hubbard, Betty J. Hayner and Donna Plumlee, all of said prospective jurors being present, the parties resumed jury selection. The hour for adjournment having arrived prior to the completion of jury selection, and there being seventeen prospective jurors in the jury box under

consideration, to-wit: James H. Hammett, Betty J. Nichols, Eva Rhodes, Joel Rutherford, Genevieve K. Cobble, Bobby L. Duncan, Sammy G. Carpenter, Rebecca R. Cook, Ronald W. Long, Bennie George, Deborah Lloyd, Sharon D. Weaver, Dennis B. Bailey, Charles T. Dragg, Eugene Hubbard, Betty J. Hayner, Donna Plumlee, the said prospective members of the jury are respited to the meeting of the court Wednesday morning, March 20, 1996 at 9:00 A.M. in charge of Betty Beiber, Matron and Lynn Beeler, Deputy Sheriff, who are sworn as the law directs.

COURT ADJOURNED UNTIL WEDNESDAY, MARCH 20, 1996 AT 9:00 A.M.

(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

000391

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 163, PAGE 423

WEDNESDAY, MARCH 20, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

THE STATE                              NO. 58183A

   VS

CHRISTA PIKE                           1ST DEGREE MURDER &
                                       CONSPIRACY TO COMMIT
                                       1ST DEGREE MURDER

Came the Attorney General for the State, also defendant in proper person, having counsel present and also seventeen prospective jurors namely, James H. Hammett, Betty J. Nichols, Eva Rhodes, Joel Rutherford, Genevieve K. Cobble, Bobby L. Duncan, Sammy G. Carpenter, Rebecca R. Cook, Ronald W. Long, Bennie George, Deborah Lloyd, Sharon D. Weaver, Dennis B. Bailey, Charles T. Dragg, Eugene Hubbard, Betty J. Hayner, Donna Plumlee, all of said prospective jurors being present, the parties resumed jury selection. The hour for adjournment having arrived prior to the completion of jury selection, and there being fourteen prospective jurors in the jury box under consideration, to-wit: Eva Rhodes, Joel Rutherford, Kathryn M. Schilling, Genevieve K. Cobble, Bobby L. Duncan, Sammy G. Carpenter, Steve B. Everette, Bennie George, Deborah Lloyd, Sharon D. Weaver, Michael Glasman, Mary W. Trent, Ester Vogt, Carol W. Whetstone, the said prospective members of the jury are respited to the meeting of the court Thursday morning, March 21, 1996 at 9:00 A.M. in charge of Betty Beiber, Matron and Lynn Beeler, Deputy Sheriff, who are sworn as the law directs.



000392

COURT ADJOURNED UNTIL THURSDAY, MARCH 21, 1996 AT 9:00 A.M.

(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 83 of 145
PageID #: 416

000393

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 163, PAGE 524

THURSDAY, MARCH 21, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

THE STATE                                    NO. 58183A

   VS

CHRISTA PIKE                           1ST DEGREE MURDER &
                                       CONSPIRACY TO COMMIT
                                       1ST DEGREE MURDER

Came the Attorney General for the State, also defendant in proper person, having counsel present and also fourteen prospective jurors namely, Eva Rhodes, Joel Rutherford, Kathryn M. Schilling, Genevieve K. Cobble, Bobby L. Duncan, Sammy G. Carpenter, Steve B. Everette, Bennie George, Deborah Lloyd, Sharon D. Weaver, Michael Glasman, Mary W. Trent, Ester Vogt, Carol W. Whetstone, all of said prospective jurors being present, the parties resumed jury selection. The hour for adjournment having arrived prior to the completion of jury selection, and there being fourteen prospective jurors in the jury box under consideration, to-wit: Clarence W. Darden, Eva Rhodes, Joel Rutherford, Michelle E. Cunningham, Melissa W. Perry, Paul King, Bobby L. Duncan, Sammy G. Carpenter, Bennie George, Sharon D. Weaver, Joyce W. Halcomb, Michael Glasman, Johnny T. Hemphill and Mary W. Trent, the said prospective members of the jury are respited to the meeting of the court Friday morning, March 22, 1996 at 9:00 A.M. in charge of Betty Beiber, Matron and Lynn Beeler, Deputy Sheriff, who are sworn as the law directs.

000394

COURT ADJOURNED UNTIL FRIDAY, MARCH 22, 1996 AT 9:00 A.M.


(S)  MARY BETH LEIBOWITZ
     MARY BETH LEIBOWITZ, JUDGE
     DIVISION III
     CRIMINAL COURT



000395

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 163, PAGE 537

FRIDAY, MARCH 22, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

THE STATE                          NO. 58183A

   VS

CHRISTA PIKE                       1ST DEGREE MURDER &
                                   CONSPIRACY TO COMMIT
                                   1ST DEGREE MURDER

Came the Attorney General for the State, also defendant in proper person, having counsel present and also fourteen prospective jurors namely, Clarence W. Darden, Eva Rhodes, Joel Rutherford, Michelle E. Cunningham, Melissa W. Perry, Paul King, Bobby L. Duncan, Sammy G. Carpenter, Bennie George, Sharon D. Weaver, Joyce W. Halcomb, Michael Glasman, Johnny T. Hemphill and Mary W. Trent, all of said prospective jurors being present, the parties resumed jury selection. The hour for adjournment having arrived prior to the completion of jury selection, and there being eighteen prospective jurors in the jury box under consideration, to-wit: Clarence W. Darden, Eva Rhodes, Melissa W. Perry, Paul King, Bobby L. Duncan, Sammy G. Carpenter, Bennie George, James L. Greene, Sharon D. Weaver, Joyce W. Halcomb, LeVaughn Davis, Johnny T. Hemphill, Mary W. Trent, Christopher Matthews and James Lambert, the said prospective members of the jury are respited to the meeting of the court Saturday morning, March 23, 1996 at 10:00 A.M. in charge of Betty Beiber, Matron and Lynn Beeler, Deputy Sheriff, who are sworn as the law directs.

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 86 of 145
PageID #: 419          383

 000396

Defendant's Renewed Motion for Change of Venue came on to be heard and said Motion is hereby DENIED.

COURT ADJOURNED UNTIL SATURDAY, MARCH 23, 1996 AT 9:00 A.M.

(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

000397

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 163, PAGE 541

SATURDAY, MARCH 23, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

THE STATE                          NO. 58183A

    VS

CHRISTA PIKE                       1ST DEGREE MURDER &
                                   CONSPIRACY TO COMMIT
                                   1ST DEGREE MURDER

Came the Attorney General for the State, also defendant in proper person, having counsel present and also eighteen prospective jurors namely, Clarence W. Darden, Eva Rhodes, Melissa W. Perry, Paul King, Bobby L. Duncan, Sammy G. Carpenter, Bennie George, James L. Greene, Sharon D. Weaver, Joyce W. Halcomb, LeVaughn Davis, Johnny T. Hemphill, Mary W. Trent, Christopher Matthews and James Lambert, all of said prospective jurors being present, the parties resumed jury selection. The Court having directed the selection of fifteen jurors to try the case and having completed the selection of the jury, upon hearing the indictment read for plea thereto, the defendant says he is NOT GUILTY and for her trial puts herself upon the Country and Attorney General doth the like. Thereupon came the following jury, to-wit: Clarence W. Darden, Eva Rhodes, Melissa W. Perry, Paul King, Bobby L. Duncan, Sammy G. Carpenter, Bennie George, James L. Greene, Sharon D. Weaver, Joyce W. Halcomb, LeVaughn Davis, Johnny T. Hemphill, Mary W. Trent, Christopher Matthews and James Lambert, all good and lawful men and women, citizens of Knox County, having heretofore been selected and impaneled were sworn to well and truly try the issues joined between the State

and the defendant and a true and just verdict render according to the evidence and the law.  Having heard part of the proof in this cause and the hour for adjournment having arrived from rendering a verdict, the jury is respited to the meeting of the Court Monday morning, March 25, 1996 at 9:30 A.M. in the charge of Betty Beiber, Matron and Lynn Beeler, Deputy Sheriff, who are sworn as the law directs.

COURT ADJOURNED UNTIL MONDAY, MARCH 25, 1996 AT 9:00 A.M.

<u>(S)  MARY BETH LEIBOWITZ</u>
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

000398

000399

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 163, PAGE 544

MONDAY, MARCH 25, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

THE STATE                          NO. 58183A

   VS

CHRISTA PIKE                       1ST DEGREE MURDER &
                                   CONSPIRACY TO COMMIT
                                   1ST DEGREE MURDER

Defendant's oral objection to Dr. Sandra Elkins testifying came on to be heard and said motion is hereby DENIED. Defendant's Motion to Suppress Skull from Being Introduced into Evidence came on to be heard and said Motion is hereby DENIED.

Came the Attorney General for the State, also defendant in proper person, having counsel present and also jury sworn, to resume consideration of this cause. Having heard part of the proof in this cause and the hour for adjournment having arrived from rendering a verdict, the jury is respited to the meeting of the court Tuesday morning, March 26, 1996 at 9:00 A.M. in the charge of Betty Beiber, Matron and Lynn Beeler, Deputy Sheriff, who are sworn as the law directs.


COURT ADJOURNED UNTIL TUESDAY, MARCH 26, 1996 AT 9:00 A.M.


   (S) MARY BETH LEIBOWITZ
      MARY BETH LEIBOWITZ, JUDGE
      DIVISION III
      CRIMINAL COURT

000400

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 163, PAGE 563

TUESDAY, MARCH 26, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

THE STATE                          NO. 58183A

    VS

CHRISTA PIKE                       1ST DEGREE MURDER &
                                   CONSPIRACY TO COMMIT
                                   1ST DEGREE MURDER

Came the Attorney General for the State, also defendant in proper person, having counsel present and also jury sworn, to resume consideration of this cause. Having heard part of the proof in this cause and the hour for adjournment having arrived from rendering a verdict, the jury is respited to the meeting of the court Wednesday morning, March 27, 1996 at 9:00 A.M. in the charge of Betty Beiber, Matron and Lynn Beeler, Deputy Sheriff, who are sworn as the law directs.


COURT ADJOURNED UNTIL WEDNESDAY, MARCH 27, 1996 AT 9:00 A.M.


    (S) MARY BETH LEIBOWITZ
       MARY BETH LEIBOWITZ, JUDGE
       DIVISION III
       CRIMINAL COURT

000401

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 163, PAGE 579

WEDNESDAY, MARCH 27, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

THE STATE                           NO. 58183A

   VS

CHRISTA PIKE                        1ST DEGREE MURDER &
                                    CONSPIRACY TO COMMIT
                                    1ST DEGREE MURDER

Came the Attorney General for the State, also defendant in proper person, having counsel present and also jury sworn, to resume consideration of this cause. Having heard part of the proof in this cause and the hour for adjournment having arrived from rendering a verdict, the jury is respited to the meeting of the court Thursday morning, March 28, 1996 at 9:00 A.M. in the charge of Betty Beiber, Matron and Lynn Beeler, Deputy Sheriff, who are sworn as the law directs.

COURT ADJOURNED UNTIL THURSDAY, MARCH 28, 1996 AT 9:00 A.M.

        (S) MARY BETH LEIBOWITZ
          MARY BETH LEIBOWITZ, JUDGE
          DIVISION III
          CRIMINAL COURT

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 163, PAGE 586


THURSDAY, MARCH 28, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

THE STATE                          NO. 58183A

   VS

CHRISTA PIKE                       1ST DEGREE MURDER &
                                  CONSPIRACY TO COMMIT
                                  1ST DEGREE MURDER

Came the Attorney General for the State, also defendant in proper person, having counsel present and also jury sworn, to resume consideration of this cause. Due to propter affectum, juror Christopher B. Matthews is hereby excused. Having heard part of the proof in this cause and the hour for adjournment having arrived from rendering a verdict, the jury is respited to the meeting of the court Friday morning, March 29, 1996 at 9:00 A.M. in the charge of Betty Beiber, Matron and Lynn Beeler, Deputy Sheriff, who are sworn as the law directs.


COURT ADJOURNED UNTIL FRIDAY, MARCH 29, 1996 AT 9:00 A.M.


           (S) MARY BETH LEIBOWITZ
             MARY BETH LEIBOWITZ, JUDGE
             DIVISION III
             CRIMINAL COURT



IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 163, PAGE 601

FRIDAY, MARCH 29, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

THE STATE                          NO. 58183A

   VS

CHRISTA PIKE                       1ST DEGREE MURDER &
                                   CONSPIRACY TO COMMIT
                                   1ST DEGREE MURDER

Came the Attorney General for the State, also defendant in proper person, having counsel present and also jury sworn, to resume consideration of this cause. Having heard the proof in this cause, argument of counsel and charge of the Court, and before the jury retired to consider its verdict, the Court selected at random the following jurors, to-wit: Bennie George and Johnny Hemphill, as alternate jurors and did discharge the said alternate jurors to reduce the jury to a body of twelve. After deliberations, upon their oaths the jurors say: that they find the defendant guilty of First Degree Murder, as charged in the 1st Count; and further, that they find the defendant guilty of Conspiracy to Commit First Degree Murder, as charged in the 2nd Count. The jury having heretofore found the defendant guilty of First Degree Murder, as charged in the 1st Count of the Indictment this cause came on to be further heard on the issue of punishment. Having heard part of the proof in this cause and the hour for adjournment having arrived from rendering a verdict, the jury is respited to the meeting of the court Saturday morning, March 30, 1996 at 9:00 A.M. in the charge of Betty Beiber, Matron and Lynn Beeler, Deputy Sheriff, who are sworn as the law

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 94 of 145
PageID #: 427   391

000404

directs.


COURT ADJOURNED UNTIL SATURDAY, MARCH 30, 1996 AT 9:00 A.M.


(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 163, PAGE 621

SATURDAY, MARCH 30, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

THE STATE                              NO. 58183A

   VS

CHRISTA PIKE                           1ST DEGREE MURDER &
                                       CONSPIRACY TO COMMIT
                                       1ST DEGREE MURDER

Came the Attorney General for the State, also defendant in proper person, having counsel present and also jury sworn, to resume consideration of this cause. The jury having heretofore found the defendant guilty of 1st Degree Murder, as charged in the 1st Count of the Indictment, this cause came on to be further heard on the issue of punishment. The jury, having heard the proof, arguments of counsel and instructions of the Court on the issue of punishment, retired to the jury room and commenced its deliberations. Upon their oaths the jurors say:

**PUNISHMENT OF DEATH**

(1) We, the jury, unanimously find the following listed statutory aggravating circumstance or circumstances:

(Here list the statutory aggravating circumstance or circumstances so found, which must be limited to those enumerated for your consideration by the court in these instructions.)

*The murder was especially heinous, atrocious or cruel and involved torture. (2) The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another.*

(2) We, the jury, unanimously find that the state has proven beyond a reasonable doubt that the statutory aggravating circumstance or circumstances so listed above outweigh any mitigating circumstances.

(3) Therefore, we, the jury, unanimously find that the punishment for the defendant, Christa Gail Pike, shall be death.

| | |
|---|---|
| *Joyce W. Halcomb*<br>JURY FOREPERSON | *Mary Lunt*<br>JUROR |
| *Sharon D. Weaver*<br>JUROR | *Eva Rhodes*<br>JUROR |
| *Theresa McVarie*<br>JUROR | *LeVaughn Davis*<br>JUROR |
| *Gine L. Greene*<br>JUROR | *Jam H. Renfro*<br>JUROR |
| *Melissa E. Perry*<br>JUROR | *Sammy Guy Carpenter*<br>JUROR |
| *Bobby J. Dunn*<br>JUROR | *Paul King*<br>JUROR |
| | *3-30-96*<br>DATE |


000407

# IN THE CRIMINAL/CIRCUIT COURT OF KNOX COUNTY, TENNESSEE

Case Number: __58183A__ Count #: __1ST__
Judicial District __Sixth__ Judicial Division __III__

Attorney for the State __Randall E. Nichols__
Counsel for Defendant __WILLIAM TALMAN & JULIE A. MARTIN__
☐ Retained; ☒ Appointed; ☐ Public Defender

FILED
BY MARTHA PHILLIPS, CLERK

**State of Tennessee**
vs.

Defendant __CHRISTA PIKE, ALIAS__
Date of Birth __03/10/76__ Sex __F__ Race __W__
From Indictment #__58183A__ Warrant #__1111K__

Alias _____
SSN __234__-__19__-__7244__
TDOC #_____

MAR 3 0 1996

KNOX COUNTY CRIMINAL COURT
KNOXVILLE, TN

## JUDGMENT

Comes the District Attorney General for the State and the defendant with counsel of record for entry of judgment.

On the __30TH__ day of __MARCH__, 19 __96__, the defendant:

☐ **pled guilty**

**Is found:**
☒ guilty ☐ not guilty
☒ jury verdict ☐ not guilty by reason of insanity
☐ bench trial
☐ nolo contendere

**Indictment:** Class (circle one): (1st) A B C D E ☒ Felony ☐ Misdemeanor
Offense __FIRST DEGREE MURDER__
Amended Charge _____
Offense date __01/12/95__ County __KNOX__
**Conviction offense** __FIRST DEGREE MURDER__
TCA #: __39-13-202__ Sentence-imposed date __03/30/96__
Conviction class (circle one): (1st) A B C D E ☒ Felony ☐ Misdemeanor

After considering the evidence, the entire record, and all factors in T.C.A. Title 40, Chapter 35, all of which are incorporated by reference herein, the Court's findings and rulings are:

☐ **Sentence Reform Act of 1989**
☐ Mitigated 20%
☐ Mitigated 30%
☐ Standard 30% Range 1
☐ Multiple 35% Range 2
☐ Persistent 45% Range 3
☐ Career 60% ☐ Multiple Rapist
☒ 1st Degree Murder ☐ Child Rapist

☐ **Pre 1982 Sentence:** _____
☐ 1st Degree Murder
☐ **Sentence Reform Act of 1982**
☐ 20% Range 1
☐ 30% Range 1
☐ 35% Range 2
☐ 40% Range 2
☐ 1st Degree Murder

Concurrent with:

Consecutive to:

**Sentenced to:**     **Sentence Length:**
☒ TDOC ____Years ____Months ____Days ____Life ☒ Death
☐ Regional Workhouse ____Years ____Months ____Days
☐ County Jail ____Years ____Months ____Days ____Hours ____Week-ends ____Periodic: (_____)
____% min. svc. prior to program or work release ____% min. svc. prior to release (Misdemeanor only)
☐ Workhouse ____Years ____Months ____Days ____Hours ____Week-ends ____Periodic: (_____)
____% min. svc. prior to program or work release ____% min. svc. prior to release (Misdemeanor only)
☐ Work Release ____Years ____Months ____Days ____Hours ____Week-ends
☐ Probation ____Years ____Months ____Days Effective: _____
☐ Community Based Alternative ____Years ____Months ____Days ____Hours ____Week-ends
Specify: _____

Pretrial Jail Credit Period: from __/__/__ to __/__/__ from __/__/__ to __/__/__ or Number of Days: _____

**Court Ordered Fees and Fines:**
$ __50.00__ Criminal Injuries Compensation Fund
$_____ Supervision
$_____ Child Support
$_____ Court Costs
$_____ T. B. I. F.
$_____ **FINE ASSESSED**

**Restitution:**
Victim's Name _____
Address _____
_____
Total Amount $_____ $_____ per month
☐ Unpaid Community Service: ____ Hours, ____ Days, ____ Weeks, ____ Months

☒ **The Defendant having been found guilty is rendered infamous.**

Special Conditions: UPON THE VERDICT OF THE JURY FINDING THE DEFENDANT GUILTY OF 1ST DEGREE MURDER, AS CHARGED IN THE 1ST COUNT, AND UPON THE FURTHER VERDICT OF THE JURY FIXING THE PUNISHMENT AT DEATH, IT IS THEREFORE, ORDERED THAT THE DEFENDANT SHALL BE PUT TO DEATH BY ELECTROCUTION IN THE MODE PRESCRIBED BY LAW, AND THAT SHE SHALL BE TRANSFERRED TO THE CUSTODY OF THE WARDEN OF THE TENNESSEE PRISON FOR WOMEN AT NASHVILLE AND FURTHER THAT WHERE ON THE 12TH DAY OF JANUARY, 1997, THE DEFENDANT SHALL BE SUBJECTED TO SHOCK BY A SUFFICIENT CURRENT OF ELECTRICITY UNTIL THE DEFENDANT IS DEAD.

THE DEFENDANT IS ALLOWED 30 DAYS FOR FILING OF MOTION FOR NEW TRIAL.

__MARY BETH LEIBOWITZ__
Judge's Name
WC/JH

_____
Judge's Signature

03 / 30 / 96
Date of Entry of Judgment

CR-3419 (Rev. 10/92)
Attorney for State/Signature (optional)    Defendant's Attorney/Signature (optional)

Case 1:12-cv-00035-HSM-SKL Document 7-3 Filed 08/01/12 Page 98 of 145 PageID #: 431

COURT ADJOURNED UNTIL MONDAY, APRIL 1, 1996 AT 9:00 A.M.


(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

000408

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 163, PAGE 656

WEDNESDAY, APRIL 3, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

**IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE**

**DIVISION III**

STATE OF TENNESSEE

VS.

CHRISTA PIKE, ALIAS

FILED
BY MARTHA PHILLIPS CLERK

APR 5 1996

KNOX COUNTY CRIMINAL COURT
KNOXVILLE, TN

No. 58183A

**DIVISION III**

**NOTICE OF ENHANCEMENT FACTORS**

Pursuant to Tennessee Code Annotated §40-35-202(b), the State hereby gives notice that it intends to rely upon the enhancement factors listed in Tennessee Code Annotated, §40-35-114:

> (2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;
>
> (5) The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;
>
> (6) The personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great;
>
> (7) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 100 of 145   PageID #: 433

(9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense;

(16) The crime was committed under circumstances under which the potential for bodily injury to a victim was great.

The State believes that there are no mitigating factors present in this record.

RESPECTFULLY SUBMITTED,

RANDALL E. NICHOLS
DISTRICT ATTORNEY GENERAL

BY: _Jo Helm_
JO HELM
ASSISTANT DISTRICT ATTORNEY

## CERTIFICATE

I hereby certify that I have delivered a true and exact copy of the foregoing captioned NOTICE to William C. Talman, Attorney for Defendant, P.O. Box 506, Knoxville, Tennessee, 37901, by depositing the same in the United States Mail with sufficient postage thereon to carry same to its destination this the _3_ day of April, 1996.

_Jo Helm_
JO HELM
ASSISTANT DISTRICT ATTORNEY

COURT ADJOURNED UNTIL THURSDAY, APRIL 4, 1996 AT 9:00 A.M.

(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

000411

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 163, PAGE 656


THURSDAY, APRIL 4, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:


## IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
## DIVISION III

STATE OF TENNESSEE,

    Plaintiff,

vs.

CHRISTA GAIL PIKE,

    Defendant.

FILED
BY MARTHA PHILLIPS, CLERK

APR 04 1996

KNOX COUNTY CRIMINAL COURT
KNOXVILLE, TN

No.: 58183-A


### CERTIFICATE OF TRIAL JUDGE
### CERTIFYING CASE AS CAPITAL CASE


The trial court hereby certifies to the Director of the Administrative office of the Courts that this case is a capital case and further states as follows in response to the Capital Case Criteria Sheet required by the Administrative Office of the Court:

ATTORNEY: _____ WILLIAM C. TALMAN _____

ATTORNEY: _____ JULIE MARTIN _____

1. Is this indicted defendant indicted for an offense punishable by death?
(X) YES  ( ) NO

2. Were the prospective jurors examined with respect to their attitude as to capital punishment? (X) YES  ( ) NO  ( ) NOT APPLICABLE, CASE STILL PENDING.

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 102 of 145
PageID #: 435

3. Did the district attorney general announce prior to the presentation of proof that the State would ask that the death penalty be assessed as punishment? (X) YES ( ) NO

4. What sentence or penalty, if any, did the defendant receive? JURY VERDICT SETTING DEATH AS PUNISHMENT - MOTION FOR NEW TRIAL PENDING .

This the 4th day of April, 1996.

Mary Beth Leibowitz, Judge

COMMENTS: _____

_____

_____

COURT ADJOURNED UNTIL FRIDAY, APRIL 5, 1996 AT 9:00 A.M.

(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

400

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 165, PAGE 656

MONDAY, APRIL 29, 1996

Court met pursuant to adjournment, present and presiding the
Honorable Mary Beth Leibowitz, Judge of Division III, Criminal
Court for Knox County, Tennessee, when the following proceedings
were had and entered of record, to-wit:

### IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
### DIVISION III

STATE OF TENNESSEE,

    Plaintiff,

vs.

CHRISTA GAIL PIKE,

    Defendant.

No.: 58183-A

FILED
BY MARTHA PHILLIPS, CLERK
APR 26 1996
KNOX COUNTY CRIMINAL COURT
KNOXVILLE

**DIVISION III**

### MOTION TO STAY EXECUTION

Comes the Defendant, Christa Gail Pike, by and through Counsel, and respectfully
moves this Honorable Court to stay the Defendant's execution, which is presently scheduled for
January 12, 1997, pending completion of the appeal of this case.

This the ___29th___ day of April, 1996.

CHRISTA GAIL PIKE

BY: _____
William C. Talman
Supreme Court BPR# 012262
Attorney for Defendant
P.O. Box 506
Knoxville, Tennessee 37901

BY: _____
Julie A. Martin
Supreme Court BPR# 015546
Attorney for Defendant
P.O. Box 426
Knoxville, Tennessee 37901

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 104 of 145
PageID #: 437

000414

## CERTIFICATE OF SERVICE

I, William C. Talman, Attorney for the Defendant, hereby certify that I have served a true and correct copy of the foregoing Motion, by personally delivering same, or by depositing same in the U.S. Mail, with sufficient postage to reach its destination, upon Hon. Randall Nichols, District Attorney General for Knox County, Tennessee, at his office in the City-County Building, 400 Main Avenue, Knoxville, Tennessee 37902.

This the ___29th___ day of April, 1996.

_____
William C. Talman, Attorney

## IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
## DIVISION III

| | |
|---|---|
| STATE OF TENNESSEE, | ] |
| Plaintiff, | ] FILED<br>BY MARTHA PHILLIPS, CLERK |
| vs. | ] APR 29 1996    No.: 58183-A |
| CHRISTA GAIL PIKE, | ] KNOX COUNTY CRIMINAL COURT<br>KNOXVILLE TN |
| Defendant. | ] |

**DIVISION III**

## MOTION FOR JUDGMENT OF ACQUITTAL
## OR, ALTERNATIVELY, MOTION FOR NEW TRIAL

Comes the Defendant, Christa Gail Pike, by and through Counsel, and respectfully moves this Honorable Court, pursuant to Rule 29 of the Tennessee Rules of Criminal Procedure (Tenn.R.Crim.P.) to enter a judgment of acquittal in this cause as to both the guilt phase and the penalty phase wherein the jury set punishment at death by electrocution. Alternatively, the Defendant would move this Honorable Court, pursuant to Rule 33 of the Tenn.R.Crim.P. to vacate and set aside the jury verdicts finding her guilty of murder in the first degree and conspiracy to commit murder in the first degree and to enter an order granting her a new trial on the merits as to each charge. As grounds and in support thereof, the Defendant would show unto the Court as follows:

1. The evidence presented in its entirety and as contained in the record is insufficient as a matter of law to support the verdict of the jury finding the Defendant guilty of murder in the first degree and guilty of conspiracy to commit murder in the first degree. Furthermore, the evidence presented in its entirety and as contained in the record of the penalty phase is insufficient as a matter of law to support the jury's verdict setting punishment at death by electrocution.

2. The Court erred by refusing to grant Defendant's motion to deny television and photographic coverage of pretrial proceedings in order to minimize the public's exposure to the details of this case. Said motion was made to enable the Defendant to select a jury of unbiased citizens of Knox County, Tennessee, to hear and decide the issues in this case, and to preserve her right to a fair trial by her peers.

3. The Court erred by failing to grant the Defendant's pretrial motion for change of venue due to the excessive publicity generated in this case, which thereby denied the Defendant a fair trial by a jury of unbiased citizens of this State. The Defendant would further submit that the procedure utilized by the Court to select an unbiased jury was inadequate due to the publicity generated in this case. The Court further erred by continually failing to grant Defendant's repeatedly renewed motions for change of venue during the jury selection process and trial of this case as it became more and more apparent that an overwhelming majority of prospective jurors were already familiar with the details of this case due to pretrial media coverage. Furthermore, the affidavit of Dr. Charles Bebber, which was filed in support of said motion for change of venue was unrefuted by the State and was given improper consideration or no consideration by the Court. Defendant would aver that the statements of prospective jurors during the jury selection process support the opinions contained in Dr. Bebber's affidavit that an unbiased jury could not be selected in Knox County, Tennessee to hear this case.

4. The Court denied the Defendant a fair trial by denying her the right to have her case heard by a jury composed of a fair cross section of the citizens of the State of Tennessee, viz., citizens that are opposed to the imposition of the death penalty on religious or other grounds. The Defendant had proposed a "don't ask, don't tell" procedure regarding the selection of

prospective jurors to be used during "death qualification" of the jury. By denying this requested procedure, the Court, in effect, allowed only jurors that were pro-death penalty to be seated, thereby denying the Defendant a fair cross section of the citizens of this State, and, thus denying the Defendant of a fair and impartial trial by a jury of her peers.

5. The Court erred by abusing it's discretion in allowing the introduction into evidence of the skull alleged to be that of the victim in this case. Defendant would aver that any relevant damage to the skull could have been sufficiently demonstrated by the use of diagrams, models, or even photographs. Further, the introduction of the actual skull was strategically designed to inflame the jury and to engender sympathy for the victim and outrage against the Defendant. Introduction of the skull itself was unnecessary, repetitive, and highly prejudicial. This conduct denied Defendant a fair and impartial trial.

6. The Court erred by failing to enter a judgment of acquittal as to the second count of the indictment, which specifically charges that the Defendant attacked the victim with a boxcutter. There was no proof, apart from the uncorroborated statement of the Defendant, that a boxcutter was used in the charged offenses. Furthermore, there was no proof introduced that Tadaryl Shipp or Shadolla Peterson conspired with the Defendant, or that either of them attacked the victim as alleged in the indictment.

7. The Defendant would aver that the punishment imposed, i.e., death by electrocution, is barbaric, torturous and constitutes cruel and unusual punishment.

8. The Court erred by permitting the State the same number of peremptory challenges as the Defendant in violation of the *ex post facto* clauses of the United States and Tennessee Constitutions. Said error denied the Defendant the opportunity to select a fair and impartial jury and thus denied her a fair trial.

9. The Defendant would aver that the denial of a fair trial as set forth herein violated her rights to due process, effective assistance of Counsel, the prohibition against cruel and unusual punishment, the prohibition against *ex post facto* laws, and equal protection of the law, as guaranteed by Article 1, § 10 and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article 1, §§ 6, 8, 9 and 11 of the Tennessee Constitution.

10. The Defendant would respectfully reserve the right to modify, supplement or amend



this motion as circumstances may dictate after receiving and having an opportunity to review the transcripts of the trial in this cause.

**WHEREFORE**, the Defendant would respectfully move this Honorable Court to grant the relief sought herein the premises of this Motion.

This the ___29th___ day of April, 1996.

CHRISTA GAIL PIKE

BY: _____

William C. Talman
Supreme Court BPR# 012262
Attorney for Defendant
P.O. Box 506
Knoxville, Tennessee 37901

BY: _____

Julie A. Martin
Supreme Court BPR# 015546
Attorney for Defendant
P.O. Box 426
Knoxville, Tennessee 37901

## CERTIFICATE OF SERVICE

I, William C. Talman, Attorney for the Defendant, hereby certify that I have served a true and correct copy of the foregoing Motion, by personally delivering same, or by depositing same in the U.S. Mail, with sufficient postage to reach its destination, upon Hon. Randall Nichols, District Attorney General for Knox County, Tennessee, at his office in the City-County Building, 400 Main Avenue, Knoxville, Tennessee 37902.

This the ___29th___ day of April, 1996.

_____
William C. Talman, Attorney

000418

COURT ADJOURNED UNTIL TUESDAY, APRIL 30, 1996 AT 9:00 A.M.

(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

00419
IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 166, PAGE 656

WEDNESDAY, MAY 22, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

## IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
## DIVISION III

STATE OF TENNESSEE    BY MARTHA PHILLIPS. CLERK ) DOCKET NO. - 58183, 58284

FILED

VS    MAY 22 1996 ) CHARGE - 1ST DEGREE MURDER, THEFT

CHRISTA GAIL PIKE, ALIAS COUNTY CRIMINAL COURT ) PRISON INMATE NO.- 261368

KNOXVILLE, TN

## TRANSPORTATION ORDER

A hearing in the above captioned matter having been set for the hour of 9:00 a.m, June 6, 1996, before me in the Criminal Court for Knox County, Tennessee, and it appearing that the defendant is presently incarcerated in the Tennessee State Penitentiary For Women, Nashville, TN. The Warden of said facility is hereby directed to deliver custody of the defendant to the Sheriff of Knox County, or his deputies, upon presentation of a certified copy of this order. The Sheriff of Knox County, or his deputies, will return the defendant to the Knox County Jail on or before June 5, 1996, where the defendant will remain in the custody of the Knox County Sheriff until disposition

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 110 of 145
PageID #: 443   407

of his case in the Criminal Court Division III. Following such disposition of his case the defendant

will be immediately returned by the Knox County Sheriff's Department to said facility.

The Clerk shall send a certified copy of this order to the Sheriff of Knox County, Tennessee,

a copy to Counsel for the Defendant, a copy to the Warden and a copy to the Knox County Attorney

General.

ENTER this the 22nd day of May, 1996.

MARY BETH LEIBOWITZ, JUDGE
CRIMINAL COURT DIVISION III
SIXTH JUDICIAL DISTRICT

COURT ADJOURNED UNTIL THURSDAY, MAY 23, 1996 AT 9:00 A.M.

(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

000420

408

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 166, PAGE 684

THURSDAY, JUNE 6, 1996

Court met pursuant to adjournment, present and presiding the
Honorable Mary Beth Leibowitz, Judge of Division III, Criminal
Court for Knox County, Tennessee, when the following proceedings
were had and entered of record, to-wit:

## IN THE CRIMINAL/CIRCUIT COURT OF KNOX COUNTY, TENNESSE

Case Number: 58183A    Count # 2ND
Judicial District Sixth Judicial Division III

Attorney for the State __Randall E. Nichols__
Counsel for Defendant BILL TALMAN
☐ Retained; ☒ Appointed; ☐ Public Defender

**State of Tennessee**
**vs.**
Defendant CHRISTA PIKE
Date of Birth 03 / 10 / 76  Sex F  Race W
From Indictment # 58183A          Warrant #

Alias
SSN    234 — 19 — 7244
TDOC #

FILED
BY MARTHA PHILLIPS, CLERK

JUN 06 1996

KNOX COUNTY CRIMINAL COURT
KNOXVILLE, TN

## JUDGMENT

Comes the District Attorney General for the State and the defendant with counsel of record for entry of judgment.
On the 6TH day of JUNE , 19 96 the defendant:

☐ plead guilty

is found:
☒ guilty          ☐ not guilty
☒ jury verdict    ☐ not guilty by reason of insanity
☐ bench trial
☐ nolo contendere

Indictment: Class (circle one):   1 st (A) B C D E   ☒ Felony ☐ Misdemeanor
Offense CONSP.TO COMMIT 1ST DEGREE MURDER
Amended Charge
Offense date 01 / 12 / 95 County KNOX
Conviction offense CONSP.TO COMMIT 1ST DEGREE MURDER
TCA # 39-12-103                  Sentence-imposed date 06 / 06 / 96
Conviction class (circle one): 1st (A) B C D E   ☒ Felony ☐ Misdemeanor

After considering the evidence, the entire record, and all factors in T.C.A. Title 40, Chapter 35, all of which are incorporated by reference herein, the Court's findings and rulings are:

☒ Sentence Reform Act of 1989
☐ Mitigated 20%
☐ Mitigated 30%
☒ Standard 30% Range 1
☐ Multiple 35% Range 2
☐ Persistent 45% Range 3
☐ Career 60%    ☐ Multiple Rapist
☐ 1st Degree Murder  ☐ Child Rapist

☐ Pre 1982 Sentence:
☐ 1st Degree Murder
☐ Sentence Reform Act of 1982
☐ 20% Range 1
☐ 30% Range 1
☐ 35% Range 2
☐ 40% Range 2
☐ 1st Degree Murder

Concurrent with:

Consecutive to:
1ST COUNT OF THIS INDICTMENT

Sentenced to:          Sentence Length:
☒ TDOC            25 Years ___ Months ___ Days ___ Life    ☐ Death
☐ Regional Workhouse ___ Years ___ Months ___ Days
☐ County Jail      ___ Years ___ Months ___ Days ___ Hours ___ Week-ends ___ Periodic: (_____)
_____ % min. svc. prior to program or work release _____ % min. svc. prior to release (Misdemeanor only)
☐ Workhouse      ___ Years ___ Months ___ Days ___ Hours ___ Week-ends ___ Periodic: (_____)
_____ % min. svc. prior to program or work release _____ % min. svc. prior to release (Misdemeanor only)
☐ Work Release    ___ Years ___ Months ___ Days ___ Hours ___ Week-ends
☐ Probation      ___ Years ___ Months ___ Days ___ Effective:
☐ Community Based Alternative ___ Years ___ Months ___ Days ___ Hours ___ Week-ends
Specify: _____

Pretrial Jail Credit Period: from ___ / ___ / ___ to ___ / ___ / ___ from ___ / ___ / ___ to ___ / ___ / ___ or Number of Days: _____

000422

| Court Ordered Fees and Fines: | Restitution: |
|---|---|

**Court Ordered Fees and Fines:**
$ 50.00 Criminal Injuries Compensation Fund
$ _____ Supervision
$ _____ Child Support
$ 33.50 Court Costs
$ _____ T B.I.F.
$ _____ FINE ASSESSED

**Restitution:**
Victim's Name _____
Address _____

Total Amount $ _____ $ _____ per month
☐ Unpaid Community Service ____ Hours, ____ Days, ____ Weeks, ____ Months

☒ The defendant having been found guilty is rendered infamous.

**Special Conditions:**
DEFENDANT'S MOTION FOR STAY OF EXECUTION IS HEREBY DENIED. THIS CASE IS CONTINUED TO JULY 25, 1996 FOR HEARING ON MOTION FOR NEW TRIAL.

MARY BETH LEIBOWITZ
Judge's Name

Judge's Signature

06 / 06 / 96
Date of Entry of Judgment

CR-3419 (Rev. 10/92)

Attorney for State/Signature (optional)          Defendant's Attorney/Signature (optional)

## IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE

### DIVISION III

STATE OF TENNESSEE )
)
VS. )      NO. 58183A
)
CHRISTA GAIL PIKE )

FILED
BY MARTHA PHILLIPS, CLERK

JUN 06 1996

KNOX COUNTY CRIMINAL COURT
KNOXVILLE, TN

### ORDER

IT IS HEREBY ORDERED that the defendant, CHRISTA GAIL PIKE, may not profit or receive remuneration either directly or indirectly, by means of family or an agent, from this case or any account, story, fiction, or other version of the events or any part of the events of this matter or the trial.

ENTER this the 6ᵗʰ day of June, 1996.

MARY BETH LEIBOWITZ
CRIMINAL COURT JUDGE
DIVISION III

COURT ADJOURNED UNTIL FRIDAY, JUNE 7, 1996 AT 9:00 A.M.


(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

000423

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
MARCH TERM 1996
MINUTE BOOK 167, PAGE 684

FRIDAY, JUNE 21, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

## IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE

### DIVISION III

STATE OF TENNESSEE      )
                        )
VS.                     )      NO. 58183-A
                        )
CHRISTA GAIL PIKE       )

FILED
BY MARTHA PHILLIPS, CLERK

JUN 21 1996

KNOX COUNTY CRIMINAL COURT
KNOXVILLE, TN

**ORDER**

It appearing to the Court that fee petitions have been filed under seal allegedly pursuant to an order of June 1, 1995, allowing motions or applications for services which have been authorized to be heard by the Court ex parte in an envelope under seal.

And it appearing to the Court that a fee petition is neither a motion or application for services contemplated pursuant to T.C.A. 40-14-207 (b), wherein the Court ex parte may, in its discretion, determine investigative expert services or other similar services are necessary to insure the proper protection of constitutional rights, and not the Court may order authorization in an ex parte proceeding. The

Court does not find that it is necessary to seal fee petitions for the purpose of protecting constitutional rights of the defendant.

Therefore, it is ordered that the Clerk of the Court shall unseal the fee petitions and they shall be filed as public records in this cause.

The Clerk shall furnish a copy of this order to the Defendant's attorneys, Mr. William Talman, and Ms. Julie Martin, to the District Attorney General.

ENTER this the 21st day of _____June_____, 1996.

MARY BETH LEIBOWITZ, JUDGE
CRIMINAL COURT DIVISION III
SIXTH JUDICIAL DISTRICT

COURT ADJOURNED UNTIL MONDAY, JUNE 22, 1996 AT 9:00 A.M.

_(S) MARY BETH LEIBOWITZ_
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 116 of 145
PageID #: 449

413

000426

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
JULY TERM 1996
MINUTE BOOK 167, PAGE 377

MONDAY, JULY 1, 1996

STATE OF TENNESSEE

BE IT REMEMBERED that a Criminal Court for Knox County, Tennessee was begun and held in and for said County at the City-County Building in the City of Knoxville on the First Monday in July, 1996, the same being the 1st day of said month and year, and being the time designated and fixed by law for holding said Court. At which time, present and presiding the Honorable Mary Beth Leibowitz, the duly elected and qualified Criminal Judge, Division III of the 6th Judicial Circuit of the State of Tennessee, when the following proceedings were had and entered of record, to-wit:

Court was opened in due form by Tim Hutchison, High Sheriff of Knox County, Tennessee.

COURT ADJOURNED UNTIL TUESDAY, JULY 2, 1996 AT 9:00 A.M.

(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
JULY TERM 1996
MINUTE BOOK 168, PAGE 684

TUESDAY, JULY 9, 1996

Court met pursuant to adjournment, present and presiding the
Honorable Mary Beth Leibowitz, Judge of Division III, Criminal
Court for Knox County, Tennessee, when the following proceedings
were had and entered of record, to-wit:

## IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
## DIVISION III

STATE OF TENNESSEE )
                                 FILED  ) DOCKET NO. 58183
          BY MARTHA PHILLIPS, CLERK
VS                         )

             **JUL 09 1996**  CHARGE- FIRST DEGREE MURDER
CHRISTA PIIKE, ALIAS          )
         KNOX COUNTY CRIMINAL COURT INMATE NO. 261368
               KNOXVILLE, TN

## TRANSPORTATION ORDER

A hearing in the above captioned matter having been set for the hour of 9:00 a.m, July 25,
1996, before me in the Criminal Court for Knox County, Tennessee, and it appearing that the
defendant is presently incarcerated in the Tennessee State Penitentiary for Women, Nashville, TN.
The Warden of said facility is hereby directed to deliver custody of the defendant to the Sheriff of
Knox County, or his deputies, upon presentation of a certified copy of this order. The Sheriff of
Knox County, or his deputies, will return the defendant to the Knox County Jail on or before July
24, 1996, where the defendant will remain in the custody of the Knox County Sheriff until
disposition of her case in the Criminal Court Division III. Following such disposition of her case

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 118 of 145
PageID #: 451

the defendant will be immediately returned by the Knox County Sheriff's Department to said facility.

The Clerk shall send a certified copy of this order to the Sheriff of Knox County, Tennessee, a copy to Counsel for the Defendant, a copy to the Warden and a copy to the Knox County Attorney General.

ENTER this the 9th day of July, 1996.

MARY BETH LEIBOWITZ, JUDGE
CRIMINAL COURT DIVISION III
SIXTH JUDICIAL DISTRICT

COURT ADJOURNED UNTIL WEDNESDAY, JULY 10, 1996 AT 9:00 A.M.

       (S) MARY BETH LEIBOWITZ
       MARY BETH LEIBOWITZ, JUDGE
       DIVISION III
       CRIMINAL COURT

000429

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
JULY TERM 1996
MINUTE BOOK 169, PAGE 684

THURSDAY, JULY 25, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

## IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
## DIVISION III

STATE OF TENNESSEE )
)
v.          JUL 25 1996    )    No. 58183A
)
CHRISTA GAIL PIKE )

### AMENDMENT TO MOTION FOR NEW TRIAL

Comes now the Defendant, Christa Gail Pike, by and through counsel, pursuant to Rule 33(b) of the Tennessee Rules of Criminal Procedure, and makes as an amendment to her pleading entitled Motion for Judgment of Acquittal or, Alternatively, Motion for New Trial filed April 29, 1996, a challenge to her sentence imposed on June 6, 1996, as being excessive. In support therefor, Defendant would state the following:

1. On June 6, 1996, the Court imposed a sentence of twenty-five (25) years as punishment for Count II of the indictment.

2. The sentence imposed was the maximum sentence available for this particular offense given that the Defendant was a Range I offender.

3. In setting punishment for Count II, the Court improperly considered several enhancing factors and improperly failed to consider several mitigating factors which resulted in an excessive sentence being imposed. Had the appro-

priate enhancing and mitigating factors been considered, Defendant's sentence would more properly have been in the middle of the range, or twenty (20) years.

4.    Defendant's excessive sentence for Count II of the indictment violates her rights under both the Tennessee and United States Constitutions.

Respectfully submitted, this 25th day of July, 1996.

CHRISTA GAIL PIKE

BY: _____
Julie A. Martin
Attorney for Defendant
BPR #015546
P.O. Box 426
Knoxville, TN 37901-0426
423/523-7733

**Certificate of Service**

I hereby certify that a true and exact copy of the foregoing Amendment has been forwarded to Mr. Bill Crabtree and Ms. Jo Helm of the Knox County District Attorney General's Office by hand-delivery on this 25th day of July, 1996.

_____
Julie A. Martin, Attorney

amendment.mnt

THE STATE                           NO. 58183A

VS

CHRISTA PIKE, ALIAS                 FIRST DEGREE MURDER & CONSPIRACY TO
                                    COMMIT FIRST DEGREE MURDER

Came the Attorney General for the State, also defendant in proper person, having counsel present and the defendant's Motion for Judgment of Acquittal or Alternatively, Motion for New Trial and Amendment for Motion For New Trial came on for hearing. Having heard the proof in this cause and having heard arguments of counsel, said Motion for New Trial is hereby OVERRULED.  This defendant, being indigent, the Court Reporter is directed to

000431

prepare a complete transcript of proceedings for use of the defendant pending any appeal of this case; the fee for which shall be paid for by the State as provided by Chapter 221 of Acts of 1965.

COURT ADJOURNED UNTIL FRIDAY, JULY 26, 1996 AT 9:00 A.M.


    (S) MARY BETH LEIBOWITZ
        MARY BETH LEIBOWITZ, JUDGE
        DIVISION III
        CRIMINAL COURT

000432

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
JULY TERM 1996
MINUTE BOOK 170, PAGE 684

TUESDAY, AUGUST 20, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

## IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE DIVISION III

| | |
|---|---|
| STATE OF TENNESSEE,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTA GAIL PIKE,<br><br>Defendant. | FILED<br>BY MARTHA PHILLIPS. CLERK<br><br>AUG 20 1996<br><br>KNOX COUNTY CRIMINAL COURT<br>...S TN |

No.: 58183-A

### NOTICE OF APPEAL

**PLEASE TAKE NOTICE** that the Defendant, Christa Gail Pike, hereby appeals, as a matter of right, to the Court of Criminal Appeals, at Knoxville, Tennessee, the final judgment of this Court entered on or about the 25th day of July, 1996, denying the Defendant's motion for new trial and challenge to the imposition of the death penalty.

This the ___20th___ day of August, 1996.

CHRISTA GAIL PIKE

BY: _____

William C. Talman
Supreme Court BPR# 012262
Attorney for Defendant
P.O. Box 506
Knoxville, Tennessee 37901-0506
Telephone: (423) 579-9060
Facsimile: (423) 573-2032

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 123 of 145
PageID #: 456

420

BY: _____
Julie A. Martin
Supreme Court BPR# 015546
Attorney for Defendant
P.O. Box 426
Knoxville, Tennessee  37901-0426

Telephone:  (423) 523-7733

## CERTIFICATE OF SERVICE

I, William C. Talman, Attorney for the Defendant, hereby certify that I have served a true and correct copy of the foregoing Notice, by personally delivering same, or by depositing same in the U.S. Mail, with sufficient postage to reach its destination, upon Hon. Randall Nichols, District Attorney General for Knox County, Tennessee, at his office in the City-County Building, 400 Main Avenue, Knoxville, Tennessee 37902, Hon. Charles W. Burson, Attorney General and Reporter, 450 James Robertson Parkway, Nashville, Tennessee 37219-5025, and upon the Office of the Clerk, Tennessee Court of Criminal Appeals, P.O. Box 444, Knoxville, Tennessee 37901-0444.

This the ___20th___ day of August, 1996.

_____
William C. Talman, Attorney

COURT ADJOURNED UNTIL WEDNESDAY, AUGUST 21, 1996 AT 9:00 A.M.

(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

000434

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
NOVEMBER TERM 1996
MINUTE BOOK 153, PAGE 21

MONDAY, NOVEMBER 4, 1996

STATE OF TENNESSEE

BE IT REMEMBERED that a Criminal Court for Knox County, Tennessee was begun and held in and for said County at the City-County Building in the City of Knoxville on the First Monday in November, 1996, the same being the 4th day of said month and year, and being the time designated and fixed by law for holding said Court. At which time, present and presiding the Honorable Mary Beth Leibowitz, the duly elected and qualified Criminal Judge, Division I of the 6th Judicial Circuit of the State of Tennessee, when the following proceedings were had and entered of record, to-wit:

Court was opened in due form by Tim Hutchison, High Sheriff of Knox County, Tennessee.

COURT ADJOURNED UNTIL TUESDAY, NOVEMBER 5, 1996 AT 9:00 A.M.

(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
NOVEMBER TERM 1996
MINUTE BOOK 171, PAGE 684

MONDAY, NOVEMBER 18, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT KNOXVILLE

STATE OF TENNESSEE,

    Appellee,

vs.

CHRISTA GAIL PIKE,

    Appellant.

NOV 18 1996

**FILED**
NOV 14 1996
Clerk of the Courts
Rec'd By

No.: 03_____

KNOX COUNTY CRIMINAL
Case No.: 58183-A

### ORDER

Upon motion of the Appellant to allow the Court Reporter an extension of time within which to complete preparation of the transcript in this cause, and for good cause shown, it duly appeared to the Court, and,

**IT IS, THEREFORE, ORDERED** that the Appellant's motion be, and hereby is **GRANTED,** and the Court Reporter shall have an additional sixty (60) days within which to complete the preparation of the transcript in this matter and transmit same to the Clerk of the Criminal Court for Knox County, Tennessee for inclusion in the record on appeal which shall then

000436

be transmitted to the Clerk of this Court within the time allowed by the Rules of Appellate Procedure. *The transcript shall be filed on or before January 12, 199 .*

ENTER this the ___14___ day of November, 1996.

PER CURIAM
COURT OF CRIMINAL APPEALS

APPROVED FOR ENTRY:

William C. Talman
Attorney for Appellant
P.O. Box 506
Knoxville, Tennessee 37901-0506

I, Supreme Court Clerk, hereby certify that this is a true and exact copy of the original

_____Order_____

filed in this court.

This __14__ day of __November__, 19 _96_

SUPREME COURT CLERK

D.C.

COURT ADJOURNED UNTIL TUESDAY, NOVEMBER 19, 1996 AT 9:00 A.M.

(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
NOVEMBER TERM 1996
MINUTE BOOK 171, PAGE 684

WEDNESDAY, NOVEMBER 20, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT KNOXVILLE

| | |
|---|---|
| STATE OF TENNESSEE, | ) |
| Appellee, | ) |
| | ) |
| v. | )  No. 03C01-9611-CR-00408 |
| | ) |
| | )  Knox County |
| CHRISTA GAIL PIKE, | )  DKT 58183 |
| | ) |
| Appellant. | ) |
| | ) |

FILED
BY MARTHA PHILLIPS, CLERK
NOV 20 1996
KNOX COUNTY CRIMINAL COURT
KNOXVILLE, TN

FILED
NOV 18 1996
Clerk of the Courts
Rec'd By____

### ORDER STAYING EXECUTION

The defendant, Christa Gail Pike, has moved to stay execution, presently set for January 12, 1997, pending the completion of the direct appeal in this case. The state has chosen not to respond. It appearing that a notice of appeal was filed on August 20, 1996, and that an appeal as of right is presently proceeding, it is hereby

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 128 of 145
PageID #: 461

ORDERED that the defendant's execution is stayed pending the completion of this direct appeal.

ENTER this 15th day of November, 1996.

_____
JUDGE

I, Supreme Court Clerk, hereby certify that this is a true and exact copy of the original

_____Order_____

filed in this cause.

This __18__ day of __November__, 19 __96__

SUPREME COURT CLERK

By _____ D.C.

COURT ADJOURNED UNTIL THURSDAY, NOVEMBER 21, 1996 AT 9:00 A.M.

<u>(S) MARY BETH LEIBOWITZ</u>
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

000439

IN THE CRIMINAL COURT OF KNOX COUNTY, TENNESSEE, DIVISION III
NOVEMBER TERM 1996
MINUTE BOOK 171, PAGE 684

WEDNESDAY, NOVEMBER 27, 1996

Court met pursuant to adjournment, present and presiding the Honorable Mary Beth Leibowitz, Judge of Division III, Criminal Court for Knox County, Tennessee, when the following proceedings were had and entered of record, to-wit:

## IN THE CRIMINAL COURT FOR KNOX COUNTY, TENNESSEE
## DIVISION III

| | |
|---|---|
| STATE OF TENNESSEE, | ] |
| | FILED<br>BY MARTHA PHILLIPS, CLERK |
| Plaintiff, | ] |
| | **NOV 27 1996** ] |
| vs. | ] No.: 58183-A |
| | KNOX COUNTY CRIMINAL COURT<br>KNOXVILLE, TN ] |
| CHRISTA GAIL PIKE, | ] |
| | ] |
| Defendant. | ] |

### DESIGNATION OF RECORD ON APPEAL

TO: HONORABLE MARTHA PHILLIPS
Clerk of the Criminal Court for Knox County, Tennessee
City-County Building
Knoxville, Tennessee 37902

Comes the Defendant, Christa Gail Pike, by and through Counsel, who respectfully requests that the Clerk of this Court include the following items in the record on appeal, which is transmitted from this Court to the Court of Criminal Appeals:

1. A complete transcript of the trial proceedings, including voir dire and jury selection.

2. A complete list of all the potential jurors interviewed and excused by the court during the jury selection process.

3. The following exhibits to the jury trial proceeding:

(a) all photographs introduced at trial regardless of their size. Exhibits 1-5, 7, 13-15, 23-25, 31-32, and 39-47.

(b) all charts and diagrams. Exhibits 6, 11, 12, and 38.

(c) the skull, piece of skull and piece of bone, being exhibits 8, 9, and 10, respectively.

This the __26th__ day of November, 1996.

CHRISTA GAIL PIKE

BY: _____

William C. Talman
Supreme Court BPR# 012262
Attorney for Defendant
P.O. Box 506
Knoxville, Tennessee 37901-0506

Telephone: (423) 579-9060
Facsimile: (423) 573-2032

**CERTIFICATE OF SERVICE**

I, William C. Talman, Attorney for the Defendant, hereby certify that I have served a true and correct copy of the foregoing Notice, by personally delivering same, or by depositing same in the U.S. Mail, with sufficient first class postage to reach it's destination, upon Hon. Randall Nichols, District Attorney General for Knox County, Tennessee, City-County Building, 400 Main Avenue, Knoxville, Tennessee 37902, upon Hon. Charles W. Burson, Attorney General and Reporter, 450 James Robertson Parkway, Nashville, Tennessee 37243-0485, and upon Hon. Frankie Lewis, Chief Deputy Clerk, Office of the Clerk, Tennessee Court of Criminal Appeals, P.O. Box 444, Knoxville, Tennessee 37901-0444.

This the 26th day of November, 1996.

_____
William C. Talman, Attorney

COURT ADJOURNED UNTIL FRIDAY, NOVEMBER 29, 1996 AT 9:00 A.M.

(S) MARY BETH LEIBOWITZ
MARY BETH LEIBOWITZ, JUDGE
DIVISION III
CRIMINAL COURT

Case 1:12-cv-00035-HSM-SKL Document 7-3 Filed 08/01/12 Page 131 of 145 PageID #: 464

428

000441

# REPORT OF TRIAL JUDGE IN **FIRST-DEGREE MURDER CASES**\*

IN THE _Criminal_ COURT OF _Knox_ COUNTY

STATE OF TENNESSEE

VS.

_Christa Gail Pike_
(Defendant)

Case No. _58183 -A_

Sentence of Death (X)
or
**Life Without Parole ( )**
or
Life Imprisonment ( )

### A. DATA CONCERNING THE TRIAL OF THE OFFENSE

1. Brief summary of the facts of the homicide, including the means used to cause death:

   _Victim brutally beaten with chunks of asphalt breaking her skull AND SUSTAINED MULTIPLE SLASH WOUNDS INCLUDING TO THE THROAT WHILE SHE WAS STILL ALIVE_

2. How did the defendant plead?     Guilty ( )     Not guilty (X)
3. Was guilt determined with or without a jury? With (X) Without ( )
4. Separate Offenses:
   a. Were other offenses tried in the same trial? Yes (X) No ( )
   b. If yes, list those offenses, disposition, and punishment:
      _CONSPIRACY TO COMMIT 1ST DEGREE MURDER_
5. Co-Defendants:
   a. Were there any co-defendants in the trial? Yes (X) No ( )
   b. If yes, what conviction and sentence were imposed on the co-defendants?
      _SHIPP-NOT YET TRIED - SEVERED_
      _PETERSON - Acc. AFTER FACT IN SEP. INDICTMENT - PLED ORIG CHARGE DISMISSED_
   c. Nature of the co-defendants' role in offense:
      _SHIPP- UNKNOWN AT THIS TIME_
      - _PETERSON - OBSERVED EVENTS_

---

\* A separate report must be submitted for each defendant convicted under T.C.A. § 39-13-202, irrespective of punishment.

-1-

000442

d. Any further comments concerning co-defendants:

_____

_____

6. Other Accomplices:
   a. Were there any persons not tried as co-defendants who the evidence showed participated in the commission of the offense with the defendant? Yes ( ) No (X)
   b. If yes, state the nature of their participation, whether any criminal charges have been filed against such persons as a result of their participation and the disposition of such charges, if known:

_____

_____

_____

_____

_____

   c. Did the accomplice(s) testify at the defendant's trial?
      Yes ( ) No (X)

7. **Did you as "thirteenth juror" find that the defendant was guilty beyond a reasonable doubt?**
      Yes (X) No ( )

8. Did the defendant waive jury determination of punishment?
      Yes ( ) No (X)

9. a. **Did the State seek the death penalty? Yes (X) No ( )**
   b. **Did the State seek life imprisonment without parole? Yes (X) No ( )**
   c. What sentence was imposed? Death (X) **Life Without Parole** ( ) Life Imprisonment ( )
   d. If life imprisonment, was it imposed as a result of a hung jury?
      Yes ( ) No ( )

10. Aggravating Circumstances, T.C.A. § 39-13-204(i):
    a. Were statutory aggravating circumstances found? Yes (x) No ( )
    b. Which of the following statutory aggravating circumstances were instructed and which were found?

| | Instructed | Found |
|---|:---:|:---:|
| (1) The murder was committed against a person less than twelve (12) years of age and the defendant was eighteen (18) years of age, or older. | ( ) | ( ) |
| (2) The defendant was previously convicted of one (1) or more felonies, other than the present charge, **whose statutory elements involve the use of violence to the person.** | ( ) | ( ) |
| (3) The defendant knowingly created a great risk of death to two (2) or more persons, other than the victim murdered, during the act of murder. | ( ) | ( ) |
| (4) The defendant committed the murder for remuneration or the promise of remuneration or employed another to commit the murder for remuneration or the promise of remuneration. | ( ) | ( ) |

-2-

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 133 of 145
PageID #: 466

430

(5) The murder was especially heinous, atrocious, or cruel in that  ⊗  ⊗
it involved torture or **serious physical abuse beyond that
necessary to produce death.**

(6) The murder was committed for the purpose of avoiding,  ⊗  ⊗
interfering with, or preventing a lawful arrest or prosecution
of the defendant or another.

(7) **The murder was knowingly committed, solicited, directed, or  ( )  ( )
aided by the defendant, while the defendant had a substantial
role in committing or attempting to commit, or was fleeing
after having a substantial role in committing or attempting to
commit, any first degree murder, arson, rape, robbery,
burglary, theft, kidnapping, aircraft piracy, or unlawful
throwing, placing or discharging of a destructive device
or bomb.**

(8) The murder was committed by the defendant while **the  ( )  ( )
defendant** was in lawful custody or in a place of lawful
confinement or during **the defendant's** escape from lawful
custody or from a place of lawful confinement.

(9) The murder was committed against any **law enforcement  ( )  ( )
officer,** corrections official, corrections employee or
**firefighter,** who was engaged in the performance of official
duties, and the defendant knew or reasonably should have
known that such victim was a **law enforcement** officer,
corrections official, corrections employee or **firefighter**
engaged in the performance of official duties.

(10) The murder was committed against any present or former  ( )  ( )
judge, district attorney general or state attorney general,
assistant district attorney general or assistant state attorney
general, due to or because of the exercise of the victim's
official duty or status and the defendant knew that the
victim occupied such office.

(11) The murder was committed against a national, state, or local  ( )  ( )
popularly elected official, due to or because of the official's
lawful duties or status, and the defendant knew that the
victim was such an official.

(12) The defendant committed "mass murder" which is defined as  ( )  ( )
the murder of three (3) or more persons within the State of
Tennessee within a period of forty-eight (48) months, and
perpetrated in a similar fashion in a common scheme or plan.

(13) **The defendant knowingly mutilated the body of the victim  ( )  ( )
after death.**

Relate any significant aspects of the aggravating circumstance(s) that influence the
punishment._____

_____

_____

-3-

c. Were the aggravating circumstances found supported by the evidence?   Yes (X) No ( )

11. Mitigating Circumstances, T.C.A. § 39-13-204(j):

a. Were mitigating circumstances in evidence? Yes ( ) No (X)

b. If so, what mitigating circumstances were in evidence?

| | | INSTRUCTED | | FOUND |
|---|---|---|---|---|
| | | ~~Yes~~ | ~~No~~ | NONE |
| (1) | The defendant has no significant history of prior criminal activity. | (X) | ( ) | |
| (2) | The murder was committed while the defendant was under the influence of extreme mental or emotional disturbance. | (X) | ( ) | |
| (3) | The victim was a participant in the defendant's conduct or consented to the act. | ( ) | ( ) | |
| (4) | The murder was committed under circumstances which the defendant reasonably believed to provide a moral justification for the defendant's conduct. | ( ) | ( ) | |
| (5) | The defendant was an accomplice in the murder committed by another person and the defendant's participation was relatively minor. | ( ) | ( ) | |
| (6) | The defendant acted under extreme duress or under the substantial domination of another person. | ( ) | ( ) | |
| (7) | The youth or advanced age of the defendant at the time of the crime. | (X) | ( ) | |
| (8) | The capacity of the defendant to appreciate the wrongfulness of the defendant's conduct or to conform the defendant's conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected the defendant's judgment. | (X) | ( ) | |
| (9) | Other (explain): _____ | (X) | ( ) | |

_____
_____
_____

(c) Relate any significant facts about the mitigating circumstances that influence the punishment.

_____
_____
_____

(d) If tried with a jury, was the jury instructed to consider the circumstances indicated in 11(b) as mitigating circumstances? Yes (X) No ( )

12. If the sentence was death, does the evidence show that the defendant killed, attempted to kill, or intended that a killing take place or that lethal force be employed? Yes (X) No ( )

13. Was there evidence that at the time of the offense the defendant was under the influence of narcotics, dangerous drugs or alcohol which actually contributed to the offense?
Yes ( ) No (X)

-4-

If yes, explain: _____
_____
_____
_____

14. **General comments of the trial judge concerning the sentence imposed in this case (e.g., whether this sentence is consistent with those imposed in similar cases the judge has tried, etc.):**

_____
_____
_____
_____
_____
_____

## B. DATA CONCERNING DEFENDANT

1. Name _PIKE, CHRISTA GAIL_    2. Birth Date _3 - 10 - 76_
    last    first    middle         mo./day/year

3. Sex _F_      4. Marital Status:      Never Married    _X_
5. Race _W_                    Married     _____
6. Children: Number _0_           Divorced     _____
             Ages _____          Spouse Dec'd    _____
     Other Dependents: _____
7. Parents:   Father - living?   Yes (X)   No ( )
            Mother - living?   Yes (X)   No ( )
8. Education: Highest Grade or Level Completed: _9th grade; completed GED_
9. Intelligence Level    Low (IQ below 70)    _____
                  Medium (IQ 70 to 100)    _____
                  High (IQ above 100)    _124 accding to Dr Eric Engum_
                  Unknown    _X of reasonable intelligence_
10. a. Was the issue of defendant's mental retardation under T.C.A. § 39-13-203 raised? Yes ( ) No (X)
     b. If so, did the court find that the defendant was mentally retarded as defined in T.C.A. § 39-13-203(a)? Yes ( ) No ( )
11. a. Was a psychiatric or psychological evaluation performed? Yes (X) No ( )
     b. If yes, summarize pertinent psychiatric or psychological information and/or diagnoses revealed by such evaluation.
     _the defense conducted an exam ~~both~~ Dr Eric Engum testified for the defense that the Δ had superior functioning + borderline personality disorder but has no psychosis + is NOT insane_

-5-

000446

12. Brief impression of trial judge as to conduct of defendant at trial and sentencing: _____
_____ *the defendant enjoyed the attention she received* _____
_____ *and was absolutely remorseless* _____

13. Prior Work Record of Defendant:

| | Type of Job | Pay | Dates Held | Reason for Termination |
|---|---|---|---|---|
| a. | *Job Corps Student* | | | *until arrested* |
| b. | | | | |
| c. | | | | |
| d. | | | | |
| e. | | | | |

14. Defendant's Military History:
_____ *None* _____

15a. Does the defendant have a record of prior convictions?
Yes ( ) No (X)
b. If yes, list the offenses, the dates of the offenses and the sentences imposed:

| | Offense | Date | Sentence |
|---|---|---|---|
| 1. | *had pending charge at time, since* | | *nolle prosequied* |
| 2. | *def stated had prior juvenile record* | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

16. Was the defendant a resident of the community where the homicide occurred?
Yes ( ) No (X) *Job Corp Student*

17. Noteworthy physical or mental characteristics or disabilities of defendant:
_____ *None* _____

18. Other significant data about the defendant:
_____
_____
_____
_____

## C. DATA CONCERNING VICTIM

1. Age _____ *19* _____
2. Race _____ *W* _____
3. Sex _____ *F* _____
4. Describe the relationship between the defendant and the victim (e.g., family member,
employer, friend, etc.):
_____ *Acquaintances at Job Corp center* _____

-6-

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 137 of 145
PageID #: 4704 3 4

000447

_____

_____

5. Was the victim a resident of the community where the homicide occurred?  Yes ( )  No (✓) _Job Corp Std_
6. What was the victim's reputation in the community where he or she lived?  Good ( )
   Bad ( )  Unknown (✓)
7. Was the victim held hostage during the crime?
   ___ Yes - Less than **one (1)** hour
   _X_ Yes - More than **one (1)** hour
   ___ No
   If yes, give details: _Victim was held + tortured between_
   _30 minutes & one + hour._

8. a. Describe the physical harm and/or injuries inflicted on the victim:
   _many slash marks (including pentagram carved into chest)_
   _and cut throat (vict still living) Skull bashed_
   _severely_
   b. **If the victim was tortured**, state the nature of the torture:
   _all cuts were while she was alive + begging to be let go,_
   _including pentagram + to throat then her head was_
   _bashed repeatedly - she was conscious until skull fractured_
   _into pieces_

## D. REPRESENTATION OF DEFENDANT

1. How many attorneys represented defendant? _2_
   [If more than one counsel served, answer the following questions as to each counsel and
   attach a copy for each to this report.]
2. Name of counsel: _William C. Talman_
3. Date counsel secured: _5-23-95_  _prev appted counsel in lower ct on 1-17-95_
4. How was counsel secured:  A. Retained by defendant            ( )
                             B. Appointed by court               (X)
                             C. Public defender                  ( )
5. If counsel was appointed by court, was it because:
   A. Defendant was unable to afford counsel?              (X)
   B. Defendant refused to secure counsel?                 ( )
   C. Other (explain) _____

6. How many years has counsel practiced law?    A.  0 to 5      ( )
                                                 B.  5 to 10     ( )
                                                 C.  over 10     ( )
7. What is the nature of counsel's practice?     A. Mostly civil         ( )
                                                 B. General              ( )
                                                 'C. Mostly criminal     ( )
8. Did counsel serve throughout the trial?  Yes (X)  No ( )
9. If not, explain in detail. _____

_____

_____

-7-

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 138 of 145
PageID #: 471
435

10. Other significant data about defense representation. _____

## D. REPRESENTATION OF DEFENDANT

1. How many attorneys represented defendant? _2_
[If more than one counsel served, answer the following questions as to each counsel and attach a copy for each to this report.]
2. Name of counsel: _Julie A. Martin_
3. Date counsel secured: _1-23-96 after withdrawal of B Brown who had case since 1-17-95_
4. How was counsel secured:       A. Retained by defendant       ( )
                                   B. Appointed by court          (X)
                                   C. Public defender             ( )
5. If counsel was appointed by court, was it because:
   A. Defendant was unable to afford counsel?          (X)
   B. Defendant refused to secure counsel?             ( )
   C. Other (explain) _____

6. How many years has counsel practiced law?    A. 0 to 5    ( )
                                                 B. 5 to 10   ( )
                                                 C. over 10   ( )
7. What is the nature of counsel's practice?    A. Mostly civil      ( )
                                                B. General           ( )
                                                C. Mostly criminal   ( )
8. Did counsel serve throughout the trial? Yes ( ) No (X)
9. If not, explain in detail. _see above_ _____

10. Other significant data about defense representation. _____

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 140 of 145
PageID #: 473 437

000450

## E. GENERAL CONSIDERATIONS

1. Was race raised by the defense as an issue in the trial?
   Yes ( ) No (X)
2. Did race otherwise appear as an issue in the trial?
   Yes ( ) No (X)
3. What percentage of the population of your county is the same race as the defendant?

   |   |   |   |
   |---|---|---|
   | a. Under 10% | ( ) |
   | b. 10% to 25% | ( ) |
   | c. 25% to 50% | ( ) |
   | d. 50% to 75% | ( ) |
   | e. 75% to 90% | (X) |
   | f. Over 90% | ( ) |

4. Were members of defendant's race represented on the jury?
   Yes (X) No ( )
   How many of defendant's race were jurors? _majority_
5a. If not, was there any evidence they were systematically excluded from the jury?
   Yes ( ) No (X)
 b. If yes, what was that evidence?_____

6. Was there extensive publicity in the community concerning this case? Yes (X) No ( )
7. Was the jury instructed to disregard such publicity? Yes (X) No ( )
8. Was the jury instructed to avoid any influence of passion, prejudice, or any other arbitrary factor when imposing sentence? Yes (X) No ( )
9. Was there any evidence that the jury was influenced by passion, prejudice, or any other arbitrary factor when imposing sentence? Yes ( ) No (X)
10. If answer is yes, what was that evidence? _____
_____

11a. Was a change of venue requested?          Yes (X) No ( )
  b. If yes, was it granted?                   Yes ( ) No (X)
     Reasons for change if granted:_____
_____
_____

## F. CHRONOLOGY OF CASE

Elapsed Days

1. Date of offense____1-12-95____
2. Date of arrest____1-14-95____                                    2

-8-

Case 1:12-cv-00035-HSM-SKL   Document 7-3   Filed 08/01/12   Page 141 of 145   PageID #: 474

000451

3. Date trial began _____ 3-18-96
4. Date sentence imposed_____ 3-30-96 at end of trial on 1st Ct; 6-6-96 2nd Ct
5. Date post-trial motions ruled on_____ 7-25-96
6. Date trial judge's report completed_____ 8-19-96
*7. Date received by Supreme Court _____

*8. Date sentence review completed_____
*9. Total elapsed days_____
10. Other_____

*To be completed by Supreme Court.

This report was submitted to the defendant's counsel and to the attorney for the state for such comments as either desired to make concerning its factual accuracy.  [SEE NOTE INFRA]

|  | D.A. | Defense Counsel |
|---|---|---|
| 1. Comments are attached | ( ) | ( ) |
| 2. Had no comments | (✗) | ( ) |
| 3. Has not responded | ( ) | (✗) |

I hereby certify that I have completed this report to the best of my ability and that the information herein is accurate and complete.

_____ 11/12/96
Date

Judge, _____ CRIMINAL
Court of _____ KNOX
County
Judicial District _____ 6th

**NOTE:**  If Rule 12 is amended to provide that the trial court clerk is responsible for submitting the report to the trial counsel and receiving their comments (see cover letter and suggested amendment to Rule 12), then this entire section should be deleted.

-9-

Case 1:12-cv-00035-HSM-SKL    Document 7-3    Filed 08/01/12    Page 142 of 145
PageID #: 4793.30

CERTIFICATE OF APPELLATE RECORD

I, Martha Phillips, Clerk of the Criminal Court of Knox County, Tennessee, do hereby certify that the following items herewith transmitted to the Appellate Court are originals or true and correct copies of all or the designated papers on file in my office in the captioned case.

1. Technical record attached to this certificate and consisting of 448 pages.

2. 29 Volumes of Transcript filed in my office on December 26, 1996, and authenticated by the Trial Judge or automatically authenticated under T.R.A.P. Rule 24(f).

3. Exhibits filed in my office on March 30, 1996, and authenticated by the Trial Judge or as provided in T.R.A.P. Rule 24(f) and described as follows:

Ex. 1, consisting of Jury Challenges.

Ex. 1, consisting of Photograph.

Ex. 2, consisting of Photograph.

Ex. 3, consisting of Photograph.

Ex. 4, consisting of Photograph.

Ex. 5, consisting of Photograph.

Ex. 6, consisting of Large Chart.

Ex. 7, consisting of Photograph.

Ex. 8, consisting of Skull.

Ex. 9, consisting of Piece of Skull.

Ex. 10, consisting of Piece of Bone.

Ex. 11, consisting of Anatomy Diagram.

Ex. 12, consisting of Head Diagram.

Ex. 13, consisting of Photograph.

Ex. 14, consisting of Photograph.

Ex. 15, consisting of Photograph.

Ex. 23, consisting of Photograph of Skull.

000453

Ex. 24, consisting of Photograph.

Ex. 25, consisting of Photograph.

Ex. 31, consisting of Photograph.

Ex. 32, consisting of Photograph.

Ex. 38, consisting of Diagram, Crime Scene.

Ex. 39, consisting of Photograph.

Ex. 40, consisting of Photograph.

Ex. 41, consisting of Photograph.

Ex. 42, consisting of Photograph.

Ex. 43, consisting of Photograph.

Ex. 44, consisting of Photograph.

Ex. 45, consisting of Photograph.

Ex. 46, consisting of Photograph.

Ex. 47, consisting of Photograph.

4. Exhibits filed in my office on June 6, 1996, and authenticated by the Trial Judge or as provided in T.R.A.P. Rule 24(f) and described as follows:

Ex. 1, consisting of Letter.

This _____3rd_____ day of _____Feb._____, 1997.

_Martha Phillips_.
Clerk, Criminal Court
of Knox County, Tennessee

000454

STATE OF TENNESSEE                    NO. 58183A

    VS

CHRISTA PIKE                          FIRST DEGREE MURDER &
                                      CONSPIRACY TO COMMIT
                                      FIRST DEGREE MURDER

MARTHA PHILLIPS, CLERK

TRANSCRIPT COSTS

448 pages at $1.50 per page..............................$672.00

Certificate and Seal.....................................$ 4.00

    TOTAL..............................................$676.00