# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | | |
|---|---|---|
| **CHRISTA GAIL PIKE** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:12-CV-35** |
| | ) | **DEATH PENALTY CASE** |
| **DEBRA JOHNSON, WARDEN** | ) | |
| | ) | |
| **Respondent.** | ) | |

---

**ADDENDUM 2**

**DOCUMENT 21**

---

XXIV 03S01-9712-CR-00147

~~03C01-9611-CR-00408~~

IN THE CRIMINAL COURT, DIVISION III, FOR KNOX COUNTY, KNOXVILLE, TENNESSEE

STATE OF TENNESSEE )

V. ) CASE NO. 58183A

CHRISTA PIKE )

FILED
BY MARTHA PHILLIPS, CLERK
DEC 26 1996
KNOX COUNTY CRIMINAL COURT
KNOXVILLE, TN

THE TRANSCRIPT OF THE EVIDENCE

VOLUME XXI OF XXVII VOLUMES

APPEARANCES:

THE HONORABLE MARY BETH LEIBOWITZ, JUDGE

FOR THE STATE:

WILLIAM CRABTREE
S. JO HELM
Assistant Attorneys General
District Attorney General's Office
City-County Building
Knoxville, Tennessee 37902

FOR THE DEFENDANT:

WILLIAM C. TALMAN
Attorney-at-law
P. O. Box 506
Knoxville, Tn. 37901-0506

JULIE A. MARTIN
Attorney-at-law
P. O. Box 426
Knoxville, Tn. 37901-0426

FILED
Clerk of the Courts
FEB 5 - 1997
MAILED
CERTIFIED
REGISTERED
REC'D BY

# TABLE OF CONTENTS

VOL. XXI


| | PAGE |
|---|---|
| MARK WAGGONER: | |
| Direct Examination | 2000 |
| LANNY JANEWAY: | |
| Direct Examination | 2007 |
| Direct Examination (con't) | 2069 |
| Cross-examination | 2097 |

Waggoner - direct

Knoxville Police Department Criminalistics Unit?

A Yes, sir, I was.

Q And what other officers were you working with there?

A Ah, Lanny Janeway and David Burns.

Q And concerning the evidence that was taken at the crime scene at that particular time, ah, Lanny Janeway was the one primarily responsible for that, is that correct, even though the others worked with him?

A Yes, sir, he was.

Q Now, other than at the scene on the 13th day of January of 1995, did you have an occasion to go to a location, a Texaco Station on Cumberland Avenue on the 14th day of January, 1995?

A Yes, sir, I did.

Q And who directed you to this particular, ah, service station?

A Ah, Investigator York and Captain Day informed me that I was going to follow them and we went to that location first on Cumberland Avenue.

Waggoner - direct

Q And was there anyone else with them?

A Ah, yes, sir, there was.

Q Who was that?

A Ah, Christa Pike.

Q Is that the woman who is seated over here?

A Yes, sir, it is.

Q Now, what were you looking for at this service station?

A Ah, I was informed to look inside the garbage can and the wastebasket and look for I.D. cards and a knife, and a pair of gloves.

Q And was Ms. Pike there at the time that you were informed?

A Ah, she didn't tell me, personally, no, sir.

Q But you were directed to that location?

A Yes, sir, I was.

Q And did you look at that location?

A Yes, I did.

Waggoner - direct

Q And what did you find?

A Well, first, I went in and took possession of the garbage bag in the women's restroom. And I was afraid they may have emptied the garbage so I had F.B.I. come out and take the dumpster and I took possession of all that and took it to Kentucky Street Garage. And then I searched both the bag that came from the wastebasket and the garbage, the, the, dumpster.

Q Okay.

From the wastebasket did you find anything?

A Yes, sir, I did.

Q And what did you find?

A I found a pair of black gloves and stuffed inside one of the gloves were two I.D. cards.

MR. CRABTREE: May I approach, Your Honor?

THE COURT: Yes, sir.

MR. CRABTREE: Your Honor, if I may, I would ask that this bag and the contents thereof be marked as exhibit thirty-five for identification.

Waggoner - direct

Q I will show you this paper bag and ask you to look at the contents therein and if you can tell the Court and jury what that is?
A Okay.
This is the pair of gloves.
Q Now, they were not in the bag when you found them, were they?
A This bag?
Q Yes.
A No, sir.
Q That is for your collection?
A Yeah, that's my collection bag.

MR. CRABTREE: Your Honor, we would ask that the gloves and this bag be filed as exhibit thirty-five.

THE COURT: All right, sir.

(Col. 35 marked and filed.)

MR. CRABTREE: Ask to mark this item as exhibit thirty-six for identification.

And mark this one as exhibit thirty-seven for identification, and put it in the bag, please.

Waggoner - direct

Q I will show you what has been marked as exhibit thirty-six for identification and ask you if you can tell us what that is?
A Yes, sir, I can.
Q And what is that?
A This is a Job Corps Center identification card.
Q And who is that issued for?
A Ms. Colleen Slemmer.
Q And where did you find this?
A It was, ah, stuffed, along with another I.D. card in one of the gloves that I found in the garbage bag, out of the ladies restroom.

MR. CRABTREE: Your Honor, we would ask that this be filed as exhibit thirty-six to these proceedings.

THE COURT: Yes, sir.

(Exhibit 36 marked and filed.)

Q And I will show you what has been marked as exhibit number thirty-seven for identification, in that plastic bag.
A Yes.
Q And can you tell us what that

Waggoner - direct

is?

A This is a Florida drivers license that is stamped "I.D. card" on it.

Q And in what name is that issued?

A Ah, Colleen Ann Slemmer.

Q And where was that found?

A This was found along with the Job Corps I.D. stuffed inside, ah, one of the black gloves, that I got out of the garbage bag.

MR. CRABTREE: Your Honor, we would ask to file this as exhibit thirty-seven.

THE COURT: Okay.

(Exhibit 37 marked and filed.)

Q And these were located at this Texaco Service Station, Food Mart, on Cumberland Avenue, is that correct?

A Yes, sir.

2123 West Cumberland Avenue.

Q And that was on the 13th day of January, 1995?

A 14th.

Q 14th day of January, 1995?

A Yes.

Janeway - direct

MR. CRABTREE: Pass this witness for cross-examination.

MS. MARTIN: We have no questions for this witness, and we can agree to excuse him.

MR. CRABTREE: Come down, please.

THE COURT: Thank you, Officer Waggoner.

MR. CRABTREE: And may these exhibits be passed to the jury?

THE COURT: Yes, sir, they may.

MR. CRABTREE: Call Officer Lanny Janeway.

(Whereupon, the witness was so sworn.)

LANNY JANEWAY, having been duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MR. CRABTREE:

Q Sir, would you please state your name for the Court and jury?

A Lanny Janeway.

Q And what do you do?

Janeway - direct

A I'm an Evidence Technician for the Knoxville Police Department.

Q And how long have you been employed in that capacity?

A Ah, a little over a year.

Q Now, sir, I would ask you, if you would, to recall back to the 14th day of January, of 1995, and I would ask if you were working on that day?

A Yes, I was.

Q On the morning of that day did you have occasion to go to a location on the Agriculture campus of the University of Tennessee, located in Knox County, Tennessee?

A Yes, I did.

Q And at approximately what time were you sent to that area?

A I believe we received the call at approximately 8:10 A.M.

Q And, ah, you were going there in your capacity as a Specialist with the Criminalistics Division?

A That's correct.

Q And what, exactly, do you do

Janeway - direct

with the Criminalistics Division?

A My job entails, ah, mainly investigating crime scenes, which would be, ah, gathering, collecting evidence, packaging it, probably to be sent to the lab, or to preserve the evidence, photographing crime scenes, preserving the crime scene, as best I can, so that it might later be presented as evidence in a Court of law.

Q And was that your purpose in going to this location on the University of Tennessee Agriculture campus?

A Yes, it was.

Q Did other members of the Criminalistics Unit go with you?

A Yes.

Q What other members went?

A Ah, David Burns was in the same vehicle as I. Then, ah, probably thirty minutes or so after we arrived on the scene, Specialist Mark Waggoner with the Criminalistics Unit arrived to assist us.

Q And when you arrived at this location would you just please tell us what you first observed?

Janeway - direct

A Okay.

The first thing I observed was, was patrol cars, several of them, as we were entering the area. I also observed crime scene tape being across the roadway leading into the area.

Q Now, what are you referring to as crime scene tape?

A It's a yellow tape with black lettering that says, "crime scene, do not cross."

Q All right.

A Ah, that was stretched across the roadway leading into the crime scene.

Ah, several police officers were there, and ambulances, ambulance personnel, ah, detectives, supervisors, ah, with both U.T. and Knoxville Police Department.

Ah, we approached the scene on foot, and just after crossing under the, ah, crime scene tape, the first thing I really observed, ah, about the crime scene was the large pool of blood in the roadway up ahead of me, sort of in the right half of the roadway.

Q Okay.

Janeway - direct

Please continue.

What else did you observe?

A Ah, upon approaching that large pool of blood I first observed a, what I would call, a scuffle area, because of the, ah, mud and leaves at the edge of the roadway had been disturbed, like there had been a struggle there.

And continued approaching the large pool of blood I observed what appeared to be hair laying there at the edge of the roadway, ah, it was light colored, consistent with the, ah, ah, what I later found out to be the victim's hair.

Ah, I observed what appeared to be a imprint, possibly a shoe print, in a small pool of blood, and, ah, another pool of blood beside it.

Q And please continue.

What did you do then?

A Okay.

I continued walking towards the large pool of blood. Once there I stopped at the edge of the large pool of blood and I could see drag marks and a small trail of blood leading off to the right.

Janeway - direct

So my attention, I turned and looked to the right, and I saw the victim laying, ah, off the roadway there, ah, sort of in the briars and bushes, there at the edge of the roadway.

Q And what did you observe about the victim?

A Ah, from standing there, the victim, I could see she was very bloody. She was nude from the waist up.

I observed, ah, what was later termed to be her clothing hanging in the bushes and trees above where she was laying.

She was laying, ah, mostly face down, with her head tilted a little bit over on the left side, resting on her left arm. And her arms were up over her head like this. (gestured)

Q And please continue.

A Ah, I didn't approach the body at that time.

One of the detectives, I believe it was Sergeant Brock, called my attention to some, ah, blood drippings down next to, ah, a

Janeway - direct

cross-tie post at the roadway which led down to the bike trail.

So, I went down there and observed that blood, then on, ah, approximately four feet from that post was a small pool of blood.

I also observed that.

Ah, while I was down there at the small pool of blood near the post the medical examiner arrived.

So, when he approached the body I did, also, and also with Burns, which, I was directing him, as to what photographs of the body I wanted taken, while the medical examiner, or the coroner, was doing his examination.

Q How did the body appear when you approached it?

A Ah, the body was, was very bloody and muddy. Ah, I could see a large cut across her back. I believe it looked, I believe it was from the, ah, right shoulder to the left kidney area, one continuous large cut; several other smaller slash marks, ah, then the, ah, medical examiner and one of the ambulance

Janeway - direct

personnel rolled the body over onto its back.

At this time I observed a large gash in the victim's throat and several smaller gashes. And, also, smaller gashes and slash marks on the victim's chest and abdomen.

Q Anything else?

A I also observed the victim's jeans, in the crotch area, had been cut, all with the same instruments that was used to cut her torso.

Q Anything else?

A There was a, ah, a red colored piece of cloth that was around her throat that appeared, apparently had been used as a gag.

Q Now, once you made these observations--and did you make any other observations concerning the scene, that you recall, at this particular time?

A Ah, laying off to the, ah, a short distance from the victim's feet I observed a large chunk of asphalt that had blood stains and hair on it. And this hair, also, was consistent in color of the victim's hair.

Q Now, as part of your job, you

Janeway - direct

now have testified concerning your observations--what are you to do with these things that you find?

A Okay.

The next thing would be to, ah, get all the photographs which, ah, technician Burns was taking the photographs as I was directing him, as to what photographs I wanted taken, but that was not until I had, had walked back through what we determined to be the entire crime scene area, which was a reasonable distance, ah, around the area of the body, and to locate all and any evidence that might be in that area.

Q Had this area been secured at this time?

A Yes, it had.

MR. CRABTREE: May I have just a moment, Your Honor?

THE COURT: Yes, sir.

Q Now, I believe you have indicated that you did, once this was done you caused photographs to be made, is that correct?

A That's correct.

MR. TALMAN: Your honor, could

Janeway - direct

we approach?

THE COURT: Sure.

BENCH CONFERENCE

MR. TALMAN: Judge, we are going to object to the photographs again for the same reason.

MR. CRABTREE: I thought that they wanted the person who caused them to be photographed to testify about it.

THE COURT: Well--

MR. CRABTREE: I think that was the basis of one of their original objections.

MS. MARTIN: If they want to show it to him, but there is no need to again pass it to the jury.

THE COURT: I am going to remind you that the jury will have this evidence in the jury room and that they are going to see it to their heart's delight.

MR. TALMAN: But we need to make our objection.

THE COURT: I understand.

Janeway - direct

Once again let's pass it once for the witness and that's the end--and that's okay.

Now, while we are at it--I don't know how much longer the State's proof is going to go--are you going into tomorrow?

MR. CRABTREE: Yes.

THE COURT: Okay.

END OF BENCH CONFERENCE

Q Let me show you what has previously been marked as exhibit one, two, three, four, and five, and I would ask you to look at those photographs, please.

And I would ask you if those photographs are photographs that you have referred to that you caused to be made at the scene on, ah, the 13th day of January, 1995?

A Yes, sir, they are.

Q And they accurately depict what you saw at that particular time, is that correct?

A Yes, sir, they do.

Janeway - direct

Q Now, once you have caused the photographs to be made, have located these particular, any evidence, what do you do with that?

What do you do as far as that is concerned?

A Okay.

Then I do a diagram, or crime scene sketch, of all evidence that is discovered before it is ever moved.

Q And did you do that in this case?

A Yes, I did.

MR. CRABTREE: I ask to mark this as exhibit thirty-eight for identification.

THE COURT: Thirty-eight.

MR. TALMAN: General, I would like to see that.

MR. CRABTREE: Yes, I'm sorry.

(Showed item to Defense Counsel.)

Q I would show you what has been marked as exhibit thirty-eight for identification and ask if you could tell the Court and jury what

Janeway - direct

that is?

A Yes, sir, I can.

This is a blowup of a diagram that I completed, showing the area, locations of evidence of the, ah, murder scene on the U.T. campus.

Q And this is the diagram that you, yourself, made, is that correct?

A Yes, sir, that's correct.

Q Now, you have a notation at the top that this is not to scale.

What does that mean?

A Ah, well, if you, if you put something to scale, then one inch would have to equal a foot, or ten feet, or whatever scale you drew it to.

I did not do that.

I am not that good an artist.

I just tried to make appropriate to where everything is, is, as close as I can draw it, to being the way it was.

Q Let me ask you a question.

I notice that you have a number of measurements on there.

Janeway - direct

A Yes.

Q Are those correct?

A Yes, they are to the exact inch.

Q Those were measured off?

That is not something you estimated or tried to, but you measured those?

A Those were measured with a measuring tape.

Q Okay.

MR. CRABTREE: Your Honor, we would ask to file this as exhibit thirty-eight.

THE COURT: All right, sir.

That will be exhibit thirty-eight to his testimony.

(Exhibit 38 marked and filed.)

MR. CRABTREE: May I set this up, Your Honor?

THE COURT: Yes, sir.

MR. CRABTREE: And may I ask the witness to come down from the witness stand?

THE COURT: With regard to the chart, Detective Janeway?

THE WITNESS: Yes, Your Honor.

Janeway - direct

THE COURT: Can you pull it back just a little bit, please? About six inches. That's good. Thank you.

Q Now, if you would, I believe you have used certain reference points on this diagram, is that correct?

A Yes, sir.

Q And would you explain what these reference points are?

A Yes, sir.

As you can see, the building that says RP-1? That stands for reference point 1.

And I used the corner of this building here, I don't know what that building is, ah, but it is right next to the smokestack which is a circle here, and labeled RP-2, which stands for reference point 2.

There is a huge iron door at the bottom of that smokestack and on the front of it.

And I used the corner, the hinged side, of that iron door as reference point number 2.

Janeway - direct

And down the roadway here, this is a paved road, and it goes down here and forks.

And on the right fork there is a railroad cross-tie that has been planted, so to speak, in the ground as a post of some type.

And that is labeled reference point 3.

And the reason I use three reference points, is so that I can show an accurate placement by having the item measured from at least two of the three reference points. So if I have to I can go back and place each piece of evidence that I have on this diagram back in the exact place it was when I observed it.

Q Okay.

Now, show how the reference points work here, if you will.

Would you please point to where the body was located?

A Okay.

The body was laying right here.

Q Okay.

Janeway - direct

A Which would be--

Q And how far is that from reference point number 1?

A Okay.

From reference point number 1, it would be this line here, follow it down and see that it is 39 feet from the top of the victim's head to reference point 1, being the corner of the building.

Q And reference point number 2, how far is the body from reference point number 2?

A From reference point number 2 to the top of the victim's head, would be 33 feet and ten inches.

Q Okay.

And as far as reference point 3?

A Reference point number 3 to the top of the head, to the cross-tie is 66 feet and seven inches.

Q And is each item that you have placed on this diagram located in a fashion similar to what you have testified concerning this body?

Janeway - direct

A Yes, sir. That's correct.

Q Now, all of the items that you saw on the diagram, I mean, all the items that you saw there at the scene, did you put all of them on the diagram, or are there some that don't appear?

A No, sir, not all of them.

If you, if you get too much stuff in here then your lines all run together and it is hard for me to see, and impossible, almost, for a jury or anyone else to see which line goes to what piece of evidence.

So, what I try to do, is get the majority, or the, what I deem to be the most important pieces of evidence on the chart.

Q And each of the items that you did find and that you have references on this diagram, have you made a photograph of that item as it appeared there at the scene before you picked it up?

A Yes, sir--

Q Before you altered it in any way?

A I either took the photograph or directed the photograph be taken of it.

Janeway - direct

Q I will show you--I guess I better mark it first--exhibit thirty-nine for identification.

I will show you what has been marked as exhibit thirty-nine for identification and ask if you recognize that?

A Yes, sir.

That is the large pool of blood that I referred to earlier being in the right side of the roadway.

Q And would you point to where that is located, please?

A That is this circular area here marked, "large pool of blood."

MR. CRABTREE: And if I may, Your Honor, if I may place a red dot where that is located on there?

THE COURT: Yes, sir.

Q And I will put it right above it, if that is okay, right there is where you are talking about?

A Yes, sir.

MR. CRABTREE: And, Your Honor, I might want to ask, also, if we might

Janeway - direct

place a, ah, red dot on the back of this photograph and label both of these as (a)?

THE COURT: Yes, sir, that's fine.

MR. CRABTREE: And we would move that this be filed as exhibit number thirty-nine, the photograph.

THE COURT: Yes, sir, that is exhibit thirty-nine.

(Exhibit 39 marked and filed.)

Q Now, where we are putting this red dot and the (a) on the photograph, that is corresponding to this picture, is that correct?

A Yes, sir, it is.

MR. CRABTREE: Your Honor, I would ask to mark this as exhibit forty for identification.

THE COURT: Okay.

Q And I will show you what has been marked as exhibit forty for identification and ask if you can tell the Court and jury what that is?

A Yes, sir.

That is the photograph of the

Janeway - direct

victim as I observed her that morning.

Q And would you please point to where that body was found, where that photograph was taken?

A Right here is the body that's in this photograph.

MR. CRABTREE: And if I may, Your Honor, put a green marker where he has located this?

And ask, also, if we can put a green marker on the photograph?

And may I label both of these as (b)?

THE COURT: Yes, sir.

MR. CRABTREE: And we would ask to file this as exhibit forty.

THE COURT: That will be exhibit forty, sir.

(Exhibit 40 marked and filed.)

Q Now what has been labeled as exhibit forty and a (b) marked on the back of it, is that located the same on the diagram as (b)?

A Yes, it is.

MR. CRABTREE: Ask to mark

Janeway - direct

this as exhibit 41 for identification.

Q I will show you what has been marked as exhibit forty-one for identification and ask that you tell us what that is.

A Yes, sir.

That is the victim's sweater and coat which were laying in the briars and bushes at the feet, in the feet area of the body.

Q Would you please point where that is located on the diagram?

A Okay.

That is not shown on the diagram.

But it will be located in this area.

Q Okay.

In this general area?

A Yes.

MR. CRABTREE: And, Your Honor, I would ask if, ah, if I could put this orange dot in the general area he has indicated there?

THE COURT: Okay.

MR. CRABTREE: Also one on the

Janeway - direct

photograph and label those a (c)?

THE COURT: Yes, sir.

Q And that photograph, forty-one, that has now been labeled (c), is it generally in the area that the (c) is located on the orange dot here?

A Yes, sir.

MR. CRABTREE: Your Honor, we ask to file that as exhibit forty-one.

THE COURT: That will be exhibit forty-one, sir.

(Exhibit 41 marked and filed.)

MR. CRABTREE: Ask to mark this as exhibit forty-two for identification.

Q I will show you what has been marked as exhibit forty-two for identification and ask if you can tell us what that is?

A Yes, sir. That is what I called a scuffle area.

And that is located right here on the diagram.

MR. CRABTREE: Your Honor, if I may, mark that with a yellow dot and label that as (d).

Janeway - direct

THE COURT: Yes, sir.

MR. CRABTREE: And we move to file that as exhibit forty-two.

THE COURT: All right, sir.

That will be exhibit forty-two.

(Exhibit 42 marked and filed.)

Q And what has been marked as exhibit forty-two with the yellow dot (d) on here, is that the area where that was located?

A Yes, sir, it is.

MR. CRABTREE: Ask to mark this as exhibit forty-three for identification.

Q I will show you what has been marked as exhibit forty-three for identification and ask if you can tell us what that is?

A Yes, sir.

That is a chunk of asphalt laying at the edge of the large pool of blood.

Q And would you point to where that appears on the diagram?

A The, this, that little black, if you all can see, that little black dot there in the edge of the circle.

Janeway - direct

And it also, this photograph depicts a ruler in there. That was not there. That was simply placed in there as a scale.

Q And that is used so you can get some scale of the photograph?

A The size of the piece of asphalt.

MR. CRABTREE: Ask to mark this as exhibit forty-three.

(Exhibit 43 marked and filed.)

Q Please point to where it was.

A See that little black dot there?

THE COURT: Did you want to dot it?

MR. CRABTREE: I will in a minute.

THE COURT: Okay.

MR. CRABTREE: I would ask to mark this as exhibit forty-four for identification.

Q I would show you what has been marked as exhibit forty-four for identification and ask if you can tell us what that is?

Janeway - direct

A Yes, sir.

That shows five pieces of asphalt that are all lying in the large pool of blood, and they would actually be, the pieces here, there would be three pieces right there together.

They are actually a point of reference used here where all these lines meet in the large pool of blood.

And the other piece of asphalt, is this other little piece over here, the other little dot.

Can you all see that?

MR. CRABTREE: Your Honor, if I may, I will put a blue dot in the area here, the general area where this is, and ask to put a blue dot on the exhibits forty-three and forty-four, and refer to those together.

THE COURT: Okay.

MR. CRABTREE: Make forty-three (e), forty-four (f) and put (e) and (f) both in here.

Q Now, does that accurately depict where those were located, in that general

Janeway - direct

area, the large pool of blood?

A Yes, it does.

MR. CRABTREE: And ask to file forty-four as an exhibit to his testimony, Your Honor.

THE COURT: All right.

So, that would be forty-four, exhibit to the testimony.

(Exhibit 44 marked and filed.)

MR. CRABTREE: Ask to mark this as exhibit forty-five for identification.

Q I will show you what has been marked as exhibit forty-five for identification and ask you if you can tell us what that is?

A Yes, sir.

This is a large chunk of asphalt, the largest of the pieces, and this piece is located right here near the feet of the victim.

It also, in the photograph, has a scale that was placed in there by myself to be able to indicate the size of that piece of asphalt.

MR. CRABTREE: Your Honor, we would ask if we can also mark this with a blue dot

Janeway - direct

and label that as (g).

THE COURT: All right, sir.

MR. CRABTREE: And offer exhibit forty-five as an exhibit.

THE COURT: All right, sir. Exhibit forty-five.

(Exhibit 45 marked and filed.)

MR. CRABTREE: Ask to mark this as exhibit forty-six for identification?

THE COURT: Okay.

Q I will show you what has been marked as exhibit forty-six for identification.

Please tell us what that is.

A Do you want me to show what point, what I am pointing at in the photograph?

Q Yes.

A All right.

I'm pointing at, in the photograph, some blood stains.

Do you want me--okay--and in the, in the left-hand side of the photograph is the victim's bloody bra.

Q Would you show where that is located?

Janeway - direct

A Okay.

The blood stains are not shown on the diagram due to all these pieces of evidence being right in the same area, but these blood stains will be right at the edge of the roadway here, well, actually, about right here.

Here is the victim's bra.

MR. CRABTREE: Your Honor, we would offer that as exhibit forty-six, and ask if we could put a red dot where that was located here?

A I will need to show her--

Q Okay.

Can you see?

THE COURT: Exhibit forty-six.

(Exhibit 46 marked and filed.)

MR. CRABTREE: And also ask to be able to put a red dot on the photograph and label it as (h)?

THE COURT: All right, sir.

MR. CRABTREE: And has that forty-six been made an exhibit?

THE COURT: Yes, sir. You already did. If you haven't, you have now.

Janeway - direct

MR. CRABTREE: Ask to mark this as exhibit forty-seven for identification.

Q I will show you what has been marked as exhibit forty-seven for identification and ask if you can tell us what that is?

A This is a closer, ah, shot of the victim's bra, along with, down here at the bottom of the photograph, the piece of vine.

Q And you are pointing to where this is located?

A Yes, on the diagram.

MR. CRABTREE: Your Honor, ask to move that as exhibit forty-seven.

THE COURT: All right.

(Exhibit 47 marked and filed.)

MR. CRABTREE: Your Honor, if I could put a yellow dot where that is, also, on the photograph?

THE COURT: Labeled (i)?

MR. CRABTREE: Labeled (i).

Ask to mark this as exhibit forty-eight for identification.

THE COURT: Okay.

Q I will show you what has been

Janeway - direct

marked as exhibit forty-eight for identification and ask if you can tell us what that is?

A Yes, sir.

This is a photograph of the blood drippings on the diagram right here.

MR. CRABTREE: Your Honor, we would ask to file that as exhibit forty-eight and that we may put a red dot on each of these locations?

THE COURT: And label those (j), is that correct?

MR. CRABTREE: Yes.

THE COURT: Okay.

That will be made forty-eight.

(Exhibit 48 marked and filed.)

MR. CRABTREE: Ask to label this as exhibit forty-nine for identification?

Q I will show you what has been marked as exhibit forty-nine for identification and ask if you can tell us what that is?

A Yes.

This is the small area of blood and one that looks to be an imprint, like, part of a shoe print and a small puddle of blood.

Janeway - direct

And that is this mark which is the small pool of blood.

And this smaller mark here is the imprint where you can see what appears to be a shoe print or part of a shoe print in the blood.

It is showing both of those blood stains.

MR. CRABTREE: And ask to mark this as exhibit forty-nine.

Also, ask to mark this in red, a red dot.

Okay?

THE COURT: Yes, sir.

(Exhibit 49 marked and filed.)

MR. CRABTREE: And ask to mark this as exhibit fifty for identification.

Q I will show you what has been marked as exhibit fifty for identification and ask if you can tell us what that is?

A If you are looking, if you are looking at the photograph, on the left here you see reference point three, which is a cross-tie post, in the foreground of the photograph.

In the background of the

Janeway - direct

photograph is the corner of the building, the building--I'm sorry--reference point three right here, the cross-tie post.

In the background of the picture is the corner of the building, which is reference point one, and then the roadway leading past reference point one is the way from which I entered into the scene here.

Q So, you are looking from reference point three toward reference point one?

A Yes.

From here to here.

Q So, if we put a green dot to this here--

A Actually, that would be about right here.

Q All right.

Okay.

Looking toward where over here?

A Towards point one, the building.

MR. CRABTREE: Okay.

Your Honor, we would ask to

Janeway - direct

file this as exhibit fifty.

THE COURT: All right.

MR. CRABTREE: And label this as (1).

THE COURT: A green (1)?

MR. CRABTREE: A green (1).

(Exhibit 50 marked and filed.)

Q And that's the diagram, that's things that you have related that you have located in these photographs represented the way we have got them with the colors, is that correct?

A Yes, sir, that's correct.

Q Would you return to your seat, please?

No, I need you down here. I need you to do some measuring for me.

Okay.

Concerning, ah, I notice that you have labeled on there, ah, the victim's bra.

How far is that from the location of the body?

A Okay.

It would be, ah, from the bra, which is located here, to the pool of blood is

Janeway - direct

sixty-three feet.

From the same area, the pool of blood, to the victim, would be an additional twenty feet, which would be approximately eighty-three feet, from the bra to the top of the victim's head.

Q Okay.

Now, concerning the, you have indicated the large pool of blood is how far from the body?

A It is twenty feet.

Q And I believe you have on here, it is shown where you found some hair, is that correct?

A Yes.

Q But we didn't enter a photograph of that, though?

A No, sir.

Q Would you show where you found the hair?

A Okay.

There was hair in several different places.

But, once again, I don't want

Janeway - direct

to put too much in here because I don't have room for all the lines without muddling up the diagram, till nobody can understand what it is.

The largest clump of hair that I found was located right here on the diagram between the scuffle area and this first small pool of blood.

Q And you have marked that as hair, is that correct?

A Yes, sir.

Q Also, on the scene it appears that you have another blood drippings up here that we did not enter a photograph of, also, is that correct?

A That is correct.

Q And how far is that blood dripping from the body?

A Okay.

From this blood dripping up here, which is a gravel road, to the large pool of blood, is fifty-four feet.

From the pool of blood, again, to the victim's head, is an additional twenty feet, being approximately seventy-four feet.

Janeway - direct

Q Now, what we have labeled as (j) over there.
Can you tell us how far that is from the body, those blood drippings?
A No, sir, I cannot.
Q Okay.
Did you measure that from what, reference point three?
A From reference point three.
Just showing the general area of those blood drippings.
Q And this is the diagram that you have referred to as being the diagram of the crime scene, is that correct?
A Yes, sir, it is.
Q Now, when you were at the crime scene, we have indicated in photographs of things that you picked up, that you took, caused to be taken.
The photographs that we have filed as various exhibits up to here, do those actually depict the way, what they represent it was on the 13th day of January of 1995?
A Yes.

Janeway - direct

Q Now, the items that were actually photographed, did you cause samples of those to be taken?

A Yes, sir, I did.

MR. CRABTREE: And, Your Honor, we are going to need some gloves here.

If it please the Court, we would ask to file the bag and its contents therein as exhibit fifty-one for identification.

THE COURT: All right, sir.

Q I will show you what has been marked as exhibit fifty-one for identification and ask if you can tell us what that is?

A Yes, sir.

This is a clump of hair that is indicted on the, ah, diagram, with, ah, beside the red dot there and labeled hair.

Q Here?

A Yes, sir, right there. That is where this piece of, or, clump of hair came from.

Q And, ah, that is the clump of hair you testified about before about being the largest one, is that correct?

Janeway - direct

A Yes, sir.

Q And did you see the hair of Colleen Slemmer?

A Yes, sir, I did.

Q And is this hair consistent with the color of the hair of Colleen Slemmer?

A Yes, it is.

MR. CRABTREE: Your Honor, I would ask to file this as exhibit fifty-one.

THE COURT: All right, sir.

(Exhibit 51 marked and filed.)

MR. CRABTREE: Ask to mark this as exhibit fifty-two for identification.

THE COURT: Bag and contents?

MR. CRABTREE: Bag and contents.

Q I will show you what has been marked as exhibit fifty-two for identification, and would you tell us what that is?

A This is a swab, or actually two swabs which were sterile. They were opened, dipped in the large pool of blood, ah,--no, I'm sorry--this is a blood sample between the, ah, clump of hair and the large pool of blood which

Janeway - direct

was, I believe it is labeled--

THE COURT: Would it assist the witness to come down and identify this on the diagram?

THE WITNESS: Yes, I can't see from here.

A This sample was taken from this small pool of blood. (On diagram)

THE COURT: Can the jurors all see that?

A To the left of the red dot marked K.

Q Right here. Is that right?

A Yes, sir.

Q Okay.

Thank you.

MR. CRABTREE: Your Honor, we would move this to be filed as exhibit fifty-two.

THE COURT: Yes, sir.

(Exhibit 52 marked and filed.)

MR. CRABTREE: Ask to mark this as exhibit fifty-three for identification.

THE COURT: All right, sir.

Q I will show you what has been

Janeway - direct

marked as exhibit fifty-three for identification and ask if you can tell us what that is?

A Okay.

That is also a hair sample. And it is west of the large pool of blood, and it is one that is not depicted on the diagram.

So, it would actually be--let me get my bearings straight here--it would be, looking at the diagram, above the large pool of blood.

Q In this general area here?

A Somewhere in that area.

Q Okay.

And is this hair also consistent with the hair of Colleen Slemmer?

A Yes, sir, it is.

MR. CRABTREE: Your Honor, I would move to file this as exhibit number fifty-three.

THE COURT: All right, sir.

(Exhibit 53 marked and filed.)

MR. CRABTREE: Let's mark this as exhibit fifty-four for identification.

THE COURT: All right, sir.

Janeway - direct

Q I would show you what has been marked as exhibit fifty-four and ask if you can tell the Court and jury what that is?

A Okay.

That is a piece of asphalt that was laying at the edge of the, ah, large pool of blood.

MR. CRABTREE: Your Honor, I would ask to file this as exhibit fifty-four.

THE COURT: All right, sir.

(Exhibit 54 marked and filed.)

MR. CRABTREE: Ask to mark this as exhibit fifty-five for identification.

THE COURT: Yes, sir.

Q I will show you what has been marked as exhibit fifty-five for identification and ask if you can tell us what that is?

A This is two more sterile swabs which were opened and dipped into the large pool of blood here.

Q Designated large pool of blood on the diagram?

A Yes, sir.

MR. CRABTREE: I ask to file

Janeway - direct

this as exhibit fifty-five.

THE COURT: All right, sir.

(Exhibit 55 marked and filed.)

MR. CRABTREE: Ask to mark this as exhibit fifty-six for identification.

Q I will show you what has been marked as exhibit fifty-six for identification.

Can you tell us what that is?

A Two small pieces of asphalt. One small piece, at the time it was collected, which was approximately ten feet east of the large blood area, and it is not depicted on the diagram.

Q This area here?

A Yes.

MR. CRABTREE: We would ask to mark this as exhibit fifty-six.

THE COURT: Yes, sir.

(Exhibit 56 marked and filed.)

MR. CRABTREE: Ask to mark this as exhibit fifty-seven for identification.

Q I will show you what has been marked as exhibit fifty-seven for identification and ask you to tell us what that is.

A This is small pieces of

Janeway - direct

asphalt which were found laying, actually, at about the center of the pool of blood and where the reference points all lead to, or the lines.

Q In this area right here?

A Yes, sir.

MR. CRABTREE: Ask to file this as exhibit fifty-seven.

THE COURT: Yes, sir.

(Exhibit 57 marked and filed.)

MR. CRABTREE: Ask to mark this as exhibit fifty-eight for identification.

Q I will show you what has been marked as exhibit fifty-eight for identification and ask if you can tell us what that is?

A Yes, sir.

That's the victim's sweater that I observed hanging in the briars and bushes near her feet.

Q In this area here, located on the diagram?

A Ah, I believe it is the orange dot.

Q The orange dot here?

A Yes.

Janeway - direct

Q Okay.

MR. CRABTREE: Your Honor, this is an item which probably won't be passed.

May I show this to the jury?

THE COURT: Yes, sir.

MR. CRABTREE: Ask to file that as exhibit fifty-eight.

THE COURT: Exhibit fifty-eight.

Go ahead.

(Exhibit 58 marked and filed.)

Q Sir, we have removed exhibit fifty-eight from the bag.

Is this the condition it was in when you retrieved it?

A Yes, sir, it is.

MR. CRABTREE: Ask to mark this as exhibit fifty-nine for identification.

Q I will show you what has been marked as exhibit fifty-nine for identification and ask you if you can tell us what that is?

A Yes, sir.

That's the victim's coat which I also found hanging in the briars and bushes

Janeway - direct

there near her feet, also depicted by the orange dot on the diagram.

Q In this area?

A Yes, sir.

MR. CRABTREE: Your Honor, we ask to file this as exhibit fifty-nine.

THE COURT: Yes, sir.

MR. CRABTREE: And also ask if I can remove this?

THE COURT: Yes, sir.

It will be made exhibit fifty-nine.

And do you want to do that now?

(Exhibit 59 marked and filed.)

Q I will remove the coat, exhibit fifty-nine, from the bag and, sir, I will ask you if this was the condition it was in when you found it?

A Yes, sir, it is.

MR. CRABTREE: Ask to mark this as exhibit sixty for identification.

Q I will show you what has been marked as exhibit sixty for identification and ask

Janeway - direct
if you will tell us what that is?
A Yes, sir.
This is a large chunk of asphalt that was found near the victim's feet.
Q Is that depicted by the blue dot there?
A Yes, sir, it is.
Q I believe something else was located with that asphalt, is that correct, according to the diagram?
A Oh, the asphalt had heavy blood stains and hair on it.
Q Would you please remove that?
(Witness removed exhibit.)
MR. CRABTREE: Ask to file this as exhibit sixty, and again may I pass with this?
THE COURT: Yes, sir, please.
(Exhibit 60 marked and filed.)
Q Officer, would you step down and point out what we are referring to as the hair?
A Yes.
The blood stains are going to

Janeway - direct

be hard to see because they are dark colored.

If you can see this, it kind of looks like a wet area--those are blood stains.

And you can see the hair, strands of hair embedded in the asphalt itself.

Q Come down here and explain that to the jury.

A As I explained, the wet looking area on the asphalt, it is hard to see because of the darkness of the asphalt, those are blood stains.

You can see strands of hair embedded at different places in the piece of asphalt.

Q And is this hair consistent with the hair of Colleen Slemmer?

A Yes, sir, it was on that day. It is hard to see there now.

MR. CRABTREE: Did I move that into evidence?

THE COURT: Yes, sir.

MR. CRABTREE: Ask to mark this as exhibit sixty-one for identification?

Q I will show you what has been

Janeway - direct

marked as exhibit sixty-one for identification, and could you tell us what that is?

A Yes, sir.

This is a blood sample that was in the roadway near the beginning of the bike trail which would be, if you are looking at the diagram, from left to right, would be the bottom, or right-hand fork.

Q Down this way?

A Yes.

It is a sample of that blood stain there with that dot, next to the cross-tie post.

Q Okay.

This green area right here?

A No, sir.

We have it labeled.

See the black dot right there, four feet up from the cross-tie?

Q Okay.

That's where that blood sample was taken?

A Yes, sir.

MR. CRABTREE: Your Honor, ask

Janeway - direct

to move it into evidence as exhibit sixty-one.

THE COURT: All right, sir.

(Exhibit 61 marked and filed.)

MR. CRABTREE: Ask to mark this as exhibit sixty-two for identification.

Q I will show you what has been marked as exhibit sixty-two for identification, and ask if you can tell us what that is?

A Okay.

This is a blood sample, also.

It was taken back here where it says blood drippings, and is marked with red and a dot.

Q Back where?

A Ah, right there. No, down here, on the other, on down. Right there.

Q It is already marked with a red dot and J there?

A Yes.

Q All right.

MR. CRABTREE: We would ask to move that in as exhibit sixty-two.

THE COURT: All right, sir.

(Exhibit 62 marked and filed.)

Janeway - direct

MR. CRABTREE: Ask to mark this as exhibit sixty-three for identification.

Q Sir, I will show you what has been marked as sixty-three for identification, and can you tell us what that is?

A Okay.

This is a blood sample in the, ah, roadway, approximately fifteen feet east of the bra, and it's the blood--no, sir, up here at the top of the diagram, right-hand corner--it is in that area.

It is actually to the right of the red dot.

No, right at the edge of the roadway. No, the other side of the red dot. (laughed)

Q Over here?

A No.

Q Come and show us. (On the diagram.)

A This dot depicted on the diagram, but it would actually be in this area right here just, just to the edge of the red dot. Right there on the edge of the roadway.

Janeway - direct

Q Okay.

MR. CRABTREE: We would ask to file this as exhibit sixty-three.

THE COURT: I, I've kind of stopped saying it--but it is exhibit sixty-three.

(Exhibit 63 marked and filed.)

MR. CRABTREE: Exhibit sixty-four for identification.

Q I will show you what has been marked as exhibit sixty-four for identification and ask if you can tell us what that is?

A Yes, sir.

This is a blood sample that was taken in the center of the roadway.

It is not depicted in the diagram either.

That would be the approximate location of it right there.

MR. CRABTREE: Ask to file that as exhibit sixty-four.

THE COURT: All right, sir.

(Exhibit 64 marked and filed.)

MR. CRABTREE: Ask to mark this as exhibit sixty-five for identification.

Janeway - direct

Q Show you what has been marked as exhibit sixty-five for identification.

Could you tell us what that is?

A Yes.

This is a sample of blood taken right near the bra.

Q Here?

A Yes, sir.

Q The one we have marked as H?

A Yes.

Q Okay.

MR. CRABTREE: Ask to file this as exhibit sixty-five.

THE COURT: All right, sir.

(Exhibit 65 marked and filed.)

MR. CRABTREE: Ask to mark this as exhibit sixty-six for identification.

Q Would show you what has been marked as exhibit sixty-six for identification, and would you tell us what that is?

A Yes, sir.

This is the victim's bra that is depicted on the diagram.

Janeway - direct

Q Okay.
Here?

A Yes, sir.

MR. CRABTREE: Ask to file this as exhibit sixty-six.
And, Your Honor, again, may I show this piece of clothing?

THE COURT: If you would, sir.

(Exhibit 66 marked and filed.)

Q The stain on this, what is that?

A That is blood stain.

MR. TALMAN: General, I want to see that.

MR. CRABTREE: Ask to mark this as exhibit sixty-seven for identification.

Q I will show you what has been marked as exhibit sixty-seven for identification, and ask you if you can tell us what that is?

A Yes, sir.
That's a piece of vine, or briar, or whatever you want to call it, which is depicted on the diagram right beside the bra.
And on this vine there is more

Janeway - direct

hair that is consistent with the victim's.

MR. CRABTREE: Ask to file this as exhibit sixty-seven, Your Honor.

THE COURT: All right, sir.

(Exhibit 67 marked and filed.)

MR. CRABTREE: Ask to mark this as exhibit sixty-eight for identification.

THE COURT: Yes, sir.

Q I will show you what has been marked as exhibit sixty-eight for identification, and ask you if you can tell us what that is?

A Yes, sir.

This is a blood sample in the weeds just east of reference point three.

So, it would actually be down below, somewhere in that general vicinity.

MR. CRABTREE: Ask to file this as exhibit sixty-eight.

THE COURT: All right, sir.

(Exhibit 68 marked and filed.)

MR. CRABTREE: Ask to mark this as exhibit sixty-nine for identification.

Q I will show you what has been marked as exhibit sixty-nine for identification,

Janeway - direct

and can you tell us what that is?

A Yes, sir.

This is some leaves containing more hair that is consistent with the victim's that was taken from the place where, near where the bra was laying.

MR. CRABTREE: Ask to file this as exhibit sixty-nine.

THE COURT: All right, sir.

(Exhibit 69 marked and filed.)

Q And we are talking about up here?

A Yes, sir.

MR. CRABTREE: Ask to mark this as exhibit seventy for identification.

MR. TALMAN: Your Honor, after the General completes with that exhibit could we approach?

THE COURT: Yes, sir.

MR. TALMAN: Thank you.

Q I will show you what has been marked as exhibit seventy for identification and ask if you can tell us what that is?

A Okay.

Janeway - direct

This is a leaf that had a drop of blood, or drops of blood on it, very near to reference point number three, being the cross-tie post.

MR. CRABTREE: Ask to file that as exhibit seventy.

THE COURT: Yes, sir.

(Exhibit 70 marked and filed.)

THE COURT: Do you wish to approach the bench?

MR. TALMAN: Yes, Your Honor.

BENCH CONFERENCE

MR. TALMAN: I just want to see how much further we are going to go along--

MR. CRABTREE: I know this is tedious but it has to be done.

THE COURT: It is five after 5:00. If we are going to be sitting here another hour maybe we better take a ten minute break.

MR. CRABTREE: That's fine with me.

Janeway - direct

(Discussion concerning timing.)

END OF BENCH CONFERENCE

THE COURT: Ladies and gentlemen of the jury, it is going to take a little bit more time to finish Mr. Janeway's testimony.

It is now seven after 5:00, and I am going to ask you--I know, if you are feeling kind of the way I do right at this second you need a break, you need to stretch a little bit.

I would like to finish Detective Janeway's testimony prior to concluding for the evening.

And I don't want you to not pay attention.

So, I am going to take a brief recess. All the admonitions I have given you all today are in place. That tells you how tired I am.

Please go with the officers,

and as soon as you are ready to come back in we will be ready to proceed.

(Whereupon, the jury left open Court, after which the following proceedings were had, to-wit:)

THE COURT: Okay.

Anything else before we take a brief recess?

MR. CRABTREE: No, Your Honor.

MS. MARTIN: No, Your Honor.

THE COURT: Court is in recess for a few minutes.

(Whereupon, a recess was had after which the following proceedings were had, to-wit:)

THE COURT: I take it we have decided between us that it might be best to adjourn for the evening and start over again in the morning.

Would you bring the jury in, please?

(Whereupon, the jury returned to open Court. After the call of the jury was waived by all

parties the following proceedings were had, to-wit:)

THE COURT: Ladies and gentlemen, after further consultation with the Attorneys about the time and feeling tired and all those good things, I think it would be best to go ahead and, ah, conclude Officer Janeway's testimony tomorrow morning.

The State will have some further testimony, and, of course, the Defense has the opportunity to cross-examine, and, ah, I think we have done a real good day's work today.

We have done a lot.

The jury spent a lot of time in the courtroom listening to the evidence, and we are, as I said yesterday, moving along pretty well, and I think it is reasonable to give you all a break, and give us a break, and be a little fresher in the morning as a result.

Again, you have not heard all of the evidence.

You may not deliberate, and you may not come to any conclusions in your own mind.

You may not see local

television, national television news, or, ah, local media, please, either newspaper or radio, either.

And I am going to ask all of you to stay with the officers and go with them, and tomorrow morning we will start again, and work further toward getting this case to you.

Thank you.

(Whereupon, the jury left open Court, after which the following proceedings were had, to-wit:)

THE COURT: Officer Janeway, if you want to step down feel free to do that.

Is there anything else you all would like to take up prior to adjourning for the evening?

MR. CRABTREE: Nothing from the State.

MR. TALMAN: Nothing, Your Honor.

THE COURT: Court is adjourned until 9:00 A.M. tomorrow morning.

COURT ADJOURNED AND RECONVENED AT 9:00 A.M., MARCH 27TH, 1996.

THE COURT: All right.

Ladies and gentlemen, we now have microphones that project. Can you hear me? Up here and down there. Believe it or not, the first time that we have ever been able to arrange it.

However, Counsel, when we approach the bench you have to remind me to shut this one off.

So, if we hear a lot of feedback, if we have a problem, let me know.

Are we ready to bring in the jury?

MR. CRABTREE: The State is ready.

MR. TALMAN: The Defense is ready.

THE COURT: Bring them in.

(Whereupon, the jury returned to open Court. After the call of the jury was waived by all parties the following proceedings were had, to-wit:)

THE COURT: Good morning ladies and gentlemen. I hope you all had a restful

Janeway - direct

evening.

We are ready to proceed with Investigator Janeway's testimony this morning.

And, Investigator Janeway, if you will come up and have a seat, please, sir?

Whenever you are ready, General.

DIRECT EXAMINATION (CON'T)

BY MR. CRABTREE:

Q You are the same Specialist Janeway who testified yesterday afternoon, is that correct?

A Yes, it is.

Q And you realize that you are still under oath, is that correct?

A Yes, I do.

MR. CRABTREE: May I approach the witness, Your Honor?

THE COURT: Yes, sir.

Q Now, you have been testifying about, ah, the scene of where this incident occurred on the Agriculture campus at the University, is that correct?

A Yes, sir.

Janeway - direct

Q Now, did you go to, ah, some other location where you obtained evidence in this particular case?

A Yes, sir, I did.

Q And I would ask you, specifically, concerning the residence of Christa Pike, did you have occasion to go there?

A Yes, sir.

Q And where was that location?

A That was on the, ah, Job Corps campus, which is located at, on Dale Avenue.

Q Also, did you have occasion to come in contact with Christa Pike, the Defendant seated here, in the, ah, Safety Security Building of the police department over here in Knoxville?

A Yes, I did.

MR. CRABTREE: Your Honor, I would mark this bag and contents as exhibit seventy-one for identification.

THE COURT: Yes, sir.

Q And I will show you what has been marked as exhibit seventy-one for identification and ask you if you can tell us what that is?

Janeway - direct

A Yes, sir.

That's the pair of tennis shoes that the Defendant was wearing, ah, the morning of the 14th when I observed her in the police station.

Q And why did you seize those particular shoes?

A At the request of Detective York, I seized these shoes for, ah, possible DNA evidence at a later date.

Q Did anything appear on these shoes?

A I see on this one, what appears to be mud and/or blood stains, on the sole of that shoe.

The same thing on the sole of this shoe.

MR. CRABTREE: Your Honor, I would ask to file these shoes and the bag they were in as exhibit seventy-one at this time.

THE COURT: Exhibit seventy-one to the testimony.

(Exhibit 71 marked and filed.)

MR. CRABTREE: And I would ask

Janeway - direct

if I could approach the jury with these?

THE COURT: Yes, sir.

(Exhibit 71 shown to the jury.)

Q And when you took those into your possession what did you do with them then?

A They were placed in the property room at the Knoxville Police Department as evidence. After being secured there they were later sent to the TBI Crime Laboratory in Nashville for DNA testing.

Q Okay.

MR. CRABTREE: I would ask to mark this as exhibit seventy-two for identification. A bag containing a pair of jeans.

THE COURT: Yes, sir.

Q And I believe you indicated that you went to the Job Corps Center, to the room of Christa Pike, is that correct?

A Yes, sir, I did.

Q And what room did you go to?

A Room 452.

Q And did you search that room?

A Yes, I did.

Janeway - direct

Q And I will show you what has been marked as exhibit seventy-two for identification and ask if you recognize that?

A Yes, sir.

These are the pair of blue jeans which have blood stains and mud stains on the, particularly on the legs, and a black belt that was recovered from the locker of Christa Pike.

Q Now, I notice that these jeans have some cut out on them, is that correct?

A Yes, it is.

Q Was those cut outs there when you found the jeans?

A No, sir.

That has been cut out, as you can see, ah, probably by Mr. DePriest, that's his initials, that's where pieces of the material has been cut out and used for DNA sampling, for testing.

Q And, ah, you are referring to the TBI Laboratory?

A Yes.

Q And these were sent there,

Janeway - direct

also, is that correct?

A Yes, sir, they were.

MR. CRABTREE: Your Honor, I would ask to file the jeans and the bag as exhibit seventy-two, and I would also ask that they be passed in front of the jury, also.

THE COURT: Yes, sir.

(Exhibit 72 marked and filed.)

MR. CRABTREE: Your Honor, I would ask to mark this bag and the items therein as exhibit seventy-three for identification.

THE COURT: All right, sir.

Q I will show you what has been marked as exhibit seventy-three for identification and ask you if you recognize that?

A Yes, sir, I do.

Q And what is that?

A This is a statue of some type that was sitting on Christa Pike's dresser in room 452, or chest of drawers.

Q And if you look down on this statute, does it have a particular diagram or outline on the top of it?

A Yes, sir, it does.

Janeway - direct

It has a pentagram.

Q And have you seen that diagram before in relationship to Colleen Slemmer in this case?

A Yes, sir.

That is the same, ah, diagram that was carved into her chest.

MR. CRABTREE: Your Honor, I ask to file this as exhibit seventy-three.

THE COURT: All right, sir.

(Exhibit 73 marked and filed.)

Q And I would ask you, also, if on the, ah, if you had occasion to come in contact with Tadaryl Shipp?

A Yes, sir, I did.

Q And where was that?

A At the police station.

Q And where did you come in contact with Mr. Shipp, did you say at the police station?

A Yes, sir.

Q And when was that?

A That was on January the 14th, also.

Janeway - direct

Q And, ah, did you take anything from his possession at that particular time?

A Yes, sir, I did.

A pair of tennis shoes.

Q Okay.

MR. CRABTREE: Your Honor, I would ask to file these as exhibit seventy-four for identification.

MR. TALMAN: Your Honor, we are going to object unless there is some foundation laid, that it is relevant to the case against, ah, Christa Pike. We would make that objection--

THE COURT: Would you all approach the bench, please?

<u>BENCH CONFERENCE</u>

MR. CRABTREE: Your Honor, I believe we have a second count of the indictment that shows conspiracy, and we have to show that he was involved in this offense, also.

THE COURT: Are you sure you want to object?

Janeway - direct

MR. TALMAN: Well, I think I need to make an objection for the record.

THE COURT: Okay.

That's going to be, Tadaryl Shipp has been indicted of an offense, and he has a part in it of some sort which may or may not be to Ms. Pike's benefit, and, ah, I will allow the Attorney General to introduce whatever he has received of Tadaryl Shipp's.

Mr. Coffey (Mr. Shipp's attorney) has made no objection.

MR. CRABTREE: All right.

END OF BENCH CONFERENCE

Q I will show you what has been marked as exhibit seventy-four for identification and ask if you can tell me what that is?

A Yes, sir.

This is a pair of tennis shoes that was recovered from Tadaryl Shipp on January the 14th at the police station.

Q What did you do with those shoes upon obtaining them?

Janeway - direct

A These were also, ah, sent into the property room as evidence, and later sent to the TBI lab in Nashville for DNA testing.

Q And is this the way they appeared at the time you seized them?

A No, it is not.

Q What is the difference?

A Okay.

You can see that a piece of this shoe is missing, it has been cut out for DNA testing. Also, parts of the shoe laces are gone. They also have been cut out for DNA testing.

MR. CRABTREE: Your Honor, we would ask to file these as exhibit number seventy-four, and again, ask if we may pass them in front of the jury?

THE COURT: Yes, sir.

That will be seventy-four.

Please go ahead and show those to the jury.

(Exhibit 74 marked and filed.)

MR. CRABTREE: Your Honor, I would ask to mark this as exhibit seventy-five for identification.

Janeway - direct

THE COURT: All right, sir.

Q Now, after you had a chance to seize Mr. Shipp's shoes did you have an occasion to go to his residence?

A Yes, sir, I did.

Q And where was that?

A That was also at the Job Center located on Dale Avenue, room 205.

Q And did you seize anything there?

A Yes, sir, I did.

Q And I will show you what has been marked as exhibit seventy-five for identification and ask if you can tell us what that is?

A Okay.

These are three items of clothing which I seized from the room of Tadaryl Shipp, one of them being a black tee shirt with mud stains and blood stains on it, long sleeved.

The next item being a pair of nylon jogging pants, also having blood stains and mud stains on them, particularly the legs.

The last one is a black hooded

Janeway - direct

sweat shirt which I also seized from Tadaryl's room. It also has mud stains and blood stains on it.

Q Now, these three items that you are referring to here, what did you do with them after you seized them?

A They were taken back and packaged and placed into, ah, the property room as evidence and later they were forwarded to the TBI lab in Nashville for DNA analysis, also.

Q Now, their condition today, is that the same as their condition was on the date that you seized them?

A No, sir, it is not.

Q And what is the difference?

A They have pieces, the clothing has been cut off for DNA testing.

Q But other than that they are substantially the same, is that correct?

A That's correct.

MR. CRABTREE: Your Honor, I offer these as exhibit seventy-five.

THE COURT: All right, sir.

MR. CRABTREE: And if I might

Janeway - direct

pass these before the jury, Your Honor?

THE COURT: Yes, sir.

(Col. 75 marked and filed.)

MR. CRABTREE: I would ask to mark this as exhibit seventy-six for identification.

THE COURT: Yes, sir.

Q Yes, sir.

This is a book entitled The Satanic Bible, which I recovered from the top dresser drawer of Tadaryl Shipp's room.

Does a diagram appear on the front of that book?

A Yes, it is.

Q And what is it?

A It is a pentagram.

Q And does a diagram appear on the back of that book?

A Yes, sir, it is another pentagram, also.

Q Is the pentagram that appears on there substantially the same as the pentagram that appears on the statue that was taken from Christa Pike's room?

Janeway - direct

A Yes, sir.

Except the circle is in a different place.

But, yes, they are both pentagrams.

Q I will show you what has previously been filed as exhibit thirty-four (a) and thirty-three (a), that has been identified as necklaces taken from Tadaryl Shipp and Christa Pike, and ask you to look at the circle and the star on those.

A Yes, sir.

This one is a pentagram.

That is exhibit thirty-four (a).

Exhibit thirty-three (a) also has a pentagram on it.

I don't know what this other little thing is.

Q The pentagram is all I am referring to.

A A pentagram. Yes.

Q Okay.

Is the pentagram in those two

Janeway - direct

necklaces the same as the pentagram that appears on The Satanic Bible?

A Yes, sir, they are.

Q And is it substantially the same as the pentagram that appears on the statue that you took from Christa Pike's room?

A Yes, sir, they are.

Q And concerning Colleen Slemmer and her body, did you see this design on her?

A Yes, sir.

This is the same design that had been carved into her chest.

Q Okay.

MR. CRABTREE: Your Honor, we would ask to file The Satanic Bible as exhibit seventy-six.

(Exhibit 76 marked & filed.)

THE COURT: Yes, sir.

MR. CRABTREE: Officer Janeway, put your gloves on, and please come down here.

A All right, sir.

Q Officer Janeway, this is what has previously been filed as exhibit number sixty-

Janeway - direct

nine, and I believe that is a hair sample, is that correct?

A Yes, sir, it is.

Q And would you please point to the location on the map where this was found?

A Right in here in the area of the bra, just off the, ah, roadway.

Q Is it in there where the "I" is located, in that general area?

A Yes.

Q Okay.

MR. CRABTREE: Your Honor, if I may, I would ask if we can go ahead and put a yellow dot there where he located that, that is marked hair?

THE COURT: All right, sir.

MR. CRABTREE: And, Your Honor, if I may, the jury has not seen this, and I have been thinking about the easiest way to show this to them, and I guess the way is just to walk down through there and let them look at it.

THE COURT: Go ahead.

MR. CRABTREE: If I may do that?

Janeway - direct

THE COURT: If you will start in this corner back here?

MR. CRABTREE: Pardon?

THE COURT: If you will start with this corner back here?

Q I may actually go ahead and remove this, and if you will point to the hair that we are referring to on here?

A The hair is intertwined in between some leaves.

Q And I believe you have testified that this hair is consistent with the hair of Colleen Slemmer, is that correct?

A Yes, sir, it is.

Q Okay.

I will show you what has previously been marked as exhibit fifty-three, and I believe you testified this is a hair sample also, is that correct?

A Yes, sir, it is.

Q And could you tell us where that hair sample was located?

A Yes, sir.

This is the one that is marked

Janeway - direct

down here between the first small pool of blood and the scuffle area.

MR. CRABTREE: And, Your Honor, I would ask if I could also put a yellow dot, marked hair, at this location?

THE COURT: Okay.

MR. CRABTREE: And, also, I would ask if I may remove this and pass it in front of the jury?

THE COURT: Yes, sir.

Q I will show you what has been marked as exhibit fifty-one, I believe this has been labeled as hair, and you identified that, also, is that correct?

A Yes.

Q And can you show us where that was located?

A Okay.

That was south of the large pool of blood, so it would be approximately in this area right here.

MR. CRABTREE: And, Your Honor, again, can I put a yellow dot marked hair where that was located?

Janeway - direct

THE COURT: Yes, sir.

Q Right there?

A Yes.

MR. CRABTREE: And may I remove this exhibit from the bag, also?

THE COURT: Uh-huh.

What exhibit number is that, General?

MR. CRABTREE: Pardon?

THE COURT: What exhibit number is that?

MR. CRABTREE: Exhibit fifty-one.

THE COURT: Thank you.

Q I will show you what has been marked as exhibit fifty-five and I believe you have identified this as being a blood sample from the large blood area, is that correct?

A Yes, sir, that is correct.

Q And that is the large blood sample here in the center?

A That is correct.

Q And we have marked that with a red dot already, is that correct?

Janeway - direct

A Yes, sir, we have.

Q Now, explain these swabs.

The actual blood is on the swabs in here.

Let's show one of these swabs, if I may remove it.

Is this the swab that we are referring to?

A Yes, sir.

Q And explain the procedure that you followed.

A Okay.

These swabs are two in a package.

They are sealed.

They are in a little white package and they are sealed.

And you just peel it open, and both of these swabs would be held in this manner and dipped in the large pool of blood, placed back in the package, folded over, placed in a brown paper bag and sealed.

Q Now, at the time that you removed these originally from the paper what did

Janeway - direct

they look like?

A They were white.

Q Okay.

And the stain on this?

A That's blood.

Q And at the time you took these samples was that blood still wet?

A Yes.

MR. CRABTREE: If I may pass with this, Your Honor?

THE COURT: Yes, sir.

Q So, when we are talking about blood swabs this is the way you obtained this for the purposes of analysis or whatever in each of the sites that you have referred to, is that correct?

A That is correct.

Q I will show you what has been marked as exhibit fifty-two, and, ah, I believe you have already identified this as blood taken from the area north of the hair, south of the large blood area.

Would you point to the area we are talking about now?

Janeway - direct

A That would be this small pool of blood that is already labeled "K".

Q And that blood swabs, was that taken the same way?

A Yes, sir.

Q And you have labeled exhibit seventy previously, and you have identified it.

And it is a leaf that had some blood on it.

Would you please tell us where that was located?

A Yes, sir.

That was located right here in the area of the cross-tie post.

Q And that is not marked on the diagram, is that correct?

A No, it is not.

MR. CRABTREE: And, Your Honor, if I may, with this one, may I put a red dot in that location with the word "blood" on it?

THE COURT: Yes, sir.

Q Right here?

A Right here.

Q This has previously been

Janeway - direct

marked as exhibit sixty-eight, and that is a blood sample that has been identified, also, is that correct?

A Yes, sir, it is.

Q And would you please point to where that was located?

A Okay.

That would be located in this area right here.

Q And that has not been marked either?

A No, sir, it has not.

MR. CRABTREE: Your Honor, if I may mark that in the same way I did the other one?

THE COURT: Yes, sir.

Q With a red dot with the word "blood" on it?

Right here?

A Yes, sir.

Q And this, likewise, was swabs that was taken the same way that you testified concerning the other swabs?

A That is correct.

Janeway - direct

Q Exhibit sixty-five you have identified as being blood taken from an area near the bra.
Would you point to that?
A Yes, sir.
There was blood stains all in this area where, apparently, the victim had spent some time. There was quite a bit of blood.
This was taken from that.
Q Is that what this letter "H" here represents, in that same general area?
A Yes, sir.
Q And exhibit sixty-four, blood swabs taken near the bra.
Would you show us where that was located, near the bra?
A Okay.
That is in the roadway, just about the center of the roadway, just approximately ten feet east of the bra.
So that would be right in here in this area.
MR. CRABTREE: May I mark this, Your Honor?

Janeway - direct

THE COURT: Yes, sir.

Q Right here?

A Yes, sir.

Q Exhibit sixty-three that you have identified as blood swabs.

A Okay.

This is also near the, ah, bra, approximately fifteen feet from the bra, in the roadway.

Q And that has not been marked either?

A No, it has not.

MR. CRABTREE: And may I mark this?

THE COURT: Yes, sir.

Q Here?

A Yes, sir.

Q Exhibit sixty-two is a blood swab.

A Okay.

This is one of the, ah, at the beginning of the road that forks between, ah, the forks, toward the bike trail.

It will be, ah, somewhere

Janeway - direct

right in this area here.

Q And that has not been marked either?

A No, it has not.

MR. CRABTREE: May I mark that one, Your Honor?

THE COURT: Yes, sir.

Q Exhibit sixty-one, that's a blood swab?

A Yes.

Q And where was that taken from?

A It was near reference point three, and it is drawn on the, ah, diagram, here, at this, as this black splotch, but it has not been labeled.

MR. CRABTREE: And may I mark that, Your Honor?

THE COURT: Yes, sir.

Q And you previously identified sixty-seven as a tree branch with blood on it?

A Yes, sir.

This had some blood stains and hair as well on it.

It is located right here where

Janeway - direct

it says "vines".

Q And it is marked, is that correct?

A It is marked with "H".

Q Okay.

MR. CRABTREE: Your Honor, may we, at this time, ah, pass the exhibits, the photographs, the items that the jury has not seen that we have not passed in front of them?

THE COURT: Can you tell me which ones those are?

MR. CRABTREE: I think I can.

THE COURT: Okay.

Then, if we could sort them out, ah--

MR. CRABTREE: Your Honor, if I may, I will start with the chart and the photographs that were originally identified.

THE COURT: Go ahead.

Pass the photographs, along with the chart, because they are marked, otherwise, they don't make a lot of sense.

(Chart and photographs to the jury.)

Janeway - direct

THE COURT: And while the jury is looking at those would you please approach the bench?

BENCH CONFERENCE

THE COURT: I wanted to tell you that upon the conclusion of your case this morning, or around noon, I'm ready to have a charge conference with you.

So, whenever you are ready to do that, if there is any special anything you want to come up with that you need to have it.

END OF BENCH CONFERENCE

MR. CRABTREE: Your Honor, may I withdraw for a moment?

THE COURT: Yes, sir.

Go right ahead.

THE COURT: General, what were the numbers of the necklaces and the statue and the book?

MR. CRABTREE: Exhibits 73,

Janeway - cross

76, 34 (a), 33 (a).

THE COURT: Okay.

Thank you.

(The jury finished viewing the specific exhibits.)

MR. CRABTREE: If it please the Court, the State would pass this witness for cross-examination.

THE COURT: Mr. Talman?

MR. TALMAN: Thank you, Your Honor.

CROSS-EXAMINATION

BY MR. TALMAN:

Q Good morning, Officer Janeway.

A Good morning, sir.

Q Sir, as I understand it, these clumps of hair and blood samples and so on that you collected and identified on, through direct examination, ah, and that you said were consistent with that of the victim--

A Yes.

Q --did you personally identify these samples as being from the victim, the hair and blood as being from the victim?

Janeway - cross

A No, sir.

All I'm basing that on is, they are the same, the hair samples are the same color, approximately, as the victim's.

Q Okay.

So you didn't actually, personally, identify this as being from the victim?

A No.

Q All right, sir.

And during your, ah, gathering of evidence and so on, I think you said you had, had contact with this Defendant?

A Yes.

Q Okay.

Was she cooperative with you?

A ---Actually, ah, I didn't ask her anything or--

Q Okay.

A --I strictly just saw her in the Detective Division, talking with Investigator York, and I would have to say that, that when I observed her she was cooperative, as far as sitting there talking to him.

Janeway - cross

Q Okay.

But you just worked under, doing what Investigator York had asked you to do?

A Yes, sir, that's correct.

MR. TALMAN: Your Honor, may I approach the, ah, witness?

THE COURT: Sure.

Q Officer Janeway, I will show you what has been marked as exhibit seventy-six, and you said that was The Satanic Bible you had recovered from Tadaryl Shipp's room?

A Yes, sir, it is.

Q I will also show you what has been marked as exhibit seventy-three, which you identified as a statue that you recovered from, ah, Christa Pike's room?

A That is correct.

Q If you will look at them--you previously identified both of the symbols from each of these objects as being pentagrams.

A Uh-huh.

Q Would you look at them a little closer, the object on the statue, and compare it with the object on the, ah, book, and

Janeway - cross

tell me how many points each star has?

A Five points each.

Q All right.

Sir, would you look at this statue, are they both an identical star?

A No.

This, the one on The Satanic Bible has a, two circles, or one circle, I guess, depending on how you want to look at it, ah, on the outside which touches the points of the star.

And this one on the statue does not have that circle.

The circle is in the center of the star.

Q And looking at each of these items, looking at the book straight on as you would look at the book, that star, I believe, is upside down in that circle, is that correct?

A Yeah--I guess you could say--I don't really know which is the top of the star and which isn't.

Q Okay.

And if you are looking at the statue straight on, if you are looking at it, is