# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| CHRISTA GAIL PIKE | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:12-CV-35 |
| | ) | DEATH PENALTY CASE |
| DEBRA JOHNSON, WARDEN | ) | |
| | ) | |
| Respondent. | ) | |

---

## ADDENDUM 3

## DOCUMENT 4

---

## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

STATE OF TENNESSEE,

    Appellee,

vs.

CHRISTA GAIL PIKE,

    Appellant.

RECEIVED

DEC 0 9 1997

ATTORNEY
GENERAL
OFFICE

No.: 03C01-9611-CR-00408

KNOX COUNTY CRIMINAL
(First Degree Murder-Death Penalty)

### PETITION FOR REHEARING
### OF CASE ON MERITS

Comes the Appellant, Christa Gail Pike, by and through Counsel, who respectfully petitions this Honorable Court, pursuant to Rule 39 of the Tennessee Rules of Appellate Procedure (T.R.A.P.), to rehear this case on the merits. As grounds and in support thereof, the Appellant would show unto the Court as follows:

1. With respect to the issue regarding change of venue, the Appellant would submit that this Court misapprehends the legal import of the decision of the Supreme Court of the United States in Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) and too narrowly confines the holding to the exact facts of that case. In Irvin v. Dowd, the crimes of the accused were covered extensively by the news media in the county where the crime occurred as well as the surrounding counties, 366 U.S. at 719, 725-26, 81 S.Ct. at 1641, 1644. This is the exact same type of extensive media coverage which occurred in the instant case. It took a relatively long time to pick juries in both the Irvin case and in the instant case. The prospective jurors

Page 1

Case 1:12-cv-00035-HSM-SKL  Document 8-19  Filed 08/01/12  Page 2 of 6
PageID #: 3554

in each case had heard details about the alleged facts of the cases and about the respective defendants through the news media, 366 U.S. at 725, 81 S.Ct. at 1644. Even more significant is a statement made by a prospective juror in the Irvin case, which is almost exactly like one made by a prospective juror in the instant case. The Irvin court quoted one juror as saying "You can't forget what you hear and see . . ." even though that juror professed the ability to set aside preconceived notions and go only on the evidence presented in court, 366 U.S. at 728, 81 S.Ct. at 1645. In the instant case, when asked about setting aside what he had heard or read in the media, the prospective juror stated "I can sit here and tell you that I am not bias (sic) and I have no preconceived opinion but you can't unring a bell." (IX, 532). That same person went on to state "I can't, I can't blank out what is in my, what is in my memory bank." (IX, 533).

As the U.S. Supreme Court in Irvin observed, quoting from the case of U.S. v. Wood, 299 U.S. 123, at 145-146, 57 S.Ct. 177, at 185 . . .

> "Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula."

Irvin v. Dowd, 366 U.S. at 724, 81 S.Ct. at 1643-44 (quoting Chief Justice Hughes in U.S. v. Wood). The Appellant would argue and maintain that when the ultimate penalty, i.e., death, is sought to be imposed, a reviewing court should look at the overall atmosphere that is pervasive during jury selection and not become bogged down or locked into technical definitions of juror impartiality, but should rather look at the totality of the circumstances leading up to and surrounding jury selection. In the instant case, the record reflects that there had been extensive

Page 2

media coverage of this case even while the jury selection process was underway. At one point, the record reflects that potential jurors were discussing the case in the hallway and reading newspapers relevant to the case on trial prior to coming into the courtroom for voir dire. Furthermore, the Appellant would respectfully suggest that the standard of allowing tainted jurors to serve on a jury after asking them whether they can disregard what they had heard or read about the case and decide the case only upon the evidence presented in the courtroom is an unfair standard to both the Defendant and to the potential juror, especially in a capital case, wherein the defendant is on trial, literally for his or her life. As stated in Irvin v. Dowd, 366 U.S. at 728, 81 S.Ct. at 1645 . . .

> *"With [her] life at stake, it is not requiring too much that [Defendant Pike] be tried in an atmosphere undisturbed by so huge a wave of public passion . . ."*

Moreover, the Appellant would submit that in this particular situation, she should not be required to point to a specific response from any seated juror which is "troublesome". The whole atmosphere surrounding the circumstances of this case with its allegations of torture and ritualistic satanic abuse and the sensationalism generated by the media was that of a three ringed circus. In conclusion of this argument, the Appellant would submit that this Court should consider the statement of Justice Frankfurther in his concurring opinion in Irvin . . .

> *"How can fallible men and women reach a disinterested verdict based exclusively on what they heard in court when, before they entered the jury box, their minds were saturated by press and radio for months preceding by matter designed to establish the guilt of the accused. A conviction so secured obviously constitutes a denial of due process of law in it most rudimentary conception."*

Irvin v. Dowd, 366 U.S. at 729-30, 81 S.Ct. at 1646.

2. With respect to the statement of this Court in its opinion in this case pertaining to the

Page 3

comparative proportionality review of the death sentence in this case, at page 32 of said opinion, the Appellant would suggest that this Court did not enumerate its basis for comparison between the Defendant or facts in this case to those of other death penalty cases. The Appellant would respectfully attach hereto for this Courts consideration, the recently released opinion of the Tennessee Supreme Court in the capital case of State v. Andre S. Bland, Supreme Court No. 02-S01-9603-CR-00032, at Jackson, December 1, 1997, for a discussion and listing of the criteria pertaining to comparative proportionality review of death sentences in Tennessee, beginning at page 16 of said Bland decision, to which reference is hereby made.

WHEREFORE, the Appellant petitions this Honorable Court to grant the relief sought herein the premises of this petition and grant her a full and fair rehearing on the merits of this case.

This the 8th day of December, 1997.

CHRISTA GAIL PIKE

BY: _____

William C. Talman
Supreme Court BPR# 012262
Attorney for Defendant
P.O. Box 506
Knoxville, Tennessee 37901-0506

BY: _____

Julie A. Martin
Supreme Court BPR# 015546
Attorney for Defendant
P.O. Box 426
Knoxville, Tennessee 37901-0426

Page 4

## CERTIFICATE OF SERVICE

I, William C. Talman, Attorney for the Defendant, hereby certify that I have served a true and correct copy of the foregoing Petition, by personally delivering same, or by depositing same in the U.S. Mail, with sufficient first class postage to reach it's destination, upon Hon. Hon. John Knox Walkup, Attorney General and Reporter, 450 James Robertson Parkway, Nashville, Tennessee 37243-0485

This the 8th day of December, 1997.

_____
William C. Talman, Attorney

Page 5