**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| **CHRISTA GAIL PIKE** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:12-CV-35** |
| | ) | **DEATH PENALTY CASE** |
| **DEBRA JOHNSON, WARDEN** | ) | |
| | ) | |
| **Respondent.** | ) | |

---

**ADDENDUM 6**

**DOCUMENT 8**

---

ORIGINAL

E2009-00016-CCA-R3-PD

008386

IN THE CRIMINAL COURT FOR KNOX COUNTY

DIVISION III

KNOXVILLE, TENNESSEE

SIXTH JUDICIAL DISTRICT

Supplement Exhibits

CHRISTA GAIL PIKE, )

PETITIONER )

FILED

VS. ) CASE NO. 68280

JUL 15 2009

STATE OF TENNESSEE, )

By Joy R. McCroskey, Clerk

RESPONDENT )

TRANSCRIPT OF THE EVIDENCE

February 27th, 2006 Motions Hearing

Exhibit Volume and Replacement Exhibit No. 38

APPEARANCES:

THE HONORABLE MARY BETH LEIBOWITZ, PRESIDING JUDGE

FOR THE STATE:

Mr. Leland Price and Ms. S. Jo Helm
Assistant District Attorneys
Office of the District Attorney General
City-County Building
400 Main Avenue
Knoxville, Tennessee 37902

FOR THE PETITIONER:

Mr. Don Dawson & Ms. Catherine Brockenborough
Post-Conviction Defenders
Officer of the Post-Conviction Defenders
530 Church Street, Suite 600
Nashville, Tennessee 37243

## LIST OF EXHIBITS


| NUMBER | ITEM | VOL. | PAGE |
|---|---|---|---|
| 1 | Comptroller's Report | I | 51 |
| 2-A | Board of Professional Responsibility Report | I | 54 |
| 2-B | Compact Disc of Exhibit No. 2-A | I | 54 |
| 3 | Order about Mr. Talman's Fees | I | 81 |
| 38 | Substituted/Requested Compact Disc of Petitioner's Statement to Detective Randy York | (Previously Filed) | |


Original CD damaged.

# AFFIDAVIT OF AUTHENTICITY

I, Deborah V. Loveless, Custodian of Records, do hereby certify on this the 20th day of June 2002, that this document is a true and accurate copy of the special report issued by the Division of State Audit on May 31, 1995 regarding improper billings by appointed counsel.

Further affiant sayeth not.

Deborah V. Loveless

Sworn and subscribed before me this the 20th day of June 2002.

Notary Public

My commission expires: ____________________

Comptroller's Report

Exhibit No. 1

Introduced by: Mr. Don Dawson

Identified and made a part of the record this 28th day of March, 2006.

Mary Beth Leibowitz

JUDGE

008400

# SPECIAL REPORT

## COURT SYSTEM
## ADMINISTRATIVE OFFICE OF THE COURTS
## REVIEW OF IMPROPER BILLINGS BY APPOINTED COUNSEL
## MAY 1995

FILED (1)
JUL 23 2009
Clerk of the Courts
Rec'd by CCA

## STATE OF TENNESSEE
## COMPTROLLER OF THE TREASURY

### Department of Audit

### Division of State Audit

~~State vs.~~ Christa Pike vs State
Case No. 68280 PCR

Exhibit No. 1

*Arthur A. Hayes, Jr., CPA*
Director

*Glen McKay, CIA*
Assistant Director

*Chas Taplin, CPA*
Audit In-Charge

*Brenda Blackstock*
Editor

*Joe Berry*
*Christopher Freeze*
*Ron Hickman, CPA*
*Hellen Sergio*
Audit Investigators

STATE OF TENNESSEE
William R. Snodgrass
Comptroller
**COMPTROLLER OF THE TREASURY**
STATE CAPITOL
NASHVILLE, TENNESSEE 37243-0264
PHONE (615) 741-2501

May 31, 1995

The Honorable Don Sundquist, Governor
and
Members of the General Assembly
State Capitol
Nashville, Tennessee 37243
and
The Honorable Riley Anderson
Chief Justice of the Supreme Court
Room 319, Supreme Court Building
Nashville, Tennessee 37219

Ladies and Gentlemen:

Transmitted herewith is a special report on our review of improper billings submitted by counsel appointed to represent indigent individuals. The review was conducted jointly with the Tennessee Bureau of Investigations and was initiated after staff of the Administrative Office of the Courts notified us that an attorney had apparently overbilled for services rendered to an indigent client. Following this notification, we determined that six other attorneys had also apparently overbilled the state. The improper billings by these seven attorneys resulted in overpayments of $228,601 from the Administrative Office of the Courts during the calendar years 1990 through 1993. Of these overpayments, $178,152 was paid to two attorneys practicing law in Knox County.

This report was submitted to the District Attorney General of the 20th Judicial District (Davidson County) and to the District Attorney General of the Sixth Judicial District (Knox County). The District Attorney General of the 17th Judicial District (Bedford, Marshall, Moore, and Lincoln counties) and the District Attorney General of the 11th Judicial District (Hamilton County) have also been contacted regarding the attorneys from their districts who were involved in the apparent overbillings.

May 31, 1995
Page Two

The District Attorney General in Knox County has collected $171,148 due from the t attorneys from Knox County who owed the $178,152. Processed claims totaling $7,004 for the two attorneys were not paid by the Administrative Office of the Courts and were used to off the remaining amounts they owed. In addition, we have been advised by the District Attorn General in Knox County that in consideration for partial reimbursement of costs associated w this review, these two attorneys have waived their rights to claims they have not submitted to t Administrative Office of the Courts, which are estimated by the attorneys to represent billings $33,000. Since these claims have not been submitted for review, the correctness of the amou has not been substantiated.

In addition to the $171,148 from these two attorneys, the state has collected the ent $2,793 due from an attorney from Hamilton County.

Four of the seven attorneys have not made any restitution to date. Two of these four we from Knox County and two were from Bedford County. The District Attorneys General fr these counties, the State Attorney General's Office, and this office are continuing efforts collect the improper billing amounts from these four attorneys. The Administrative Office of t Courts is withholding $25,913 in processed claims pending these four attorneys' payment of t $47,656 due from them.

This report was also referred to the State Board of Professional Responsibility for a actions they may deem appropriate.

Very truly yours,

W. R. Snodgrass
Comptroller of the Treasury

WRS/ct

State of Tennessee

# Audit Highlights

Comptroller of the Treasury — Division of State Audit

**Special Report**
Court System
Administrative Office of the Courts
Review of Improper Billings By Appointed Counsel
May 1995

---

## Audit Objectives

The objectives of the review were to determine whether fee petitions submitted to the state by private attorneys representing indigent criminal defendants contained excessive hours (hours over actual hours worked), were duplicates of previous billings, or were not properly prorated between charges or clients; to establish the propriety of fee petitions; to determine any amounts of apparent overbillings by attorneys other than amounts attributable to inadvertent errors; to review the Administrative Office's policies and procedures and the internal control structure related to the disbursement of funds for fee petitions; to refer our findings to the Office of the Attorney General and the District Attorney General; and to refer our findings to the Administrative Office of the Courts and recommend appropriate actions to correct any deficiencies.

## Results of the Review

This review was coordinated with the Tennessee Bureau of Investigation and was initiated after the staff of the Administrative Office of the Courts noted that an appointed attorney had essentially billed the state 20 times for the same services. The attorney had represented an indigent individual on 20 charges which were all combined into one case (trial). Rather than dividing the actual hours of service between the 20 charges or billing the state only once, the attorney billed the state 20 times for the same services.

Our review identified seven attorneys who apparently overbilled the state in a similar manner for services rendered in representing indigent defendants. These overbillings resulted in overpayments of $228,601 in state funds from the Administrative Office of the Courts during the calendar years 1990 through 1993. Of these overpayments, $178,152 was overbilled between two attorneys practicing law in Knox County. These two attorneys billed the state multiple times for cases involving more than one charge against an indigent individual, and therefore in effect they frequently billed the state for over 24 hours of service in a single day. The billings submitted by the remaining five attorneys were less frequent but were still material.

*Tennessee Code Annotated*, Section 40-14-207, entitles attorneys to be paid in accordance with Rul 13, Rules of the Supreme Court, by the Administrative Office of the Courts for representing persons i preliminary hearings and trials who cannot afford legal counsel. Rule 13 states that appointed couns can appropriately file separate claims in each case if the attorney prorates hours of service between th various claims relating to the multiple charges against a defendant or defendants. However, for man of the fee petitions we reviewed, the attorneys had not prorated the hours; they had billed withou regard to their other claims for the same days. The Administrative Office of the Courts did not have review system in place to detect the lack of proration between billings. The office did ensure that th maximum limit per claim was not exceeded. However, by billing separately for each count, th attorneys were able to effectively exceed the maximum, multiple times, for any one case. For exampl an attorney representing an indigent client in one trial on 10 felony counts in general sessions cou would have been eligible for a maximum payment of $500, the basis of the payment being 25 hours o service at $20 per hour. By billing the state for each count, the attorney would effectively increase th maximum payment for the case to $5,000. The ten billings would reflect 250 hours of service, whic would not be the actual hours spent on the case. The attorneys identified in this review apparently too advantage of the state's payment system because the overbillings would not be detected. This manne of billing appears to be inconsistent with the billing guidelines set forth in the American Ba Association Formal Ethics Opinion 93-379, dated December 1993, and appears to violate Rule 13. Ou review also disclosed that many of the attorneys were apparently claiming whole hours as a standar charge for various services rather than claiming their actual time in increments of an hour as require by Rule 13.

In addition to the apparent overbillings, our review noted that numerous fee petitions submitted b attorneys were not signed by elected judges. Instead, the fee petitions were signed by other attorney who had served as general sessions court special judges. The attorneys were appointed by electe judges or court clerks to serve as judges, usually for a portion of a day, in general sessions court. I appears inappropriate that special judges were signing fee petitions because the judges often had bee present in only one of many court appearances for a particular case. It appears more appropriate fo elected judges to review hours claimed by attorneys.

A number of circumstances regarding billings and their subsequent approval and payment made th submission and payment of improper fees difficult to detect. These circumstances include the failur of elected judges and special judges to adequately review appointments and charges and the failure o the Administrative Office of the Courts to adequately review the fee petitions. However, thes circumstances do not mitigate the actions of the attorneys who submitted the fee petitions. Thes attorneys are ultimately responsible for the improper billings.

A contributing factor to the number of improper fee petitions submitted from attorneys appears to b the system that was used in 19 of the 31 judicial districts across the state of assigning case numbers t each charge (count) rather than combining all similar charges into one case. The assignment o separate case numbers to each charge enabled attorneys to avoid detection in billing multiple time (once for each charge) for related cases which actually required no additional time.

This report was submitted to the District Attorney General of the 20th Judicial District (Davidso County) and to the District Attorney General of the Sixth Judicial District (Knox County). The Distric Attorney General of the 17th Judicial District (Bedford, Marshall, Moore, and Lincoln counties) an

the District Attorney General of the 11th Judicial District (Hamilton County) have also been contacted regarding the attorneys from their districts who were involved in the apparent overbillings.

The District Attorney General in Knox County has collected $171,148 due from the two attorneys from Knox County who owed the $178,152. Processed claims totaling $7,004 for these two attorneys were not paid by the Administrative Office of the Courts and were used to offset the remaining amounts they owed. In addition, we have been advised by the District Attorney General in Knox County that in consideration for partial reimbursement of costs associated with this review, these two attorneys have waived their rights to claims they have not submitted to the Administrative Office of the Courts, which are estimated by the attorneys to represent billings of $33,000. Since these claims have not been submitted for review, the correctness of the amounts has not been substantiated.

In addition to the $171,148 from these two attorneys, the state has collected the entire $2,793 due from an attorney from Hamilton County.

Four of the seven attorneys have not made any restitution to date. Two of these four were from Knox County and two were from Bedford County. The District Attorneys General from these counties, the State Attorney General's Office, and this office are continuing efforts to collect the improper billing amounts from these four attorneys. The Administrative Office of the Courts is withholding $25,913 in processed claims pending these four attorneys' payment of the $47,656 due from them.

This report was also referred to the State Board of Professional Responsibility for any actions they may deem appropriate.

In October 1993, the Supreme Court created the Indigent Defense Commission to develop and recommend to the Court a comprehensive plan for the delivery of legal services to indigent defendants in the state court system. The recommendations in this report regarding billings, special judge appointments, and changes to fee petitions and review controls should be considered by the committee to strengthen controls over the disbursements from the indigent defense fund. The implementation of stronger controls in the Administrative Office of the Courts becomes more critical with the amendment to the Rules of the Supreme Court, effective September 1, 1994, which increases the hourly rates and maximum compensation to be paid to private attorneys.

Effective January 1, 1995, Rule 11(2) of Rules of the Supreme Court was amended to bring uniformity to the system of assigning case numbers. The amendment defines a criminal case as "a criminal proceeding against one individual at one level of court." Accordingly, all charges consolidated into a single proceeding will be included under one case (docket) number. Consolidating the charges will essentially eliminate an attorney's ability to bill multiple times for the same charges.

Furthermore, the Executive Director of the Administrative Office of the Courts has initiated the process for implementing computer software to maintain records of bills received and to enable staff to monitor for multiple billings or unreasonable hours billed in a single day. The director anticipates that the cost of implementing this software will not exceed $10,000 and that it will be implemented by July 1, 1995.

# Court System
# Administrative Office of the Courts
# Review of Improper Billings by Appointed Counsel
# May 1995

TABLE OF CONTENTS


| | Page |
|---|---|
| **INTRODUCTION** | 1 |
| Objectives of the Review | 1 |
| Scope of the Review | 2 |
| Background | 2 |
| Criteria | 4 |
| **DETAILS OF THE REVIEW** | 5 |
| Attorneys Assuming Roles as Special Judges | 5 |
| Circumstances Relative to the Submission and Subsequent Approval of Improper Billings | 6 |
| Overbillings by the Attorneys | 7 |
| Schedule of Improper Fee Petitions | 14 |
| Interviews | 15 |
| Weaknesses in the Internal Control Structure | 18 |
| Changes Implemented by the Supreme Court | 19 |
| **RECOMMENDATIONS** | 20 |
| **APPENDIX** | 21 |

# Court System
# Administrative Office of the Courts
# Review of Improper Billings by Appointed Counsel
# May 1995

## INTRODUCTION

On March 15, 1994, our office was informed of possible improper billings by private attorneys paid by the state to represent indigent criminal defendants. We were notified after the staff of the Administrative Office of the Courts noted that an attorney had apparently overbilled for services rendered to an indigent client. The client had been charged with 20 counts, all of which were related to instances of aggravated burglary and theft of property, and all of which were tried in court at the same time. However, the attorney submitted 20 separate fee petitions for this single indigent client with identical hours indicated for all 20 counts. In effect, the attorney charged the state 20 times for the same services, rather than dividing the actual hours of service between the fee petitions.

From an initial review of fee petitions submitted from throughout the state, it was determined that other attorneys apparently had also engaged in this type of practice. We discussed these findings with Mr. Victor S. Johnson, III, District Attorney General of the 20th Judicial District (Davidson County), who requested that we further review the fee petitions jointly with the Tennessee Bureau of Investigation. We also discussed these findings with the State Attorney General.

### *OBJECTIVES OF THE REVIEW*

The objectives of the review were

1. to determine whether fee petitions for attorneys' services contained excessive hours (hours over actual hours worked), duplicated previous billings, or were not properly prorated between charges or clients;

2. to establish the propriety of fee petitions, including (a) whether the attorneys had been properly appointed to represent the indigent clients, (b) whether the indicated court dates could be substantiated by court records, (c) whether the fee petitions were signed by judges who had jurisdiction over the case as provided by statute, and (d) whether the fee petitions paid were submitted by the attorneys in a timely manner;

3. to determine any amounts of apparent overbillings by attorneys other than inadvertent errors,

4. to review the Administrative Office's policies and procedures and the internal control structure related to the disbursement of funds for fee petitions;

5. to refer our findings to the Office of the Attorney General and the District Attorney General; and

6. to refer our findings to the Administrative Office of the Courts and recommend appropriate actions to correct any deficiencies.

## *SCOPE OF THE REVIEW*

We began our review on March 16, 1994, by obtaining a listing of appointed attorneys and state payments made to each attorney from the State of Tennessee Accounting and Reporting System (STARS). It was decided that our review would initially include fee petitions submitted for those individuals who had received payments exceeding $20,000 for the calendar year 1993, and would include the fee petitions of four attorneys specifically noted by the Administrative Office of the Courts as having apparently billed the state for excessive hours. Twenty-three attorneys and one expert witness from various counties were identified as having received over $20,000 or as having billing problems noted by the Administrative Office of the Courts. The 1993 fee petitions for these attorneys were obtained from the Administrative Office of the Courts. The dates indicated on these fee petitions were then transferred to calendars for each attorney and witness. The individual calendar days were then reviewed for reasonableness. The fee petitions were also arranged in numerical order according to defendant and docket number to determine whether duplicate billings had occurred or whether the attorney was properly dividing hours between multiple counts against the defendant.

The scope of our review was expanded to include those fee petitions submitted by 7 of the 23 attorneys for calendar years 1990 through 1992 which appeared to contain excessive hours. Our review was expanded for these seven attorneys because of the large number of billings they submitted during these years and because of the apparent problems in their 1993 billings.

## *BACKGROUND*

The Indigent Defendants' Counsel is 1 of the 11 divisions of the Administrative Office of the Courts. The division was created in 1965 by the Tennessee General Assembly to pay for the legal counsel of people who are unable to afford it. *Tennessee Code Annotated*, Section 40-14-202, states that in all felony cases, if the accused is not represented by counsel and the court determines that he/she is an indigent person who has not competently waived his/her right to counsel, the court must appoint to represent the accused, in the absence of a public defender, a competent attorney licensed in Tennessee. The indigent defendant is required to make a sworn statement that he/she is financially unable to afford counsel.

Section 40-14-207, *Tennessee Code Annotated*, entitles appointed attorneys, other than public defenders, to reasonable compensation and expenses in accordance with *Tennessee Court Rules Annotated*, Rules of the Supreme Court. Attorneys are required to submit fee petitions according to Rule 13, Section 2A, Rules of the Supreme Court, to receive compensation. In regard to filing claims, Rule 13 states:

> In a single trial of separate indictments and/or defendants, appointed counsel can appropriately file separate claims in each case, but cannot charge separately for time spent on all the cases. Time may be prorated, cross-referencing each case on claims, but time spent exclusively on any one case may properly be charged only on the claim for that case.
>
> All claims for compensation covering work in a preliminary hearing or for trial preparation shall be specific as to the service performed, the date performed, timed in hours, and tenths of hours, and submitted by the attorney on a form approved by the Executive Secretary to the Supreme Court to the judge having jurisdiction of the case at the time the services were rendered for consideration in determining the compensation to be awarded. The judge must sign the claim. A facsimile signature will not be accepted.
>
> The Executive Secretary to the Supreme Court shall examine and audit all claims for attorneys' fees and expenses to insure compliance with these rules and other statutory requirements. After such examination and audit and giving due consideration to state revenues, the Executive Secretary shall make a determination as to the compensation to be paid to each attorney and/or expert and cause payment to be issued in satisfaction thereof. The determination by the Executive Secretary shall be final, except as provided in Section D.
>
> All claims must be submitted to the Executive Secretary within ninety (90) days from final disposition of the case. Final disposition means the last activity of the attorney in relation to the case, not the end of the trial.

The fee structure prescribed for appointed counsel is determined by the original criminal charge. The fee structure is set forth in Rule 13. The fees presented below were those in effect during the period under review. Effective September 1, 1994, the structure was amended to increase the compensation to attorneys representing indigent clients.

The maximum hourly rates for time spent in court and for time spent in trial preparation were $30 and $20, respectively. Fees are also limited to a maximum amount per case. The maximum compensation for all services involved in an adult or juvenile misdemeanor case was

$100, in contempt cases was $250, in juvenile felony (non-capital) and adult felony cases in general sessions and municipal courts was $500, and in adult felony cases (non-capital) in trial courts was $1,000. Compensation for capital cases was to be determined by the court and approved by the Executive Secretary and the Chief Justice.

## *CRITERIA*

To determine what would be a reasonable number of in-court and out-of-court hours for an attorney to claim for one day, we spoke with the Executive Director of the Administrative Office of the Courts, the Administrative Office's counsel, the Attorney General's Office, several district attorneys general, and several general sessions judges and clerks. We set our daily threshold at eight in-court hours and 12 total hours. The hours billed over these amounts were classified as excessive. Available in-court hours were determined from applicable court clerks' and bailiffs' time sheets and from court reporters' billings to the state. On those few days when the available in-court hours exceeded eight hours, the available hours were substituted as our threshold. Generally, the available in-court hours were less than eight hours in one day.

Our review focused on only the attorneys' billings to the state. However, we noted that many of the attorneys performed services for paying clients on the days in which their services billed to the state for indigent representation exceeded our criteria. It should be noted that the excessive hours in this report do not include the attorneys' hours of service for paying clients.

The initial step in determining the billing amounts over our threshold was to prepare a calendar for each year and each attorney. The hours of service from each attorney's fee petitions were then plotted on the respective calendars. The days in which the hours billed by the attorney exceeded our threshold were then reviewed. The in-court hours were compared with the actual time the courts were in session. Conservatively, if the billing for in-court hours was within the actual time the court was in session, the hours were not questioned. In addition, billed hours for which the attorney had not received compensation because the total hours on the fee petitions exceeded the maximum allowed by the Administrative Office of the Courts were also not questioned. The remaining days were then scheduled onto attachments which showed the days in question, the defendants, and the hours per defendant. The attachments were then sent to the respective attorneys. The attorneys were asked to explain the methodology they had used in calculating the hours billed and to provide a written description of the services they had provided. They were also asked to provide documentation to support the in-court hours. After receiving their responses, we reviewed their explanations for reasonableness and made appropriate corrections to dates or hours of service indicated in the billings.

From our review of fee petitions submitted by the 24 individuals who had received payments exceeding $20,000 in 1993, we determined that the billing practices of seven attorneys included apparently excessive hours which were paid by the Administrative Office of the Courts. The improper billings by two attorneys notably exceeded the billings of the other five. The two attorneys, Mr. David Poss and Mr. William Talman, were each paid in excess of $100,000 for representing indigent clients in 1993. In our review of fee petitions submitted for 1993, we found 148 days of apparently excessive billings for Mr. Poss and 81 days for Mr. Talman. Attorneys Poss and Talman frequently billed the state for over 24 hours of service in a single day. The billings submitted by the remaining five attorneys were less frequent but were still material.

The Administrative Office of the Courts paid approximately $2,940,000 in total indigent fee petitions to 1,036 attorneys, psychologists, and expert witnesses during the calendar year 1993. The aggregate payments to the 24 individuals examined in our review totaled $792,085, which amounted to 27% of the total amount paid for indigent defense during the 1993 calendar year. Of those aggregate payments, $83,128 (10%) represented apparent overbillings, based on our criteria.

An additional $145,473 in apparent overbillings was identified from our review of payments for calendar years 1990 through 1992. Thus, for the four-year period, the seven attorneys identified in our review apparently overbilled the state $228,601. Of this amount, $178,152 was paid to attorneys Poss and Talman.

The majority of the attorneys included in our review were practicing law in East Tennessee, including attorneys Poss and Talman. The billings from appointed attorneys in Knox County were particularly numerous, apparently because the county lacked a public defenders office until 1992. Without a public defenders office, practically all indigent defendants were represented by appointed counsel.

### *ATTORNEYS ASSUMING ROLES AS SPECIAL JUDGES*

Most of the fee petitions identified as containing improper billings were submitted for cases disposed of in general sessions courts. Many of these fee petitions were signed by attorneys serving as general sessions court special judges. The attorneys were appointed by elected judges or court clerks to serve as judges, usually for a portion of a day in general sessions court. Special judges are not compensated and are appointed when elected judges take vacation, are ill, or have emergencies. Special judges are also appointed to assist in handling the daily load of cases on the court docket which are heard in "backup" general sessions courts. These backup courts are set up when the case load is so voluminous that the judge deems it necessary to divide the docket into

two courts. The special judges are basically given the same authority as the elected judges. The special judges dispose of cases and may appoint other attorneys to represent indigent clients.

Section 17-2-118, *Tennessee Code Annotated*, states that special judges are to be elected by a majority of the attorneys present in court that day. From our interviews with elected judges and attorneys appointed to sit as special judges, it was apparent that the appointments in Knoxville were generally not made through elections held by attorneys present but rather by an elected judge or court clerk. From our review of fee petitions, it was also apparent that attorneys included in our review were appointed to sit as special judges and had appointed and signed fee petitions for other attorneys in our review.

According to the Administrative Office of the Courts, there is no specific language in Rule 13 which addresses special judges' signing of fee petitions. Rule 13, Section 2A, states that attorneys should submit claims for compensation "on a form approved by the Executive Secretary to the Supreme Court to the judge having jurisdiction of the case at the time services were rendered." In addition, the approved form to be signed by the judge states, "I hereby certify that I appointed the above named attorney to represent the herein listed indigent." Although Rule 13 refers to the judge with jurisdiction and the form refers only to the appointment, technically it would appear that the special judge would have partial jurisdiction of the case if he/she sat as a special judge on one or more of the court appearances of that case, including when the defendant was first appointed counsel. Currently, the general sessions judges in Knoxville have requested that special judges refrain from signing fee petitions until the appropriateness of this activity can be reviewed by the Administrative Office of the Courts.

## *CIRCUMSTANCES RELATIVE TO THE SUBMISSION AND SUBSEQUENT APPROVAL OF IMPROPER BILLINGS*

A number of circumstances regarding billings and their subsequent approval and payment made the submission and payment of improper fees difficult to detect. These circumstances include the failure of elected judges or special judges signing fee petitions to adequately review appointments and charges and the failure of the Administrative Office of the Courts to adequately review the fee petitions. However, these circumstances do not mitigate the actions of the attorneys who submitted the fee petitions. These attorneys are ultimately responsible for the improper billings.

The large number of fee petitions submitted from attorneys in Knoxville appears to be related to the system used by the district in assigning a separate case number to each count against a defendant rather than combining all similar counts into one case. There are 31 judicial districts in the state. The Sixth Judicial District, which comprises Knox County, is among the 19 districts that assign separate case numbers to each count against a defendant. The Administrative Office of the Courts makes payments for indigent representation based on case numbers. The assignment of separate case numbers to each count enables attorneys to bill multiple times (once for each count) for related cases which actually required no additional time. In the remaining 12

judicial districts, all the counts against one defendant are consolidated into one case and attorneys can only bill by the case.

Because the improper billings for multiple counts were not detected by the Administrative Office of the Courts, attorneys continued to submit multiple billings which were not properly prorated.

## *OVERBILLINGS BY THE ATTORNEYS*

Based on our review, the seven attorneys' apparent overbillings were created by their failure to properly divide the actual hours they had worked between multiple fee petitions for numerous defendants or between numerous counts for one defendant. Some of the overbillings resulted from the attorneys' use of standardized hours for various services or specific cases regardless of the actual time they had spent on the case. In addition, some attorneys appear to have added hours to the actual time spent on the case in order to reach the maximum allowed payment for a single case. But in most cases, the overbilling was the result of the attorney's billing for multiple counts under different case numbers for one court appearance. The Administrative Office of the Courts did not have a review system in place to detect the lack of proration between billings. The office did ensure that the maximum limit per claim was not exceeded. However, by billing separately for each count, the attorneys were able to effectively exceed the maximum, multiple times, for any one case. For example, an attorney representing an indigent client in one trial on 10 felony counts in general sessions court would have been eligible for a maximum payment of $500, the basis of the payment being 25 hours of service at $20 per hour. By billing the state for each count, the attorney would effectively increase the maximum payment for the case to $5,000. The ten billings would reflect 250 hours of service, which would not be the actual hours spent on the case. Our review also noted several inconsistencies between billing dates of the services indicated by appointed counsel and the actual dates of the services.

The attorneys have used the following reasons to justify incorrect billing: the low hourly billing rates for appointed attorneys; the Administrative Office of the Courts' past approval of improper billings; and the cost and time saved in not keeping accurate records. However, such billing practices appear to violate the Rules of the Supreme Court and appear to be inconsistent with the billing guidelines set forth in the American Bar Association Formal Ethics Opinion 93-379, dated December 1993. (Opinion 93-379 is presented in the appendix of this report.)

After reviewing the documentation from the courts relating to several of the hundreds of fee petitions for attorneys Poss and Talman, we decided to perform a detailed review of eight days for each attorney. This detailed review included matching docket numbers and dates from fee petitions to information on warrants held by the court. We also ensured that the order of appointments and affidavits of indigency were on file with the court, and investigated any discrepancies. Four days chosen were days in which the attorneys indicated their largest number of hours worked, which for Mr. Poss was between 50 and 75 hours a day and for Mr. Talman was between 30 and 32.5 hours a day. The remaining four days were days in which the attorneys not

only indicated they had worked as many as 30 hours as indigent counsel, but also indicated they had acted as special judges for portions of those same days.

A summary of billing amounts over our threshold by calendar year is displayed on page 14 in the Schedule of Improper Fee Petitions.

Review of Fee Petitions Submitted by Mr. David Poss (Knoxville)

Mr. Poss' fee petitions submitted for 1993 exceeded our criteria by $60,835. His fee petitions for 1990, 1991, and 1992, appear to have exceeded our criteria by $2,310, $26,290, and $21,690, respectively. Thus, his apparent overbillings for the four-year period total $111,125.

Pending our review, the Administrative Office of the Courts had withheld payments for $2,200 in fee petitions submitted by Mr. Poss. According to office staff, Mr. Poss has not submitted any claims since the initiation of our review. On April 28, 1995, Mr. Poss reimbursed the State of Tennessee $108,925 ($111,125 less the $2,200 in claims held by the Administrative Office of the Courts). In lieu of any state assessment against him to recoup the administrative costs of this review, Mr. Poss also waived his rights to all unsubmitted claims pertaining to his work in general sessions court prior to April 13, 1995. He had withheld these claims after the initiation of our review.

Our detailed review of the fee petitions for the eight days selected revealed that Mr. Poss billed the state for over 24 hours on all eight days. It appears that Mr. Poss failed to prorate the hours he billed between defendants or between multiple claims for one defendant. On four of these days, the hours he claimed exceeded 50. Most of Mr. Poss' fee petitions for these eight days reached or exceeded the total hours required to reach the maximum allowed payment. In light of the large number of claims he submitted in this manner, it appears that Mr. Poss overstated both the in-court and out-of-court hours in an effort to reach or exceed the maximum payment. On the fee petitions submitted by Mr. Poss that exceeded the state's maximum, the amount of services generally exceeded the maximum allowed by $100. Furthermore, on three occasions, Mr. Poss submitted duplicate fee petitions. However, two of the duplications were discovered and were only paid once by the Administrative Office of the Courts. The third was paid twice and has been added to Mr. Poss' improper billings.

No evidence was found that Mr. Poss fabricated any warrant numbers or did not represent the defendant on the fee petitions as stated. In most cases, the dates on the warrants located in the courthouse in Knoxville agreed with Mr. Poss' fee petitions related to in-court dates. However, several dates on the fee petitions appeared to be in error and related to other court dates. All claims for the eight days appear to have been properly signed by general sessions or criminal court judges. Based on the attorney appointments on file in the courthouse, in most cases a judge did appoint Mr. Poss to represent the defendants for which he submitted fee petitions. There were a few cases in which the order of appointment indicated that the appointment was made to the Public Defenders Office or to another attorney; however, the warrants for those cases indicate that Mr. Poss represented the defendant although the order of appointment was apparently not revised.

The number of hours Mr. Poss claimed on multiple claims for defendants were, for the most part, identical. There did not appear to be any attempt on his part to properly divide his time of services between the multiple claims. Furthermore, it was noted that on one occasion Mr. Poss submitted fee petitions for a client involving a general sessions court case which was bound over to the criminal court. Except for the initial hearing, the trial was held in the criminal court and not in general sessions court. Mr. Poss claimed identical court hours and dates for both the general sessions court and the criminal court.

Review of Fee Petitions Submitted by Mr. William Talman (Knoxville)

Mr. Talman's fee petitions submitted for 1993 exceeded our criteria by $17,295. His fee petitions for 1990, 1991, and 1992, appear to have exceeded our criteria by $20,123, $11,147, and $18,462, respectively. Thus, his apparent overbilling for the four-year period total $67,027.

Pending our review, the Administrative Office of the Courts had withheld payments for $4,804 in fee petitions submitted by Mr. Talman. On April 25, 1995, Mr. Talman reimbursed the State of Tennessee $62,223 ($67,027 less the $4,804 in claims withheld by the Administrative Office of the Courts). In lieu of any state assessment against him to recoup the administrative costs of this review, Mr. Talman also waived his rights to all unsubmitted claims pertaining to his work in general sessions court prior to April 13, 1995. He had withheld these claims after the initiation of our review.

Our detailed review of the fee petitions for the eight days selected revealed that Mr. Talman billed the state for over 24 hours on six of these eight days. All of Mr. Talman's fee petitions for these eight days reached or exceeded the total hours required to reach the maximum allowed payment. In light of the large number of claims he submitted in this manner, it appears that Mr. Talman overstated both the in-court and out-of court hours in an effort to reach or exceed the maximum. On the fee petitions submitted by Mr. Talman that exceeded the state's maximum, the amount of services generally exceeded the maximum allowed by $10 to $20.

No evidence was found that Mr. Talman fabricated any warrant numbers or did not represent or have his wife, Ms. Martha Weems, Attorney at Law, represent the defendants on the fee petitions as indicated. Mr. Talman's fee petitions generally contained similar hours claimed for different defendants on a single day or similar hours for multiple fee petitions for a single defendant. The hours Mr. Talman reported on multiple fee petitions differed only slightly, apparently to give the appearance of proration. In addition, all his claims related to general sessions cases for these eight days were signed by specially appointed judges. These appointed judges included attorneys Thomas Slaughter and David Poss, both of whose billings were part of our review.

Attempts to Interview Attorneys Poss and Talman

In a press release in March 1994, the Administrative Office of the Courts revealed that billing practices of certain appointed attorneys were being reviewed. This act precluded us from immediately interviewing Mr. Poss and Mr. Talman because they knew about the investigation

and had already retained legal counsel before we could contact them for an interview. Neither Mr. Poss nor Mr. Talman would consent to an interview. Attempts to contact Mr. Poss through his attorney, Mr. Don Bosch, and Mr. Talman through his attorney, Mr. Charles Fels, were unsuccessful.

Billings for Remaining Five Attorneys

From our review of fee petitions submitted for services provided in 1993, five other attorneys were identified as having submitted improper billings. These five attorneys, in order of having the greatest questionable hours to the least, are Mr. Randall Reagan, Mr. Andrew Dearing, Mr. Thomas Slaughter, Mr. Robert Stovall, and Mr. Paul Bergmann.

Review of Fee Petitions Submitted by Mr. Randall Reagan (Knoxville)

Mr. Reagan's fee petitions submitted for 1993 only exceeded our criteria by $90. But, we found numerous petitions for calendar years 1990, 1991, and 1992 which contained hours that were apparently excessive. These petitions exceeded our criteria by $11,310, $8,325, and $894, respectively. Thus, Mr. Reagan apparently overbilled the state $20,619.

Mr. Reagan used standard hours instead of actual hours in completing fee petitions and failed to properly prorate hours between multiple claims. He billed the state for over 24 hours of service on 12 days in 1990 and eight days in 1991. He also submitted several fee petitions signed by Mr. Talman and Mr. Slaughter as special judges.

On November 14, 1994, Mr. Reagan was contacted regarding these petitions. He said that he generally reconstructed from memory his fee petitions for misdemeanor cases he had worked in general sessions courts and that he billed his time in one-hour increments because it was not cost effective to maintain records to bill in tenths of hours. He also stated that although he had not performed all the work on the days claimed, he had performed it on other days.

Mr. Reagan further indicated that he had signed fee petitions as a special judge and that he thought elected judges were aware special judges were signing fee petitions. Mr. Reagan reasoned that since he had appointed counsel to some cases as a special judge, it was proper for him to sign the fee petitions for those cases.

Mr. Reagan has not been able to provide us with documentation for the billings in question ($20,619). Therefore, collection efforts have been initiated. The Administrative Office of the Courts has withheld payment of $8,177 to Mr. Reagan for fee petitions he submitted in 1994.

Review of Fee Petitions Submitted by Mr. Andrew Dearing (Shelbyville)

Mr. Andrew Dearing's fee petitions submitted for 1993 exceeded our criteria by $675. His petitions for 1990, 1991, and 1992 exceeded our criteria by $3,235, $9,955, and $6,480, respectively. Thus, Mr. Dearing apparently overbilled the state $20,345.

Mr. Dearing apparently failed to properly prorate hours between multiple claims. He billed the state for over 24 hours of service on two days in 1990, nine days in 1991, and nine days in 1992.

On August 31, 1994, and March 24, 1995, Mr. Dearing was contacted regarding these petitions. He said that he had done his paperwork in a hurry and that his billings did include some errors. He also stated that although he had not performed all the work on the days claimed, he had performed it on other days. He stated that he prepared his fee petitions at the end of each month and used his client files, notes, and memory to fill out the claims.

Mr. Dearing has not been able to provide us with documentation for his 1990-1993 billings in question ($20,345); therefore, collection efforts have been initiated. The Administrative Office of the Courts has withheld payment of $12,369 to Mr. Dearing for fee petitions he submitted in 1994.

Review of Fee Petitions Submitted by Mr. Thomas Slaughter (Knoxville)

Mr. Slaughter's fee petitions submitted for 1993 only exceeded our criteria by $26. But, we found numerous petitions for calendar years 1990 and 1991 which contained hours that were apparently excessive. These petitions exceeded our criteria by $2,946 and $530, respectively. Thus, Mr. Slaughter apparently overbilled the state $3,502.

In a conversation on October 25, 1994, Mr. Slaughter stated that his fee petitions contained hours which appeared excessive because he waited to prepare his fee petitions until the case was disposed of rather than immediately after he provided services. According to Mr. Slaughter, he would "load up" the hours on the first two or three court dates indicated on his claims because he believed he had already reached the maximum number of hours for which he would get paid. Mr. Slaughter indicated that it was cumbersome to fill out the numerous fee petitions with the exact dates and hours and that he did not always keep track of the hours as he should. He said that he often worked long hours on cases set for trial and worked many hours for which he did not bill the state. Therefore, Mr. Slaughter said that he was sure he did the work on the case although his billings did not reflect accurate dates and times.

Mr. Slaughter also stated that a number of years ago, after he had submitted his first fee petition to be signed, a Knoxville judge had instructed him not to prorate his hours because he would not be able to recover his costs. According to Mr. Slaughter, the judge instructed him to bill under each count (multiple charges) but with different times on each claim. In this manner, the multiple billings would not be obvious. We could not determine whether any of the judges in Knoxville were instructing attorneys not to prorate their hours. However, even if a judge instructed Mr. Slaughter not to prorate his hours, Mr. Slaughter is ultimately responsible for correctly filing his fee petitions.

Mr. Slaughter submitted numerous fee petitions signed by Mr. Talman as a special judge. He also signed numerous fee petitions himself as a special judge. In an interview on November 2,

1994, Mr. Slaughter stated that as a special judge, he was given the authority to sentence defendants to jail and felt this authority also extended to signing fee petitions.

Mr. Slaughter has not been able to provide us with documentation for his 1990, 1991, and 1993 billings in question ($3,502); therefore, collection efforts have been initiated. The Administrative Office of the Courts has withheld payment of $5,367 to Mr. Slaughter for fee petitions he submitted in 1994.

Review of Fee Petitions Submitted by Mr. Robert Stovall, Jr. (Shelbyville)

Mr. Stovall's fee petitions submitted for 1993 exceeded our criteria by $2,830. His petitions for 1992 exceeded our criteria by $360. We also reviewed Mr. Stovall's fee petitions for 1990-1991 but noted no problems. Thus, the total amount questioned from Mr. Stovall's fee petitions was $3,190. It appears that he failed to properly prorate hours between multiple fee petitions for defendants.

On August 9, 1994, Mr. Stovall responded to an inquiry we made regarding his billing methodology. According to Mr. Stovall, his fee petitions contained several typographical errors and incorrect dates which caused the hours to appear excessive on many days. On September 14, 1994, after correcting his fee petitions accordingly, we sent Mr. Stovall an additional listing of days in question, including several days in 1992, and requested that he supply us with further documentation to support these days.

Mr. Stovall has not been able to provide us with documentation for these billings ($3,190); therefore, collection efforts have been initiated.

Mr. Stovall has not submitted any fee petitions to the Administrative Office of the Courts since our review began in March 1994. Thus, none of his fee petitions have been withheld.

Review of Fee Petitions Submitted by Mr. Paul Bergmann (Chattanooga)

Mr. Bergmann's fee petitions submitted for 1993 and 1992 exceeded our criteria by $1,377 and $1,416, respectively. We also reviewed Mr. Bergmann's fee petitions for 1990-1991 but noted no problems. Thus, the total amount questioned from Mr. Bergmann's fee petitions was $2,793. It appears that he failed to properly prorate hours between multiple fee petitions for defendants. Mr. Bergmann also submitted 20 claims for various counts against one defendant with identical hours indicated on all 20 claims. However, these identical hours were discovered and subsequently disallowed by the Administrative Office of the Courts.

In a phone conversation on May 19, 1994, Mr. Bergmann stated that he made an inadvertent error in billing identical claims for 20 counts relating to one defendant. He said that his former secretary mistakenly attached the same list of charges to each of the billing sheets. Mr. Bergmann acknowledged that he should have billed the state only once for $144 but that as a result of his error he billed for $2,880. The 19 erroneous petitions were not paid by the Administrative Office of the Courts.

On October 12, 1994, we requested documentation for Mr. Bergmann's hours which were apparently excessive. On November 4, 1994, we received Mr. Bergmann's written statement that his secretary inadvertently failed to prorate hours between multiple petitions. On January 24, 1995, Mr. Bergmann made a full reimbursement of $2,793 to the Administrative Office of the Courts.

## SCHEDULE OF IMPROPER FEE PETITIONS

| | Attorney | County | 1993 | 1992 | 1991 | 1990 | Total | Action Taken |
|---|---|---|---|---|---|---|---|---|
| 1 | Poss, David | Knox | $60,835 | $21,690 | $26,290 | $ 2,310 | $111,125 | (1) $108,925 Collected |
| 2 | Talman, William | Knox | $17,295 | $18,462 | $11,147 | $20,123 | $ 67,027 | (1) $ 62,223 Collected |
| 3 | Reagan, Randall | Knox | $ 90 | $ 894 | $ 8,325 | $11,310 | $ 20,619 | (2) |
| 4 | Dearing, Andrew | Bedford | $ 675 | $ 6,480 | $ 9,955 | $ 3,235 | $ 20,345 | (2) |
| 5 | Slaughter, Thomas | Knox | $ 26 | 0 | $ 530 | $ 2,946 | $ 3,502 | (2) |
| 6 | Stovall, Robert | Bedford | $ 2,830 | $ 360 | 0 | 0 | $ 3,190 | (2) |
| 7 | Bergmann, Paul | Hamilton | $ 1,377 | $ 1,416 | 0 | 0 | $ 2,793 | $ 2,793 Collected |

Notes:

(1) The attorney declined to be interviewed, and documentation has not been collected from the attorney to support the hours claimed. At the request of the District Attorney General for the 20th Judicial District (Davidson County), questioned fee petitions were not sent to the attorney to request explanations for the apparently excessive billings.

(2) The attorney has been advised of the apparently excessive billing amount, and collection efforts are proceeding.

## *INTERVIEWS*

Interview with Mr. Charles Ferrell, Executive Director of the Administrative Office of the Courts

Mr. Charles Ferrell, the current Executive Director of the Administrative Office of the Courts, was interviewed on July 27 and November 23, 1994. Mr. Ferrell acknowledged that one of the greatest problems with the indigent criminal justice system was the lack of uniformity among the districts in filing fee petitions.

When questioned about the Administrative Office of the Courts' failure to adequately review fee petitions, Mr. Ferrell stated that his staff did not have an adequate system in place to scrutinize the fee petitions for unreasonable hours billed in a single day or to detect multiple billings for the same case. However, he stated that the office plans to implement computer software to maintain records of billings received and to enable staff to monitor for multiple billings or unreasonable hours. He also stated that he anticipates the cost of implementing this software will not exceed $10,000 and that it will be implemented by July 1, 1995.

When asked about judges' responsibility to review claims, Mr. Ferrell said that the elected judges should be reviewing fee petitions to ensure that the hours billed are reasonable and that the attorneys were appointed to the indigent defendants. According to Mr. Ferrell, special judges should not be signing fee petitions, although this activity is not in violation of the Administrative Office of the Court's policies and procedures or of state law, because the special judges would not likely be familiar enough with the cases to adequately review the related claims.

Summary of Our Interviews with the Attorneys

The response we received from the attorneys was generally that they inadvertently listed erroneous hours or dates on their fee petitions. Many attorneys admitted failing to maintain adequate records of time spent on cases. Others stated that it was nearly impossible to accurately divide times between defendants because of the large number of cases handled in a single day. The attorneys generally stated that although the hours on a particular day may have been incorrectly reported on their fee petitions, they believed that they had served those hours on other days. In addition, the attorneys stated that they had spent many hours on cases without compensation which would offset any time not properly prorated. In regard to incorrect hours and dates indicated on claims, many attorneys stated that because cases can continue for up to two years before being disposed of and because the attorney must wait until the disposition of the case to fill out the fee petition, errors are likely to occur.

Interviews with Judges in Knoxville

During the last weeks of July and the first week of August 1994, all four Knox County general sessions court judges and two of the three criminal court judges were interviewed. The third criminal court judge was interviewed in January 1995. In addition, District Attorney General Randall Nichols (Knox County), who was a former criminal court judge, was interviewed. None of the judges nor General Nichols recalled giving any attorneys instructions on

how to fill out the fee petitions or recalled encouraging attorneys to overbill the state. All the judges expressed dismay that appointed attorneys were being paid the same wages that were paid in 1965. All the judges stated that in their opinion, the appointed attorneys in Knox county were competent attorneys and represented their clients in a professional manner, and several of the judges indicated that the Administrative Office of the Courts should have had better administrative controls to preclude the office from paying improper claims.

Several of the general sessions court judges interviewed stated that they reviewed claims submitted by attorneys as much as possible but did not always have time to adequately scrutinize the hours. In addition, several judges stated that they relied completely on the attorneys' representations and that their signature on the fee petition simply indicated that they appointed the attorney to the case. However, the judges also said that they did not always check the court records to verify that they indeed had appointed the attorney to the case. According to the chief criminal court judge, Rule 13 states that the judge must <u>sign</u> the claims, but it does not mention any requirement that the judge review or <u>audit</u> the claims. According to this judge, Rule 13 places the responsibility of reviewing the claims with the Administrative Office of the Courts, and therefore the judges have no responsibility concerning the review of claims.

<u>Interview with Mr. Cletus McWilliams (former Executive Secretary of the Administrative Office of the Courts)</u>

On September 22, 1994, we interviewed Mr. Cletus McWilliams, who was the Executive Secretary of the Administrative Office of the Courts prior to Mr. Ferrell's appointment as executive director in August 1992. Mr. McWilliams stated that while he was the executive secretary he was not aware that attorneys were billing for separate offenses without prorating their hours. He said that this was not an acceptable method of billing and that in his opinion the language of Rule 13 was specific enough for attorneys reading the rule to understand that they could not bill in such a manner. According to Mr. McWilliams, his office basically reviewed the claims to identify duplicate billings and to ensure that the maximum compensation limits were adhered to. He stated that his office would return any billings noted to be incorrect to the respective attorneys but that his office relied in part upon the judges' reviews of the claims, except at the general sessions level, for determining accuracy. Mr. McWilliams said that he assumed judges reviewed the claims for reasonableness regarding the total hours billed for a single case but that he realized it was impossible for general sessions judges to review claims adequately because of the high volume of cases and the fact that one judge does not necessarily always follow a case through to its conclusion. According to Mr. McWilliams, voluminous fee petitions arrived every day in the Indigent Compensation Unit and the director of the compensation unit would review the claims for duplicate billings and hourly rates and ensure that the maximum allowed payment for a single case was not exceeded. According to Mr. McWilliams, the number of hours claimed in a single day was never reviewed because the fee petitions were too numerous and the review system was too limited to permit the review.

Mr. McWilliams stated that he would not be surprised if judges allowed attorneys to bill liberally because the hourly rates for indigent defense were so low. However, he indicated that he would be surprised if judges allowed multiple billings for a single day. Mr. McWilliams said that

he had a liberal policy of allowing attorneys to bill for time they spent waiting on a court appearance as out-of-court time. However, he stated that he would not knowingly have approved fee petitions in which attorneys failed to properly divide the actual hours of service between the multiple petitions submitted.

Mr. McWilliams said that appointed attorneys did not receive any formal instructions on how to fill out fee petitions. However, he said that information regarding billing procedures could have been obtained by attorneys through inquiries to his office, judges, or state or local associations. Mr. McWilliams stated that on many occasions his office would distribute manuals and "bench books" to judges that contained information regarding proper billing procedures. Also, information was distributed by his office to the Tennessee Bar Association and to local associations, according to Mr. McWilliams. He also referred to a procedures manual entitled "Compensation Procedures for Counsel of Indigent Defendants" as another possible source of information for appointed attorneys. According to Mr. McWilliams, his staff prepared this manual because of the large number of similar questions referred to the office regarding proper billing procedures. Mr. McWilliams was unsure of the date these procedures were produced or to whom they were distributed.

When asked whether special judges should be allowed to sign fee petitions for other attorneys, Mr. McWilliams stated that if the special judge appointed an attorney to the defendant's case, it appeared appropriate for the special judge to sign that attorney's fee petition(s) for the case. However, Mr. McWilliams stated that he was concerned that because of the informal setting of the general sessions courts, special judges were not being adequately monitored by elected judges and that allowing attorneys to sit as special judges might lead to abuses such as special judges' doing favors for fellow attorneys.

<u>Interview with Ms. Suzanne Keith (former Planning and Education Director of the Administrative Office of the Courts)</u>

We interviewed Ms. Suzanne Keith, the current deputy director, who was the Planning and Education director during the time Mr. McWilliams served as executive secretary. Ms. Keith stated that the procedures manual entitled "Compensation Procedures for Counsel of Indigent Defendants" was a result of an amendment to Rule 13 effective July 1, 1986, which provided for compensation to appointed counsel for services performed in local courts. Ms. Keith was unsure when these procedures were promulgated and to whom they were distributed. She said that billing procedures were not sent out to newly appointed attorneys because the attorneys could not be identified by the Administrative Office of the Courts until after their billings were received. Therefore, according to Ms. Keith, information regarding billing procedures was submitted to judges to be disseminated to the appropriate attorneys. Ms. Keith also stated that such memorandums were infrequently sent out to the Tennessee Bar Association, the Tennessee Trial Lawyers Association, and the Tennessee Defense Lawyers Association for publication in their newsletters.

According to Ms. Keith, when attorneys called in with questions concerning specific claims, their questions were generally answered by clerks reporting to Ms. Georgia Wilson, the

former Director of the Indigent Compensation Unit. The clerks used the procedures and the language in Rule 13 as the basis for their answers. The two clerks of the Indigent Compensation Unit currently report to the Director of Fiscal Services, Mr. Tim Townsend.

Interview with Ms. Georgia Wilson (former Director of the Indigent Compensation Unit of the Administrative Office of the Courts)

On September 22, 1994, when we interviewed Ms. Wilson, she did not recall the distribution of the "Compensation Procedures for Counsel of Indigent Defendants." She also did not recall any direct mailings to attorneys. Ms. Wilson stated that she would refer most of the attorneys calling into the office with questions to *Tennessee Code Annotated* and that in her opinion, the code clearly states that attorneys should prorate their time.

Regarding the Indigent Compensation Unit's review of fee petitions, Ms. Wilson stated that the various fee petitions from one attorney were not organized together to be reviewed but rather were reviewed individually from the stacks of fee petitions submitted. She said that her unit consisted of three to four clerks reviewing the numerous claims and that each clerk was assigned a stack of claims. According to Ms. Wilson, partial information from the claims (defendant and docket number) were put on three- by five-inch index cards. Each new claim reviewed would then be compared to the information on other claims submitted by attorneys. The claims were kept in card files to control duplicate billings.

## *WEAKNESSES IN THE INTERNAL CONTROL STRUCTURE*

The following weaknesses in the internal control structure of the Administrative Office of the Courts resulted in the payment of overbilled fee petitions:

1. The Administrative Office of the Courts' internal control structure did not provide for the proper analysis of fee petitions. Specifically, fee petitions submitted by an attorney were not matched with others submitted by the attorney to establish the total hours the attorney had claimed for a single day. A single fee petition may look reasonable on the surface, that is the hours claimed may appear appropriate. But a comparison of that petition with others might reveal multiple claims and unreasonable hours.

2. Staff were able to override computer controls which would have otherwise prohibited duplicate payments for claims. Document numbers effect these controls. The office's computer essentially will not allow more than one payment to be processed for a single docket number. Occasionally two payments are required for one docket number. One docket number is sometimes used for cases involving codefendants with separate counsel. One number might also be used for cases that have been closed but are reopened following the defendant's violation of his/her probationary terms. Under both these circumstances, a second claim for a single docket number would be warranted. Therefore, the staff would add letters

to the docket numbers in their files to enable two payments to be processed. In our review of the petitions defined as excessive, we noted that staff had overridden the computer controls on one occasion, which resulted in a duplicate payment to an attorney. The two claims had not been submitted at the same time. Staff added a letter to the docket numbers of the second claim without verifying the reason for the second claim, and a subsequent payment was made to the attorney for services which had already been paid. The submission of the second claim by the attorney appeared to be an inadvertent error.

It was also noted that the fee petition forms did not include a space for the disclosure of amounts indigent defendants were ordered to pay appointed attorneys. These payments should offset any fees owed by the state. Once a defendant is determined indigent by the court and seeks counsel, a public defender or private attorney is appointed to represent the indigent defendant. During the course of proceedings of the defendant's case, the defendant may gain employment. The courts may then deem that the defendant can bear some of the costs of representation and order the defendant to make payments to the court or to the appointed attorney. If payments from indigent defendants are not indicated on the claim form to allow the staff to offset any amounts owed to the attorney by the state, the state may overpay the attorney.

## *CHANGES IMPLEMENTED BY THE SUPREME COURT*

On August 17, 1994, the Supreme Court of Tennessee at Nashville created the Indigent Defense Commission of the Supreme Court to establish a constitutional, adequate, and effective indigent criminal justice system. The commission was formed in response to a petition submitted to the Supreme Court on October 5, 1993, by the Tennessee Bar Association, the Tennessee Association of Criminal Defense Lawyers, the Tennessee Trial Lawyers Association, the Criminal Justice Funding Crisis Group, the Tennessee District Public Defenders Conference, and the Capital Case Resource Center of Tennessee. The commission consists of 11 members appointed by the Court and is responsible for developing and recommending to the Court a comprehensive plan for the delivery of legal services to indigent defendants in the state court system. According to this plan, the commission will collect information regarding cases, set standards and reasonable compensation for appointed counsel, determine the total funds to be budgeted to represent indigent defendants, and prepare appropriate procedures for reviewing claims submitted by private attorneys.

Effective September 1, 1994, Rule 13(2)(B) of Rules of the Supreme Court was amended to change the maximum hourly rates and maximum compensation to be paid to private attorneys. The maximum hourly rate for out-of-court services was raised from \$20 to \$40 an hour, and that for in-court services from \$30 to \$50 an hour. The maximum compensation per claim for misdemeanor cases was raised from \$100 to \$200; for adult and juvenile felony cases in general sessions and municipal courts, from \$500 to \$1,000; and for all other adult and juvenile felony cases, from \$1,000 to \$2,000.

Effective January 1, 1995, Rule 11(2) of Rules of the Supreme Court was amended t bring uniformity to the system in which district attorneys assign case numbers. The amendmen defines a criminal case as "a criminal proceeding against one individual at one level of court." Accordingly, all charges consolidated into a single proceeding will be included under one case (docket) number. Consolidating the charges will essentially eliminate an attorney's ability to bil multiple times for the same charges.

## RECOMMENDATIONS

The Administrative Office of the Courts should implement the following recommendations:

- Revise the billing and billing review procedures for cases disposed of at the general sessions level, given the lack of proper record keeping by attorneys, the lack of review of fee petitions by judges, and the inherent setting of the general sessions courts which does not always permit a case to be followed exclusively by one judge
- Establish guidelines for judges' reviews and distribute those guidelines as well as policies and procedures manuals to all judges for dissemination to appointed attorneys
- Consider revising fee petitions to include defendant payments to appointed attorneys
- Ensure that the fee petitions processed by the accounting clerks are adequately reviewed by the supervisor of the Indigent Claims Division and that duplicate billings are not paid
- Consider the necessity of using special judges and establish guidelines for appointing counsel and signing fee petitions
- Continue its efforts to evaluate and implement computer software which will enable the office to adequately monitor the numerous fee petitions submitted for payment

## APPENDIX

### ABA Formal Ethics Opinion 93-379, December 6, 1993

"Consistent with the Model Rules of Professional Conduct, a lawyer must disclose to a client the basis on which the client is to be billed for both professional time and any other charges. Absent a contrary understanding, any invoice for professional services should fairly reflect the basis on which the client's charges have been determined. In matters where the client has agreed to have the fee determined with reference to the time expended by the lawyer, a lawyer may not bill more time that [sic] she actually spends on a matter, except to the extent that she rounds up to minimum time periods (such as one-quarter or one-tenth of an hour). A lawyer may not charge a client for overhead expenses generally associated with properly maintaining, staffing and equipping an office; however, the lawyer may regroup expenses reasonably incurred in connection with the client's matter for services performed in-house, such as photocopying, long distance telephone calls, computer research, special deliveries, secretarial overtime, and other similar services, so long as the charge reasonably reflects the lawyer's actual cost for the services rendered. A lawyer may not charge a client more than her disbursements for services provided by third parties like court reporters, travel agents or expert witnesses, except to the extent that the lawyer incurs costs additional to the direct cost of the third-party services."

"The first set of practices involves billing more than one client for the same hours spent. In one illustrative situation, a lawyer finds it possible to schedule court appearances for three clients on the same day. He spends a total of four hours at the courthouse, the amount of time he would have spent on behalf of each client had it not been for the fortuitous circumstance that all three cases were scheduled on the same day. May he bill each of the three clients, who otherwise understand that they will be billed on the basis of time spent, for the four hours he spent on them collectively? In another scenario, a lawyer is flying cross-country to attend a deposition on behalf of one client, expending travel time she would ordinarily bill to that client. If she decides not to watch the movie or read her novel, but to work instead on drafting a motion for another client, may she charge both clients, each of whom agreed to hourly billing, for the time during which she was traveling on behalf of one and drafting a document on behalf of the other? A third situation involves research on a particular topic for one client that later turns out to be relevant to an inquiry from a second client. May the firm bill the second client, who agreed to be charged on the basis of time spent on his case, the same amount for the recycled work product that it charged the first client?"

"The questions presented to the Committee require us to determine what constitute reasonable billing procedures; that is, what are the services and costs for which a lawyer may legitimately charge, both generally and with regard to the specific scenarios? This inquiry requires an elucidation of the Rule of Professional Conduct 1.5, and the Model Code of Professional Responsibility DR 2-106."

"A lawyer who spends four hours of time on behalf of three clients has not earned twelve billable hours. A lawyer who flies for six hours for one client, while working for five hours on behalf of another, has not earned eleven billable hours. A lawyer who is able to reuse old work product has not re-earned the hours previously billed and compensated when the work product was first generated. Rather than looking to profit from the fortuity of coincidental scheduling, the desire to get work done rather than watch a movie, or the luck of being asked the identical question twice, the lawyer who has agreed to bill solely on the basis of time spent is obliged to pass the benefits of these economies on to the client. The practice of billing several clients for the same time or work product, since it results in the earning of an unreasonable fee, therefore is contrary to the mandate of the Model Rules."

Board of Professional Responsibility Report

Exhibit No. 2A

Introduced by: Mr. Don Dawson

Identified and made a part of the record this 28th day of March, 2006.

Mary Beth Leibowitz

JUDGE

**BOARD OF PROFESSIONAL RESPONSIBILITY**
**OF THE**
**SUPREME COURT OF TENNESSEE**

**I, Mary Woodroof, Executive Secretary of said Board, do hereby certify that the foregoing are true, perfect, and complete copies of pages 1 thru 79 of the record, entered in the cause of In Re: William C. Talman, BPR Docket No. 98-1037-2-SG, as of record now on file in my office.**

**In Testimony Whereof, I have hereunto set my hand at Nashville, on this, 21st day of February, 2006.**

Mary W Woodroof

**Mary Woodroof, Executive Secretary**

**Sworn to and subscribed before me,**

**this** 21st **day of** February**, 2006.**

Margaret Burton

**NOTARY PUBLIC**

**My Commission expires** 5/28/06

FILED (2)
JUL 23 2009
Clerk of the Courts
Rec'd by CCA

Christa Pike vs. State of TN
Case No. 68280
Exhibit No. 2 (7-27-06)

BOARD OF PROFESSIONAL RESPONSIBILITY
OF THE
SUPREME COURT OF TENNESSEE

1101 KERMIT DRIVE, SUITE 730
NASHVILLE, TENNESSEE 37217
TELEPHONE: (615) 361-7500
(800) 486-5714
FAX: (615) 367-2480
E-MAIL: ethics@tbpr.org

LANCE B. BRACY
CHIEF DISCIPLINARY COUNSEL
LAURA L. CHASTAIN
DEPUTY CHIEF DISCIPLINARY COUNSEL

WILLIAM W. HUNT, III
CHARLES A HIGH
SANDY GARRETT
JESSE D. JOSEPH
JULIANNE H. WAGNON
JAMES A. VICK
DISCIPLINARY COUNSEL

**RELEASE OF INFORMATION**
**RE: WILLIAM C. TALMAN, BPR # 12262**
**CONTACT: LANCE B. BRACY**
**BOARD OF PROFESSIONAL RESPONSIBILITY**
**615-361-7500**

December 2, 1998

## KNOXVILLE LAWYER SUSPENDED

On November 24, 1998, the Supreme Court of Tennessee ordered that William C. Talman, an attorney of Knoxville, be suspended from the practice of law for a probationary period of eleven months, twenty-nine days, with all time suspended, conditioned upon the absence of any finding by a court, the Board of Professional Responsibility or Hearing Panel during this probationary period that Talman has violated the Code of Professional Responsibility. The Board of Professional Responsibility filed a petition for discipline against Talman after he self-reported to the Board that he had potential ethical violations following his own internal review of his fee claims submitted to the State in connection with court appointed indigent cases from 1990 through 1993. The Special Report of the Comptroller of the Treasury of the State of Tennessee found that the respondent's fee petitions submitted for 1990 through 1993 exceeded in total the Comptroller's criteria by $67,027.00. Respondent filed a Conditional Guilty Plea to the charges.

If a finding is made by any court, the Board of Professional Responsibility or Hearing Panel during Talman's eleven months, twenty-nine day probationary period that the respondent has violated the Code of Professional Responsibility, the probation will be immediately revoked and his suspension from the practice of law will be for the entire period of eleven months, twenty-nine days, taking immediate effect.

The Court further ordered that the respondent shall have a monitor, who shall review respondent's fee petitions and shall make monthly reports to the Board of Professional Responsibility for this probationary period regarding respondent's compliance.

The Court has also ordered that the respondent attend the Board of Professional Responsibility's Ethics School and a continuing legal education course regarding ethics and professionalism in criminal defense litigation. The respondent is also required to be available to the Board of Professional Responsibility for two speaking engagements regarding the respondent's inappropriate fee petitions.

Lance B. Bracy /m
Lance B. Bracy
Chief Disciplinary Counsel

LBB:mw

98-1037-2-SG.rel

**BOARD OF PROFESSIONAL RESPONSIBILITY**
**OF THE**
**SUPREME COURT OF TENNESSEE**

1101 KERMIT DRIVE, SUITE 730
NASHVILLE, TENNESSEE 37217
TELEPHONE: (615) 361-7500
(800) 486-5714
FAX: (615) 367-2480
E:MAIL: 103454.2730@compuserve.com

December 1, 1998

**CONFIDENTIAL**

William C. Talman, Esquire
P. O. Box 506
Knoxville, TN 37901

**Re: Docket No. 98-1037-2-SG**
**William C. Talman, Respondent**

Dear Mr. Talman:

Enclosed is a copy of Order of Enforcement filed in the Supreme Court on November 24, 1998, in the captioned disciplinary matter. Also enclosed is a statement for cost from the Court in the amount of $35.00. Please forward your check immediately to the Appellate Court Clerk to avoid scire facias.

Sincerely,

Mary Woodroof
Mary Woodroof
Executive Secretary

/mw
Enclosure

cc: Sandy Garrett, Disciplinary Counsel
w/enc.

**BOARD OF PROFESSIONAL RESPONSIBILITY**
**OF THE**
**SUPREME COURT OF TENNESSEE**

LANCE B. BRACY
CHIEF DISCIPLINARY COUNSEL
LAURA L. CHASTAIN
DEPUTY CHIEF DISCIPLINARY COUNSEL

1101 KERMIT DRIVE, SUITE 730
NASHVILLE, TENNESSEE 37217
TELEPHONE: (615) 361-7500
(800) 486-5714
FAX: (615) 367-2480
E-MAIL: ethics@tbpr.org

WILLIAM W. HUNT, III
CHARLES A HIGH
SANDY GARRETT
JESSE D. JOSEPH
JULIANNE H. WAGNON
JAMES A. VICK
DISCIPLINARY COUNSEL

September 11, 1998

**CONFIDENTIAL**

Cecil V. Crowson, Jr.
Supreme Court Clerk
ATTN: Janice Clinkenbeard
100 Supreme Court Building
401 7th Avenue, North
Nashville, TN 37219-1407

Re: BOPR Docket No. 98-1037-2-SG
Respondent: William C. Talman

Dear Mr. Crowson:

Enclosed please find the original and six (6) copies of an Order of Enforcement, with attached Conditional Guilty Plea, for Justice Birch's review and consideration.

If you have any questions, please feel free to contact me.

Sincerely,

Sandy Garrett

Sandy Garrett
Disciplinary Counsel

SG:cd
Enclosure

TalmanSb.SG

cc: William C. Talman, Esquire
P. O. Box 506
Knoxville, TN 37901

bcc: MW

IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

| | | |
|---|---|---|
| IN RE: | WILLIAM C. TALMAN, Respondent, An Attorney Licensed and Admitted to Practice Law in Tennessee (Knox County) | DOCKET NO. 98-1037-2-SG |

# ORDER OF ENFORCEMENT

This matter is before the Court upon the Board of Professional Responsibility's Petition for Discipline against the Respondent, William C. Talman. Respondent has submitted a Conditional Guilty Plea and the Board of Professional Responsibility has approved the plea. A copy of the Respondent's Conditional Guilty Plea is attached to this Order as Exhibit A.

It is therefore, **ORDERED, ADJUDGED and DECREED** that: William C. Talman's Guilty Plea is approved and entered for enforcement by this Court. The Respondent, William C. Talman, is suspended from the practice of law for a probationary period of six (6) months, with all time suspended, conditioned upon the absence of any finding by a court, the Board of Professional Responsibility or Hearing Panel during this six (6) month probation that the Respondent has violated the Code of Professional Responsibility.

If a finding is made by any court, the Board of Professional Responsibility or Hearing Panel during this six (6) month probationary period that the Respondent has violated the Code of Professional Responsibility, then the Respondent's probation shall be immediately revoked and his suspension from the practice of law will be for the entire period of six (6) months, taking immediate effect.

It is further **ORDERED, ADJUDGED and DECREED** that the Respondent

5. Respondent is aware that, should he desire a hearing as to the extent of discipline based on the charges set forth in the Petition for Discipline, he would have the right to testify and to present evidence in his behalf, including the right to subpoena witnesses in his favor, however, he desires to waive those rights and to submit this Conditional Guilty Plea.

6. Respondent enters this Conditional Guilty Plea freely and voluntarily, without being subjected to coercion or duress, and he is fully aware of the implications of submitting this Conditional Guilty Plea.

7. Respondent in his best interest, hereby enters this Conditional Guilty Plea of Guilty to violating the Disciplinary Rules of the Code of Professional Responsibility: DR 1-102(A)(1)(5)(6) and DR 2-106(A)(B).

8. If approved, the discipline or stated form of punishment shall be that the Respondent is suspended from the practice of law for a probationary period of eleven (11) months, twenty nine (29) days, with all time suspended, conditioned upon the absence of any finding by a court, the Board of Professional Responsibility, or any Hearing Panel during the eleven (11) month, twenty nine (29) day suspension that the Respondent has violated the Code of Professional Responsibility and upon the Respondent complying with the following conditions of probation for the eleven (11) months, twenty nine (29) days.

9. Respondent is aware that, in the event he does not comply with the conditions set forth, or if a finding is made by any court, the Board of Professional Responsibility or Hearing Panel during this eleven (11) month, twenty nine (29) day probationary period that the Respondent has violated the Code of Professional Responsibility, then the Respondent's probation shall be immediately revoked and his suspension from the practice of law will be for the entire period of eleven (11) months and twenty nine (29) days taking immediate effect.

10. The conditions upon which the Respondent shall be granted probation are as follows:

a. Respondent shall have a monitor, who is Julie Martin, who shall review Respondent's fee petitions and shall make monthly reports to the Board for the period of probation regarding the Respondent's compliance.

b. Respondent shall attend the Board of Professional Responsibility's Ethics School and a continuing legal education course regarding ethics and professionalism in criminal defense litigation.

c. Respondent agrees to be available to Disciplinary Counsel for two (2) speaking engagements as to his previous inappropriate fee petitions.

11. Respondent agrees to reimburse the Board of Professional Responsibility the cost of this proceeding in the amount of $622.67.

12. In the event that this Conditional Guilty Plea is not accepted and approved by the Board of Professional Responsibility and/or the Supreme Court of Tennessee, it shall be considered void and of no effect.

This Conditional Guilty Plea has been executed on the 2nd day of Octob, 1998, by the Respondent.

William C. Talman

SWORN to and subscribed before me this 29th day of October, 1998.

NOTARY PUBLIC

My Commission Expires: October 2, 2002

This Conditional Guilty Plea is hereby submitted by Disciplinary Counsel, who has approved and recommends this discipline as evidenced by counsel's signature below.

Sandy Garrett

Sandy Garrett, BOPR No. 13863
Disciplinary Counsel
1101 Kermit Drive, Suite 730
Nashville, TN 37217
615/361-7500

I, Cecil B. Crowson, Jr., Clerk, hereby certify that this is a true and exact copy of the original filed in the cause.

This 24 day of NOV., 1998

CLERK OF COURT

By: [signature]

TalmanCGP.SG

008440

#12262

P.O. Box 506
Knoxville, TN 37901

REQUEST FOR ASSESSMENT OF COSTS

RESPONDENT: William C. Talman Docket No. ____________

File Nos. to be included in Assessment: 13624. 2(K)-SG

File Nos. NOT to be included in Assessment: ____________

Special Instructions: ____________

DATE OF REQUEST: 3/16/98

DATE ASSESSMENT REQUIRED: At your earliest convenience. Thanks!

Sandy Garrett
Disciplinary Counsel

Board Professional Responsibility
1101 Kermit Dr., Suite 730
Nashville TN 37217

Invoice submitted to:
William C. Talman
P. O. Box 506
Knoxville TN 37901

March 17, 1998

Invoice # 1263

Professional services

| | | | Hours | Amount |
|---|---|---|---|---|
| 6/20/95 | SJG | Docketed and calendared. #13624 | 0.10 | 3.00 |
| 6/27/95 | SJG | Read and filed respondent's letter; calendered. #13624 | 0.10 | 3.00 |
| 7/12/95 | SJG | Talked with respondent. #13624 | 0.10 | 3.00 |
| 7/28/95 | SJG | Talked with Taplan re: scheduling meeting. #13624 | 0.10 | 3.00 |
| 7/31/95 | SJG | Read and filed respondent's letter; calendared. #13624 | 0.10 | 3.00 |
| 8/2/95 | SJG | Talked with Taplin; drafted subpoena. #13624 | 0.10 | 3.00 |
| 8/3/95 | SJG | Met with Cas Taplin re: Comptroller's investigation. #13624 | 0.40 | 12.00 |
| 8/25/95 | SJG | Drafted letter to respondent; calendared. #13624 | 0.20 | 6.00 |
| | SJG | Talked with respondent re: his response. #13624 | 0.10 | 3.00 |

| | | | Hours | Amount |
|---|---|---|---|---|
| 8/30/95 | SJG | Took notes on complaint and response; drafted Investigative Report. #13624 | 1.60 | 48.00 |
| 10/17/95 | SJG | Talked with respondent. #13624 | 0.20 | 6.00 |
| 11/21/95 | SJG | Partially drafted supplemental Investigative Report complete with number of hours billed per day. #13624 | 1.80 | 54.00 |
| | SJG | Reviewed fee petitions to draft Supplemental Report. #13624 | 1.60 | 48.00 |
| 11/22/95 | SJG | Drafted Supplemental Investigative Report. #13624 | 1.40 | 42.00 |
| 11/28/95 | SJG | Proofed and revised Investigative Report. #13624 | 0.20 | 6.00 |
| 12/11/95 | SJG | Talked with respondent. #13624 | 0.10 | 3.00 |
| 10/22/97 | SJG | Drafted petition and request for admissions. #13624 | 0.70 | 21.00 |
| 11/5/97 | SJG | Drafted letter to respondent. #13624 | 0.20 | 6.00 |
| 11/11/97 | SJG | Talked with complainant; calendared. #13624 | 0.10 | 3.00 |
| 11/13/97 | SJG | Talked with respondent. #13624 | 0.10 | 3.00 |
| 12/15/97 | SJG | Read respondent's letter; drafted responsive letter. #13624 | 0.40 | 12.00 |
| 12/19/97 | SJG | Talked with respondent. #13624 | 0.20 | 6.00 |
| 1/9/98 | SJG | Reviewed file; drafted memo to file; drafted memo for board report. #13624 | 0.40 | 12.00 |
| 1/16/98 | SJG | Talked with respondent. #13624 | 0.30 | 9.00 |
| 2/28/98 | SJG | Read and filed respondent's letter. #13624 | 0.20 | 6.00 |

| | | | Hours | Amount |
|---|---|---|---|---|
| 3/9/98 | SJG | Talked with respondent.<br>#13624 | 0.10 | 3.00 |
| 3/16/98 | SJG | Revised petiton for discipline; drafted proposed guilty plea.<br>#13624 | 0.60 | 18.00 |
| | | For professional services rendered | 11.50 | $345.00 |
| | | Additional charges: | | |
| 3/17/98- | | IKON Office Solutions - copy and mail press release.<br>#13624 | | 277.67 |
| | | Total costs | | $277.67 |
| | | Total amount of this bill | | $622.67 |
| | | Balance due | | $622.67 |

# BOARD OF PROFESSIONAL RESPONSIBILITY
OF THE
SUPREME COURT OF TENNESSEE

LANCE B. BRACY
CHIEF DISCIPLINARY COUNSEL
LAURA L. CHASTAIN
DEPUTY CHIEF DISCIPLINARY COUNSEL

1101 KERMIT DRIVE, SUITE 730
NASHVILLE, TENNESSEE 37217
TELEPHONE: (615) 361-7500
(800) 486-5714
FAX: (615) 367-2480
E:MAIL: 103454.2730@compuserve.com

WILLIAM W. HUNT, III
CHARLES A HIGH
SANDY GARRETT
JESSE D. JOSEPH
JULIANNE H. WAGNON
JAMES A. VICK
DISCIPLINARY COUNSEL


December 17, 1998

William C. Talman, Esquire
P. O. Box 506
Knoxville, TN 37901

Re: File No. 13624-2(K)-SG

Dear Mr. Talman:

In compliance with Rule 9, Section 24.3 of the Supreme Court of Tennessee, you are hereby assessed the costs of the disciplinary proceeding in which you have been involved.

Enclosed is a detailed assessment of costs in the amount of $622.67. Please forward your check in that amount payable to the Board of Professional Responsibility so that this matter may be finalized.

Sincerely,

Patty Burton

Patty Burton
Administrative Assistant

PB:mr

Enclosure

Board of Professional Responsibility
of the Supreme Court of Tennessee
1101 Kermit Dr., Suite 730
Nashville, TN 37217

Invoice submitted to:

William C. Talman, Esquire
P. O. Box 506
Knoxville, TN 37901

Re: File No. 13624-2(K)-SG

January 8, 1999

| | | |
|---|---|---|
| 03/17/98 | Assessment of Cost bill prepared | $ 622.67 |
| 01/04/99 | Payment on account | - 622.67 |
| | **BALANCE DUE** | **$ 0.00** |

Thank you for your payment!

JAN 25 1999

**_JULIE A. RICE_**
**_Attorney at Law_**
**_Post Office Box 426_**
**_Knoxville, TN 37901-0426_**
**_(423) 588-5434 (Voice/Fax)_**
**_Email: legaljam@bellsouth.net_**

January 21, 1999

FILED
January 28, 1999
BOARD OF PROFESSIONAL RESPONSIBILITY
OF THE
SUPREME COURT OF TENNESSEE
Mary Woodroof
Executive Secretary

Board of Professional Responsibility
Attn: Mr. Sandy Garrett
1101 Kermit Dr., Ste. 730
Nashville, TN 37217

Re: Dkt. No. 98-1037-2-SG (William C. Talman)

Dear Mr. Garrett:

Pursuant to the Order of Enforcement in the above-listed matter, I am hereby making my monthly report to the Board for the month of December, 1998. I reviewed the following fee claims prepared by Mr. Talman: Randall E. Best, Laconia L. Bowers (2 different cases), Carl G. Hamilton, and Betty Humphrey. After completing the review of the daily time sheets and fee claims, I executed a certification of my review for each fee claim which was then attached to them before submission to the A.O.C. If you desire a more detailed report each month than is contained here, please let me know.

Also, please note that as of January 1, 1999 I have a new last name. I got married at that time, and being old-fashioned, I will be using my husband's name from here on in my practice.

Sincerely,

Julie Rice

Julie A. Rice

/jar
cc: Mr. William C. Talman
*Misc. #2\WCT-12/98.rpt*

Tilman, William C.
#12262

File #13624-2(K)-SG

| DATE | NAME | CK.-REC. OR CASE NO. | COSTS ADVANCED | COSTS RECEIVED | TRUST FUNDS DISBURSED | TRUST FUNDS RECEIVED | FEES CHARGED | FEES RECEIVED | | BALANCES COSTS | BALANCES TRUST | BALANCES FEES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/17/98 | AOC prepared | #13624 | | | | | 622 67 | | 1 | | | 622 67 |
| 1/4/99 | Received on Acct. | " | | | | | | 622 67 | 2 | | | — |
| | | | | | | | | | 3 | | | |
| | | | | | | | | | 4 | | | |
| | | | | | | | | | 5 | | | |
| | | | | | | | | | 6 | | | |
| | | | | | | | | | 7 | | | |
| | | | | | | | | | 8 | | | |
| | | | | | | | | | 9 | | | |
| | | | | | | | | | 10 | | | |
| | | | | | | | | | 11 | | | |
| | | | | | | | | | 12 | | | |
| | | | | | | | | | 13 | | | |
| | | | | | | | | | 14 | | | |
| | | | | | | | | | 15 | | | |
| | | | | | | | | | 16 | | | |
| | | | | | | | | | 17 | | | |
| | | | | | | | | | 18 | | | |
| | | | | | | | | | 19 | | | |
| | | | | | | | | | 20 | | | |
| | | | | | | | | | 21 | | | |
| | | | | | | | | | 22 | | | |

Paid in Full

CLIENTS LEDGER

SAFEGUA[RD B]USINESS SYSTEMS
LANSDALE, PA ... [LOS AN]GELES CHICAGO-ATLANTA
FORM N... CL-3S

FILED
NOV 24 1998
Clerk of the Courts

IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

IN RE: WILLIAM C. TALMAN, Respondent, An Attorney Licensed and Admitted to Practice Law in Tennessee (Knox County)

DOCKET NO. 98-1037-2-SG

01501-9804-BP-00075

## ORDER OF ENFORCEMENT

This matter is before the Court upon the Board of Professional Responsibility's Petition for Discipline against the Respondent, William C. Talman. Respondent has submitted a Conditional Guilty Plea and the Board of Professional Responsibility has approved the plea. A copy of the Respondent's Conditional Guilty Plea is attached to this Order as Exhibit A.

It is therefore, **ORDERED, ADJUDGED and DECREED** that: William C. Talman's Guilty Plea is approved and entered for enforcement by this Court. The Respondent, William C. Talman, is suspended from the practice of law for a probationary period of eleven months, twenty nine days, with all time suspended, conditioned upon the absence of any finding by a court, the Board of Professional Responsibility or Hearing Panel during this eleven month, twenty nine probation that the Respondent has violated the Code of Professional Responsibility.

If a finding is made by any court, the Board of Professional Responsibility or Hearing Panel during this eleven month, twenty nine day probationary period that the Respondent has violated the Code of Professional Responsibility, then the Respondent's probation shall be immediately revoked and his suspension from the practice of law will be for the entire period of eleven months, twenty nine days, taking immediate effect.

It is further **ORDERED, ADJUDGED and DECREED** that the Respondent shall have a monitor, Julie Martin, who shall review Respondent's fee petitions and shall make monthly reports to the Board of Professional Responsibility for the probationary period regarding the Respondent's compliance.

It is further **ORDERED, ADJUDGED and DECREED** that the Respondent shall attend the Board of Professional Responsibility's Ethics School and a continuing legal education course regarding ethics and professionalism in criminal defense litigation. The Respondent shall also be available to the Board of Professional Responsibility for two (2) speaking engagements regarding the Respondent's previous inappropriate fee petitions.

It is further **ORDERED, ADJUDGED and DECREED** that the Respondent shall pay the costs of these proceedings in the amount of $622.67, for which execution may issue if necessary.

The Board of Professional Responsibility shall cause notice of this suspension to be published pursuant to Section 18.5 of Rule 9.

Entered this 24th day of November, 1998.

FOR THE COURT:

Adolpho A. Birch

Adolpho A. Birch, Jr., Justice

APPROVED FOR ENTRY:

Sandy Garrett

Sandy Garrett, BOPR #13863
Disciplinary Counsel
1101 Kermit Drive, Suite 730
Nashville, TN 37217

TalmanOrdEnf.SG

RECEIVED

OCT 30 1998

BOARD OF PROFESSIONAL RESPONSIBILITY
SUPREME COURT OF TENNESSEE

IN DISCIPLINARY DISTRICT II
OF THE
BOARD OF PROFESSIONAL RESPONSIBILITY
OF THE
SUPREME COURT OF TENNESSEE

IN RE: WILLIAM C. TALMAN, Respondent, An Attorney Licensed and Admitted to the Practice of Law in Tennessee (Knox County)

DOCKET NO. 98-1037-2-SG

# CONDITIONAL GUILTY PLEA

Comes now the Respondent, William C. Talman, and pursuant to Section 16.1 of Tennessee Supreme Court Rule 9 tenders this Conditional Guilty Plea showing the Court as follows:

1. Respondent has been served with a Petition for Discipline.

2. Respondent is aware that he is entitled to a hearing to determine the extent of discipline based on the charges set forth in the Petition for Discipline before a Hearing Committee.

3. Respondent is aware that he is entitled to make appeals of the Hearing Committee's decision to the Chancery Court and to the Supreme Court of Tennessee if he is dissatisfied with the decision of the lower tribunal.

4. Respondent desires to specifically waive such hearing and appeals provided that this Conditional Guilty Plea is accepted by the Board of Professional Responsibility of the Supreme Court of Tennessee.

# AMERICAN BAR ASSOCIATION

## NATIONAL LAWYER REGULATORY DATA BANK REPORT FORM

*Reporting Agent: Please type or print to complete and sign; attach court or disciplinary board order and return to:*

**Ms. Maria D. Pedraza**
**Data Bank Administrative Assistant**
**Center for Professional Responsibility**
**American Bar Association**
**541 No Fairbanks Ct M-S 14.3**
**Chicago IL 60611-3314**

(For Office Use Only)

**NAME** Talman William C.
(Last, Suffix) (First) (Middle)

**ADDRESS** (Office) P. O. Box 506
(Number & Street)
Knoxville TN 37901
(City) (State) (Zip)

**FORMER ADDRESS** ____
(Number & Street)
____
(City) (State) (Zip)

**JURISDICTIONS IN WHICH ADMITTED TO PRACTICE:**

| JURISDICTION | ADMISSION DATE | REGISTRATION OR BAR NUMBER |
|---|---|---|
| Tennessee | 1986 | 12262 |
| | | |
| | | |
| | | |

**DATE OF BIRTH** 05/ 19 59
mm/dd/yy

**INTERNATIONAL STANDARD LAWYER NUMBER (ISLN)** ____

**OTHER NAMES(S)** ____

**MOTHER'S BIRTH NAME** ____

**SOCIAL SECURITY #** ___ - ___ - ___ **GENDER F** ___ **M** X

**JURISDICTION IMPOSING REGULATORY ACTION** Tennessee

**ORDER DATE** 11/24 98 mm/dd/yy **EFFECTIVE DATE** / / mm/dd/yy

**ORDER OR DOCKET NUMBER(S)** 98-1032-2-SG

Authorized Reporting Agent Name/ Signature

Reporting Agent: Please refer to Instruction Sheet.

**DISBARMENT**

____ D105 DISBARMENT
____ D110 DISBARMENT ON CONSENT
____ D115 PERMANENT DISBARMENT
____ D120 RECIPROCAL DISBARMENT

**RESIGNATION**

____ D210 CHARGES PENDING
____ D215 PERMANENT RESIGNATION
____ D250 RECIPROCAL RESIGNATION

**TRANSFER RE INACTIVE STATUS**

____ D310 TO DISABILITY INACTIVE STATUS /NO CHARGES PENDING
____ D320 TRANSFER/CHARGES PENDING
____ D350 FROM INACTIVE STATUS
____ D360 RECIPROCAL TRANSFER

**SUSPENSION**

_x_ D405 DEFINITE SUSPENSION
____ D410 INDEFINITE SUSPENSION
____ D415 INTERIM/IMMEDIATE SUSPENSION
____ D420 SUSPENSION ON CONSENT
____ D435 RECIPROCAL SUSPENSION

11 months 29 days probationary w/time suspended

__/__/__/
__/__/__/
yy/mm/ddd

**PROBATION**

____ D525 PROBATION __/__/__/
____ D526 RECIPROCAL PROBATION __/__/__/
____ D527 EXTENSION OF PROBATION __/__/__/
____ D528 PROBATION ON CONSENT __/__/__/
____ D529 REVOCATION OF PROBATION: SUSPENSION __/__/__/
____ D524 TERMINATION OF PROBATION

yy/mm/ddd

**REPRIMAND/CENSURE**

____ D530 PUBLIC REPRIMAND/PUBLIC CENSURE
____ D531 RECIPROCAL REPRIMAND/CENSURE
____ D532 CONSENT REPRIMAND/CENSURE

**OTHER DISPOSITIONS**

____ D505 RESTITUTION $ ____
____ D510 COSTS $ ____
____ D515 FINES $ ____
____ D520 LIMITATIONS ON PRACTICE

____ D535 PROFESSIONAL RESPONSIBILITY EXAM
____ D536 BAR EXAM
____ D540 OTHER CONDITIONS/DISPOSITIONS

____ D545 PRO BONO HRS: ____
____ D548 LAW PRACTICE MANAGEMENT PROGRAM HRS: ____
____ D550 COMMUNITY SERVICE HRS: ____
____ D555 CONTINUING LEGAL EDUCATION HRS: ____

____ D558 ETHICS SCHOOL
____ D562 MONITOR TRUST ACCOUNTS
____ D565 REHABILITATION PROGRAM
____ D570 ALCOHOL/SUBSTANCE ABUSE MONITORING
____ D573 LAWYERS ASSISTANCE PROGRAM
____ D575 CONTEMPT
____ D580 ORDER STAYED
____ D585 ORDER VACATED
____ D590 ORDER MODIFIED

**REINSTATEMENT/READMISSION**

____ D605 REINSTATE/READMIT BY COURT ORDER
____ D610 AUTOMATIC REINSTATEMENT
____ D615 REINSTATEMENT DENIED
____ D700 RESPONDENT DECEASED

*REVISED 02/98*

# BOAR' ˏF PROFESSIONAL RESPONSIBILITY
OF THE
SUPREME COURT OF TENNESSEE

LANCE B. BRACY
CHIEF DISCIPLINARY COUNSEL
LAURA L. CHASTAIN
DEPUTY CHIEF DISCIPLINARY COUNSEL

1101 KERMIT DRIVE, SUITE 730
NASHVILLE, TENNESSEE 37217
TELEPHONE: (615) 361-7500
(800) 486-5714
FAX: (615) 367-2480
E-MAIL: ethics@tbpr.org

WILLIAM W. HUNT, III
CHARLES A HIGH
SANDY GARRETT
JESSE D. JOSEPH
JULIANNE H. WAGNON
JAMES A. VICK
DISCIPLINARY COUNSEL

December 8, 1998

Honorable Mary Beth Leibowitz
Criminal Court Judge
6th Judicial District
City County Building
400 Main Avenue, M-60
Knoxville, TN 37902

Re: William C. Talman

Dear Judge Leibowitz:

Enclosed is a copy of the Order of Enforcement filed on November 24, 1998, regarding William C. Talman. All the judges in the 6th Judicial District have received the release of information sent to the press. We are filing a copy of the order with your office, as Presiding Judge, in the event there is a need for further information concerning this matter.

Respectfully,

Lance B. Bracy
Chief Disciplinary Counsel

LBB:mw

Enclosure

OFFICE OF
CLERK OF THE COURTS
CECIL CROWSON, JR., CLERK

SUPREME COURT
COURT OF APPEALS
COURT OF CRIMINAL APPEALS

STATE OF TENNESSEE

November 24, 1998

Honorable Lance Bracy
Chief Disciplinary Counsel
1101 Kermit Drive
Oaks Tower, Suite 730
Nashville, TN 37217

RE: William C. Talman

Dear Lance:

Enclosed please find a certified copy of an order entered by the Supreme Court today in the captioned matter.

Sincerely,

Cecil Crowson, Jr.

Cecil Crowson, Jr.
Clerk of the Appellate Courts

CCjr:jsc
Enclosure
c/Supreme Court, Jackson
Supreme Court, Knoxville
Board of Law Examiners
Honorable David Shearon, CLE
William C. Talman

CHIEF DEPUTY CLERKS:

FRANKIE LEWIS, EASTERN DIVISION
SUPREME COURT BUILDING
P.O. BOX 444
KNOXVILLE, TN 37902
(423) 594-6700

MARGARET FAULKNER, MIDDLE DIVISION
SUPREME COURT BUILDING
401 SEVENTH AVENUE NORTH
NASHVILLE, TN 37219-1407
(615) 741-2681

SUE R. WALKER, WESTERN DIVISION
SUPREME COURT BUILDING
P. O. BOX 909
JACKSON, TN 38301-0909
(901) 423-5840

shall have a monitor, Julie Martin, who shall review Respondent's fee petitions and shall make monthly reports to the Board of Professional Responsibility for the probationary period regarding the Respondent's compliance.

It is further **ORDERED, ADJUDGED and DECREED** that the Respondent shall attend the Board of Professional Responsibility's Ethics School and a continuing legal education course regarding ethics and professionalism in criminal defense litigation. The Respondent shall also be available to the Board of Professional Responsibility for two (2) speaking engagements regarding the Respondent's previous inappropriate fee petitions.

It is further **ORDERED, ADJUDGED and DECREED** that the Respondent shall pay the costs of these proceedings in the amount of $622.67, for which execution may issue if necessary.

The Board of Professional Responsibility shall cause notice of this suspension to be published pursuant to Section 18.5 of Rule 9.

Entered this _____ day of _____________, 1998.

FOR THE COURT:

______________________________
Adolpho A. Birch, Jr., Justice

APPROVED FOR ENTRY:

Sandy Garrett
______________________________
Sandy Garrett, BOPR #13863
Disciplinary Counsel
1101 Kermit Drive, Suite 730
Nashville, TN 37217

TalmanOrdEnf.SG

**IN DISCIPLINARY DISTRICT II
OF THE
BOARD OF PROFESSIONAL RESPONSIBILITY
OF THE
SUPREME COURT OF TENNESSEE**

IN RE: WILLIAM C. TALMAN, Respondent, An Attorney Licensed and Admitted to the Practice of Law in Tennessee (Knox County)

DOCKET NO. 98-1037-2(K)-SG

---

## CONDITIONAL GUILTY PLEA

---

Comes now the Respondent, William C. Talman, and pursuant to Section 16.1 of Tennessee Supreme Court Rule 9 tenders this Conditional Guilty Plea showing the Court as follows:

1. Respondent has been served with a Petition for Discipline.

2. Respondent is aware that he is entitled to a hearing to determine the extent of discipline based on the charges set forth in the Petition for Discipline before a Hearing Committee.

3. Respondent is aware that he is entitled to make appeals of the Hearing Committee's decision to the Chancery Court and to the Supreme Court of Tennessee if he is dissatisfied with the decision of the lower tribunal.

4. Respondent desires to specifically waive such hearing and appeals provided that this Conditional Guilty Plea is accepted by the Board of Professional Responsibility of the Supreme Court of Tennessee.

EXHIBIT
A

5. Respondent is aware that, should he desire a hearing as to the extent of discipline based on the charges set forth in the Petition for Discipline, he would have the right to testify and to present evidence in his behalf, including the right to subpoena witnesses in his favor, however, he desires to waive those rights and to submit this Conditional Guilty Plea.

6. Respondent enters this Conditional Guilty Plea freely and voluntarily, without being subjected to coercion or duress, and he is fully aware of the implications of submitting this Conditional Guilty Plea.

7. Respondent admits his guilt of violating the following Disciplinary Rules (DR's) of the Code of Professional Responsibility: DR 1-102(A)(1)(5)(6) and DR 2-106(A)(B).

8. If approved, the discipline or stated form of punishment shall be that the Respondent is conditionally suspended from the practice of law for a probationary period of six (6) months, with all time suspended, conditioned upon the absence of any finding by a court, the Board of Professional Responsibility, or any Hearing Panel during the six (6) month suspension that the Respondent has violated the Code of Professional Responsibility and upon the Respondent complying with the following conditions of probation for the six (6) month period.

9. Respondent is aware that, in the event that he does not comply with the conditions set forth, or if a finding is made by any court, the Board of Professional Responsibility or Hearing Panel during this six (6) month probationary period that the Respondent has violated the Code of Professional Responsibility, then the Respondent's probation shall be immediately revoked and his suspension from the practice of law will be for the entire period of six (6) months taking immediate effect.

10. The conditions upon which the Respondent shall be granted probation are as follows:

a. Respondent shall have a monitor, who is Julie Martin, who shall review Respondent's fee petitions and shall make monthly reports to the Board for the period of probation regarding the Respondent's compliance.

b. Respondent shall attend the Board of Professional Responsibility's Ethics School and a continuing legal education course regarding ethics and professionalism in criminal defense litigation.

c. Respondent agrees to be available to Disciplinary Counsel for two (2) speaking engagements as to his previous inappropriate fee petitions.

11. Respondent agrees to reimburse the Board of Professional Responsibility the cost of this proceeding in the amount of $622.67.

12. In the event that this Conditional Guilty Plea is not accepted and approved by the Board of Professional Responsibility and/or the Supreme Court of Tennessee, it shall be considered void and of no effect.

This Conditional Guilty Plea has been executed on the 1st day of September, 1998, by the Respondent.

William C. Talman

SWORN to and subscribed before me this 1st day of Sept., 1998.

TAMMY J. MURPHY NOTARY PUBLIC AT LARGE KNOX COUNTY, TENN.

Tammy J. Murphy
NOTARY PUBLIC

My Commission Expires: 8/1/01

This Conditional Guilty Plea is hereby submitted by Disciplinary Counsel, who has approved and recommends this discipline as evidenced by counsel's signature below.

Sandy Garrett

Sandy Garrett, BOPR No. 13863
Disciplinary Counsel
1101 Kermit Drive, Suite 730
Nashville, TN 37217
615/361-7500

TalmanCGP.SG

BOARD ᴗ ·' PROFESSIONAL RESPONSIbɪLITY
OF THE
SUPREME COURT OF TENNESSEE

LANCE B. BRACY
CHIEF DISCIPLINARY COUNSEL
LAURA L. CHASTAIN
DEPUTY CHIEF DISCIPLINARY COUNSEL

1101 KERMIT DRIVE, SUITE 730
NASHVILLE, TENNESSEE 37217
TELEPHONE: (615) 361-7500
(800) 486-5714
FAX: (615) 367-2480
E:MAIL: 103454.2730@compuserve.com

WILLIAM W. HUNT, III
CHARLES A HIGH
SANDY GARRETT
JESSE D. JOSEPH
JULIANNE H. WAGNON
JAMES A. VICK
DISCIPLINARY COUNSEL

April 14, 1998

**CONFIDENTIAL**

Cecil V. Crowson, Jr.
Supreme Court Clerk
ATTN: Janice Clinkenbeard
100 Supreme Court Building
401 7th Avenue, North
Nashville, TN 37219-1407

Re: Docket No. 98-1037-2-SG
Respondent: William C. Talman

Dear Mr. Crowson:

Enclosed please find a proposed Order of Enforcement, with attached Conditional Guilty Plea, for Justice Birch's consideration.

If you have any questions, please let me know.

Sincerely,

Sandy Garrett

Sandy Garrett
Disciplinary Counsel

SG:cd
Enclosure

TalmanSh.SG

cc: William C. Talman, Esquire
P. O. Box 506
Knoxville, TN 37901

bcc: MW

**IN THE SUPREME COURT OF TENNESSEE**

**AT NASHVILLE**

| | | |
|---|---|---|
| IN RE: | WILLIAM C. TALMAN,<br>Respondent, An Attorney<br>Licensed and Admitted to<br>Practice Law in Tennessee<br>(Knox County) | DOCKET NO. 98-1037-2-SG |

**ORDER OF ENFORCEMENT**

This matter is before the Court upon the Board of Professional Responsibility's Petition for Discipline against the Respondent, William C. Talman. Respondent has submitted a Conditional Guilty Plea in exchange for an eleven (11) month, twenty nine (29) day suspension, with all time suspended, and the Board of Professional Responsibility has approved the plea. A copy of the Respondent's Conditional Guilty Plea is attached to this Order as Exhibit A.

It is therefore, **ORDERED, ADJUDGED and DECREED** that: William C. Talman's Guilty Plea is approved and entered for enforcement by this Court. The Respondent, William C. Talman, is suspended from the practice of law for a period of eleven (11) months, twenty nine (29) days, with all time suspended, conditioned upon the absence of any finding by a court, the Board of Professional Responsibility or Hearing Panel during this eleven (11) month, twenty nine (29) day suspension that the Respondent has violated the Code of Professional Responsibility.

If a finding is made by any court, the Board of Professional Responsibility or Hearing Panel during this eleven (11) month, twenty nine (29) day suspension period that the Respondent has violated the Code of Professional Responsibility, then the Respondent's probation shall be immediately revoked and his suspension from the practice of law will be for the entire period of eleven (11) months, twenty nine (29) days, taking immediate effect.

It is further **ORDERED, ADJUDGED and DECREED** that the Respondent shall pay the costs of these proceedings in the amount of $622.67, for which execution may issue if necessary.

The Board of Professional Responsibility shall cause notice of this suspension to be published pursuant to Section 18.5 of Rule 9.

Entered this _____ day of _____________, 1998.

FOR THE COURT:

_______________________________
Adolpho A. Birch, Jr., Justice

APPROVED FOR ENTRY:

Sandy Garrett
Sandy Garrett, BOPR #13863
Disciplinary Counsel
1101 Kermit Drive, Suite 730
Nashville, TN 37217

TalmanOrdEnf.SG

Board Professional Responsibility
1101 Kermit Dr., Suite 730
Nashville TN 37217

Invoice submitted to:
William C. Talman
P. O. Box 506
Knoxville TN 37901

March 17, 1998

Invoice # 1263

Professional services

| | | | Hours | Amount |
|---|---|---|---|---|
| 6/20/95 | SJG | Docketed and calendared.<br>#13624 | 0.10 | 3.00 |
| 6/27/95 | SJG | Read and filed respondent's letter; calendered.<br>#13624 | 0.10 | 3.00 |
| 7/12/95 | SJG | Talked with respondent.<br>#13624 | 0.10 | 3.00 |
| 7/28/95 | SJG | Talked with Taplan re: scheduling meeting.<br>#13624 | 0.10 | 3.00 |
| 7/31/95 | SJG | Read and filed respondent's letter; calendared.<br>#13624 | 0.10 | 3.00 |
| 8/2/95 | SJG | Talked with Taplin; drafted subpoena.<br>#13624 | 0.10 | 3.00 |
| 8/3/95 | SJG | Met with Cas Taplin re: Comptroller's investigation.<br>#13624 | 0.40 | 12.00 |
| 8/25/95 | SJG | Drafted letter to respondent; calendared.<br>#13624 | 0.20 | 6.00 |
| | SJG | Talked with respondent re: his response.<br>#13624 | 0.10 | 3.00 |

| | | | Hours | Amount |
|---|---|---|---|---|
| 8/30/95 | SJG | Took notes on complaint and response; drafted Investigative Report. #13624 | 1.60 | 48.00 |
| 10/17/95 | SJG | Talked with respondent. #13624 | 0.20 | 6.00 |
| 11/21/95 | SJG | Partially drafted supplemental Investigative Report complete with number of hours billed per day. #13624 | 1.80 | 54.00 |
| | SJG | Reviewed fee petitions to draft Supplemental Report. #13624 | 1.60 | 48.00 |
| 11/22/95 | SJG | Drafted Supplemental Investigative Report. #13624 | 1.40 | 42.00 |
| 11/28/95 | SJG | Proofed and revised Investigative Report. #13624 | 0.20 | 6.00 |
| 12/11/95 | SJG | Talked with respondent. #13624 | 0.10 | 3.00 |
| 10/22/97 | SJG | Drafted petition and request for admissions. #13624 | 0.70 | 21.00 |
| 11/5/97 | SJG | Drafted letter to respondent. #13624 | 0.20 | 6.00 |
| 11/11/97 | SJG | Talked with complainant; calendared. #13624 | 0.10 | 3.00 |
| 11/13/97 | SJG | Talked with respondent. #13624 | 0.10 | 3.00 |
| 12/15/97 | SJG | Read respondent's letter; drafted responsive letter. #13624 | 0.40 | 12.00 |
| 12/19/97 | SJG | Talked with respondent. #13624 | 0.20 | 6.00 |
| 1/9/98 | SJG | Reviewed file; drafted memo to file; drafted memo for board report. #13624 | 0.40 | 12.00 |
| 1/16/98 | SJG | Talked with respondent. #13624 | 0.30 | 9.00 |
| 2/28/98 | SJG | Read and filed respondent's letter. #13624 | 0.20 | 6.00 |

| | | | Hours | Amount |
|---|---|---|---|---|
| 3/9/98 | SJG | Talked with respondent.<br>#13624 | 0.10 | 3.00 |
| 3/16/98 | SJG | Revised petiton for discipline; drafted proposed guilty plea.<br>#13624 | 0.60 | 18.00 |
| | | For professional services rendered | 11.50 | $345.00 |

Additional charges:

| | | |
|---|---|---|
| 3/17/98- | IKON Office Solutions - copy and mail press release.<br>#13624 | 277.67 |
| | Total costs | $277.67 |
| | Total amount of this bill | $622.67 |
| | Balance due | $622.67 |

**IN DISCIPLINARY DISTRICT II**
**OF THE**
**BOARD OF PROFESSIONAL RESPONSIBILITY**
**OF THE**
**SUPREME COURT OF TENNESSEE**

IN RE: WILLIAM C. TALMAN, Respondent, An Attorney Licensed and Admitted to the Practice of Law in Tennessee (Knox County)

DOCKET NO. 98-1037-2-SG

# CONDITIONAL GUILTY PLEA

Comes now the Respondent, William C. Talman, and pursuant to Section 16.1 of Tennessee Supreme Court Rule 9 tenders this Conditional Guilty Plea showing the Court as follows:

1. Respondent has been served with a Petition for Discipline.

2. Respondent is aware that he is entitled to a hearing to determine the extent of discipline based on the charges set forth in the Petition for Discipline before a Hearing Committee.

3. Respondent is aware that he is entitled to make appeals of the Hearing Committee's decision to the Chancery Court and to the Supreme Court of Tennessee if he is dissatisfied with the decision of the lower tribunal.

4. Respondent desires to specifically waive such hearing and appeals provided that this Conditional Guilty Plea is accepted by the Board of Professional Responsibility of the Supreme Court of Tennessee.

EXHIBIT
A

5. Respondent is aware that, should he desire a hearing as to the extent of discipline based on the charges set forth in the Petition for Discipline, he would have the right to testify and to present evidence in his behalf, including the right to subpoena witnesses in his favor, however, he desires to waive those rights and to submit this Conditional Guilty Plea.

6. Respondent enters this Conditional Guilty Plea freely and voluntarily, without being subjected to coercion or duress, and he is fully aware of the implications of submitting this Conditional Guilty Plea.

7. Respondent in his best interest, hereby enters this Conditional Plea of Guilty to violating the Disciplinary Rules of the Code of Professional Responsibility: 1-102(A)(1)(5) and DR 2-106(A).

8. If approved, the discipline or stated form of punishment shall be that the Respondent is suspended from the practice of law for a period of eleven (11) months, twenty nine (29) days, with all time suspended, conditioned upon the absence of any finding by a court, the Board of Professional Responsibility, or any Hearing Panel during the eleven (11) month, twenty nine (29) day suspension that the Respondent has violated the Code of Professional Responsibility.

9. If a finding is made by any court, the Board of Professional Responsibility or Hearing Panel during this eleven (11) month, twenty nine (29) day suspension period that the Respondent has violated the Code of Professional Responsibility, then the Respondent's probation shall be immediately revoked and his suspension from the practice of law will be for the entire period of eleven (11) months, twenty nine (29) days taking immediate effect.

10. Respondent agrees to reimburse the Board of Professional Responsibility the cost of this proceeding in the amount of $622.67.

11. In the event that this Conditional Guilty Plea is not accepted and approved by the Hearing Panel, the Board of Professional Responsibility and/or the Supreme Court of Tennessee, it shall be considered void and of no effect.

This Conditional Guilty Plea has been executed on the 30th day of March, 1998, by the Respondent.

William C. Talman

SWORN to and subscribed before me this 30th day of March, 1998.

TAMMY J. MURPHY NOTARY PUBLIC AT LARGE KNOX COUNTY, TENN.

Tammy J. Murphy
NOTARY PUBLIC

My Commission Expires: Aug 1, 2001

This Conditional Guilty Plea is hereby submitted by Disciplinary Counsel, who has approved and recommends this discipline as evidenced by counsel's signature below.

Sandy Garrett

Sandy Garrett
Disciplinary Counsel
1101 Kermit Drive, Suite 730
Nashville, TN 37217
615/361-7500

TalmanCGP.SG

FILED
NOV 24 1998
Clerk of the Courts

IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

IN RE: WILLIAM C. TALMAN, Respondent, An Attorney Licensed and Admitted to Practice Law in Tennessee (Knox County)

DOCKET NO. 98-1037-2-SG

01S01-9804-BP-00075

# ORDER OF ENFORCEMENT

This matter is before the Court upon the Board of Professional Responsibility's Petition for Discipline against the Respondent, William C. Talman. Respondent has submitted a Conditional Guilty Plea and the Board of Professional Responsibility has approved the plea. A copy of the Respondent's Conditional Guilty Plea is attached to this Order as Exhibit A.

It is therefore, **ORDERED, ADJUDGED and DECREED** that: William C. Talman's Guilty Plea is approved and entered for enforcement by this Court. The Respondent, William C. Talman, is suspended from the practice of law for a probationary period of eleven months, twenty nine days, with all time suspended, conditioned upon the absence of any finding by a court, the Board of Professional Responsibility or Hearing Panel during this eleven month, twenty nine probation that the Respondent has violated the Code of Professional Responsibility.

If a finding is made by any court, the Board of Professional Responsibility or Hearing Panel during this eleven month, twenty nine day probationary period that the Respondent has violated the Code of Professional Responsibility, then the Respondent's probation shall be immediately revoked and his suspension from the practice of law will be for the entire period of eleven months, twenty nine days, taking immediate effect.

It is further **ORDERED, ADJUDGED and DECREED** that the Respondent shall have a monitor, Julie Martin, who shall review Respondent's fee petitions and shall make monthly reports to the Board of Professional Responsibility for the probationary period regarding the Respondent's compliance.

It is further **ORDERED, ADJUDGED and DECREED** that the Respondent shall attend the Board of Professional Responsibility's Ethics School and a continuing legal education course regarding ethics and professionalism in criminal defense litigation. The Respondent shall also be available to the Board of Professional Responsibility for two (2) speaking engagements regarding the Respondent's previous inappropriate fee petitions.

It is further **ORDERED, ADJUDGED and DECREED** that the Respondent shall pay the costs of these proceedings in the amount of $622.67, for which execution may issue if necessary.

The Board of Professional Responsibility shall cause notice of this suspension to be published pursuant to Section 18.5 of Rule 9.

Entered this 24th day of November, 1998.

FOR THE COURT:

Adolpho A. Birch

Adolpho A. Birch, Jr., Justice

APPROVED FOR ENTRY:

Sandy Garrett

Sandy Garrett, BOPR #13863
Disciplinary Counsel
1101 Kermit Drive, Suite 730
Nashville, TN 37217

TalmanOrdBaf.SG

RECEIVED

OCT 30 1998

BOARD OF PROFESSIONAL RESPONSIBILITY
SUPREME COURT OF TENNESSEE

IN DISCIPLINARY DISTRICT II
OF THE
BOARD OF PROFESSIONAL RESPONSIBILITY
OF THE
SUPREME COURT OF TENNESSEE

IN RE: WILLIAM C. TALMAN, Respondent, An Attorney Licensed and Admitted to the Practice of Law in Tennessee (Knox County)

DOCKET NO. 98-1037-2-SG

# CONDITIONAL GUILTY PLEA

Comes now the Respondent, William C. Talman, and pursuant to Section 16.1 of Tennessee Supreme Court Rule 9 tenders this Conditional Guilty Plea showing the Court as follows:

1. Respondent has been served with a Petition for Discipline.

2. Respondent is aware that he is entitled to a hearing to determine the extent of discipline based on the charges set forth in the Petition for Discipline before a Hearing Committee.

3. Respondent is aware that he is entitled to make appeals of the Hearing Committee's decision to the Chancery Court and to the Supreme Court of Tennessee if he is dissatisfied with the decision of the lower tribunal.

4. Respondent desires to specifically waive such hearing and appeals provided that this Conditional Guilty Plea is accepted by the Board of Professional Responsibility of the Supreme Court of Tennessee.

5. Respondent is aware that, should he desire a hearing as to the extent of discipline based on the charges set forth in the Petition for Discipline, he would have the right to testify and to present evidence in his behalf, including the right to subpoena witnesses in his favor, however, he desires to waive those rights and to submit this Conditional Guilty Plea.

6. Respondent enters this Conditional Guilty Plea freely and voluntarily, without being subjected to coercion or duress, and he is fully aware of the implications of submitting this Conditional Guilty Plea.

7. Respondent in his best interest, hereby enters this Conditional Guilty Plea of Guilty to violating the Disciplinary Rules of the Code of Professional Responsibility: DR 1-102(A)(1)(5)(6) and DR 2-106(A)(B).

8. If approved, the discipline or stated form of punishment shall be that the Respondent is suspended from the practice of law for a probationary period of eleven (11) months, twenty nine (29) days, with all time suspended, conditioned upon the absence of any finding by a court, the Board of Professional Responsibility, or any Hearing Panel during the eleven (11) month, twenty nine (29) day suspension that the Respondent has violated the Code of Professional Responsibility and upon the Respondent complying with the following conditions of probation for the eleven (11) months, twenty nine (29) days.

9. Respondent is aware that, in the event he does not comply with the conditions set forth, or if a finding is made by any court, the Board of Professional Responsibility or Hearing Panel during this eleven (11) month, twenty nine (29) day probationary period that the Respondent has violated the Code of Professional Responsibility, then the Respondent's probation shall be immediately revoked and his suspension from the practice of law will be for the entire period of eleven (11) months and twenty nine (29) days taking immediate effect.

10. The conditions upon which the Respondent shall be granted probation are as follows:

a. Respondent shall have a monitor, who is Julie Martin, who shall review Respondent's fee petitions and shall make monthly reports to the Board for the period of probation regarding the Respondent's compliance.

b. Respondent shall attend the Board of Professional Responsibility's Ethics School and a continuing legal education course regarding ethics and professionalism in criminal defense litigation.

c. Respondent agrees to be available to Disciplinary Counsel for two (2) speaking engagements as to his previous inappropriate fee petitions.

11. Respondent agrees to reimburse the Board of Professional Responsibility the cost of this proceeding in the amount of $622.67.

12. In the event that this Conditional Guilty Plea is not accepted and approved by the Board of Professional Responsibility and/or the Supreme Court of Tennessee, it shall be considered void and of no effect.

This Conditional Guilty Plea has been executed on the 2 9th day of October, 1998, by the Respondent.

[signature]
William C. Talman

SWORN to and subscribed before me this 29th day of October, 1998.

[signature]
NOTARY PUBLIC

My Commission Expires: October 2, 2002

This Conditional Guilty Plea is hereby submitted by Disciplinary Counsel, who has approved and recommends this discipline as evidenced by counsel's signature below.

Sandy Garrett

Sandy Garrett, BOPR No. 13863
Disciplinary Counsel
1101 Kermit Drive, Suite 730
Nashville, TN 37217
615/361-7500

I, Cecil B. Crowson, Jr., Clerk, hereby certify that this is a true and exact copy of the original filed in the cause.
This 24 day of NOV., 1998
CLERK OF COURT
By: [signature]

TalmanCGP.SG

FILED
April 15, 1998
BOARD OF PROFESSIONAL RESPONSIBILITY
OF THE
SUPREME COURT OF TENNESSEE
Mary Woodroof
Executive Secretary

**IN DISCIPLINARY DISTRICT II**
**OF THE**
**BOARD OF PROFESSIONAL RESPONSIBILITY**
**OF THE**
**SUPREME COURT OF TENNESSEE**

IN RE: WILLIAM C. TALMAN, Respondent, An Attorney Licensed and Admitted to the Practice of Law in Tennessee (Knox County)

DOCKET NO. 98-1037-2-SG

# CONDITIONAL GUILTY PLEA

Comes now the Respondent, William C. Talman, and pursuant to Section 16.1 of Tennessee Supreme Court Rule 9 tenders this Conditional Guilty Plea showing the Court as follows:

1. Respondent has been served with a Petition for Discipline.

2. Respondent is aware that he is entitled to a hearing to determine the extent of discipline based on the charges set forth in the Petition for Discipline before a Hearing Committee.

3. Respondent is aware that he is entitled to make appeals of the Hearing Committee's decision to the Chancery Court and to the Supreme Court of Tennessee if he is dissatisfied with the decision of the lower tribunal.

4. Respondent desires to specifically waive such hearing and appeals provided that this Conditional Guilty Plea is accepted by the Board of Professional Responsibility of the Supreme Court of Tennessee.

EXHIBIT
A

5. Respondent is aware that, should he desire a hearing as to the extent of discipline based on the charges set forth in the Petition for Discipline, he would have the right to testify and to present evidence in his behalf, including the right to subpoena witnesses in his favor, however, he desires to waive those rights and to submit this Conditional Guilty Plea.

6. Respondent enters this Conditional Guilty Plea freely and voluntarily, without being subjected to coercion or duress, and he is fully aware of the implications of submitting this Conditional Guilty Plea.

7. Respondent in his best interest, hereby enters this Conditional Plea of Guilty to violating the Disciplinary Rules of the Code of Professional Responsibility: 1-102(A)(1)(5) and DR 2-106(A).

8. If approved, the discipline or stated form of punishment shall be that the Respondent is suspended from the practice of law for a period of eleven (11) months, twenty nine (29) days, with all time suspended, conditioned upon the absence of any finding by a court, the Board of Professional Responsibility, or any Hearing Panel during the eleven (11) month, twenty nine (29) day suspension that the Respondent has violated the Code of Professional Responsibility.

9. If a finding is made by any court, the Board of Professional Responsibility or Hearing Panel during this eleven (11) month, twenty nine (29) day suspension period that the Respondent has violated the Code of Professional Responsibility, then the Respondent's probation shall be immediately revoked and his suspension from the practice of law will be for the entire period of eleven (11) months, twenty nine (29) days taking immediate effect.

10. Respondent agrees to reimburse the Board of Professional Responsibility the cost of this proceeding in the amount of $622.67.

11. In the event that this Conditional Guilty Plea is not accepted and approved by the Hearing Panel, the Board of Professional Responsibility and/or the Supreme Court of Tennessee, it shall be considered void and of no effect.

This Conditional Guilty Plea has been executed on the 30th day of March, 1998, by the Respondent.

William C. Talman

SWORN to and subscribed before me this 30th day of March, 1998.

TAMMY J. MURPHY NOTARY PUBLIC AT LARGE KNOX COUNTY, TENN.

Tammy J. Murphy
NOTARY PUBLIC

My Commission Expires: Aug 1, 2001

This Conditional Guilty Plea is hereby submitted by Disciplinary Counsel, who has approved and recommends this discipline as evidenced by counsel's signature below.

Sandy Garrett

Sandy Garrett
Disciplinary Counsel
1101 Kermit Drive, Suite 730
Nashville, TN 37217
615/361-7500

TalmanCGP.SG

OFFICE OF
CLERK OF THE COURTS
CECIL CROWSON, JR., CLERK

STATE OF TENNESSEE

SUPREME COURT
COURT OF APPEALS
COURT OF CRIMINAL APPEALS

# STATEMENT

**STATEMENT NO: n1124989**
**DUE DATE: UPON RECEIPT**
**AMOUNT DUE: $35.00**

**TO: William C. Talman**
**P. O. Box 506**
**Knoxville, TN 37901**

---

- ☐ **COPY WORK**
- ☐ **CERTIFICATE OF GOOD STANDING**
- ☐ **SUPREME COURT ENROLLMENT**
- ☐ **OTHER BPR Order - 11/24/98**

**TOTAL COST DUE $35.00**

**PLEASE MAKE CHECK PAYABLE TO APPELLATE COURT CLERK.**
**REMIT PAYMENT TO:**

**APPELLATE COURT COST CENTER**
**ARCADE STATION**
**P.O. BOX 198781**
**NASHVILLE, TN 37219-8781**
**(615) 741-2687**

**PLEASE RETURN COPY WITH PAYMENT**

FRANKIE LEWIS, CHIEF DEPUTY
SUPREME COURT BUILDING
P.O. BOX 444
KNOXVILLE, TN 37902
(423) 594-6700

CECIL CROWSON, JR., CLERK
SUPREME COURT BUILDING
401 SEVENTH AVENUE NORTH
NASHVILLE, TN 37219-1407
(615)741-2681

SUE R. WALKER, CHIEF DEPUTY
CLERKSUPREME COURT BUILDING
P. O. BOX 909
JACKSON, TN 38301-0909
(901) 423-5840

FILED
March 19, 1998
BOARD OF PROFESSIONAL RESPONSIBILITY
OF THE
SUPREME COURT OF TENNESSEE
Shirley Rader
Deputy Executive Secretary

**IN DISCIPLINARY DISTRICT II**
**OF THE**
**BOARD OF PROFESSIONAL RESPONSIBILITY**
**OF THE**
**SUPREME COURT OF TENNESSEE**

IN RE: WILLIAM C. TALMAN, Respondent, An Attorney Licensed and Admitted to the Practice of Law in Tennessee (Knox County)

DOCKET NO. 98-1037-2-SG

---

# PETITION FOR DISCIPLINE

---

Comes now Disciplinary Counsel for the Board of Professional Responsibility of the Supreme Court of Tennessee (hereinafter referred to as the Board), pursuant to Rule 9, Rules of the Supreme Court of Tennessee and files this Petition for Discipline against the Respondent, William C. Talman, and would respectfully show:

1. Respondent is an attorney admitted by the Supreme Court of Tennessee to practice law in the State of Tennessee. His office address is P. O. Box 506, Knoxville, Tennessee 37901, located in Knox County and Disciplinary District II.

2. Pursuant to Section 1, of Rule 9, Rules of the Supreme Court of Tennessee, any attorney admitted to practice law in Tennessee is subject to the disciplinary jurisdiction of the Supreme Court, the Board of Professional Responsibility, the Hearing Committees, hereinafter established, and the Circuit and Chancery Courts.

3. Pursuant to Section 3 of Rule 9, Rules of the Supreme Court of Tennessee, the license to practice law in Tennessee is a privilege and it is the duty of every recipient of

that privilege to conduct himself at all times in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law. Acts or omissions by an attorney, which violate the Code of Professional Responsibility of the State of Tennessee or Tennessee Code Annotated, Section 23-3-201, shall constitute misconduct and shall be grounds for discipline.

4. William C. Talman, has failed to conduct himself in conformity with said standards and is guilty of acts and omissions in violation of the authority cited. Accordingly, the Board of Professional Responsibility authorized the filing of formal charges.

**FILE NO. 13624-2(K)-SG**

5. On March 30, 1994, the Respondent self-reported to the Board the Respondent's potential ethical violation. On June 22, 1994; July 29, 1994 and September 15, 1994, the Respondent provided additional information to the Board regarding the Respondent's own internal review of his fee claims submitted to the State in connection with court appointed indigent cases. On June 13, 1995, a complaint was filed against the Respondent and designated as File No. 13624-2(K)-SG. Pursuant to Rule 9, Rules of the Supreme Court, the Respondent was notified of the complaint and afforded an opportunity to respond. Copies of the summary of complaint and notice of the complaint were sent to the Respondent on June 13, 1995. The Respondent's response dated August 28, 1995 was received by the Board on August 30, 1995. Copies of the summary of complaint, notice of the complaint, the Respondent's response and the Respondent's self-reporting correspondence are attached as Collective Exhibit A to this Petition for Discipline.

6. From 1990 through 1993, the Respondent was appointed to represent indigent defendants.

7. The Special Report of the Comptroller of the Treasury of the State of

Tennessee found that the Respondent's fee petitions submitted for 1990 exceeded the Comptroller's criteria by $20,123.00.

8. The Special Report of the Comptroller found that the Respondent's fee petitions submitted for 1991 exceeded the Comptroller's criteria by $11,147.00.

9. The Special Report of the Comptroller found that the Respondent's fee petitions submitted for 1992 exceeded the Comptroller's criteria by $18,462.00.

10. The Special Report of the Comptroller found that the Respondent's fee petitions submitted for 1993 exceeded the Comptroller's criteria by $17,295.00

11. The Special Report of the Comptroller found that the Respondent's fee petitions in total exceeded the Comptroler's criteria by $67,027.00.

## ALLEGED VIOLATIONS

12. It is alleged that the Respondent violated, as set forth, the following authorities: DR 1-102(A)(1)(5)(6); DR 2-106(A)(B) and DR 7-102(A)(8) of the Code of Professional Responsibility.

**DR 1-102 Misconduct**

(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) ...
(3) ...
(4) ...
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

**DR 2-106 Fees For Legal Services**

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the

fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service property.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.

(C) ...

**DR 7-102 Representing A client Within the Bounds of the Law**

(A) In his representation of a client, a lawyer shall not:
(1) ...
(2) ...
(3) ...
(4) ...
(5) ...
(6) ...
(7) ...
(8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule.

## <u>RELIEF</u>

13. Disciplinary Counsel respectfully requests that a Hearing Panel be appointed from Disciplinary District II to hear testimony, receive evidence in this cause, to make such findings as it deems appropriate and impose against the Respondent the discipline deemed appropriate.

Respectfully submitted,

Sandy Garrett

Sandy Garrett, BOPR #13863
Disciplinary Counsel
1101 Kermit Drive, Suite 730
Nashville, TN 37217
615/361-7500

## NOTICE TO PLEAD

**TO: William C. Talman, Esquire**
**P. O. Box 506**
**Knoxville, TN 37901**

You are hereby notified that you are required to file your answer with Mary Woodroof, Executive Secretary, Board of Professional Responsibility, 1101 Kermit Drive, Suite 730, Nashville, Tennessee 37217 and serve a copy of your answer upon Disciplinary Counsel within twenty (20) days after service of this Petition. If you fail to file an answer the matters shall be deemed admitted.

## CERTIFICATE OF SERVICE

I certify that I have served a copy of this Petition for Discipline upon Respondent, William C. Talman, by mailing a copy to him at P. O. Box 506, Knoxville, Tennessee 37901, by Certified Mail, Return Receipt Requested No. P 412 575 804, on this the 19th day of March, 1998.

Sandy Garrett
Sandy Garrett

TalmanPet.SG

P 412 575 804

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail *(See reverse)*

| Sent to | |
|---|---|
| William C. Talman, Esquire<br>P. O. Box 506<br>Knoxville, TN 37901 | |
| Postage | $ 1.01 |
| Certified Fee | 1.35 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | 1.10 |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ 3.46 |
| Postmark or Date<br>98-1037-2-SG<br>Pet/Dis 3/19/98 | |

PS Form **3800**, April 1995

# BOARD OF PROFESSIONAL RESPONSIBILITY

ESPONDENT(S): William C. Talman (Knoxville)

INFORMANT: William R. Snodgrass Comptroller of the Treasury

FILE NO.: 13624-2(K)-TH DATE: June 13, 1995

Disciplinary Rule(s) potentially involved in the complaint:
DR 1-102(A)(1)(2)(3)(4)(5)(6); 2-106(A)(B); 7-102(A)(1)(2)(3)(4)(5)(6)(8); 7-106(C)(1)(5)(6)(7)

**CONFIDENTIAL**

SUMMARY OF COMPLAINT

The Special Report of the Comptroller of the Treasury for the State of Tennessee relating to improper billings submitted by counsel appointed to represent indigent individuals contains the following information, in part.

To determine what would be a reasonable number of in-court and out-of-court hours for an attorney for one day..., we set our daily threshold at 8 in-court hours and 12 total hours. The hours billed over these amounts were classified as excessive.

Mr. Talman's fee petitions submitted for 1993 exceeded our criteria by $17,295. His fee petitions for 1990, 1991 and 1992 appear to have exceeded our criteria by $20,123, $11,147 and $18,462, respectively. Thus, his apparent overbilling for the four-year period total $67,027.

Detailed review of the fee petitions for the 8 days selected revealed that Mr. Talman billed the state for over 24 hours on 6 of these 8 days. All of Mr. Talman's fee petitions for these 8 days reached or exceeded the total hours required to reach the maximum allowed payment. In light of the large number of claims he submitted in this manner, it appears that Mr. Talman overstated both the in-court and out-of-court hours in an effort to reach or exceed the maximum. On the fee petitions submitted by Mr. Talman that exceeded the state's maximum, the amount of services generally exceeded the maximum allowed by $10 to $20.

Mr. Talman's fee petitions generally contained similar hours claimed for different defendants on a single day or similar hours for multiple fee petitions for a single defendant. In addition, all his claims related to general sessions cases for these 8 days and were signed by specially appointed judges. These appointed judges included attorneys Thomas Slaughter and David Poss.

EXHIBIT
COLLECTIVE
A

# BOARD OF PROFESSIONAL RESPONSIBILITY
OF THE
SUPREME COURT OF TENNESSEE

LANCE B. BRACY
CHIEF DISCIPLINARY COUNSEL

LAURA L. CHASTAIN
DEPUTY CHIEF DISCIPLINARY COUNSEL

1101 KERMIT DRIVE, SUITE 730
NASHVILLE, TENNESSEE 37217
TELEPHONE: (615)-361-7500
(800)-486-5714
FAX: (615)-367-2480

WILLIAM W. HUNT, III
CHARLES A. HIGH

JUNE G. BOWLES
SANDY GARRETT
DISCIPLINARY COUNSEL


June 13, 1995

CONFIDENTIAL

William C. Talman, Esquire
P.O. Box 506
Knoxville, TN 37901

When Responding Please Use:

Re: File No. 13624-2(K)-TH

Dear Mr. Talman:

Enclosed is a copy of a summary of complaint received by the Board of Professional Responsibility concerning your conduct. It is necessary that you submit a clear and concise statement within ten days of your receipt of this letter concerning your acts surrounding the above matters for the purpose of a disclosure of the truth. Your answer will serve as preliminary information to determine if there has been a misunderstanding or if there has been any impropriety. We will likely mail a copy of your answer to the Informant to ascertain the Informant's comments.

This matter has been assigned to Disciplinary Counsel Tripp Hunt.

Your cooperation will enable this office to make a proper disposition of this matter in a manner consistent with the rights of the public and the protection of attorneys from unfounded complaints.

Sincerely,

Lance B. Bracy
Chief Disciplinary Counsel

LBB:cj

Enclosure

AUG 30 1995

*WILLIAM C. TALMAN, P.C.*
*Attorney at Law*
*P.O. Box 506*
*Knoxville, Tennessee 37901-0506*

*Telephone: (615) 579-9060*
*Facsimile: (615) 573-2032*

August 28, 1995

Honorable Sandy Garrett
Disciplinary Counsel
Board of Professional Responsibility
of the Supreme Court of Tennessee
1101 Kermit Drive, Suite 730
Nashville, Tennessee 37217

**CERTIFIED MAIL -- RETURN RECEIPT REQUESTED NO.: P 091 954 964**

RE: Your File No. 13624-2(K)-SG

Dear Ms. Garrett:

Enclosed herewith please find my response to the summary of complaint received from your office. I appreciate the courtesy that you demonstrated during our previous telephone conversation wherein I had requested additional time within which to respond to this complaint.

If you should have any questions or comments concerning this matter, or if you should require any additional information, please feel free to contact my office at your convenience.

Very truly yours,

William C. Talman

cc: file copy

Enclosures

## STATEMENT OF BACKGROUND HISTORY RELATIVE TO COMPLAINT

On or about March 18, 1994, I first learned of the audit and investigation into the alleged improper billings by Attorneys in court appointed indigent cases when I read the local newspaper, The Knoxville News Sentinel. The article stated that several lawyers handling indigent appointed criminal cases were being investigated for improperly overbilling the State for handling such cases. Since my practice was almost exclusively devoted to appointed indigent cases I believed that I was probably involved in the audit and investigation even though I had not been contacted by anyone relative to this matter. I contacted Mr. Charles Ferrell, Director of the Administrative Office of the Court, to advise him that if I was under investigation relative to the matter that I would be willing to cooperate fully with his office. He advised me that the matter was out of his hands and that if anyone wanted to speak to me that I would certainly be contacted. I notified the Board of Professional Responsibility, by letter dated March 30, 1994, that I may have violated a disciplinary rule relative to the filing of indigent fee petitions and further advised the Board that I was beginning an internal audit and review.

In order to protect my clients from any possible adverse publicity that could possibly be related to me, I sought the permission of various courts to withdraw from appointed cases and did, in fact, withdraw from a large number of appointed cases, including two death penalty cases in which I was lead Counsel [1]. I agreed to keep a few older cases because withdrawing from

[1] State v. Glen Thomas Collins, Knox County Criminal Court; and, State v. Russell Conway Holloway, Knox County Criminal Court.

them could have been detrimental to my clients given my familiarity with their respective cases; however, I fully advised each such client of my possible involvement with the investigation into indigent cases, and each client requested that I remain on his or her respective case.

After reading additional articles which appeared in the newspaper relative to the investigation and audit indicating that the State may be interested in pursuing the investigation criminally, and after speaking with a friend that agreed to act as Counsel, I decided that I should take the same advice that I would give any client in similar circumstances; I decided to refrain from speaking any further about the matter. I advised the Board that until the criminal matter was resolved that I was going to refrain from providing any further information relative to the investigation and audit.

In early March, 1995, after having not heard anything from the State auditors relative to any amount of alleged overbilling, I received a telephone call from the Supreme Court inquiring if I would be willing to accept appointment in a criminal indigent *pro se* case that had received permission to appeal to the Supreme Court. [2] Of course, I accepted the appointment from the Supreme Court and decided that maybe I should again begin accepting a limited number of court appointments. I advised the Knox County Criminal Court judges that I was willing to accept a limited number of criminal appointments in cases that would appear necessary to proceed to jury trial since I wanted to keep my trial skills up to standard. As I had requested, I began receiving appointments from the Criminal Court judges, including being appointed as

---

[2] State v. Irick, Supreme Court No.: 03S01-9502-CR-00011.

Lead Counsel in another complex death penalty case, which is alleged to involve a satanic, ritualistic killing of a young woman. [3]

In early April, 1995, a full year after the audit had began, I was first notified by the State of the amount of alleged overbillings in question. I was advised that the auditors were saying that I had overbilled the State $67,027.00 for a four year period, 1990, 1991, 1992 and 1993. No explanation was given at that time as to the basis or manner in which the amount in question was arrived at. My first reaction was to argue the matter, but after seeking advice of Counsel as well as considering common sense given the probable expense involved in litigating the matter against an adversary that had virtually unlimited resources, I concluded that the best course of action was to resolve the matter without creating a public spectacle. I further determined that resolving the matter without litigation would possibly avert further adverse publicity for the bar as a whole. Therefore, on or about April 13, 1995, we tendered a check to the State in the amount of $62,223.00. Having been given credit for $4,804.00 for outstanding unpaid fee petitions, this check constituted payment in full of the amount in controversy. It was agreed that this repayment constituted a full and complete settlement of all matters in controversy with the State relative to this alleged overbilling.

On or about June 16, 1995, I received the summary of complaint from the Board regarding the report released by the Comptroller's office on or about June 6, 1995. My response to that complaint follows.

---

[3] State v. Christa Gail Pike, Knox County Criminal Court.

## GENERAL RESPONSE TO SUMMARY OF COMPLAINT RECEIVED FROM BOARD

I was licensed to practice law in Tennessee in 1986 and first began accepting Court appointed indigent cases sometime in the summer of 1987. My court appointed practice was limited in the beginning, but gradually increased over the next few years to a point where my practice was almost entirely devoted to court appointed indigent cases. I accepted and handled almost any case that I was appointed to by any court, except cases that I was precluded from accepting because of conflict. I received so many court appointed cases from the Knox County General Sessions Court and Criminal Courts, that I had to enlist the assistance of my wife, Martha L. Weems, who is also a licensed and practicing Attorney, to help me cover my appointed caseload. In many instances when I was in one court handling cases, she would be in another court, or in some instances, the same court, handling some of my cases. Because I was the attorney of record in all of these cases, I submitted the fee petitions for payment. Unfortunately, I did not make any notations on the individual cases setting forth her involvement or handling of any particular case; however, the fact that she covered and assisted me in the handling of my cases can be verified by any Knox County Criminal Court or General Sessions Court judge as well as by the District Attorney General for Knox County, including most of his Assistant District Attorneys General.

Because there were no guidelines or written instructions for the filing of fee petitions, I had to rely on my own interpretation of the rules and the fact that I felt certain that I would be told by the Executive Secretary if I was doing anything improper when I submitted my fee

petitions. The only guidance that I ever received from the Executive Secretary's office was verbal which advised me that I could file a separate claim for each charge against a defendant. From what I could tell, this appeared to be consistent with the way other lawyers were billing. In retrospect, I wish that I had requested a written directive from the Executive Secretary's office or the Board of Professional Responsibility clarifying the proper billing method; however, I was a new, young attorney and I thought that I was billing properly.

I believed that I was allowed to submit a fee petition on each case that I was assigned regardless of the number of cases that were handled in any one day or court proceeding. It was my belief that court appointed Attorneys were allowed to submit a bill on each case or each criminal charge against a defendant and to bill for the time spent working on each case even though the same time was also spent working on other cases. For example, if I was in court for three and half hours on five defendants, each of whom had one or two charges against them, I believed that I was allowed to submit a bill on each charge against each defendant claiming the amount of time spent working on that particular case. If all of the cases took the full three and half hours of court before being resolved, settled or reset, I believed that I was allowed to bill the same three and half hours time for each case; however, if I spent less time on one defendant's cases or less time on a particular charge against a defendant, I believed that I was allowed to bill only for the time spent, e.g., if a defendant who had two charges, murder and fleeing, if I worked the full three and half hours on the murder charge, but only half an hour on the fleeing charge, I believed that I was allowed to bill three and half hours on the murder charge, but only half an hour on the fleeing charge. On days when I had a large number of

cases or defendants with multiple cases, and/or days in which Attorney Martha Weems assisted me in properly covering my caseload, the time billed may have exceeded the State's hourly criteria as set forth in the audit report. On days with only one or two misdemeanor cases or complex matters that took a large amount of time and/or multiple appearances in court, I usually took a loss from trying to zealously represent my clients. It was my belief that I would first represent my clients and that if I provided good representation, the Courts would appoint me to additional cases in order to adequately compensate me for the time spent representing my appointed clients.

During the entire time that I have been practicing law since 1987, I believed that the judges and the Executive Secretary's office knew and allowed Attorneys to bill in this manner because of the patently and grossly inadequate amount of compensation provided for the representation of indigent criminal defendants, i.e., $20.00 per hour for out of court work and $30.00 per hour for in court work. In the Knoxville legal community the range of hourly fees for competent criminal defense lawyers varies from $100.00 to $250.00 per hour. It was not until after this audit and investigation began that I realized that my understanding of what I had believed was the accepted billing practice for years may actually be incorrect, or had been changed without advance notice.

On any day in which the auditors allege that my billings were excessive, a review of the Executive Secretary's records should reveal that a majority of all of the multiple fee petitions submitted had been submitted to the Executive Secretary's office on or about the same dates and times. I would suggest that regardless of whether the Executive Secretary's office had

specialized software to detect multiple billings for the same days or not, that they should have noticed any excessive or improper billings since it was or should have been apparent that billings for the same dates exceeded the number of normal working hours in a day. During all of the years that I have been handling court appointed cases, I have never been told by the Executive secretary's office that my billings were excessive or been requested to provide any documentation or explanation of the number of hours submitted on any fee petition or combination of fee petitions. This includes multiple billings on the same defendant for multiple charges, all of which were submitted to the Court and Executive Secretary's office at the same time.

The State may well have been estopped from seeking repayment of the alleged overbillings since they had already reviewed, audited and approved the fee petitions when they were originally submitted and prior to issuing payment of same; however, this is now moot given the fact that I elected to settle with the State without resorting to litigation. However, I do feel that I relied to my detriment on the tacit approval and payment of the fee petitions that I submitted and which were paid without question or comment as a basis for continuing to accept so many court appointments. Now, after providing legal services to indigents and assisting the indigent legal system for years in reliance of this payment practice, it is difficult to accept that the State can now change the rules without warning and peremptorily seek money returned for services rendered up to four years earlier.

Had I known or understood that my billing practice was incorrect and that I was actually billing the State for what the auditors now consider an excessive number of hours, I would not

have been willing to handle multiple cases on the same day because there would not have been any incentive for doing so. Few competent Attorneys are willing to handle multiple cases such as murder, aggravated robbery, aggravated rape, theft, etc. on the same or multiple defendants on the same day assuming (for purposes of illustration) a total of three hours in court for all the cases when the attorney would be capped at making a maximum of $90.00 (3 hours x $30.00 per hour). This is because it would be foolish to accept multiple cases for this amount of compensation when the Attorney could make the same $90.00 for handling only one single public intoxication (misdemeanor) case and not have the stress or liability for handling serious, complex or multiple cases. Quite frankly, had I known that the manner in which I was billing was not the correct manner, and that I was not allowed to bill on each separate offense, I would not have been willing to handle many court appointed cases, if any at all.

After this audit and investigation was concluded, but before receiving this summary of complaint from the Board, I requested the Administrative office of the Courts (formerly known as the Executive Secretary of the Supreme Court and hereinafter referred to as "AOC") to forward me any written guidelines for the filing of indigent fee petitions that they might have as well as any new forms for filing claims dealing with multiple charges against one defendant. I spoke with Mr. Tim Townsend of that office, who advised me that there were still no written guidelines for the filing of indigent fee petitions, but that he expected that there would be some in the near future. He further advised me that there were no new forms for filing multiple claims on the same defendant and that I should use the forms that I had previously been using. I advised him that I felt uneasy about that given my experience with the audit. He said that I

could file separate claims on each charge for the same defendant but that I could, of course, only bill for the actual number of hours spent working on each particular case. He further advised me that his office was going to be separating multiple cases on the same defendant by the date of offense and that I should file separate claims on the same defendant by date of offense rather than by the actual separate offense. This is to say that if a defendant is charged with a series of charges on one date, e.g., three armed robberies of different individuals, that the charges would be lumped together as one claim for payment purposes. I inquired as to whether the AOC had new forms reflecting this new way of lumping multiple charges together. Mr. Townsend advised me that they did not.

In mid July, 1995, I again contacted Mr. Townsend to inquire as to whether or not the AOC had promulgated any written guidelines or new forms to be used for filing multiple claims on the same defendant. He advised me that there were still no written guidelines or new forms. I then told him that since his office had not promulgated guidelines or new forms that I had created a new attachment page myself and asked him if it would be all right to fax it over to him for review. He was very receptive and said that he would be happy to review anything that I sent to them. A couple of days later I received a telephone call from Mr. Townsend who advised me that he liked the new attachment page that I had created and said that breaking down all of the charges against a defendant made it easier for their office to review the fee petitions. [4] Mr. Townsend advised me that it was all right if I begin using the attachment page along with

[4] a copy of the fee petitions and new attachment page that I created are attached hereto in the appendix, infra.

my fee petitions. Incidently, since this conversation, Mr. Townsend has referred another Attorney to me to obtain a copy of the attachment page and for assistance in completing his fee petitions. [5] While I am flattered that the AOC would refer a young Attorney to me for assistance, I am confused as to what I should do. On the one hand, in most circumstances I welcome and would certainly be willing to offer any guidance or assistance that I could to another attorney, but on the other hand, if I am going to be accused of unethical or improper conduct relating to this matter, i.e., the filing of indigent fee petitions, I am hesitant to to offer any guidance or assistance to another attorney because I would not want to possibly misguide him or her. In this particular circumstance, I gave the other attorney, Mr. Hensley, a copy of my attachment page, but referred him back to Mr. Townsend of the AOC for any guidance or direction as to how to file his claims.

During my conversation with Mr. Townsend, he advised me that his office had again changed the policy regarding multiple fee petitions. [6] He said that his office would now be limiting or capping the maximum amount of compensation for all charges against a single defendant at $1,000.00 regardless of the number of hours involved in the case, unless each such offense were to proceed to jury trial or the trial court were to certify that a case was complex or involved extended or protracted litigation. In the sample that I had faxed to Mr. Townsend, the client had been convicted in a negotiated plea agreement to three aggravated robberies, two simple robberies, and four felony thefts, for a total of nine separate felony offenses, involving

[5] This attorney was Mr. Paul Hensley of Knoxville.

[6] This is since my conversation with Mr. Townsend in early June, 1995.

different victims. Applying the first standard that I had been given by Mr. Townsend in early June, I had divided all the charges by date of offense, which thereby allowed me to file three separate fee petitions in this case, for a maximum compensation of $3,000.00. Applying the new standard given to me by Mr. Townsend in July, all nine offenses were joined together and would be capped at a maximum amount of compensation of $1,000.00.

I told Mr. Townsend that although I respectfully disagreed with the way that his office was now interpreting the $1,000.00 cap set forth in the statute [7] that, in order to avoid any possible allegation of future overbilling, I was going to join all claims involving the same defendant under one fee petition and reserve my right to challenge any adverse action by their office, i.e., capping the amount of compensation at $1,000.00 regardless of the amount of time involved in the case. Mr. Townsend said that he thought it best if all claims were joined together under one claim unless a separate jury trial was had on each charge, in which case he then thought that there was no question that a separate claim could then be filed on each separate charge which proceeded to jury trial. In order to make certain that I had not misunderstood my conversation with Mr. Townsend, I forwarded him a letter, dated July 20, 1995, documenting our previous conversations and setting forth my understanding of those conversations. [8] As of the date of this response, I have not received any notification or correspondence from Mr. Townsend that any of my understandings of those conversations was incorrect.

---

[7] T.C.A. § 40-14-207.

[8] a copy of my letter to Mr. Tim Townsend, Administrative Office of the Courts is attached hereto in the appendix, infra.

As to the matter before the Board involving the alleged overbilling of indigent cases and any alleged unethical or improper conduct, I would submit that this issue began as a result of a general lack of guidance from the Executive Secretary's office as to exactly how time should be billed and how fee petition forms should be completed. This lack of guidance was compounded by a general lack of understanding on the part of attorneys doing court appointed work as to what was expected of them relating to exactly how time should be billed and how fee petition forms should be completed. I set forth the substance of my conversation with Mr. Townsend to illustrate that even now, after the extensive, exhaustive and prolonged audit by the Comptroller's office into this matter, that there are still communication problems arising between the attorneys doing court appointed work and the administrative personnel attempting to review and pay for that work. Furthermore, citing the example of the way the AOC is now saying it is proper to bill for multiple charges against the same defendant, the AOC has no clear guidelines or written policy setting forth what they expect from appointed Attorneys. The vacillation from June to July regarding whether an attorney should now file separate claims, claims divided by date of offense, or only one claim for all charges against a single defendant has not yet been reduced to writing or promulgated by the AOC. Having been through the audit procedure, I am now painfully aware of the need to document all correspondence and contact with the AOC in order to make certain that I have no misunderstandings as to what is expected of me. And, if a misunderstanding should arise four years down the road when the policy is again changed without notice that I will at least have some documentation to cover myself. Unfortunately, I did not have the insight to recognize that necessity when I began accepting court appointed cases.

I would respectfully suggest that clear, concise written guidelines that have had input from actual practicing court appointed counsel should be put into place by the AOC so that communication problems between appointed Attorneys and administrative staff could be effectively reduced and hopefully eliminated. Written guidelines, proper education of Attorneys as to what is expected of them as well as clear guidance from the AOC would eliminate or at least reduce any dispute or finger pointing as to who done what and who is to fault should a question arise as to billing or payment of indigent cases.

In response to the statement in the summary of complaint received from the Board which relates to having specially appointed general sessions judges sign fee petitions I would state that I was under the impression that special judges had the authority to sign any document or do anything that any regular judge could do. I submitted fee petitions to special judges in some instances rather than submitting them to the regular judges because on prior occasions I have had the regular judges lose, misplace or forget to sign the fee petitions. I do not believe that it was due to any negligence or wilful intent on the part of the regular judges, but rather from being overworked and burdened with a large amount of paperwork to sign on a regular basis. I occasionally sit as a special judge and have had many different court appointed lawyers tender their fee petitions for me to sign. Before I ever signed a fee petition, I specifically asked if I had the authority to sign them. I was told that I had the authority to sign or do anything that a regular judge could do. I felt that if I had the authority to hear civil cases relating to thousands of dollars, issue arrest warrants, set bonds, sign search warrants, commit individuals to mental health facilities, issue orders authorizing the State to seize property and money alleged

to be involved in drug activities, etc., that I certainly had the authority to sign a simple fee petition authorizing payment of attorneys fees in indigent cases. I saw my signing of lawyers' fee petitions and my tendering of my own petitions to other special judges as a way of relieving part of the regular judges' workload. There was never any attempt or intent to circumvent the submitting of any fee petition to the regular judges. As a regular part of filling in for a regular judge, special judges receive a large amount of paperwork that needs signing during the course of a work day. These routinely include fee petitions, arrest warrants, mittimuses, orders, judgments, etc. I, like the regular judges and other special judges, believed that the reviewing and payment of fee petitions was done by the Executive Secretary's office and that the judge was just certifying the appointment of counsel by the Court.

## SPECIFIC RESPONSE AS TO EACH ALLEGED VIOLATION OF THE DISCIPLINARY RULES

In the summary of complaint received from the Board, there are several alleged possible violations of the disciplinary rules set forth by reference to the particular rules, but without explanation as to how each such rule has been possibly violated. There is no particular allegation as to each particular rule, but rather simply one "summary" of complaint. I will attempt to extrapolate from the summary of complaint, but request the right to amend, supplement or modify my response in the event that the Board may have concerns which make it necessary to supply additional information.

---

As to any possible violation of Supreme Court Rule 8, DR 1-102(A)(1)(2)(3)(4)(5)(6), I do not believe that I have violated any provision of this rule at any time and specifically as those provisions relate to the matter of the alleged overbilling for court appointed indigent cases. I believe that my general response previously provided herein should provide sufficient information for the Board to make a preliminary decision regarding this matter.

---

As to any possible violation of Supreme Court Rule 8, DR 2-106(A)(B), I do not believe that I have violated any provision of this rule at any time and specifically as those provisions relate to the matter of alleged overbilling for court appointed cases. In addition to the statements set forth in my general response previously provided herein, I would submit that no excessive fees were charged for handling court appointed indigent cases. On the contrary, the rate of compensation which the auditors are now apparently saying was improper and amounted to

excessive fees was grossly inadequate compensation for the representation of criminal defendants. A twenty hour day at $20.00 per hour amounts to only $400.00. This is much less compensation than what private attorneys handling complex criminal cases, such as those that I have been assigned, receive. Without meaning to be arrogant, I would hope that I am a competent attorney and I know that I am routinely assigned very complex and difficult cases that invariably lead to litigation. I have handled numerous jury trials, as well as appeals to the Tennessee Court of Criminal Appeals, Tennessee Supreme Court and the Supreme Court of the United States. Considering the factors enumerated in Supreme Court Rule 8, DR 2-106(B) and my level of experience, the fees charged do not amount to the charging of an excessive fee within the meaning of DR 2-106.

---

As to any possible violation of Supreme Court Rule 8, DR 7-102(A)(1)(2)(3)(4)(5)(6)(8), I do not believe that I have violated any provision of this rule at any time and specifically as those provisions relate to the matter of alleged overbilling for court appointed cases. I am without sufficient knowledge as to how these provisions apply to the circumstances of this matter so as to be able to properly respond to the possible violation of the provisions of this Rule. Furthermore, I do not believe that the provisions of DR 7-102 apply to any allegation or inquiry set forth in the summary of complaint received from the Board. I further believe that my previous responses contained herein should provide sufficient information for the Board to make a preliminary decision regarding this matter.

---

As to any possible violation of Supreme Court Rule 8, DR 7-106(C)(1)(5)(6)(7), I would

sincerely hope that I have not violated any provision of this rule at any time and specifically as those provisions relate to the matter of alleged overbilling for court appointed cases. I am without sufficient knowledge as to how these provisions apply to the circumstances of this matter so as to be able to properly respond to the possible violation of the provisions of this Rule. I do not believe that the provisions of DR 7-106 apply to any allegation or inquiry set forth in the summary of complaint received from the Board. I further believe that my previous responses contained herein should provide sufficient information for the Board to make a preliminary decision regarding this matter.

## CONCLUSION

Having fully responded to the summary of complaint received from the Board of Professional Responsibility, to the best of knowledge, information and belief, I would respectfully request that the Board, in reviewing this matter, make a determination that I did not violate any disciplinary rule governing the conduct of attorneys and accordingly dismiss this complaint.

This the 28th day of August, 1995.

William C. Talman
Supreme Court BPR# 012262
Attorney at Law
P.O. Box 506
Knoxville, Tennessee 37901-0506

Telephone: (615) 579-9060
Facsimile: (615) 573-2032

WILLIAM C. TALMAN, P.C.
Attorney at Law
P.O. Box 506
Knoxville, Tennessee 37901-0506

Telephone: (615) 579-9060
Facsimile: (615) 573-2032

March 30, 1994

Board of Professional Responsibility
of the Tennessee Supreme Court
1101 Kermit Drive, Suite 730
Nashville, Tennessee 37217

Members of this Honorable Board:

I practice law in Knoxville and my practice consists mainly of Court appointed indigent criminal cases. As you may be aware, recently there were articles in the local news media indicating that the Chief Justice of the Tennessee Supreme Court had directed the Comptroller's office to conduct an investigation into alleged over-billing by attorneys handling criminal indigent cases and the article indicated that twenty-five lawyers were being investigated. Since my practice is almost exclusively made up of these types of cases, I became concerned that possibly I had been improperly billing the State for my handling of these cases. I notified Mr. Charles Ferrell of the Administrative office of the Supreme Court and the local District Attorney General's office that if I was under investigation in this matter that I would cooperate fully with their respective offices.

I started an internal review and audit of the fee petitions that we had filed within the past year and while this internal review is still progressing, from numerous careful readings of Supreme Court Rule 13, I am sad to believe that, although each suspect claim had been reviewed, examined, audited and approved by the Administrative office of the Supreme Court, that I may have improperly and/or incorrectly billed the State for time spent working on these appointed cases. I interpret the Disciplinary rules to require me to report myself to the Board if I have reason to believe that I may have violated the rules governing attorney conduct or the Code of Professional Responsibility. While the nature and extent of any such possible violation is still unclear to me, I feel it incumbent upon me to report this possible violation to the Board. I have not been notified that any fee petitions filed by me are being reviewed, but I desire to make it clear that I will fully cooperate with this Board, or any other investigatory authority, in resolving this matter. I will continue my own internal review of fee petitions filed by me and as soon as I know more about the extent of any possible violation of the disciplinary rules, I will

so notify this Board.

If either this Board or Disciplinary Counsel should have any questions or comments concerning this matter, please feel free to contact my office as soon as it is convenient to do so.

Very truly yours,

William C. Talman

cc: Mr. Lance Bracy
Chief Disciplinary Counsel

file copy

*WILLIAM C. TALMAN, P.C.*
*Attorney at Law*
*P.O. Box 506*
*Knoxville, Tennessee 37901-0506*

*Telephone: (615) 579-9060*
*Facsimile: (615) 573-2032*

June 22, 1994

Mr. Lance B. Bracy
Chief Disciplinary Counsel
Board of Professional Responsibility
of the Tennessee Supreme Court
1101 Kermit Drive, Suite 730
Nashville, Tennessee 37217

Dear Mr. Bracy:

In response to your letter, dated June 9, 1994, requesting information as to the status of our internal review and audit of fee claims submitted to the State in connection with Court appointed cases, I would like to apologize for having not sent the Board interim updates over the past two months. We are near to completing our review and anticipate being able to respond to the Board by late July or early August. After completing our review, I may respond to the Board through, and with the assistance of Counsel.

I appreciate your patience in dealing with me in this matter and will be in contact with your office by no later than the first week of August.

Very truly yours,

William C. Talman

cc: file copy

WCT:tjh

*WILLIAM C. TALMAN, P.C.*
*Attorney at Law*
*P.O. Box 506*
*Knoxville, Tennessee 37901-0506*

*Telephone: (615) 579-9060*
*Facsimile: (615) 573-2032*

July 29, 1994

Mr. Lance B. Bracy
Chief Disciplinary Counsel
Board of Professional Responsibility
of the Tennessee Supreme Court
1101 Kermit Drive, Suite 730
Nashville, Tennessee 37217

Dear Mr. Bracy:

In my last letter to your office, dated June 22, 1994, I indicated that my office was near to completing our internal review of fee claims submitted to the State in connection with Court appointed cases and that I should be able to provide more information to the Board by no later than the first week in August. To the best of my knowledge, we have now completed our internal review as thoroughly as we know how to do; however, considering the importance of making a correct and proper report to the Board, I feel it necessary to seek the advice and guidance of more experienced counsel in making that response.

I anticipate being able to provide the Board with more information within the next forty five to sixty days and would greatly appreciate the Board's indulgence in this matter.

Very truly yours,

William C. Talman

cc: file copy

*WILLIAM C. TALMAN, P.C.*
*Attorney at Law*
*P.O. Box 506*
*Knoxville, Tennessee 37901-0506*

*Telephone: (615) 579-9060*
*Facsimile: (615) 573-2032*

September 15, 1994

Mr. Lance B. Bracy
Chief Disciplinary Counsel
Board of Professional Responsibility
of the Tennessee Supreme Court
1101 Kermit Drive, Suite 730
Nashville, Tennessee 37217

Dear Mr. Bracy:

In my last correspondence to your office, dated July 28, 1994, I stated that I was going to consult with more experienced counsel prior to making a report to the Board regarding our internal review of fee claims submitted to the State in connection with court appointed indigent cases. In consulting with said counsel, I was reminded that, according to the Knoxville News Sentinel, the State was or is conducting a criminal investigation into these fee claim matters and that some two dozen lawyers were under investigation. Considering what my advice would generally be to anyone facing or involved in a criminal investigation, I have decided that the more prudent course of action for me to take would be to wait to make any report to the Board regarding this matter until the issue of criminal liability is resolved. I would like to make it clear that I would like very much to cooperate with the Board and to resolve this matter as expeditiously as possible, but that common sense and better legal judgment dictate otherwise at this juncture.

As soon as the issue regarding criminal liability or further investigation is resolved or when this matter is determined to be a civil disagreement only, I will provide a report to the Board of the results of my internal review of said fee claims. Your understanding and continued cooperation in this matter would be very greatly appreciated.

Very truly yours,

William C. Talman

cc: file copy

Disc of Board of Professional Responsibility Report

Removed & placed in manila envelope. Need motion & order to check out. #3 in CCA

Exhibit No. 2B

Introduced by: Mr. Don Dawson

Identified and made a part of the record this 28th day of March, 2006.

Mary Beth Leibowitz

JUDGE

008512

RECEIVED
TN Supreme Court Administrative
Office of the Courts

JUN 1 6 1998

FILED

98 JUN 11 PM 3:10

KNOXVILLE

**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | |
| Appellee, | * | C.C.A.# 03C01-9611-CR-00408 |
| VS. | * | KNOX COUNTY |
| CHRISTA GAIL PIKE, | * | |
| Appellant. | * | |

FILED (4)
JUL 23 2009
Clerk of the Courts
Rec'd by

**ORDER**

On March 9, 1998, William C. Talman submitted a request for an attorney fee in connection with services rendered on behalf of defendant Christa Gail Pike in this court. Mr. Talman's request is for services totaling over 178.6 hours for an amount of $9,855.25 and $636.38 for necessary expenses.

We note that Mr. Talman has been compensated by the trial court in excess of $36,000 for services rendered at that level. After a thorough examination of the claim submitted to this court, it is the court's opinion that the amount of time expended by Mr. Talman in this appeal is disproportionate to the complexity and number of issues involved in the appeal of this case. Further, an inordinate amount of time was spent in conversations and meetings with co-counsel and in representation following oral argument notwithstanding the preparation of a petition to rehear.

In most direct capital cases where the defendant is represented by two counsel, the fee claims of both are taken into account. In this case, however, co-counsel has yet to file her fee claim. Accordingly, a comparison cannot be conducted.

Many of counsel's itemized hourly claims are questionable. First, counsel has billed in time increments of one-quarter (1/4) hour rather than one-tenth (1/10) hour.

Christa Pike vs. State of Tennessee
Case No. 68280 PCR mtn.
Exhibit No. 3 (2-27-06)

According to the claim, counsel spent 14.25 hours conversing on the phone with co-counsel (7.75 hours took place after oral argument). He spent seventeen (17) hours meeting with co-counsel. On February 28, 1997, counsel spent one hour preparing a certificate of service and reviewing a billing statement. On April 20, 1997, counsel spent 2.75 hours preparing a motion for an extension of time. On April 28, 1997, following the 2.5 hours counsel had previously spent proofreading and correcting his brief, counsel asserts that he spent seven (7) hours taking the corrected revisions to be copied and filing the brief with this court.

After oral argument, counsel billed for approximately 33.75 hours spent in travel to Nashville to meet with the defendant and to assist her in the taking of her deposition in a civil matter. On two occasions, he spent approximately two hours speaking with certain media interested in interviewing the defendant.

Counsel raised eight issues on appeal. The brief was neither lengthy nor complex. Based on the entire record including the briefs and other pleadings and the proceedings held in this court in which co-counsel conducted the entire argument, we approve a total fee of $5,000, plus $575 for expenses..

The court wishes to emphasize that the disallowance of a substantial portion of the requested fees in this case is not to be interpreted as a determination that an attorney's fee in excess of $10,000 would not be reasonable for appointed counsel in a capital case. What we conclude in this order is that the amount of time spent on this appeal is questionable and does not merit the fee requested.

William M. Barker

William M. Barker, Judge

Order About Mr. Talman's Fees

Exhibit No. 3

Introduced by: Mr. Don Dawson

Identified and made a part of the record this 28th day of March, 2006.

Mary Beth Lubowski

JUDGE

CERTIFICATE

I, the undersigned, Deborah Lee Hayes, Official Court Reporter for the Sixth Judicial District of the State of Tennessee, do hereby certify that the foregoing is a true, accurate, and complete Transcript of the Evidence of all the proceedings had and evidence introduced in the hearing of the captioned cause, relative to appeal, in the Criminal Court for Knox County, Division III at Knoxville, Tennessee, on the 27th day of February, 2006.

I do further certify that I am neither of kin, counsel, nor interest to any party hereto.

March 27th, 2006

Deborah Lee Hayes

Official Court Reporter

State of Tennessee

CERTIFICATE OF THE COURT

THIS WAS ALL THE EVIDENCE INTRODUCED AND PROCEEDINGS HAD RELEVANT TO QUESTIONS RAISED ON THIS APPEAL ON THE MOTIONS HEARING OF THIS CAUSE WHICH IS SIGNED, APPROVED AND ORDERED TO BE MADE A PART OF THE RECORD BY THE COURT.

March 28, 2006

Mary Beth [signature]

JUDGE

Substituted/Requested Compact Disc of Petitioner's Statement to Detective Randy York

Due to the size and nature of this exhibit, it shall be sent under separate cover to the Court of Criminal Appeals.

Placed in manila envelope. Need motion & order to check out.

Filed as Supplement 7-17-09 - CCA

EXHIBIT NO. 38

Identified and made a part of the record this 15th day of July, 2009.

Mary Beth Leibowitz

JUDGE

CERTIFICATE

I, the undersigned, Deborah L. Hayes, Official Court Reporter for the Sixth Judicial District of the State of Tennessee, do hereby certify that the foregoing is a true, accurate, and complete Transcript of the Evidence of all the proceedings had and evidence introduced in the motion proceedings of the captioned cause, relative to appeal, in the Criminal Court for Knox County, Division III, Knoxville, Tennessee, on the 27th day of February, 2006, and a substituted/requested copy of a compact disc of the petitioner's statement to Detective Randy York, Exhibit No. 38., that was previously filed but not functioning.

I do further certify that I am neither kin, counsel, nor interest to any party hereto.

July 14th, 2009

Deborah L. Hayes
COURT REPORTER

CERTIFICATE OF THE COURT

THIS WAS ALL THE EVIDENCE INTRODUCED AND PROCEEDINGS HAD RELEVANT TO QUESTIONS RAISED ON THIS APPEAL ON THE MOTIONS PROCEEDINGS OF THIS CAUSE, WHICH IS SIGNED, APPROVED AND ORDERED TO BE MADE A PART OF THE RECORD BY THE COURT.

July 15, 2009

Mary Beth Leibowitz

JUDGE