**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| **CHRISTA GAIL PIKE** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:12-CV-35** |
| | ) | **DEATH PENALTY CASE** |
| **DEBRA JOHNSON, WARDEN** | ) | |
| | ) | |
| **Respondent.** | ) | |

---

**ADDENDUM 7**

**DOCUMENT 5**

---

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

| | | |
|---|---|---|
| CHRISTA GAIL PIKE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | No. E2009-00016-CCA-R3-PD |
| v. | ) | KNOX COUNTY |
| | ) | |
| STATE OF TENNESSEE, | ) | Post-Conviction |
| | ) | (CAPITAL CASE) |
| Appellee. | ) | |

ON APPEAL AS OF RIGHT FROM THE JUDGMENT
OF THE CRIMINAL COURT OF KNOX COUNTY

---

# SUPPLEMENTAL BRIEF OF THE STATE OF TENNESSEE

---

ROBERT E. COOPER, JR.
Attorney General & Reporter

MICHAEL MOORE
Solicitor General

FRANK BORGER-GILLIGAN
Assistant Attorney General
Criminal Justice Division
425 5th Avenue North
P.O. Box 20207
Nashville, Tennessee 37202
(615)-741-2969

# TABLE OF CONTENTS

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW .......... 1

STATEMENT OF THE CASE .......... 2

STATEMENT OF FACTS .......... 5

ARGUMENT .......... 6

APPELLANT DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF COUNSEL'S ALLEGED CONFLICTS OF INTEREST .......... 6

CONCLUSION .......... 13

CERTIFICATE OF SERVICE .......... 14

# TABLE OF AUTHORITIES

## CASES

*Burns v. State*,
2001 WL 912817 (Tenn. Crim. App., Aug. 9, 2001) .... 6

*Coleman v. State*,
2007 WL 1651882 (Tenn. Crim. App. June 7, 2007) .... 8, 9

*Cuyler v. Sullivan*,
446 U.S. 335 (1980) .... 6,9,12

*Frazier v. State*,
303 S.W.3d 674 (Tenn. 2010) .... 5, 6, 7, 8

*Hicks v. State*,
983 S.W.2d 240 (Tenn. Crim. App. 1998) .... 10

*Pike v. State*,
164 S.W.3d 257 (Tenn. 2005) .... 3, 4

*Pike v. Tennessee*,
526 U.S. 1147 (1999) .... 3

*Smith v. State*,
1997 WL 658996 (Tenn. Crim. App. Oct. 23, 1997) .... 9

*State v. Culbreath*,
30 S.W.3d 309 (Tenn. 2000) .... 7

*State v. Fields*,
40 S.W.3d 450 (Tenn. 2001) .... 10, 11

*State v. Holder*,
15 S.W.3d 905 (Tenn. Crim. App. 1999) .... 9

*State v. Pike*,
978 S.W.2d 904 (Tenn. 1998) .... 3

*State v. Tate*,
925 S.W.2d 548 (Tenn. Crim. App. 1995) .... 7

*Strickland v. Washington*,
466 U.S. 668 (1984) .... 6

*Wheat v. United States*,
486 U.S. 153 (1988) .......... 7

## STATUTES

Tenn. Code Ann. § 40-30-103 .......... 9

Tenn. Code Ann. § 40-30-110(f) .......... 9

## OTHER AUTHORITIES

Tenn. Sup. Ct. R. 8 .......... 7

Tenn. R. Crim. P. 52(b) .......... 9

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Whether the appellant received ineffective assistance of counsel as a result of counsel's alleged conflicts of interest.

## STATEMENT OF THE CASE

On April 12, 1995, Christa Gail Pike ("Pike" or "Appellant") was indicted for first-degree premeditated murder and conspiracy to commit the first-degree murder of Colleen Slemmer. Co-defendants Tadaryl Shipp and Shadola Peterson were also indicted for the same offenses. (TR I, 2-3).[1] On May 23, 1995, the District Attorney General indicated that he intended to seek the death penalty against the appellant under Tenn. Code Ann. § 39-13-204(i)(5), (6) and (7). (TR I, 9).

Jury selection began on March 20, 1996, and was completed on March 23, 1996. (TR III, 379-386). The guilt phase of the appellant's trial began on March 23, 1996, and concluded on March 29, 1996, with the jury finding her guilty of first-degree premeditated murder and conspiracy to commit first-degree premeditated murder. (TR III, 395). On March 30, 1996, the appellant was sentenced to death for first-degree murder and twenty-five years for conspiracy to commit first-degree murder, to be served consecutively. (TR III, 393-394, 409). In reaching its decision that the death sentence was the most appropriate punishment, the jury found two aggravating circumstances: that the murder was especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death, § 39-13-204(i)(5), and that the murder was committed for the purpose of

[1] The record on direct appeal consists of thirty-two volumes of records and transcripts and thirty-one exhibits. The record on direct appeal will be referred to by "TR" volume and page number. Ex. (TR III, 379).

avoiding, interfering with or preventing a lawful arrest or prosecution of the defendant or another, § 39-13-204(I)(6). (TR III. 393-394).

Pike filed a motion for a new trial, which was overruled by the trial court in July of 1996. (TR III, 418-419). A notice of appeal was filed on August 20, 1996. (TR III, 409). On October 5, 1998, the Tennessee Supreme Court affirmed the convictions and sentences. *State v. Pike,* 978 S.W.2d 904 (Tenn. 1998). The United States Supreme Court denied certiorari on June 1, 1999. *Pike v. Tennessee,* 526 U.S. 1147 (1999).

On June 3, 1999, the appellant timely filed a *pro se* petition for post-conviction relief in the Criminal Court of Knox County. (PC I, 1-12).[2] The trial court appointed the Office of the Post-Conviction Defender to represent Ms. Pike. During a hearing on June 25, 2001, the appellant orally advised the trial court of her desire to withdraw her post-conviction petition and to schedule an execution date. *See Pike v. State,* 164 S.W.3d 257, 260 (Tenn. 2005). Approximately two months later, on September 4, 2001, the appellant submitted a letter to the trial court reiterating her desire to withdraw her petition and to schedule an execution date. *Id.* After questioning the appellant and confirming that her position had remained unchanged, the trial court concluded that she had the right to make such decision as long as she was competent enough to do so. *Id.* The trial court appointed Dr. William Kenner

---

[2] The record on post-conviction appeal consists of five volumes of technical records, twenty-five volumes of transcripts, and seventy-five exhibits (including six DVDs). The record on post-conviction appeal will be referred to by "PC" volume number and page number. Ex. (PC I, 1).

to conduct a psychiatric evaluation to determine the appellant's competency to make such a decision. *Id.*

On June 25, 2002, the trial court conducted an evidentiary hearing to determine the appellant's competence, and concluded that she had "freely and voluntarily" decided to withdraw her petition and to waive post-conviction review. *Id.* On June 27, 2002, the trial court entered a written judgment dismissing the petition and setting an execution date. *Id.* On July 8, 2002, Pike's attorneys filed a notice of appeal. On July 26, 2002, Pike's attorneys filed a second notice of appeal, and a motion seeking to vacate the order dismissing her petition, to reinstate her post-conviction petition, and to set a date for an evidentiary hearing on her post-conviction petition. *Id.* On August 1, 2002, this Court granted a stay of execution, and remanded the case to the trial court for a hearing on the appellant's motion to vacate the order dismissing her post-conviction petition. *Id.*

The trial court denied the appellant's motion to vacate the dismissal order and to reinstate her post-conviction petition. Appellant appealed, and this Court affirmed. The Tennessee Supreme Court granted the appellant's application for permission to appeal and concluded that the motion to vacate should be granted. The Court remanded the case to the trial court with instructions to reinstate Pike's post-conviction petition, to schedule an evidentiary hearing, and to resume post-conviction proceedings. *Id.*, at 267.

Evidentiary hearings were conducted in the post-conviction court in January 2007, July 2007, and April 2008. On September 22, 2008, the appellant filed her post-conviction closing arguments brief. (PC IV, 451-551). The state filed its responsive brief on November 14, 2008. (PC IV, 554-590). On December 10, 2008, the post-conviction court entered its Findings of Fact and Conclusions of Law denying Pike's petition for post-conviction relief. (PC V, 599-701). Appellant timely filed a notice of appeal on January 2, 2009. (PC V, 702).

On April 13, 2010, oral arguments were held in the Court of Criminal Appeals at Jackson, Tennessee. At argument, counsel for the appellant requested the opportunity to file a supplemental brief on the narrow issue of attorney conflict of interest. Specifically, the appellant asked this Court for the opportunity to present an argument on the impact of *Frazier v. State,* 303 S.W.3d 674 (Tenn. 2010), on the issue before this Court. This Court granted that request, and on April 28, 2010, the appellant filed her supplemental brief on the matter. This Court also granted the State an opportunity to respond to the appellant's argument. The state submits this brief in response to the appellant's supplemental brief.

## STATEMENT OF FACTS

In the interested of judicial economy, the state hereby incorporates by reference all facts presented in the state's original brief. Where necessary, citations will be made in reference to the original brief.

## ARGUMENT

### APPELLANT DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF COUNSEL'S ALLEGED CONFLICTS OF INTEREST.

In her supplemental brief, the appellant argues that she is entitled to post-conviction relief as a result of an attorney conflict of interest. Specifically, the appellant argues that under *Frazier v. State,* 303 S.W.3d 674 (Tenn. 2010), the trial court erred by failing to follow certain procedures when finding that the appellant knowingly and intelligently waived her right to conflict-free representation at trial. Appellant, however, mistakenly presupposes that a conflict of interest actually existed that would have required the trial court to follow the procedures set forth in *Frazier* and previously in *Burns v. State,* 2001 WL 912817 (Tenn. Crim. App., Aug. 9, 2001).

There is no question that a defendant has a constitutional right to effective, conflict-free representation at trial. A conflict of interest however does not, in and of itself, constitute ineffective assistance of counsel. Unless the petitioner shows that counsel was burdened by an actual conflict, he must prove both that counsel's performance was deficient and that he was prejudiced by such deficiency. *Strickland v. Washington*, 466 U.S. 668, 692 (1984). In *Cuyler v. Sullivan,* 446 U.S. 335, 350 (1980), the Supreme Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. However, prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Id.,*

at 350. Until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim. *Id.*

The Tennessee Supreme Court Rules provide that a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's own interest. Tenn. Sup. Ct. R. 8, Canon 1.7. Loyalty to a client is impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict, in effect, forecloses alternatives that would otherwise be available to the client. *Frazier,* 303 S.W.3d 674. A conflict of interest includes any circumstances in which an attorney cannot exercise his independent professional judgment free of competing interests. *State v. Culbreath,* 30 S.W.3d 309, 312 (Tenn. 2000). Counsel with such a conflict is subject to disqualification. *State v. Tate,* 925 S.W.2d 548, 553 (Tenn. Crim. App. 1995).

Because attorneys, under the Tennessee Rules of Professional Conduct, have the obligation to avoid ethical violations in their practice of law, trial courts may ordinarily assume, without inquiry, that there is no conflict of interest or that the client has fully accepted the risks associated with any conflict. *Sullivan,* 446 U.S. at 346-347. Nevertheless, courts have an independent duty to insure that all proceedings are conducted within the ethical standards of the profession and are fair to all who observe. *Wheat v. United States*, 486 U.S. 153, 160 (1988). When, therefore, the trial court is aware or should be aware of a conflict of interest, there

must be an inquiry as to its nature and appropriate measures taken. *Sullivan,* 446 U.S. at 346-347. However, unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry. *Id.*

In *Frazier,* the appellant contended that because his post-conviction attorney had represented him in a delayed appeal, the attorney should have been disqualified in the subsequent post-conviction proceeding and appeal. In other words, the attorney was in a position where he was forced to review his own representation on direct appeal, and was, therefore, limited on post-conviction by his own self-interest in guarding against an ineffective assistance of counsel claim. Frazier contended that he should have been advised of the potential conflict of interest in advance of the evidentiary hearing and given the opportunity to either waive the issue or insist upon substitution of counsel. The Tennessee Supreme Court found that by failing to address the conflict of interest issue with the knowledge of the potential conflict, the trial court committed structural error. The Court also found that, although disqualification of counsel is not required in every instance, counsel could only continue representation when there was a knowing and voluntary waiver of the conflict of interest that was satisfactory to the trial court.

In *Coleman v. State,* 2007 WL 1651882, *7 (Tenn. Crim. App. June 7, 2007),, this Court held that "representing a defendant in a post-conviction proceeding after having represented the defendant on direct appeal create[s] an actual conflict of interest." *Id.* As a result of such actual conflict of interest, plain-error review permits

the appellate court to consider any errors, such as waiver of the conflict, in order "to do substantial justice." *Id.; see also* Tenn. R. Crim. P. 52(b). In the present case, trial counsel was never in such a position that required him to review his own performance. Nor was counsel in a position where he was actively representing multiple defendants with conflicting interests. *See Smith v. State,* 1997 WL 658996, *5 (Tenn. Crim. App. Oct. 23, 1997).

"In order to establish a violation of the Sixth Amendment, a defendant who raises no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348 (1980)(holding that the mere possibility of a conflict of interest is not enough to establish ineffective assistance of counsel where the defendant raised no objection to multiple representation at trial). Appellant's present claim simply fails to establish anything more than the mere possibility of a conflict of interest.

In order to obtain post-conviction relief, a petitioner must prove the allegations in his or her claim by clear and convincing evidence that his or her conviction or sentence is void or voidable because of the abridgment of a right guaranteed by the United States Constitution or the Tennessee Constitution. Tenn. Code Ann. §§ 40-30-103 and 40-30-110(f). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3

(Tenn. 1992)); *see also Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). Appellant has simply failed to prove her allegations of fact by clear and convincing evidence. Rather, she asks this Court simply to speculate that counsel might have been conflicted by the allegations raised in her brief.

On appeal, this Court reviews the post-conviction court's findings of fact *de novo* with a presumption that those findings are correct, unless the record preponderates against the factual findings. *State v. Fields*, 40 S.W.3d 450, 456-58 (Tenn. 2001). This Court may not reweigh the evidence or substitute its own inferences for those drawn by the trial court, and questions concerning the credibility of the witnesses, the weight and value to be given their testimony and any factual issues raised by the evidence are all for the trial court's determination. *Id.* at 456 (citing *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997)).

Attorney Talman was under investigation by the Comptroller's Office for allegedly overbilling the indigent defense fund and was subsequently ordered to reimburse the state more than $67,000. (PC V, 646). The trial court was certainly aware of this situation, and prior to the appointment of Talman, the court inquired into the status of the investigation and discovered that the reimbursement had been paid in full and that the matter had been resolved. *Id.* The actual investigation had concluded prior to Talman's appointment.[3] *Id.* In fact, Attorney Talman had been appointed by the Tennessee Supreme Court in another matter in March of 1995, two

[3] Incidentally, Talman was originally appointed as second chair, but later became first chair when the appellant's original attorney withdrew from the case.

months prior to his appointment in this case. *Id.* Throughout the entire investigation, Talman remained a licensed attorney in good standing. *Id.* He consistently stated that he had considered this matter concluded prior to his appointment and had never spoken to anyone at the District Attorney's Office regarding the investigation. Talman's co-counsel, Julie Ann Martin Rice, testified that she was aware of the overbilling issues when she was appointed on this case and did not think that the matter affected Talman's representation of the appellant. (PC XVIII, 168). Additionally, Talman had informed the appellant of the investigation and she "seemed to like him more because of it." (PC V, 647).

In her supplemental brief, the appellant has entirely failed to meet her burden of proving her allegations by clear and convincing evidence. She offers nothing more than speculation and the mere possibility that a conflict might have existed as a result of the alleged overbilling incident. Appellant speculates that counsel was conflicted because he was facing prosecution and disbarment. However, as the post-conviction court properly found, counsel remained a licensed attorney, and was never disbarred, suspended or even reprimanded for the alleged incident. Moreover, a criminal investigation was never initiated and the matter was resolved prior to Talman's appointment on this case. Appellant's contention that "Mr. Talman's priority was to please and placate the trial court and prosecution in attempt to protect his law

license"[4] is entirely conjecture and is completely unfounded by anything in the record.

When a trial court is aware or should be aware of a conflict of interest, there must be an inquiry as to its nature and appropriate measures taken. *Sullivan,* 446 U.S. at 346-347. However, unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry. *Id.* The proof in the present case does not establish that a particular conflict actually existed, nor does it establish that an actual conflict adversely affected Talman's performance. The post-conviction court correctly found that the appellant had waived any potential conflicts of interest. "[Attorney] Talman testified that he had informed [the appellant] of the issue and that she actually liked him more because of it. No issue was raised either pretrial or at trial." (PC V, 646; PC XXI, 469). As the post-conviction court correctly concluded, the appellant's allegations are merely speculation and nothing in the record demonstrates otherwise. The proof does not establish that "an actual conflict of interest adversely affected his lawyer's performance." *See Cuyler v. Sullivan,* 446 U.S. at 350. The post-conviction court's denial of this claim should be affirmed.

[4] *See Appellant's Supplemental Brief,* p. 6.

## CONCLUSION

For the reasons stated, the judgment of the post-conviction court should be affirmed.

Respectfully submitted,

ROBERT E. COOPER, JR.
Attorney General & Reporter

MICHAEL E. MOORE
Solicitor General

FRANK BORGER-GILLIGAN
Assistant Attorney General
Criminal Justice Division
P.O. Box 20207
Nashville, Tennessee 37202
(615) 532-7911
B.P.R. No. 27111

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been sent by United States mail, first class postage prepaid, to: Donald E. Dawson, Office of the Post-Conviction Public Defender, 530 Church Street, Nashville, TN 37243, on this the 7th day of May, 2010.

FRANK K. BORGER-GILLIGAN
Assistant Attorney General

cc: LELAND PRICE
Assistant District Attorney General
Office of the District Attorney General
City-County Building
P.O. Box 1468
Knoxville, Tennessee 37901