IN THE CRIMINAL COURT FOR KNOX COUNTY, DIVISION III

KNOXVILLE, TENNESSEE

SIXTH JUDICIAL DISTRICT

STATE OF TENNESSEE )

VS. ) CASE NO. 58183

CHRISTA GAIL PIKE )

TRANSCRIPT OF THE EVIDENCE

Pretrial Motion Hearings

Volume II of II Volumes

APPEARANCES:

THE HONORABLE MARY BETH LEIBOWITZ, PRESIDING JUDGE

FOR THE STATE:

Mr. William H. Crabtree
Ms. S. Jo Helm
Assistant District Attorneys General
District Attorney General's Office
400 Main Avenue
City-County Building
Knoxville, Tennessee 37902

FOR THE DEFENDANT:

Mr. William Talman
Ms. Julie Martin
Mr. William Brown
Attorneys at Law
Knoxville, Tennessee 38902

TABLE OF CONTENTS


| Volume I | Page |
|---|---|
| May 23rd, 1995 Arraignment | 1 |
| September 7th, 1995 Continuance | 8 |
| October 5th, 1995 Continuance | 11 |
| October 19th, 1995 Continuance | 23 |
| November 6th, 1995 Continuance | 30 |
| November 30th, 1995 Motion Proceedings | 36 |
| January 19th, 1996 Motion Proceedings: | 40 |
| Motion to Restrict Media Coverage of Pretrial Proceedings | |
| Mr. William Brown Withdrew | |
| January 23rd, 1996 Motion Proceedings | 69 |
| February 15th, 1996 Motion Proceedings: | 97 |
| Makeup for Ms. Pike Discussed | |
| **Volume II** | |
| February 15th, 1996 Motion Proceedings: (CONT.) | 101 |
| Motion for Individual Voir Dire | |
| Motion to Strike Alias | |
| Motion to Instruct the Jury Regarding State's Right to Open and Conclude Closing Arguments | |
| Motion in Limine | |
| Motion for Exclusion of Witnesses | |
| Continuing Motion for Witness Statements | |

## TABLE OF CONTENTS

Volume II (Continued) Page

February 15th, 2006 Motion Proceedings: (Cont.) 110

Request of District Attorney General for Discovery or in the Alternative Motion to Compel Disclosure of Discovery

Motion to Suppress Skull from being Introduced into Evidence

Motion to Suppress Various Body Parts and Soft Tissue Samples from being Introduced

Motion to Suppress Defendant's Conversation with Counsel at Preliminary Hearing Allegedly Overheard by Court Security

Motion for Disclosure of Impeaching Information

Request for Notice of Introduction for Evidence

Motion in Limine Preventing Photographs Alleged to be of the Victim Taken at the Scene

TABLE OF CONTENTS


Volume II (Continued) Page

February 15th, 2006 Motion Proceedings: (Cont.) 111

Motion for Order Prohibiting the Sheriff's Department from Reviewing or Reading the Defendant's Privileged Legal Correspondence

Motion for an Order Directing the State to Add Prospective Witnesses to the Indictment by a Date Certain

February 26th, 1996 Continuance Off the Record 145

February 29th, 1996 Motion Proceedings: 145

Motion for Change of Venue

Trial Date Confirmed

Jury Selection Discussed

March 14th, 1996 Motion Proceedings: 157

State's Motion for Reciprocal Discovery

Motion for Change of Venue

Jury Selection Discussed

Court Reporter's Certificate 172

MS. MARTIN: Thank you, your Honor.
THE COURT: Thank you.
(Whereupon, said bench conference was concluded. The Court disposed of other unrelated cases on its docket before proceeding in this case as follows:)
THE COURT: All right. Now, we have--the Court has been notified that the cameras wish to roll today. They have given adequate notice, and based upon my previous ruling that--or click as the case may be--I'm going to permit them to videotape today or take pictures.
MR. TALMAN: Again, for the record we'd note our objection.
THE COURT: Yes, sir, I understand and your record, I think, has been clearly made all along and will continue to be made.
MR. TALMAN: Thank you, Judge.
THE COURT: You can begin if you wish, gentlemen. Okay.
Now, we're here for some motions. I have received this morning a couple of motions, one of which is a Motion to Quash a Subpoena from *The*

*Knoxville News Sentinel*. Have we resolved that issue or are we still working on that issue?

MR. TALMAN: Your Honor, that was in connection with a Motion for Change of Venue that I had filed.

THE COURT: Which I also got brought downstairs to me this morning. I just received it this morning.

MR. TALMAN: I spoke with Rick Hollow, the attorney for *The News Sentinel*. I think we've resolved any issues of controversy. They had some concern that their record keeping system was such that they could not get all of the information that we had requested in a short period of time and that their system was not automated as of yet. They're in the process of converting that to a fully automated system where they could recover those dates.

I spoke with Mr. Hollow. I told him I had many of the documents that we needed. And we're going to see if we can't agree on getting those introduced by a publisher's affidavit.

THE COURT: Are you then saying you don't wish to take up your Motion for Change of Venue today?

MR. TALMAN: Well, your Honor, in light of the fact that we've got most of the news media in Knox County subpoenaed--which by the way we had thought about the idea of asking for the rule of sequestration to be invoked as to them and their agents, but we decided we didn't need to make anymore enemies with them. So we're not going to push that issue.

But in light of the fact that there are--most of the media has been subpoenaed, and most of them have complied with the subpoena. But some of them have not been able to get all of their documentation together. I had spoken with the Generals about possibly putting this on one day next week, but I understand your docket is really heavy next week.

THE COURT: Next week is impossible, impossible.

MR. TALMAN: General Helm has told me in the hallway that she feels that the Motion for Change of Venue may be premature because we've not tried to select a jury as of yet and been unsuccessful. My position on that is the statute says that we need to file the Motion for Change of Venue at the earliest possible opportunity. I'm a

little concerned that if we didn't file it then we
might get into a position if we tried to raise it
later that we didn't file it early enough so--
THE COURT: Then why don't we just reserve
that motion for right now--
MR. TALMAN: That'd be fine, Judge.
THE COURT: --and take it up as it becomes
necessary.
MR. TALMAN: That'll be fine. I think
that's probably appropriate. We've got a few other
motions I think we can--
THE COURT: Well--
MR. TALMAN: I'm sorry.
THE COURT: --what I propose to do--I
don't mean to cut you off but--
MR. TALMAN: That's fine.
THE COURT: --for my purposes I propose to
go through the motions. And if there are some that
we can dispense with quickly then they're done, and
we can figure out what motions they--what we want
to argue today.
MR. TALMAN: That's fine, Judge.
THE COURT: And I'm going through my file.
So if there are others, you'll let me know.
Motion to Conduct Individual and

Sequestered Voir Dire Examinations of Prospective Jurors in this case.

MR. TALMAN: Yes, your Honor. We're--due to the sensationalism of this case and some of the issues involved, we feel that our--the answers that prospective jurors would be inclined to give may be more forthcoming if they're alone. Furthermore, the fact that the--their feelings on this, any comments they may make, could possibly taint any other prospective jurors is the basis--or inform any possible--any other prospective jurors as to their knowledge of the case, we think that individual voir dire would be appropriate.

MR. CRABTREE: Your Honor, if I may I think in the appropriate situation individual voir dire may--may be appropriate. But I think first that the procedure that should be followed is that we go through the general voir dire. And if it's demonstrated that individual voir dire is needed, the Court go ahead and allow it at that time, especially concerning publicity and things of that nature.

THE COURT: In these circumstances and as with any death penalty case, I think that's the appropriate way to do it. What I'm going to do is,

therefore, reserve this motion to trial. And as we begin voir dire--and I'm sure we will find that there are some issues that we want to raise with individuals.

MR. CRABTREE: And I think we'll probably agree that some individual voir dire is needed--

THE COURT: Right.

MR. CRABTREE: --on publicity.

THE COURT: I think that's just going to occur naturally, actually. Motion to Strike Alias.

MS. HELM: We have no problem with that as long as the defense agrees that Ms. Christa Gail Pike is the person charged and that this person in the courtroom is Christa Gail Pike.

MR. TALMAN: Well, your Honor, I don't think that we could object to that so that's--

THE COURT: Okay. That's granted under, obviously, those conditions. Motion to Instruct the Jury Regarding the State's Right to Open and Conclude Closing Argument. I do that out of habit, quite frankly, and explain the burden--burden of proof in the charge. If--I'll be glad to grant your motion. I intend to do it anyhow.

MR. TALMAN: Some courts I've been in are not quite as thorough in some of the charging, and

this is more of a--

THE COURT: Mr. Talman, if you feel I have neglected to do that--

MR. TALMAN: We will.

THE COURT: --I want you to raise it--

MR. TALMAN: We will.

THE COURT: --because it's proper for the jury to understand.

MR. TALMAN: We will, your Honor.

THE COURT: So--I--but usually we do that out of the course of action.

Motion in Limine, this is dated July 31st regarding--

MR. TALMAN: Prior bad acts.

THE COURT: --allusions to prior bad acts, yes.

MR. TALMAN: That's under State vs. Morgan.

MR. CRABTREE: Your Honor, concerning prior bad acts, prior convictions, whatever, I don't think--(Indiscernible phrase)--the State will comply with Morgan and Rule 608 of the Rules of Evidence.

MR. TALMAN: Thank you, General.

THE COURT: I'm going to call it granted

but, obviously, the State understands the rule and pursuant to Morgan will do this. If there is a problem, obviously, approach the bench--

MR. TALMAN: That's fine, your Honor.

THE COURT: --outside the jury's hearing.

Motion for Exclusion of Witnesses prior to the beginning of voir dire and throughout all motion hearings. Are there potential witnesses in the courtroom?

MR. TALMAN: Under Rule 615 of the--

THE COURT: Are there potential witnesses in the courtroom now?

MR. TALMAN: Possibly, your Honor.

THE COURT: Well, you're asking that they be excluded during all motion hearings so--

MR. TALMAN: Yes. That's fine. Well, as of--

THE COURT: --this is a motion hearing.

MR. TALMAN: We'll have our witnesses leave also. I don't know if the State has any witnesses present.

THE COURT: Is there any objection, counsel, to--

MR. CRABTREE: He's entitled to it.

MR. TALMAN: Okay. We'd ask for that.

THE COURT: I'll grant the Motion to Exclude Witnesses.

MR. TALMAN: Fine. Thank you, Judge.

THE COURT: I'm just doing this in order so if there's anyone you want to hold onto and reserve--

MR. TALMAN: That's fine.

THE COURT: Continuing Motion for Witness Statements.

MR. TALMAN: That Jencks' material, your Honor, 26.2, your Honor.

THE COURT: Well, of course, as you understand, the requirement is that the State give you that material on conclusion of direct examination in the court.

MR. TALMAN: The purpose for the continuing motion, your Honor, is in case I make a human error and forget to ask for it at the conclusion of a witness testifying. That's the purpose for the continuing motion. It's more of a notice that we want any statements they've got and also that we need an opportunity to review any statements that they've not given to us before we conduct our cross-examination.

THE COURT: Again, he's entitled to it.

MR. CRABTREE: That State will comply with 26.2.

THE COURT: Okay. Request of the District Attorney General for Discovery or in the Alternative Motion to Compel Disclosure of Discovery.

MR. TALMAN: Your Honor, if we could pass on that one for just one moment.

THE COURT: Okay. Motion to Suppress Skull from being Introduced into Evidence.

MR. TALMAN: Pass on that one for a moment, your Honor.

THE COURT: Okay. Motion to Suppress Various Body Parts and Soft Tissue Samples from being Introduced.

MR. TALMAN: Pass on that one for a moment.

THE COURT: Motion to Suppress Defendant's Conversation with Counsel at Preliminary Hearing Allegedly Overheard by Court Security.

MR. TALMAN: Your Honor, we need to pass on that one for a moment. You know, we have an issue regarding a request for a closed hearing on that one.

THE COURT: Motion for Disclosure of

Impeaching Information filed September 26th.

MR. TALMAN: Your Honor, I believe the State is complying or has been complying with--essentially exculpatory material.

THE COURT: Obviously, the State understands the rules and will comply with that. If there is a problem in compliance, I guess you need to raise it. At this point you stated that they are in compliance and so--

MR. TALMAN: We do have minor problems with some discovery, your Honor, and we just want to preserve that. But Ms Martin is going to present that in a moment.

THE COURT: That's fine. The Motion for Discovery is always ongoing.

MR. TALMAN: That's fine.

THE COURT: Request for Notice of Intention for Evidence we don't need to deal with.

Motion in Limine Preventing Photographs Alleged to be of the Victim Taken at the Scene.

MR. TALMAN: Pass on that for a moment.

THE COURT: Motion for an Order Directing the State to Add Any--well, no, that's not the right one--an Order Prohibiting the Sheriff's Department from Reviewing or Reading Defendant's

Privileged Legal Correspondence.

MR. TALMAN: Your Honor, I spoke with Carlton Bryant, who has a role in representing the Sheriff's Department, and the Sheriff about this, and they've conducted an investigation regarding this issue. Our primary concern was Ms. Pike was saying that during the course of Jail shakedowns and so on that certain officers were going through her legal materials that had been sent to her from me.

I spoke with Carlton Bryant about that. They've conducted an investigation. Of course, they deny that it happens, but they have thoroughly briefed their officers about this is not something that should be done and it will not happen. They're, of course, of the position it did not happen, and we're not taking issue with that. But we have--there won't be any further problems so I think that matter is essentially resolved, your Honor.

THE COURT: I take it the State takes no position. If the issue arises again, please call it to my attention.

MR. TALMAN: We most certainly will, your Honor.

THE COURT: Motion for an Order Directing the State to Add Prospective Witnesses to Indictment by Date Certain.

MR. TALMAN: Well, your Honor, we-- obviously, if we're going to be ready to go to trial on this case anytime soon, we've got to know what witnesses they intend to call. We don't want to be in a position of three or four days to trial or five days before trial the State files a notice adding fifty witnesses. That's just insufficient time, and we don't want to have to be the one coming in saying, "We're not ready for trial," when actually it's the State that has not provided the information that we need.

MR. CRABTREE: Your Honor, we need to do that and we will get that done hopefully. I won't--we'll do our best to see that Mr. Talman gets adequate notice of any witnesses we intend to add.

THE COURT: Well, the trial is set on March 18th--

MR. CRABTREE: Uh-huh. (Affirmatively)

THE COURT: --so we now have approximately four weeks.

MR. CRABTREE: Well, we have talked with Mr. Talman about getting together next week to take

care of some of these matters that have not been taken care of and hopefully that will be one of the ones that we'll be taking care of too.

THE COURT: Okay.

MR. TALMAN: Then it should be reserved, your Honor, or--

THE COURT: Oh, yes, I'll reserve the issue. Do you want it back on the docket prior to the trial date?

MR. TALMAN: Well, I--what I essentially hear is that the State is going to comply with that, and I think that--

THE COURT: Why don't you ask me to put it on the docket if you feel it needs to be, and let's just reserve the issue?

MR. TALMAN: We'll do that. Let's just reserve it. (Pause) Your Honor, Ms. Martin--

THE COURT: Okay. Other than those I believe that I have--well, I think that I have called out every motion that I have had filed; is that correct?

MR. TALMAN: Your Honor, pardon me. If you will allow me to go back to this Motion Adding Prospective Witnesses--

THE COURT: Yes.

MR. TALMAN: If we could just maybe set a date certain that the State will comply with that, that's all we're really asking for. General Crabtree said they'll comply. If we can just set some kind of a date--a cut-off date that they're going to add witness--

THE COURT: Are you all going to work on this next week; is that what you're telling me?

MR. CRABTREE: That's--that's our intention, your Honor.

THE COURT: Why don't you just plan to--would you like to do some sort of an in-camera check that all of the motions--

MR. CRABTREE: We can do--

THE COURT: --are taken care of in about a week and make sure that--

MR. CRABTREE: Why don't we just come back before the Court? The only problem that I have--and I think Ms. Helm is in the same situation. You know I have that trial in here next week--

THE COURT: That's right.

MR. CRABTREE: --and we have no idea how long that's going to take.

THE COURT: That's right.

MR. CRABTREE: And if the Court has an

idea--

THE COURT: A very important simple assault.

MR. CRABTREE: That very important case may take us three or four days to do.

THE COURT: I'm told by defense counsel they think three days which I take to mean probably four.

MR. CRABTREE: But other than that, you know, we can spend our time on this and see if we can't get all of this ready. Well, now, Ms. Helm has some obligations also.

THE COURT: Well, do you want to just say March 1 and then see where we are?

MR. CRABTREE: Let's say March 1 and we'll make every effort to certainly get it complied with by then. I think we can do that.

MR. TALMAN: Well, your Honor, we would really like it before March the 1st. I mean that's 18 days prior to trial. That's not even three weeks to investigate. I don't know how many witnesses they're going to add. We may already be familiar with their witnesses. But it would seem to me--they've had this case over a year. They ought to know what witnesses they're going to call.

I understand General Helm's and General Crabtree's constraints as far as other obligations and I respect that. But we're set for trial March the 18th. I'd really like to have it as soon as we can, if we could--if we could set some day a little sooner than March the 1st.

THE COURT: I guess what I'm asking to be done is that you let me know by then if it has not yet been complied with.

MR. TALMAN: But there, again, that puts us just 18 days prior to trial. If we're familiar with these witnesses, then I don't see a problem. But if they come out with witnesses we've never heard of, then that puts us in a situation where we've not even--we don't even--we don't even have a month prior to trial to try and contact these witnesses, some of whom may live out of state may be difficult to contact. I filed this motion back--

THE COURT: Well, then let me--let me--

MR. TALMAN: --several months ago and they're still--I was hoping that they would just file something in response to the motion. But I filed this back November 3rd.

THE COURT: Well, how about a week from

Monday, which is the 26th, which will give you some--

MR. TALMAN: A few more days.

THE COURT: --some 25 days to deal with it. It will give you a little over three weeks, three and a half weeks. And one of the reasons is because I know that General Crabtree is going to be in trial. You all will have to sit down and go through quite a bit, I imagine, and that's going to take some time.

MR. TALMAN: Your Honor, I understand General Crabtree's constraint. My concern is if we're going to go to trial on March the 18th that after whatever date the Court sets the State can't add any more witnesses to their--to their case in chief.

THE COURT: Well, I don't want to restrict--

MR. TALMAN: That's what we're asking the Court do to.

THE COURT: --the State in that way. I think you have other--you have another form of relief if that occurs. At this point I don't. But I will be glad to ask you to come back on the 26th. And, General, I would ask--well, Generals, I would

ask you to attempt to comply with the motion completely by then.

MR. TALMAN: Your Honor, I would note--and I'm not in any way wanting to be argumentative. But I would note that the other relief I have available if the State should add witnesses just a few days before trial, is I have to come in and ask for a continuance.

THE COURT: I don't plan to give--

MR. TALMAN: And that puts me in a--

THE COURT: --the State the opportunity to add the witness at the very last minute. But I--I want to give you all some time to work together, Mr. Talman.

MR. TALMAN: Certainly, that's fine. We want to do that.

MS. HELM: And I'm trying to give you--I'm trying to give them the ten days and give you--

MR. TALMAN: That's fine. We want to do that, Judge.

THE COURT: --sufficient time to work on that.

MR. TALMAN: We'll just set this on the docket for the 26th, and if we have this complied with we'll just--

THE COURT: Yes, sir. I'm going to put it back on the docket--

MR. TALMAN: That'd be fine.

THE COURT: --so that you will have an opportunity to come in and--

MR. TALMAN: Thank you.

THE COURT: --go forward. Now that, therefore, leaves me with these motions that you asked me to hold up on.

MR. TALMAN: Just one second, Judge. (Pause) Your Honor, as to the motion on the photographs, I don't--the State--I'm not sure whether they're ready to proceed on that. I'm ready to go on that motion if they are.

MR. CRABTREE: Go ahead.

MR. TALMAN: Pardon me?

MR. CRABTREE: Go.

MR. TALMAN: Okay.

THE COURT: Now, this is--you're referring to the Motion in Limine--

MR. TALMAN: As to the introduction of the photographs.

THE COURT: --filed September 26th. Okay.

MR. TALMAN: September--

THE COURT: 26th.

MR. TALMAN: Yes, your Honor.

THE COURT: Okay.

MR. TALMAN: There's numerous photographs in this case, and we've obtained copies of those photographs, and we have some problems with some of those. Arguably, some of them probably are admissible, and we'd like the Court to rule on that prior to trial, if the Court would do that. The Court may feel it's something that should be argued as the State actually tries to introduce the photographs, but we--there, again, we're preserving the issue as--or raising it as early as possible.

MR. CRABTREE: Your Honor, I think concerning the photographs, at least that I'm aware of, it's almost impossible for the Court to make a determination at this particular time as to their admissibility.

The procedure that I think Ms. Helm and I follow when introducing evidence is that before we ever even ask that it be marked for identification we give--we present it to counsel for them to review before we file it. And the purpose of this is to give them an opportunity to make an objection to the admissibility of that particular photograph

or document or whatever the evidence would be. And we think as far as the photographs, that's sufficient.

There are situations where, depending on the proof, the Court might find one photograph admissible and one not. And just the fact that a photograph is gruesome does not necessarily make it inadmissible. And the Court will have to look at the state of proof to make a determination as to each individual photograph. And to try to do it without hearing the rest of the case, as I stated previously, is almost an impossibility. It's a burden on the Court that the Court would have extreme difficulty complying with.

THE COURT: Well, of course, as is always the case, I have not seen the photographs--

MR. CRABTREE: Right.

THE COURT: --will not see the photographs until such time as we either argue this motion in advance of trial or we do this during trial. Ordinarily, it is done, as you know, Mr. Talman, during trial. Certainly, I think that we will have to review these things and make those rulings.

I don't expect that we're going to be able to start a trial and keep the jury in the jury box

all the time. We're going to have to take up some of these matters during the course of trial.

I take it, however, you've seen the photographs that the State may introduce--

MR. TALMAN: I've got copies of them.

THE COURT: --and you have copies of them. And if it is at all possible for you all to put some order to them or work that out--

MR. CRABTREE: Oh, we can--we will do that regardless.

THE COURT: --then at least you'll be prepared to argue which ones are--

MR. TALMAN: Your Honor--

THE COURT: --you're going to object to.

MR. TALMAN: --the whole purpose in the motion was to save the Court's time after we start picking a--after we get a jury impaneled to maybe make things move slow--or smoother if we could agree on--

THE COURT: Nevertheless, I'm going to have to hear some proof--

MR. TALMAN: Certainly.

THE COURT: --to determine it.

MR. TALMAN: Certainly.

THE COURT: And I'd rather not do that in

advance--

MR. TALMAN: That may be fine.

THE COURT: --of trial.

MR. TALMAN: It may be something that should be argued at trial. But the photographs in this case that we believe that the State will probably want to try and introduce are--some of them are very gory and very inflaming, and that's something that--

THE COURT: I'm just going to have to look at them and hear argument. It's whether the probative value outweighs the prejudicial effect--

MR. TALMAN: Certainly. It's your Honor's dis--

THE COURT: --in effect, according to the rule.

MR. TALMAN: It's your Honor's discretion. We were just trying to give your Honor more advance opportunity to do that.

THE COURT: Well, I've always understood that that was a possibility here as it is in many of these cases. And if you want to argue that, frequently we just come up, lay them on the bench, and say--that's what we'll have to do.

MR. TALMAN: Well, I'm hopeful that we can

go through and--

THE COURT: If we could pre-mark them--

MR. TALMAN: --figure out what photographs--

THE COURT: --that will help.

MR. TALMAN: --that we can agree should not come in and the photographs that we agree that probably are admissible. And then the ones that we can't agree on, we will present to the Court.

THE COURT: Well, I think it's a little premature for me to do it--

MR. TALMAN: Certainly.

THE COURT: --without you all having that opportunity. So let me just reserve your motion.

MR. TALMAN: That'd be fine, Judge. Thank you.

THE COURT: And I'll be glad to hear any argument regarding the photographs at the appropriate point during trial.

Do you want to take up your motion--your conversation regarding--motion regarding conversation with counsel at preliminary hearing at this point?

MR. TALMAN: Well, I would like to go forward, your Honor, but I've gotten phone calls

from officers that I have subpoenaed that they're--some of the officers are in training and not available. And I thought if we could pick a date--if this 26th date that we're coming back--

THE COURT: I have Mr. Welcome's murder trial set that day--

MR. TALMAN: Okay.

THE COURT: --and two others, I think.

MR. TALMAN: Possibly if we could agree on another date, certainly before trial, maybe we could--could argue this where that's all we have set or--and maybe set it on an afternoon docket or something so where I don't have to inconvenience witnesses.

THE COURT: You're asking for the moon, I'm afraid, to find something that nothing else is set.

MR. TALMAN: Well, I mean--I understand that, Judge.

THE COURT: Hum--(Pause) General--

MR. TALMAN: I just--I don't want to inconvenience these officers or witnesses any more than I need to, but I've got to make my--

THE COURT: It may be that we have to argue this motion on the eve of--the morning of

trial. I don't know. I don't know at what point we get the officers in here whether they're in training or not. They're properly subpoenaed.

(Whereupon, Mr. Crabtree,
Ms. Helm and Mr. Talman
conferred off the record.)

MR. TALMAN: Your Honor, that may be something that might actually be an appropriate argument as to--when the State--if the State, in fact, does try to introduce this may be a more appropriate time to argue it. But we wanted an opportunity to suppress it beforehand.

THE COURT: I think this is probably something that we need to raise prior to any such proof coming out.

MR. TALMAN: And certainly we would like an opportunity to do that before there is any reference made to it in front of the jury.

THE COURT: Is there any problem with that, counsel, or--

MR. CRABTREE: I don't see any.

MR. TALMAN: What did you say?

MR. CRABTREE: I said I didn't see any.

MR. TALMAN: Oh, okay.

THE COURT: Well, in that case what I'm

going to do is I'm going to reserve this with the understanding that prior to any such proof being placed before the jury you approach the bench. We'll have to hold a jury-out hearing.

MR. TALMAN: Your Honor, could we go ahead and let Ms. Martin address the issue on discovery? There's a new matter she is wanting to raise on that.

THE COURT: Okay. The other two motions I have are suppression motions; is that right?

MR. TALMAN: Suppression of the skull and then the various body parts, your Honor.

THE COURT: Okay. Which kind of flows together, yes--

MS. HELM: No--

THE COURT: --or are they separate?

MS. HELM: --not necessarily.

MR. CRABTREE: Separate.

THE COURT: Okay.

MR. TALMAN: They're separate motions--

THE COURT: Well, let me take up the discovery issue first.

MR. TALMAN: Yes.

MS. MARTIN: I'll be brief, your Honor. We--we've had the outstanding discovery request,

and the State has attempted to comply. In fact, we got a new package from General Helm earlier. I believe, if I'm not mistaken, that she had indicated she had had problems getting all of the documents together. And I wanted to point out a Supreme Court case from fairly recently expanding on particularly Brady. Kyles v. Whitley came out in April of '95.

THE COURT: Do you want to give me a cite on that?

MS. MARTIN: Yes. Well, if I can read my copy that's a fax, I'll do that. 115 Supreme Court 15-55, 1995.

THE COURT: Supreme Court 15--

MS. MARTIN: 15--

THE COURT: --55?

MS. MARTIN: --55.

THE COURT: 1995.

MS. MARTIN: Uh-huh. (Affirmatively)

THE COURT: Okay.

MS. MARTIN: Specially, April 19th.

THE COURT: Okay.

MS. MARTIN: Again, that's Kyles v. Whitley, and the Court goes on to--to change a little bit the Brady standards, which if we feel

that that's necessary to argue we will file the appropriate motion and bring that up. However, I would point out that it reimposes the duty on the prosecutor to make the agencies that are investigating turn over their material. That they can no longer stand on, "Well, I didn't get it." And we would just like to re-emphasize that we need to get that material and we'd like to get it by a date certain.

MR. CRABTREE: Your Honor, I think what the Kyles case says is that we're responsible for that which we don't know about, and we will make every effort to advise people of that which we don't know about. We--

THE COURT: As I understand it right now, discovery is going along. Nobody is arguing--

MR. CRABTREE: It seems to be going very well.

THE COURT: --that discovery has ceased and you can't get material you need.

MR. CRABTREE: And we do make inquiries of the officers about any additional information or whatever. We do our best to get it. I'll never tell the Court that we always get it, but I know we're responsible for it if we don't.

MR. TALMAN: Discovery has come along very slow, but we're hoping there will be a little oil added to the machinery here.

THE COURT: Let me reserve it again. Maybe on the 26th we can revisit discovery and make sure that everybody is relatively well satisfied.

Would you all approach the bench, please.

(Whereupon, a bench conference was held in the presence of the jury but out of the hearing of the jury as follows:)

THE COURT: I'm sorry. But there's folks that have walked in that I don't know. And now that we have requested the rule I need you to look around and make sure that we're not talking about witnesses. I don't think we are.

MR. TALMAN: I don't think so.

THE COURT: Okay. Just keep an eye out. I think what happened was Channel 6 just showed up and I won't let them in. Channel 6 just appeared. I won't let them in because they never sent notice. All of these others did. They can report outside. Okay.

MS. MARTIN: I'll get you a copy of that case.

(Whereupon, said bench conference was concluded.)

THE COURT: Okay. That leaves me then with the Motion to Suppress the Skull from being introduce into evidence and Motion to Suppress Body Parts and Tissue Samples. Which would you like to begin with?

MR. TALMAN: It doesn't make any difference, Judge, probably the body parts. (Pause) The--we filed two separate motions, your Honor. We had filed one to Suppress the Skull from being Introduced, and that's a separate motion. We'll argue that in just moment. I think it has different standing.

And we also filed a Motion to Suppress Various Body Parts. In--specifically in the course of our investigation, going out and speaking with the pathologist and reviewing the autopsy reports and photographs and doing everything, we discovered that the pathologist had retained the anus and the vagina.

THE COURT: And by pathologist you indicate Dr. Elkins?

MS. HELM: Dr. Sandra Elkins, yes, your Honor.

THE COURT: Okay.

MR. TALMAN: The Knox County Medical Examiner had retained the anus and the vagina of the victim. And when I learned this I had inquired as to why and asked if I could see them. And we did, in fact, see the body parts. And, frankly, your Honor, we don't understand why in the world the State would have those retained for use in this trial when there is not even any allegation involving those parts of this young girl's body. So we'd move to suppress them unless there is some relevant reason to admit them.

(Whereupon, Mr. Talman and Ms. Martin conferred.)

MR. TALMAN: Your Honor, also we'd like to mention that there is--in addition to the anus and the vagina, there's a section of the chest that has been cut off. It's just a section of the skin of the victim's chest which is alleged to have a pentagram or a diagram carved into it. It's--I don't know the exact dimensions, but I'd guess somewhere around six to seven inches wide by six to seven inches long with the--

THE COURT: Which you've also seen?

MR. TALMAN: Yes, I've also seen it, yes.

I saw it; my investigator saw it at that time.

THE COURT: Okay.

MR. TALMAN: Co-counsel Billy Brown saw it. All of these items--we were all present when we saw them.

THE COURT: General.

MS. HELM: Your Honor, at this time the State knows of no reason why this evidence should necessarily be suppressed. Maybe a Motion in Limine would be better taken should the State decide that these items are relevant. At this point as to the anus and the vagina, we don't know of any relevant information that those body parts would supply to the Court. They were not ordered by our office to be retained. It's procedure. As to the other--

THE COURT: You mean it's procedural for Dr. Elkins?

MS. HELM: Yes.

THE COURT: Okay.

MS. HELM: As to the other matter--the other body part that counsel referred to, we think we can resolve that issue. I don't think we'll be introducing that but, again, there's no basis for **suppression**. Your Honor may wish to have a Motion

in Limine, but in terms of suppression I don't see any basis for suppression.

MR. TALMAN: Well, your Honor--

THE COURT: It's--again, it's a question of relevance; isn't it, at this point? Are you--

MR. TALMAN: Yes, your Honor. I just don't see how--how any of these body parts, the anus, the vagina or the--the chunk of meat off the skull--

THE COURT: Well, what I'm hearing the State say is that at least at this point the anus and vagina are not an issue. So we're talking about the--

MR. TALMAN: So we're agreeing--

THE COURT: --diagram.

MR. TALMAN: --they're not going to be introduced, that they didn't request them and they're not going to be introduced?

THE COURT: That's not exactly what I heard the General say.

MR. CRABTREE: Won't be introduced without advising the Court and counsel beforehand.

MR. TALMAN: Well, your Honor, we're wanting a ruling on that as to whether they're admissible. We don't see any relevance to them

whatsoever.

MS. HELM: Well!

THE COURT: I guess anything--

MS. HELM: If they're not relevant--

THE COURT: --is admissible--

MS. HELM: --we won't seek to--

THE COURT: --unless there's--

MS. HELM: --introduce them.

THE COURT: --a reason to suppress it or to rule that it's--it's a prejudicial effect that outweighs any relevance. I haven't heard anything about the facts of this case in the courtroom, and I haven't heard anything about exactly what may or may not be admissible. So at this point I'm not sure that I can make a ruling on whether or not these things should be kept from--in other words, whether I should prevent the Attorney General from admitting them.

It may be that when we get down to it and the Doctor testifies that there is some reason to allow or not allow it--I don't know.

MR. TALMAN: Your Honor, I understand the Court's--

THE COURT: And I think what General Helm is saying is this may be better discussed further

down in the--during--perhaps even during the course of trial. I don't understand why we couldn't make a determination, at least as to the anus and the vagina if it was just a procedural matter that the Doctor takes on, whether you all can't make a determination whether or not that will be discussed at trial.

MR. TALMAN: Well, your Honor, essentially, we're not talking about not intro-ducing--like if this dia--this chuck of chest here --we're not talking about that they can't introduce any evidence about what injuries are supposed to have occurred in this. We're talking about actually introducing the actual piece of--

THE COURT: I understand.

MR. TALMAN: --of--

THE COURT: Flesh.

MR. TALMAN: --skin, flesh--

THE COURT: I understand that.

MR. TALMAN: --in a little bucket with some liquid, formaldehyde or whatever it is. We think that diagrams or photographs are--can certainly be used. There is no other reason but sensationalism to even to--to even preserve these things.

MS. HELM: Judge--

THE COURT: Well, apparently, Dr. Elkins had a reason to preserve them, and we don't know what that is.

MS. HELM: What--

MR. TALMAN: We know what it is--

MS. HELM: --what counsel is asking for--

MR. TALMAN: --your Honor, or was.

MS. HELM: --is an advanced ruling on relevance, and you can't do that at this point. If they're relevant and probative, then they come in. If they're not, they don't.

THE COURT: I'm not going to deny your motion at this point, Mr. Talman, but I think we're premature on it.

MR. TALMAN: Are--do I hear the Court saying you're going to reserve ruling on it?

THE COURT: Yes, sir.

MR. TALMAN: Okay.

THE COURT: I tend to agree with you that it has to be relevant and probative, and that there is something more than sensationalism as a reason. On the other hand, I think we're being premature without some testimony perhaps.

MR. TALMAN: Well, your Honor, if that's

your ruling on the body parts, I think it probably goes over to the skull just as well. I think--

MR. CRABTREE: It would be the same argument for us.

MR. TALMAN: --I think it would go just--

THE COURT: Then let's reserve it. If you wish to hold some sort of a pretrial hearing with testimony regarding that--those issues and why they may--should be put in as opposed to not--

MR. TALMAN: Possibly the most appropriate time is if the State attempts to introduce that we be given an opportunity for a jury-out hearing on the--on that.

THE COURT: I agree and I think that's what General Helm and General Crabtree are saying as well. Obviously, you should be entitled to a jury-out hearing. You know what they are. You certainly--

MR. TALMAN: Sure.

THE COURT: --would not be surprised by the discussion anyway.

MR. TALMAN: Well, we were certainly shocked to see these and that's--(Pause)

Your Honor, I think--

THE COURT: Well--

MR. TALMAN: --with the exception of the motions you've reserved, I think that pretty well takes care of what has been filed to date.

THE COURT: Generals, do you have any matters you want to raise at this point?

MR. TALMAN: Could I have just one moment--

THE COURT: Sure.

MR. TALMAN: --with General Crabtree?

(Whereupon, Mr. Talman conferred with General Crabtree.)

MR. TALMAN: Your Honor, I think that pretty well resolves everything we can take care of today, and I think that on the 26th we should be able to address the other issues that we've got pending.

THE COURT: Okay. I have two first degree murder cases and an attempted murder case or something like that on the docket that day. I don't mean to have a long hearing.

MR. CRABTREE: I don't think we have anything--

THE COURT: I just want to know where we are--

MR. CRABTREE: --that will take long

either.

THE COURT: --basically. So if there's anything you want to put proof on, don't plan on it for the 26th. I just want to forewarn you.

MR. TALMAN: Okay. Your Honor, could we go ahead and pick another--another date to argue the--the venue? There are some records and stuff I would like to get introduced, and I'm going to have to introduce testimony to do that. If we could pick a day either right before a trial or something to that effect so I can get that introduced. Some of it we can introduce by publisher's affidavit and by affidavit, and we'll do that to reduce the amount of time. But I think there are some things we need to get in the record.

THE COURT: Well, as you know, we have a full docket. Next week is pretty much a wash out. The 26th, as I just said, there's two first degree murder cases and an attempted murder and three other trials. There's trials all of the rest of the week. There's hearings in the other co-defendants in this matter on the 29th as well as two trials and motions in another case and a bond motion in Mr. Ganya's case. So I'll be glad to put it on the 29th with the other things, if you'd

like.

You look pained, General Crabtree.

MS. HELM: No.

(Whereupon, the parties laughed.)

MR. CRABTREE: I always look pained.

THE COURT: Him, he looks pained.

MS. HELM: Oh, him.

THE COURT: I also don't know what your calendar is. I know you all are handling a number of other--

MS. HELM: Your Honor, the--

THE COURT: --forts.

MS. HELM: --the 29th I think would be fine because, frankly, I'm not sure that the two codefendants are pressing to proceed with their motions at that point.

THE COURT: Ms. Martin and Mr. Talman, what about the 29th for those?

MR. TALMAN: The 29th of February, your Honor--

THE COURT: Yes.

MR. TALMAN: --looks fine for me.

THE COURT: Yes. Again, I'm not making any promises or guarantees about the amount of time we have, but I'll be glad to put--

MR. TALMAN: Your Honor--

MS. MARTIN: I'm sched--

MR. TALMAN: I'm sorry.

MS. MARTIN: I'm scheduled to be in Anderson County Court that afternoon, but I'm sure Mr. Talman is fully capable of handling these matters without me.

MR. TALMAN: That's fine for what we've got to do, your Honor. I think--

THE COURT: Well, I'll try to take it up during the morning if that's at all possible so--

MS. MARTIN: If you could do that, that would be--

THE COURT: Let me see what I can rearrange. I'll have to talk to other counsel.

MS. MARTIN: Thank you.

MR. TALMAN: That's fine.

THE COURT: Okay.

MR. TALMAN: Your Honor, one of the witnesses that I'm going to subpoena on that--what I'll try to do is get numbers from the ones that I can that can be here on 30 day--30 minutes notice.

THE COURT: That's fine.

MR. TALMAN: And I think we can probably get 30 minutes notice.

THE COURT: If you want to put them on hold, that's okay.

MR. TALMAN: I think we'll do that because I don't want to inconvenience anybody any more than I have to.

THE COURT: I understand.

MR. TALMAN: Thank you.

THE COURT: I appreciate that. Anything else with regard to Ms. Pike's matters?

MR. CRABTREE: The State has nothing.

THE COURT: I'm going to also confirm the trial date at this point, setting the 26th as a brief motion day, the 29th as a--

MR. TALMAN: I think we're set for trial March the 18th, your Honor.

THE COURT: --as a mo--as the venue motion date, and trial is set--what did you say, March 18th?

MR. TALMAN: March 18th.

THE COURT: Okay.

MR. TALMAN: Your Honor, on the 29th are we going to address the issue regarding the suppression motions? Well, strike that, your Honor. I'll speak with--I'll speak with General Helm. I've got a new document that we're going to

have to file probably a motion on. I'll speak with her, and we'll probably set that on the 29th too.

THE COURT: Just be sure you understand that we've got to get things done in advance if we need subpoenas issued, please.

MR. TALMAN: Sure. (Pause) Thank you, Judge.

THE COURT: All right. If there are subpoenas to issue on any of those dates, please--except for, of course, the trial date, please ask for specific subpoenas to specific individuals.

MR. CRABTREE: We will.

MR. TALMAN: Your Honor, we--we issue and serve our own subpoenas.

THE COURT: Okay. That's fine.

MR. CRABTREE: Thank you.

(Whereupon, this case was not heard in open court on the 26th day of February, 1996, due to an ongoing unrelated trial. This case came on to be heard further on the 29th day of February, 1996, and the following proceedings were had, to-wit:)

THE COURT: Mr. Talman.

MR. TALMAN: Your Honor, on the Christa Pike matter--

THE COURT: Let's bring out Ms. Pike, please.

(Whereupon, Ms. Pike was brought into open court.)

THE COURT: Are we dealing with anything that's going to also include the other codefendants at this point?

MR. TALMAN: No, your Honor.

MS. HELM: No, your Honor.

THE COURT: Okay. So we're just dealing with Ms. Pike right now.

MR. TALMAN: Yes, your Honor.

THE COURT: Go ahead.

MR. TALMAN: Your Honor, we're on for the Motion for Change of Venue today.

THE COURT: Yes, sir.

MR. TALMAN: And that was a matter where primarily we was (sic) wanting to get some documentation and some information into the record for the Court to consider on that motion. We have not got everything completely gathered as of yet.

And I was a little hesitant to issue

subpoenas for news media again for today. With the trial that was going on, I didn't know where we were exactly going to be with that trial.

I spoke with General Helm about this matter, and we discussed the possibility of setting this matter on March 14th to resolve all pretrial issues if we can at that time.

THE COURT: Well--

MR. TALMAN: That's the Thursday before the--

THE COURT: I know.

MR. TALMAN: If that's satisfactory with your Honor.

THE COURT: March 14th contains two PCs, motions in the Mayes matter which may not have to be heard--we could probably move those--and also motions in John W. Evans, which I think is, General, one of yours or one of General Bright's.

MS. HELM: It's one of our unit's. I think it's General Bright's. That case is significantly newer in terms of moving through the system.

THE COURT: Right. And Mr. Evans case is set in about a month. It's also a murder case.

MS. HELM: Well, I don't know--I don't

want to speak for Mr. Talman, but I don't anticipate our motions requiring--the motions in this case--

THE COURT: How long do you--

MS. HELM: --requiring an entire day.

THE COURT: How long do you think, a couple of hours maybe?

MR. TALMAN: I think a couple of hours should be sufficient.

THE COURT: I'll put it on the 14th. Is that too close to trial for you to be--I mean is it something--

MR. TALMAN: I think that's satisfactory, your Honor.

THE COURT: Okay.

MR. TALMAN: I think most of what we've got remaining to go through should be able to be completed within a couple of hours.

THE COURT: I'll be glad to do it. Obviously, this would take some priority. I just want to forewarn you that there are other matters that are--

MR. TALMAN: I mean if your Honor could roll it back to the 13th--

THE COURT: I think there should be no

trouble getting this done that day.

MR. TALMAN: Okay.

MS. HELM: Your Honor, I would request that Ms. Peterson and Mr. Shipp's matters **not** be set that day. I think when we met--Mr. Coffey and I met with you yesterday, he expressed some concern about confusion of the issues if we're trying--you know, if everybody's Motion for Change of Venue--

THE COURT: The motions need to be done separately for the purposes of the record at this point--

MS. HELM: Uh-huh. (Affirmatively)

THE COURT: --because there will be a considerable record. And I think it would be best to do them separately. Do you need subpoenas issued or are you going to take care of that?

MR. TALMAN: I usually take care of those myself, your Honor. Also, for the record I would note our objection again to the news media's presence in the courtroom.

THE COURT: I'm going to make that a continuing objection. If you want to note it each time that's fine, Mr. Talman, however you want to work it out.

MR. TALMAN: If your Honor would note that

as a continuing objection on the record, that would be fine.

THE COURT: Okay.

MR. TALMAN: Also, specifically I would--

THE COURT: The objection is overruled continuously at this point.

MR. TALMAN: We understand that also, your Honor. (Laughing)

THE COURT: Okay.

MR. TALMAN: I would also state that General Helm and I have discussed an audio that we're--we have some question about if that goes in connection with the video tape that we received in discovery. And I'm just noting for the record that we discussed that and General Helm said she would look into that to provide any additional discovery, if there is any.

MS. HELM: That's the first I've heard of it.

THE COURT: Okay. I know that you all are working toward getting all of this done, and I'm aware of that. At this point if you need help getting it done I'll be glad to do it; otherwise, I'm going to let you all get it done. I don't need to--

MR. TALMAN: Well, as far as we can tell the State is trying to provide discovery, and I think that General Helm has worked--

THE COURT: It was a generic you all; it was as to everybody. I can see that everybody is working so--

MR. TALMAN: That's fine.

THE COURT: We're okay.

MR. TALMAN: I think that's fine.

THE COURT: If you have a problem then, obviously, call it to my attention. I'll be glad to take anything up you want.

MR. TALMAN: I think that's fine, your Honor.

THE COURT: Okay.

MR. TALMAN: I think that resolves everything; don't you?

MS. PIKE: Uh-huh. (Affirmatively)

MR. TALMAN: That takes care of everything for today, your Honor.

THE COURT: As to Ms. Pike--

MR. TALMAN: Yes, your Honor.

THE COURT: --we'll move the motions to March 14th, and I can now confirm the trial date at this time--

MS. HELM: Yes, your Honor.
THE COURT: --of March 18th?
MR. TALMAN: As for the 18th, yes, your Honor.
THE COURT: One other issue. I'm presuming that this trial will take two weeks to possibly a little bit longer. I would like advance notice regarding issues such as--I presume we're going to sequester a jury, etcetera.
MR. TALMAN: I would certainly think so, your Honor.
THE COURT: We'll have to make certain arrangements.
MR. TALMAN: Also, your Honor, I think the big issue on that will be jury selection.
THE COURT: I understand. I'm presuming that's our time frame, and if you all think your concept is radically different, because I don't know how many witnesses, you each intend to call.
MS. HELM: If we think it's going to be that long, your Honor, also I think we need to collectively think about how many alternate jurors we want to select.
MR. TALMAN: We can discuss that.
THE COURT: The other thing I'd like to

do, and I don't know if we can do this very easily physically, I would like, if it's possible, to select from greater than a panel of 18, which is what we usually do just to make jury selection go a little faster perhaps even putting everybody--

MS. HELM: The problem with that is confusion, your Honor.

THE COURT: Yes; yes, ma'am, I understand that. How many are the judges with the bigger courtrooms selecting from at this point?

MS. HELM: The most I've seen, other than one other time, is 18.

THE COURT: Okay. Well, that's what we're usually doing, and I presume that's okay with everybody.

MR. TALMAN: I would certainly think six alternates would be--

THE COURT: Well, no I don't mean that.

MS. HELM: No, no.

THE COURT: I mean I want to select from a panel of 18. I want to bring in 18 at a time.

MR. TALMAN: Well, we have some objection to that, your Honor. We--

THE COURT: Do you want us to select from 12 at a time?

MR. TALMAN: We asked for individual sequestered voir dire but--

THE COURT: Well, there may be individual voir dire.

MR. TALMAN: We would prefer just to seat the 12 going through the panel.

THE COURT: (Pause) I'll let you think about that.

MR. TALMAN: I will think about it, your Honor. I'll discuss it with co-counsel.

MS. HELM: The State has no objection to doing that.

THE COURT: I will follow the 12 if you want. It will go a lot faster with 18, and in saying 18 I will not deny you individual voir dire. I'm sure that that will occur.

MR. TALMAN: I'll discuss it with co-counsel.

THE COURT: I think it's going to be necessary for that to occur one way or another. I'm just talking about going through the general qualifications 18 at a time just to make it faster. If you think that that is a difficulty to you, then we'll follow the rule as it is written.

MS. HELM: Your Honor, in terms of general

voir dire, I know Division II brings in the entire--

THE COURT: Venire.

MS. HELM: --venire to qualify--

THE COURT: Well, that's what I was talking about.

MS. HELM: --them generally.

THE COURT: That's what I was talking about.

MS. HELM: And we wouldn't have any particular objection to that. But in terms of trying to pick from a panel of 24, and especially in a courtroom this small, that's--it's virtually impossible to keep up with who's number 22 and who's number 13.

THE COURT: That I understand, General, and I have no problem with that.

MR. TALMAN: Well, your--

THE COURT: I'm just trying to make it go a little bit easier for everyone including you all if--and, Mr. Talman, if you want to do it from 12, if you think it's going to be easier for you to keep up with the very many pieces of information you need, I'll do it from 12.

MR. TALMAN: Well, your Honor--

THE COURT: We've been doing it from 18 for some time now so--

MR. TALMAN: Your Honor, in this--

THE COURT: But--but it's your choice.

MR. TALMAN: I think--in this particular trial I think that jury selection is going to be, even more so than other trials, a very crucial stage of the proceedings. And we certainly object to bringing the whole venire in, your Honor.

THE COURT: That I--this courtroom isn't going to allow for that. That's fairly obvious.

MR. TALMAN: And we would suggest the larger the panel--if some juror should blurt something out that would be objectionable, that would possibly taint the panel that we have or prospective panel. That's--

THE COURT: I'll do my best to keep that from happening.

MR. TALMAN: Well, I understand that, your Honor, but sometimes things happen.

THE COURT: Those things happen. We've wiped out a jury panel before so-- Think about it; please let me know in advance so that I can so advise the jury clerks.

MR. TALMAN: That'd be fine. Thank you,

Judge.

THE COURT: You all might want to talk about that some because I realize this is an extremely difficult courtroom to do this in.

MR. TALMAN: Thank you.

THE COURT: Okay. Thank you.

(Whereupon, this case came on to be heard further on the 14th day of March, 1996, and the following proceedings were had, to-wit:)

THE COURT: Shall we start with Ms. Pike?

MR. TALMAN: Your Honor, that matter is going to be brief also this morning.

THE COURT: Well, let's take it up now because--

MR. TALMAN: Okay.

THE COURT: --I know Mr. Mayes' matter is going to take a little while, and I think Mr. Evans will also.

(Whereupon, Mr. Pike was brought into open court.)

THE COURT: All right. Ms. Pike is present in the courtroom. Bear with me just a second and let me get my stuff here together.

(Pause)

I received this morning a motion and an answer on Ms. Pike filed March 13th.

MR. TALMAN: Is that the State's Motion for Reciprocal Discovery, your Honor?

THE COURT: Yes, sir. And there's a response to your Motion for Discovery as well.

MR. TALMAN: Yes, your Honor. A little longer than the 30 days that we had originally requested but a response nonetheless.

THE COURT: This is a complicated case, and I'm trying to give everybody a little--

MR. TALMAN: Yes, your Honor.

THE COURT: --room to breath.

MR. TALMAN: Your Honor--

THE COURT: All right.

MR. TALMAN: --in this matter we're on today for the Motion for Change of Venue. And in reviewing the transcripts and tapes and so on, maybe the more appropriate thing to do is to go ahead and file those as exhibits. Let your Honor take the matter under advisement and defer a ruling on it until after we actually try to begin picking a jury in the Motion for Change of Venue.

THE COURT: It would seem to be that--that

until we begin the process of jury selection we won't know whether or not that's an appropriate motion anyway. I don't mind doing that at all. If you'd like me to do that, I'll have that done over the weekend. Do you have them--the materials together?

MR. TALMAN: We have the materials. We'll file them this afternoon. We have to provide copies for the State.

THE COURT: That's fine.

MR. TALMAN: One of them is a videotape, and we've got to make a copy of it. So we've got to do that.

THE COURT: Okay. If you can get those filed--

MR. TALMAN: We'll do that.

THE COURT: --by tomorrow--

MR. TALMAN: By tomorrow will be all right?

THE COURT: Yes.

MR. TALMAN: All right.

THE COURT: Is that okay, General?

MS. HELM: Yes.

THE COURT: Anything you want to take up at this point?

MR. TALMAN: No, your Honor. Just confirm our trial date of Monday.

THE COURT: General, can we confirm?

MS. HELM: Your Honor, there are some motions that I had discussed with Ms. Martin that she had said, "Well, maybe we can do those pretrial." And if that's--that's either today or Monday, I would guess.

THE COURT: Uh-huh. (Affirmatively)

MS. HELM: Just for planning purposes maybe the Court can enlighten us on the way the Court wishes to proceed.

THE COURT: What are those motions?

MR. TALMAN: Your Honor, most of them are just Motions in Limine, some last minute matters for the trial that I don't think are going to be very complicated. We do have the motion regarding the overheard statement that we had filed a Motion to Suppress, and your Honor had reserved that until trial. Whether it's appropriate to argue that pretrial or when and if the State tries to introduce that testimony in a jury-out hearing, that's for the Court to determine. But those are the motions we're talking about.

THE COURT: My suggestion is that we begin

with those on Monday morning and then begin to pick a jury. Is that suitable to you or do you feel like you'd want to do that before?

MR. CRABTREE: Why don't we go ahead and start with those motions, make that determination. The ones we need to hear we'll hear, and the ones we can--that should be more appropriately moved over we'll do that.

THE COURT: Okay.

MR. CRABTREE: And--but I cannot imagine--counsel, correct me if I'm wrong--that we're going to be talking about witnesses until at least Tuesday, possibly even Wednesday.

THE COURT: I can't imagine it either--

MR. TALMAN: What time--

THE COURT: --because it's going to take us some time to pick a jury.

MR. CRABTREE: So we're not going to--if it's agreeable with everyone--

THE COURT: I'm sure sequestration is--

MR. CRABTREE: --we're not going to--

(Pause) Sequestration is mandatory.

THE COURT: --mandatory.

MR. TALMAN: Yes.

THE COURT: So I mean that's going to take

some time to get--

MR. CRABTREE: So we'll probably put six of our first witnesses on call, but not actually going to bring anyone in Monday unless the Court tells us otherwise.

THE COURT: Okay. Now, I'm planning on picking two additional jurors, alternates.

MR. TALMAN: Two alternates.

MR. CRABTREE: Yes. I would ask the Court also to maybe look at the second part of the rule on alternate jurors.

THE COURT: You've asked me that before, and I'm going to ask all of you to look at it and see if you prefer to do it that way. It may work better.

MR. CRABTREE: It seems to be a real process that works well.

THE COURT: Also, are we picking from a panel of 12 or a panel of 18?

MR. TALMAN: We've discussed that and we'd rather go from a panel of 12, your Honor.

THE COURT: It's going to take longer. It's going to take twice as long to do it. But if that is what you want to do, that's fine.

MR. TALMAN: That's what we'd prefer.

THE COURT: Okay.

MR. CRABTREE: Well, let me ask this. Is there any difficulty with doing the panel of 18 and then--I know we may get into some individual voir dire concerning publicity or things of that nature. And if we need to do that we, of course, can do that because it does speed it up so much.

THE COURT: Well, we will get into individual voir dire.

MR. CRABTREE: And it would be applicable to those people as well as--I guess what I'm getting at, maybe qualify 18 and then take it from there.

THE COURT: I would prefer to do that. If I--if the rule allowed me to make it mandatory, I would make it mandatory. But I'm not going to require Mr. Talman to do that if he doesn't wish to do it. It's a matter of getting--first--if we could get 18 into the box initially, it would make things faster. It's going to be a long trial anyway. I mean, you know, however you want to do it.

MR. TALMAN: Your Honor, I'll speak with Ms. Martin further about it, but at this point we would rather stick with the 12. And I don't mean

to be difficult with the Court but that's--

THE COURT: No, I understand that. It will take twice as long to pick a jury. It will take us, I expect, three days if we're going to go with a panel of 12.

MR. TALMAN: Your Honor, can I ask also for planning purpose, what time do you expect us to get started on Monday? I know that sometimes there's other matters.

THE COURT: I have other matters on the docket. I have no--I haven't seen the matters that have been put on that I didn't put on so I'm just not sure. Hopefully by 10:00 to 10:30 Monday morning. And then if we see that we're really going in picking a jury, then I'll start moving cases off for the rest of the week.

MR. TALMAN: Also, your Honor, one of the--

THE COURT: I don't want to do that until I'm sure this case is going to trial because--

MR. TALMAN: Certainly.

THE COURT: --then I'll be moving cases unnecessarily.

MR. TALMAN: Certainly. Another matter, your Honor, we'd like to mention for thinking

purposes is what time court is going to adjourn daily. I think Ms. Martin--

THE COURT: I can't--

MR. TALMAN: --has child problems and we--

THE COURT: --I can't tell you that. When we have a jury that's sequestered, I've got to--the first day we have to make--and every day until we get the jury and we have their belongings, we have to adjourn in time for the officers to go individually with the--or the sworn officers to go individually--

MR. TALMAN: Sure.

THE COURT: --with the jurors and get their things and--

MR. TALMAN: I understand that, your Honor.

THE COURT: --and assemble them. So we're not--

MR. TALMAN: Sure.

THE COURT: --going to be able to quit late in the beginning.

MR. TALMAN: Well, that's what--

THE COURT: But I will--I will push this case along as hard as I can. I mean sometimes we work until 6:00 or 7:00 o'clock at night. It's

just--

MR. TALMAN: Well, what we'd like to do is we'd--we'd make a motion or reduce it to writing and make it part of the record. I just wanted to mention it for purposes of discussion about stopping at a reasonable time each day because there may be research that needs to be done in the evening. Plus, Ms. Martin has a minor child that she has to deal with.

THE COURT: I understand and sympathize with that; however, my priority will be and always is that sequestered jury that wants to go back to their family. And I'm going to push this case as hard as I can push it, as I do with any other that's had a jury in the box for a week or so.

MR. TALMAN: We're not talking about 9:00 or 10:00 o'clock at night every night though and then starting at--

THE COURT: No, sir. I--I don't think any of us can physically do that, and I think that's unfair to the lawyers and to all of the individuals involved.

MR. TALMAN: I'd kind of like to have a rough time period of what time we're talking about cutting off and--

THE COURT: I can't tell you that yet, Mr. Talman, and that depends on things like where the jurors will eat for that evening. It's going to be pretty much a day-to-day basis, I regret to say.

MR. CRABTREE: How about the weekend?

THE COURT: Although it is difficult for me based on my own religious beliefs, I will hold court on Saturday for half a day every week if I can do that or even all day if that's what's--if that will help.

MR. CRABTREE: Your Honor, another thing I might suggest the Court consider between now and Monday as far as the jurors are concerned is the possibility of qualifying the entire venire as far as sequestration rather than doing it 12 at a time. That's just such a cumbersome procedure.

THE COURT: My problem with doing that, General, is: where do we do it?

MR. CRABTREE: Well, I guess that's right. You already--

THE COURT: This place is going to be full and I'm not going to be able to do that very easily.

MR. CRABTREE: I apologize for--

THE COURT: I'd love to do that.
MR. CRABTREE: I wish we could.
THE COURT: That's why I want to do it from 18 because I know that it's going to take--and it's my intention to fill a box of initially qualified people and then go forward. I don't see any other way of doing that.
MR. CRABTREE: So let me ask this. If the Court does consider that part B, then we will, obviously, be working from 14 then as opposed to 12.
THE COURT: Yes, sir. And there will be 14 anyway whichever part we use. But I--I--we talked about that the last case we tried, and I'm going to look at that again. That may be a good way to do it.
MR. TALMAN: I would like an opportunity--
THE COURT: If you all want to look at it--
MR. TALMAN: --to look at it also, Judge.
THE COURT: --in effect, what happens is the--all the jurors assume they're jurors and the two alternates are pulled out at the end by lot, I think. Is that right?
MR. CRABTREE: Yes, uh-huh, the two--

THE COURT: And--so that everyone is--

MS. HELM: Paying attention.

THE COURT: --a juror until told otherwise.

MR. CRABTREE: And everyone pays attention that way rather than sitting there and saying, "I'm an alternate so I'm not going to get to hear this."

THE COURT: So think about it, look at it, and whichever way everyone wants to go--the default method will be the old method. Let's put it like that.

MR. TALMAN: Thank you, Judge.

THE COURT: Okay. Is there anything else we need to take up?

MR. TALMAN: Not that I can think of.

THE COURT: Okay. Everybody at this point assumes that they're going to be ready for trial, has their witnesses together come Monday?

MS. HELM: Pardon me?

THE COURT: Everyone has their witnesses and everything that they know of that they're going to need at a certain point? We don't have any problems like that right now?

MR. CRABTREE: Not that we're aware of.

MS. HELM: Not that we're aware of.

THE COURT: Okay.

MR. TALMAN: Your Honor, for planning purposes, assuming the State is going to start calling witnesses probably by Wednesday, if we're optimistic, if I get some idea of how long the State's case is going to take so--

THE COURT: Mr. Talman, it depends on how long you--

MR. TALMAN: I know. I'm just asking.

THE COURT: --talk and they talk.

MR. TALMAN: Sure.

THE COURT: And I--there's no way for us to know.

MR. TALMAN: I understand that from the Court's perspective but--

THE COURT: And I won't cut off anybody's case as you know.

MR. CRABTREE: If Mr. Talman wants to agree to not cross-examine our witnesses, we can probably give him a pretty exact time.

(Whereupon, the parties laughed.)

THE COURT: Well, you know, I--there's no way to know, Mr. Talman.

MR. TALMAN: I know that, Judge.

THE COURT: I fully expect once this case

starts it will take almost three weeks end to end.

MR. TALMAN: That's kind of what we were thinking. We didn't want to bring witnesses over here and have them--

THE COURT: In fact, we've got two weeks and four days to go so you--before the conference and the Good Friday weekend. So I hope we can finish it within that period of time. I very much hope so because I have some airline tickets after that period of time. So if we can work it out that will be fine.

MR. TALMAN: Thank you, Judge.

THE COURT: Okay.

-(END OF THE REQUESTED TRANSCRIPT OF THE EVIDENCE)-

CERTIFICATE

I, the undersigned, Deborah Lee Hayes, Official Court Reporter for the Sixth Judicial District of the State of Tennessee, do hereby certify that the foregoing is a true, accurate, and complete Transcript of the Evidence of all the proceedings had and evidence introduced in the pretrial motion hearings of the captioned cause, relative to appeal, in the Criminal Court for Knox County, Division III at Knoxville, Tennessee, on the 23rd day of May, the 7th day of September, the 5th and 19th days of October, the 6th and 30th days of November, 1995, the 19th and 23rd days of January, the 15th, 26th and 29th days of February, and the 14th day of March, 1996.

I do further certify that I am neither of kin, counsel, nor interest to any party hereto.

______________________, 2006

______________________________

Official Court Reporter
State of Tennessee