**No. 1:12-cv-00035**
**DEATH PENALTY CASE**
**Execution Scheduled: September 30, 2026 at 10:00 a.m. CDT**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**

**CHRISTA PIKE,**
**Petitioner,**

**v.**

**KENNETH NELSEN, WARDEN,**
**Respondent,**

# RESPONDENT MOTION TO TRANSFER PETITIONER MOTION FOR RELIEF FROM JUDGMENT AS SECOND OR SUCCESSIVE HABEAS CORPUS PETITION


**JONATHAN SKRMETTI**
**Attorney General & Reporter**
**State of Tennessee**

**MADELINE W. CLARK**
**Solicitor General**

**TAYLOR M. DURRETT**
**Assistant Attorney General**

**JOHN H. BLEDSOE**
**Deputy Attorney General**
**P.O. Box 20207**
**Nashville, Tennessee 37202**
**Telephone: (615) 741-4351**
**Email: John.Bledsoe@ag.tn.gov**
**Attorney for Respondent-Appellant**

## INTRODUCTION

On January 12, 1995, Christa Gail Pike beat, tortured, and killed Colleen Slemmer because Pike "just felt mean that day." *State v. Pike*, 978 S.W.2d 904, 908 (Tenn. 1998). Pike cut Colleen's throat six times, struck her in the back with a meat cleaver, and crushed her skull with a piece of asphalt. *Id.* at 910-11. A jury convicted Pike of first-degree murder based on overwhelming evidence of guilt, including a detailed confession, and sentenced her to death. *Id.* at 910, 912, 914. On June 8, 2020, Pike completed the three-tiers of review of her sentence—direct appeal, state post-conviction, and federal habeas—when the Supreme Court denied review of her unsuccessful bid for habeas relief. *Pike v. Gross*, 590 U.S. 978 (2020). The Tennessee Supreme Court set her execution for September 30, 2026.

More than six years after her habeas case ended—and hours before her scheduled execution—Pike seeks delay through a procedurally improper motion for relief from judgment. In effect, her motion challenges this Court's (and the Sixth Circuit's) merits rejection of her claim of ineffective assistance by trial counsel in failing to develop and present certain mitigation evidence. Under *Gonalez v. Crosby*, 545 U.S. 524 (2005), the motion is a second or successive habeas corpus petition, and this Court lacks jurisdiction to resolve the motion. The Court must transfer her new petition to the Sixth Circuit as a second or successive habeas petition.

## STATEMENT OF THE CASE AND FACTS

### A. Legal Background

#### 1. Motion for relief from judgment

Rule 60(b) of the Federal Rules of Civil Procedure authorizes a district court, "[o]n motion and just terms," to "relieve a party or its legal representative from a final judgment, order, or proceeding" for one of five delineated reasons and for "any other reason that justifies relief." The catch-all provision in Rule 60(b)(6) "provides only grounds for relief not already covered by the preceding five paragraphs." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025). A party seeking relief from a judgment must file the motion "within a reasonable time." Fed. R. Civ. P. 60(c)(1).

Although Rule 60(b) "has an unquestionably valid role to play in habeas cases," that rule, "like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings under 28 U.S.C. § 2254 only 'to the extent that [it is] not inconsistent with' applicable federal statutory provisions and rules." *Gonzalez v. Crosby*, 545 U.S. 524, 529, 534 (2005) (quoting Rule 12, Rules Governing Section 2254 Cases in the United States District Courts) (footnote omitted). As relevant here, a motion for relief from judgment "that seeks to add a new ground for relief … [or] attacks the federal court's previous resolution of a claim *on the merits*" would "impermissibly circumvent" statutory limitations on second or successive habeas

petitions. *Id*. at 532 (citing 28 U.S.C. § 2244(b)(3)) (emphasis in original). In that instance, the district court must transfer the motion to the Sixth Circuit for treatment as a second or successive habeas corpus petition. *In re Bowling*, 422 F.3d 434, 440 (6th Cir. 2005) (citing *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997)). "Rule 60(b)'s allowance of reopening for 'any ... reason' was narrowed to account for § 2254." *Fernandez v. United States*, 146 S. Ct. 1292, 1301 (2026).

When a Rule 60(b) motion challenges "not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," the motion "creates no inconsistency with the habeas statutes and rules." *Gonzalez*, 545 U.S. at 532. More to the point, the motion is properly grounded in Rule 60(b) when it "asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *Id*. at 532 n.4.

As for post-judgment relief under Rule 60(b)(6), "[t]he text and structure of [the rule] make clear that relief … is available only in narrow circumstances." *BLOM Bank SAL*, 605 U.S. at 211. The Supreme Court has long "required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535 (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). "Such circumstances will rarely occur in the habeas context." *Id*.

At its base, Rule 60(b)(6) requires "exceptional or extraordinary circumstances where principles of equity mandate relief." *Miller v. Mays*, 879 F.3d 691, 698 (6th Cir. 2018) (cleaned up). The rule "creates an equitable remedy to be decided as a case-by-case inquiry that intensively balances numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *In re West*, 103 F.4th 417, 420 (6th Cir. 2024) (cleaned up). "These factors can include 'the risk of injustice to the parties' as well as 'the risk of undermining the public's confidence in the judicial process.'" *Miller*, 879 F.3d at 698 (quoting *Buck v. Davis*, 580 U.S. 100, 123 (2017)). "This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." *BLOM Bank SAL*, 605 U.S. at 213.

**2. Authorization for second or successive habeas petition**

Federal law places stark limitations on second or successive habeas petitions. Generally, a criminal defendant may not raise an old claim in a new petition. 28 U.S.C. § 2244(b)(1). And before pursuing a new claim in a new petition, the defendant must first secure this Court's authorization for the petition's filing, under one of two narrow grounds. 28 U.S.C. § 2244(b)(2) and (b)(3)(A).

The Sixth Circuit may authorize a second or successive petition if the defendant makes a prima facie showing that "the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme

Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A) and (b)(3)(C). The Sixth Circuit also may grant authorization for a new petition if the defendant makes a prima facie showing that:

> 1. The factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> 2. The facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B) and (b)(3)(C). In this context, "prima facie" means "sufficient allegations of fact together with some documentation that would 'warrant a fuller exploration in the district court.'" *In re Lott*, 355 F.3d 431, 433 (6th Cir. 2004) (quoting *Bennett v. United States*, 199 F.3d 468, 469 (7th Cir. 1997)).

The second subsection is "an actual innocence exception." *Houston v. Tanner*, 160 F.4th 683, 690 (6th Cir. 2025). It "is for claims predicated on newly discovered facts that call into question the accuracy of a guilty verdict." *Tyler v. Cain*, 533 U.S. 656, 661-62 (2001). "To establish that no reasonable juror would have convicted him, [the petitioner] must show that no reasonable juror would find him [or her] guilty beyond a reasonable doubt—or, to remove the double negative, that . . . any reasonable juror would have reasonable doubt." *Keith v. Hill*, 78 F.4th 307, 315 (6th Cir. 2023); *but see Hubbard v. Rewerts*, 98 F.4th 736, 745-47 (6th Cir.

2024) (indicating a higher burden applies to prove actual innocence under § 2244(b)(2)(B)(ii)).

A capital sentencing claim "categorically does not meet § 2244(b)(2)(B)(ii)'s requirement that the new facts establish a petitioner's actual innocence." *In re Hanna*, 987 F.3d 605, 609 (6th Cir. 2021).

**B. Factual Background**

"Without question," Pike's killing of Colleen Slemmer was "particularly cruel." *Pike*, 978 S.W.2d at 915. On January 11, 1995, Pike told a friend that she intended to kill Slemmer "because she 'had just felt mean that day.'" *Id.* at 908. The next day, armed with a box cutter and a meat cleaver, Pike and two accomplices lured Slemmer to an isolated area. *Id.* at 909. Pike "began hitting Slemmer and banging Slemmer's head on her knee." *Id.* She "threw Slemmer to the ground and kicked her repeatedly." *Id.* When Slemmer threatened to report Pike for her actions, "Pike again repeatedly kicked Slemmer in the face and side." *Id.* When Slemmer tried to run away, Pike cut her stomach with the box cutter. *Id.* When Slemmer tried to run away again, Pike slashed her across the back. *Id.* As Slemmer begged for her life, Pike repeatedly kicked her in the face and then cut her across the throat several times, and when Slemmer made one final attempt to flee, Pike crushed her skull with a large chunk of asphalt. *Id.* at 910-11.

That evening, Pike told a friend "that she had just killed Slemmer and that she had brought back a piece of [Slemmer's] skull as a souvenir." *Id.* at 908. Pike said "that she had cut the victim's throat six times, beaten her, and thrown asphalt at [her] head." *Id.* She said "that a pentagram had been carved into [Slemmer's] head and chest." *Id.* She danced, smiled, and sang while she recounted these details. *Id.*

## C. Procedural Background

In 1996, a jury convicted Pike of first-degree murder and conspiracy to commit first-degree murder. *Id.* at 912. The jury sentenced her to death on the conviction for first-degree murder, finding two aggravating circumstances: (1) "the murder was especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death;" and (2) "the murder was committed for the purpose of avoiding, interfering with or preventing a lawful arrest or prosecution of the defendant or another." *Id.* at 913 (cleaned up). The Tennessee Supreme Court affirmed Pike's convictions and sentence in 1998. *Id.* at 914.

Her bid for state post-conviction relief failed, *Pike v. State*, No. E2009-00016-CCA-R3-PD, 2011 WL 1544207 (Tenn. Crim. App. Apr. 25, 2011), perm. app. denied (Tenn. Nov. 15, 2011). The post-conviction court rejected Pike's contention that her trial counsel were ineffective for failing to investigate and present additional mitigating evidence of her childhood, including sexual abuse. Order, R.9-5, 4435-

39, 4463-77. The post-conviction court did so on grounds that have nothing to do with the credibility of Pike's abuse allegations. The court found that "the jury's verdict would not have been affected by the mitigating evidence now offered due to the strength of the facts of this case for guilt and the strength of the aggravating factors," and that "[e]ven assuming that all the evidence had been presented to the jury that had been presented here, this court cannot find that the jury's sentencing verdict would have been any different." *Id.*, 4477. The court further found that much of the additional evidence was cumulative and that some of it "would have included some very negative information about the petitioner" or opened the door to damaging rebuttal. *Id.*

The Tennessee Court of Criminal Appeals affirmed on exactly these grounds, holding that "based upon the clear finding by the trial court that the mitigation evidence which was omitted would not have outweighed the aggravating factors, the Petitioner is essentially precluded from establishing prejudice." *Pike*, 2011 WL 1544207, at *52.

Applying the deferential review applicable under 28 U.S.C. § 2254(d) on the state-court adjudication, this Court rejected Pike's ineffective-assistance claim related to mitigation when denying Pike's habeas petition. *Pike v. Freeman*, No. 1:12-cv-00035, 2016 WL 1050717, at *11-16 (E.D. Tenn. Mar. 11, 2016).

On appeal, the Sixth Circuit affirmed the denial of federal habeas relief, noting that "none of the evidence Pike now points to substantially differs from the mitigation case that was presented to the jury." *Pike v. Gross*, 936 F.3d 372, 379-82 (6th Cir. 2019). Even if the jury had heard everything Pike now says it should have, "the sheer weight and degree of aggravation evidence before the jury outweighs the mitigation evidence," because her proffered evidence was "mostly cumulative and insufficient to overcome the heinous nature of her crime." *Id*. at 383.

On September 30, 2025, the Tennessee Supreme Court set Pike's execution for September 30, 2026. Order, *State v. Pike*, No. M2020-01156-SC-DPE-DD (Tenn. Sept. 30, 2025).[1]

On June 12, 2026, Pike filed a motion with the Tennessee Supreme Court, asserting facial and as-applied challenges to Tennessee's lethal injection protocol and requesting the appointment of a special master "to develop the facts to support these claims." Order, *State v. Pike*, No. M2020-01156-SC-DPE-DD (Sept. 23, 2026). Citing a history of rape and sexual abuse, Pike argued that placing her, "as the lone female in a vulnerable position surrounded by male corrections officers during the last days of her life will trigger her PTSD and result in a torturous execution or mental decompensation to the point she will be incompetent to be

[1] This order, as well as subsequent filings related to Pike's attempt to stay the order, are publicly available at https://pch.tncourts.gov/.

executed." Motion, *State v. Pike*, No. M2020-01156-SC-DPE-DD (Tenn. Jun. 12, 2026). The Tennessee Supreme Court appointed a special master to conduct an evidentiary hearing and make findings on Pike's claims relating to her mental struggles and sexual abuse. Order, *State v. Pike*, No. M2020-01156-SC-DPE-DD (Tenn. Jul. 10, 2026).

At the August 13, 2026 hearing, during argument related to Ms. Pike's mental health claims and sexual abuse, the State's attorney stated:

> "The State does not dispute the terrible things that Ms. Pike suffered. I think everybody in this courtroom wishes that those things had never happened to Ms. Pike. I think we all wish that we were not here today and that she was not on death row . . . . And so it's certainly not the State's intention to try to minimize the suffering that Ms. Pike has experienced."

Vol. 1 at 82–83, *State v. Pike*, No. M2020-01156-SC-DPE-DD (Tenn. Aug. 13, 2026).

The special master and the Tennessee Supreme Court ultimately rejected all of Pike's claims. Order, *State v. Pike*, No. M2020-01156-SC-DPE-DD (Sept. 23, 2026).

On September 29, 2026—hours before her scheduled execution—Pike filed in this Court a motion for relief from judgment under Fed. R. Civ. P. 60(b). (D.E. 116.) Relying on a supposed concession by the State regarding purported abuse committed against Pike as a child, she seeks to reopen her petition in order to relitigate this Court's merits-rejection of her claim that trial counsel provided

ineffective assistance at sentencing. In Pike's view, this characterization of her prior reports of sexual abuse differs from that offered by the State on post-conviction review.[2] She asserts that it qualifies as extraordinary circumstances in order to justify the reopening of her concluded habeas petition and relitigation of the ineffectiveness claim that this Court rejected on the merits.

## ARGUMENT

**This Court Should Transfer Pike's Motion for Relief from Judgment to the Sixth Circuit as a Second or Successive Habeas Corpus Petition.**

Pike argues that the State's recent unsworn hearing argument about her allegations of abuse entitles her to relief from judgment regarding a claim rejected by this Court on the merits. She is mistaken. As the Supreme Court settled in *Gonzalez*, a motion for relief from judgment on a claim that the district court rejected on the merits is effectively a second or successive habeas corpus petition. Her motion should be transferred to the Sixth Circuit as a second or successive habeas petition. *In re Bowling*, 422 F.3d 434, 440 (6th Cir. 2005).

"In some instances, a Rule 60(b) motion will contain one or more 'claims.'" *Gonzalez*, 545 U.S. at 530. And the motion "might seek leave to present 'newly discovered evidence,' Fed. Rule Civ. Proc. 60(b)(2), in support of a claim previously

---

[2] Pike did not testify at the evidentiary hearings on her post-conviction petition conducted in 2007 and 2008, nor did she testify at the more recent hearing on her stay motion. Instead, other witnesses testified in those proceedings about Pike's reports of abuse.

denied." *Id*. at 531. This "is in substance a successive habeas petition and should be treated accordingly." *Id*. "Using Rule 60(b) to present new claims for relief from a state court's judgment of conviction—even claims couched in the language of a true Rule 60(b) motion—circumvents AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts." *Id*. And "the same is true of a Rule 60(b)(2) motion presenting new evidence in support of a claim already litigated." *Id*. "[U]se of Rule 60(b) would impermissibly circumvent the requirement that a successive habeas petition be precertified by the court of appeals as falling within an exception to the successive-petition bar." *Id*. at 532.

Importantly, a Rule 60(b) motion can "be said to bring a 'claim' if it attacks the federal court's previous resolution of a claim *on the merits*, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." *Id*. "That is not the case, however, when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Id*.

Here, although Pike couches her request in terms of a "defect in the integrity of the federal habeas proceeding," she does so with regard to this Court's prior merits-rejection of her claim of ineffective assistance of counsel in failing to develop

and present certain mitigation evidence. Importantly, she presses for relief from the judgment and for a reopening of her case *specifically* so that she can relitigate her ineffectiveness claim that this Court previously rejected on the merits. (D.E. 116, PageID# 13534.) The only fair characterization of Pike's request is that it is a challenge to the Court's rejection of the claim on the merits and a request for a second merits assessment in light of counsel's recent unsworn statement. Simply put, the motion raises a claim. Pike cannot avoid application of *Gonzalez* and 28 U.S.C. § 2244(b) by ignoring the prior rejection of that claim on the merits and by recharacterizing her request as a procedural challenge to how the Court went about denying her claim on the merits.

In evaluating a Rule 60(b) motion, the focus lies on determining "whether the Rule 60(b) motion contains a claim." *Tyler v. Anderson*, 749 F.3d 499, 507 (6th Cir. 2014). This motion clearly does. If so, Rule 60(b) does not license reassessment to how this Court (or the state courts) rejected that claim on the merits. If anything, Pike relies upon counsel's unsworn statement as new evidence on her rejected ineffectiveness claim, which in her view "erodes the foundation of" the state-court adjudication on the claim and "vitiates" the claim's rejection in federal court. (D.E. 116, PageID# 13517.) Even if such a statement could qualify as new evidence, "for purposes of AEDPA, new evidence does not usually give rise to a new claim; it merely provides additional proof of a claim already adjudicated on the merits."

*Franklin v. Jenkins*, 839 F.3d 465, 475 (6th Cir. 2016) (cleaned up). And *Gonzalez* clearly bars relief under Rule 60(b) based on new evidence supporting a habeas claim previously rejected on the merits.

## CONCLUSION

For the reasons stated, this Court should transfer Pike's Rule 60(b) motion to the Sixth Circuit as a second or successive habeas petition.[3]

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General & Reporter

MADELINE W. CLARK
Solicitor General

TAYLOR M. DURRETT
Assistant Attorney General

*<u>/s/ John H. Bledsoe</u>*
JOHN H. BLEDSOE
Deputy Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
Telephone: (615) 741-4351
Email: John.Bledsoe@ag.tn.gov
Attorney for Respondent-Appellant

[3] Even if the motion were not subject to transfer, Pike has failed to make the rare showing of extraordinary circumstances for relief from judgment in a habeas case, based upon an unsworn statement by counsel for the State during her recent state-court hearing for a stay of execution. If anything, counsel's earnest statement expressed sympathy for Pike on the eve of her execution while likewise explaining how Pike's reliance on her prior statements about abuse suffered as a child, even when taken as true, did not support her stay request—which the special master and the Tennessee Supreme Court ultimately denied. And this occurred long after the state-court adjudication on the underlying ineffectiveness claim, which itself was not ultimately grounded on whether (and the extent to which) Pike suffered abuse as a child.

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing motion has been served through the Court's electronic case filing system on the 29th day of September, 2026, to Assistant Federal Community Defender Stephen Ferrell at Stephen_Ferrell@fd.org.

*/s/ John H. Bledsoe*
JOHN H. BLEDSOE
Deputy Attorney General